**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| FINJAN, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>SONICWALL, INC.,<br><br>    Defendant. | Case No. 17-cv-04467-BLF<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM FOR WILLFUL INFRINGEMENT**<br><br>[Re: ECF 26] |

Defendant SonicWall ("SonicWall") moves to dismiss the claims of willful infringement in the Complaint filed by Plaintiff Finjan, Inc. ("Finjan"). Mot., ECF 26. Pursuant to Civil Local Rule 7-1(b), the Court issues a decision on the instant motion without oral argument. For the reasons discussed below, the Court DENIES SonicWall's motion.

## I. BACKGROUND

Finjan initiated the present lawsuit on August 4, 2017, alleging that SonicWall infringes ten of Finjan's patents: 6,154,844 (the "'844 Patent"), 7,058,822 (the "'822 Patent"), 6,804,780 (the "'780 Patent"), 7,613,926 (the "'926 Patent"), 7,647,633 (the "'633 Patent"), 8,141,154 (the "'154 Patent"), 8,677,494 (the "'494 Patent"), 7,975,305 (the "'305 Patent"), 8,225,408 (the "'408 Patent"), and 6,965,968 (the "'968 Patent") (collectively, the "Asserted Patents"). Compl., ECF 1. Finjan alleges that it is entitled to enhanced damages pursuant to 35 U.S.C. § 284 because SonicWall has engaged in willful infringement of each of the Asserted Patents. *Id.* ¶¶ 72, 90, 106, 123, 140, 158, 170, 189, 206, 224.

Prior to the filing of this lawsuit, Finjan and SonicWall engaged in licensing discussions that date back to June 2014. *Id.* ¶ 39. Around June 10, 2014, Finjan contacted SonicWall regarding a potential license to Finjan's patents, stating "Finjan owns a patent portfolio covering

behavior-based and antimalware security resulting from its R&D investments" and "we believe a license to Finjan's patent portfolio could be beneficial" to the company. *Id.* At that time, SonicWall was a subsidiary of Dell, Inc. ("Dell"). *Id.* Dell sold SonicWall to a private equity firm, Francisco Partners and Elliott Management, around November 1, 2016. *Id.* ¶ 44.

From June 2014 to March 2017, Finjan and SonicWall had numerous communications about Finjan's Asserted Patents and SonicWall's products. *Id.* ¶¶ 39–44. On multiple occasions, Finjan met with SonicWall's representatives in Round Rock, Texas. *Id.* ¶¶ 41, 42. In particular, around October 12, 2016, Finjan visited SonicWall to discuss whether SonicWall would take a license to Finjan's patents. *Id.* ¶ 43. Around November 1, 2016, Finjan emailed a presentation to SonicWall that summarized the discussions that the parties had about three weeks earlier. *Id.*; Ex. C to Springer Decl., ECF 25-10. This presentation identified each Asserted Patent and described how SonicWall's products related to Finjan's patents. Compl. ¶ 43; Ex. C to Springer Decl.

In the end, SonicWall refused to take a license to Finjan's patents and at no time did SonicWall provide any explanation why the accused products did not infringe the Asserted Patents. Compl. ¶ 44. Eventually, Finjan filed this lawsuit against SonicWall on August 4, 2017.

## II. LEGAL STANDARD

### A. Motion to Dismiss

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed

factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

### B. Enhanced Damages Pursuant to 35 U.S.C. § 284 and Willful Infringement

Under 35 U.S.C. § 284, in a case of infringement, courts "may increase the damages up to three times the amount found or assessed." Section 284 "contains no explicit limit or condition" on when a district court may award enhanced damages, but instead allows courts to "punish the full range of culpable behavior." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1931, 1933 (2016). This "sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or— indeed—characteristic of a pirate." *Id*. at 1932. When awarding enhanced damages, "courts should continue to take into account the particular circumstances of each case." *Id*. at 1934. Enhanced damages are generally reserved for "egregious cases of misconduct beyond typical infringement," such as those "typified by willful misconduct." *Id*. at 1934–35.

In assessing the egregiousness of an actor's behavior, "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct." *Id*. at 1933 (citation omitted). What matters is the actor's subjective state of mind at the time of the challenged conduct, not his objective reasonableness. *See id*. For this reason, "[t]he subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id*. at 1933. Courts have considered the "totality of the allegations to determine whether a claim of willfulness is plausible." *See, e.g.*, *Nanosys, Inc. v. QD Vision, Inc.*, No. 16-CV-01957, 2016 WL 4943006, at *7 (N.D. Cal. Sept. 16, 2016) ("*Nanosys I*").

"Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages" after *Halo*. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) (citing *Halo*, 136 S. Ct. at 1932–33). In addition, the complaint must plead some factual allegations to support egregious behavior other than mere knowledge of the asserted patents to

3

1 survive a motion to dismiss. *See, e.g.*, *Cont'l Circuits LLC v. Intel Corp.*, No. CV16-2026, 2017 WL 679116, at *7–8 (D. Ariz. Feb. 21, 2017) (collecting cases and concluding that allegations of knowledge alone are insufficient).

### C. Request for Judicial Notice

The Court may generally consider exhibits attached to or incorporated by reference into the complaint and matters properly subject to judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). In support of its motion, SonicWall filed a Request for Judicial Notice ("RJN") of the (1) July 8, 2014 email with attachments between Finjan and Dell; (2) September 17, 2014 email with attachments between Finjan and Dell, and (3) Finjan's October 12, 2016 PowerPoint presentation entitled Patent Licensing Discussions. RJN, ECF 27; Exs. A–C to Springer Decl., ECF 25-6, 25-8, 25-10. These documents are referenced in the Complaint. *See* Compl. ¶¶ 40, 43. SonicWall's RJN is GRANTED, as the Complaint refers to those documents and Finjan does not dispute their authenticity. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). The documents are accepted as what they represent, but any specific fact findings and legal conclusions set forth in those documents may not bind this Court. Also, the Court does not make any factual determinations as to whether the documents are sufficient evidence to support the merits of Finjan's case. Rather, the Court reviews the Complaint's allegations and the documents as a whole to determine whether Finjan pleads a plausible claim under the standards set forth in *Twombly* and *Iqbal*.

## III. DISCUSSION

In its motion to dismiss, SonicWall argues that Finjan has failed to state a claim for willful infringement because the Complaint's allegations "show nothing more than SonicWall engaging in good faith, pre-suit settlement discussions with Finjan." Mot. 6. SonicWall further contends that Finjan does not allege that the parties had any prior business relationship, SonicWall copied "something" from Finjan, or SonicWall designed a product based on "something" it learned from Finjan. *Id.* On this basis, SonicWall asserts that Finjan has not pled allegations showing that SonicWall "engaged in any sort of behavior that would be considered 'egregious.'" *Id.*

Finjan responds that SonicWall "conflates the standard for proving willful infringement

4

with the standard of pleading it." Opp'n 1, ECF 31. Finjan further avers that it has alleged more than mere knowledge of the patents and has pled specific facts showing "SonicWall's subjective intent to string Finjan along with three years of sham settlement discussions, all while . . . selling new products that SonicWall knew [to infringe]." *Id.* In particular, Finjan contends that the Complaint alleges that Finjan provided details on how the Asserted Patents relate to SonicWall's products through prolonged settlement discussions but that SonicWall participated in the discussions with a disingenuous manner. *Id.* at 2–3.

The Court agrees with Finjan that it has sufficiently pled claims for willful infringement. The parties do not dispute that Finjan pleads that SonicWall had pre-suit knowledge of the Asserted Patents, and thus the only issue is whether the Complaint's allegations allow a reasonable inference to be drawn that SonicWall engaged in "egregious conduct." *See, e.g.*, *Cont'l Circuits LL*, 2017 WL 679116, at *7–8 (requiring a showing of egregious behavior to plead a willful infringement claim). While enhanced damages may not be awarded where "the infringer knew about the patent *and nothing more*," *Halo*, 136 S. Ct. at 1936 (Breyer, J., concurring) (emphasis in original), this is not such a case as elaborated below.

According to the Complaint, the parties had numerous communications where Finjan discussed how SonicWall's products related to the Asserted Patents. Compl. ¶¶ 39–44. Through a number of telephone meetings and in-person meetings in Round Rock, Texas, Finjan explained SonicWall's infringement of each Asserted Patent *element-by-element*. *Id.* ¶¶ 70, 88, 104, 121, 138, 156, 168, 187, 204, 222 (emphasis added). In particular, during a meeting held around October 12, 2016, Finjan "identified every one of Finjan's patents that are asserted in this case . . . and detailed how a number of [SonicWall's] products – including Advanced Threat Protection, Web Application Firewall, Content Filtering Service, and Gateway Anti-Virus and Anti-Spyware – relate to Finjan's patents." *Id.* ¶ 43; *see* Ex. C to Springer Decl. These allegations allow a reasonable inference to be drawn that SonicWall not only knew about the existence of the Asserted Patents but how its products infringed each Asserted Patent in detail.

In addition, the Complaint contains allegations that support a reasonable inference that SonicWall knew about its infringement for about three years, but notwithstanding that knowledge,

5

engaged in disingenuous licensing negotiations. For example, the Complaint alleges that SonicWall sent representatives who had no authority to accept a license to at least one meeting, engaged in at least one meeting while knowing that it would soon be sold by Dell, and canceled meetings on short notice after Finjan's representatives had taken a flight to attend the meetings. Compl. ¶¶ 71, 89, 105, 122, 139, 157, 169, 188, 205, and 223. Moreover, for about three years, SonicWall did not provide "any explanation as to how any of the Accused Products do not infringe any of the Asserted Patents." *Id.* ¶ 44. When considering those allegations and other facts pled in the Complaint that show that SonicWall knew in detail about how it infringed each Asserted Patent as a whole, a reasonable inference can be drawn that SonicWall's licensing discussions were disingenuous. Taking the Complaint's allegations as true, there is "more than a sheer possibility" that SonicWall engaged in disingenuous discussions and prolonged the negotiations while being aware of its infringement. *Potter Voice Techs., LLC v. Apple Inc.*, 24 F. Supp. 3d 882, 886 (N.D. Cal. 2014) (citing *Iqbal*, 556 U.S. at 678) ("At the motion to dismiss stage, the Court does not undertake a full evaluation of 'probability,' but simply asks for 'more than a sheer possibility that a defendant has acted unlawfully.'"). As such, the Court finds that the Complaint contains sufficient facts from which a plausible conclusion could be reached that SonicWall's conduct went beyond those "in a typical infringement case" and thus was egregious. *Halo*, 136 S. Ct. at 1935.

SonicWall's arguments do not persuade the Court to reach an opposite conclusion. In its motion, SonicWall argues that "[a]llegations that a defendant continued its accused acts of infringement despite knowledge of an asserted patent—alone—do not rise to the requisite level of egregiousness." Mot. 6 (citing *Rovi Solutions Corporation v. Lenovo (US) Inc.*, No. C 12-04209-RS, Dkt. No. 34 (N.D. Cal. Nov. 15, 2012); *Slot Speaker Technologies, Inc. v. Apple, Inc.*, No. 13-CV-01161-HSG, 2017 WL 4354999 (N.D. Cal. Sept. 29, 2017); *XpertUniverse, Inc. v. Cisco Systems*, Inc., Case No. 17-cv-03848-RS, Dkt. 46 at 11 (N.D. Cal. Oct. 11, 2017)). However, Finjan alleges more than mere knowledge of the Asserted Patents and continued acts of infringement. As discussed above, the Complaint pleads that SonicWall knew in detail how its products infringe each Asserted Patent and that SonicWall engaged in the licensing discussions in

a disingenuous manner. Moreover, the three cases *Rovi Solutions*, *XpertUniverse*, and *Slot Speaker* relied on by SonicWall are distinguishable from this case.

In *Rovi Solutions*, the only issue present before the court was whether the allegation that the defendant "continued its infringing activities" was sufficient to state a claim for willful infringement. Case No. C 12-04209-RS, Dkt. No. 34 at 5. The court decided that such an allegation alone was insufficient to meet the pleading standard. *Id.* at 5–6. In contrast, Finjan does not merely allege that SonicWall "continued its infringing activities." As summarized above, the Complaint pleads that SonicWall gained detailed knowledge about the purported infringement of each Asserted Patent through multiple licensing discussions and that SonicWall's actions during the course of the negotiations demonstrate misconduct. Finjan therefore pleads more factual allegations that support a showing of egregious behavior than that was present in *Rovi Solutions*.

*Slot Speaker* faced the question whether it should grant the plaintiff's request to amend the complaint to assert a willful infringement claim. *Slot Speaker*, 2017 WL 4354999, at \*1. The court found that the amendment would be futile because the "[p]laintiff point[ed] to [d]efendant's post-suit manufacturing and sales as the exclusive evidence of [d]efendant's willful infringement." *Id.*, at \*2. In other words, the willful infringement claim was insufficient because the plaintiff did not plead any other factual allegations regarding the nature of the defendant's conduct except for on-going sales. Unlike the plaintiff in *Slot Speaker*, Finjan alleges more than "post-suit" sales because the Complaint contains detailed allegations regarding SonicWall's knowledge and conduct during the licensing negotiations that continued for about three years. Thus, Finjan does not simply rely on post-suit sales of SonicWall's products, and *Slot Speaker* is inapplicable.

The court in *XpertUniverse* dismissed willful infringement claims under an entirely different situation. In that case, the defendant's earlier products were found to have infringed the plaintiff's patent at an earlier trial. Case No. 17-cv-03848-RS, Dkt. 46 at 2. The plaintiff alleged that the defendant's later products continued to infringe since the final judgment was entered in the earlier trial. *Id.* at 11. The defendant, however, argued that its later products were "design-around" products. *Id.* Because the "[d]isagreement about the existence of continued infringement

7

does not necessarily indicate willful . . . misconduct," the court dismissed the plaintiff's willful infringement claims which were not supported by other allegations. *See id.* Unlike *XpertUniverse*, this case does not implicate allegations of continued infringement after an earlier jury verdict. Rather, Finjan's claims for willful infringement are based on SonicWall's purported conduct that occurred during the parties' licensing negotiations through a period of about three years. The Court therefore is unpersuaded that *XpertUniverse* suggests that Finjan's willful infringement claims are deficient.

SonicWall's other arguments are unavailing. SonicWall first asserts that the "fact that settlement negotiations occurred while SonicWall was continuing to sell the accused products . . . cannot be the basis for a claim of willfulness." Mot. 7. In this regard, SonicWall avers that settlement discussions are both encouraged and protected under Federal Rule of Evidence 408. *Id.* at 7–8. Rule 408 provides that certain evidence pertaining to negotiations is not admissible "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408. However, as SonicWall acknowledges, the admissibility of the parties' licensing discussions are not at issue in this motion. *See* Mot. 8 ("[T]his motion is not predicated on the question of admissibility *per se*, which would be decided by the Court later in the case."). Holding that the settlement discussion allegations should be ignored because they are protected by Rule 408 would effectively require Finjan to prove its claims to survive a motion to dismiss. But Finjan need not prove its willful infringement claims in its pleading. At this stage, Finjan only needs to plead factual allegations, when accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Similarly, SonicWall argues that a willfulness claim that relies *entirely* on Rule 408-protected communications cannot satisfy the *Halo* standard. Reply 10, ECF 33. But SonicWall does not point to any authority supporting that this proposition is applicable at the motion to dismiss stage. For the instant motion, the Court accepts all well-pled factual allegations as true and construes them in the light most favorable to Finjan. *Reese*, 643 F.3d at 690. Admissibility is not at issue in this motion. "Moreover, evidence of facts disclosed during compromise negotiations is not inadmissible by virtue of having been first disclosed in the compromise

1 negotiations." *Phoenix Sols. Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 584 (N.D. Cal. 2008). Therefore, to the extent that SonicWall is arguing that the allegations pertaining to the settlement discussions cannot lend any support to Finjan's willful infringement claim at the pleading stage, the Court rejects that argument. Whether Finjan has evidence to prove its claims is a matter for another day.

As a final point, SonicWall claims that allowing settlement discussions to form the basis of willful infringement claims would cut against the public policy to encourage such discussions Mot. 8. In particular, SonicWall asserts that a defendant may have to waive its attorney-client privilege to show good faith when countering willful infringement claims. *Id.* For support, SonicWall cites *McRO, Inc. v. Namco Bandai Games Am., Inc.*, 23 F. Supp. 3d 1113, 1125 (C.D. Cal. 2013). The law, however, recognizes that a party may have to waive its attorney-client privilege to raise a defense, and Patent Local Rule 3-7 recognizes this possibility. *See In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1298–99 (Fed. Cir. 2006) (discussing the scope of a waiver of attorney-client privilege in response to a charge of willful infringement); Patent L.R. 3-7. There is no special reason why purported egregious behavior should be shielded by the fact that the defendant may have to waive its attorney-client privilege. In addition, SonicWall's reliance on *McRO* is not persuasive. While that case recognized "the need to maintain the attorney-client privilege for litigation counsel," it focused on the waiver problem where the willfulness allegations were directed to *post-suit conduct*. *See McRO*, 23 F. Supp. 3d at 1124–25. *McRO*'s discussion does not directly apply here because Finjan alleges that SonicWall acted egregiously before the lawsuit was filed. For these reasons, the Court rejects SonicWall's arguments. Although settlement discussions play an important role in resolving disputes, Finjan's willful infringement claims satisfy the standards set forth in *Iqbal* and *Twombly* and thus should be allowed to proceed.

To be clear, the fact that the parties engaged in licensing negotiations while SonicWall was selling (and continues to sell) the accused products alone does not necessarily mean that SonicWall's behavior is egregious. Here, Finjan's pleading goes beyond the mere allegation that SonicWall acquired pre-suit knowledge of the Asserted Patents and sold infringing products.

9

Accordingly, at this motion to dismiss stage, Finjan has satisfied its burden to allege facts from which a plausible conclusion could be reached that SonicWall engaged in egregious conduct under *Halo*. Further developments of this case may reveal that the circumstances do not support that SonicWall's purported behavior was egregious.

## IV. CONCLUSION

For the foregoing reasons, Finjan's Complaint sufficiently pleads willful infringement. SonicWall's motion to dismiss the claims of willful infringement is DENIED.

**IT IS SO ORDERED.**

Dated: May 16, 2018

_____
BETH LABSON FREEMAN
United States District Judge