UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC.,<br><br>   Plaintiff,<br><br> v.<br><br>SONICWALL, INC.,<br><br>   Defendant. | Case No. 17-cv-04467-BLF (VKD)<br><br>**ORDER GRANTING IN PART MOTION TO STRIKE SECOND SUPPLEMENTAL INFRINGEMENT CONTENTIONS**<br><br>Re: Dkt. No. 164 |

In this patent infringement action, defendant SonicWall, Inc. ("SonicWall") moves to strike plaintiff Finjan, Inc.'s ("Finjan") second supplemental infringement contentions. Dkt. No. 164. The motion was referred to the undersigned judge. Dkt. No. 75. The Court heard oral argument on the matter on October 29, 2019 and gave the parties an opportunity to file supplemental material on October 30, 2019. Dkt. Nos. 177, 179. Having considered the parties' submissions and arguments made at the hearing, the Court grants in part and denies in part SonicWall's motion to strike. The Court also orders Finjan to revise its infringement contentions as described below.

## I. BACKGROUND

On April 10, 2018, Finjan served its original disclosure of asserted claims, infringement contentions, and document production pursuant to Patent Local Rules 3-1 and 3-2. The original disclosure asserted infringement of 39 claims across the following ten patents: U.S. Patent Nos. 6,154,844 ("the '844 patent"); 7,058,822 ("the '822 patent"); 6,804,780 ("the '780 patent"); 7,613,926 ("the '926 patent"); 7,647,633 ("the '633 patent"); 8,141,154 ("the '154 patent"); 8,677,494 ("the '494 patent"); 7,975,305 ("the '305 patent"); 8,225,408 ("the '408 patent"); and

6,965,968 ("the '968 patent"). *See* Dkt. No. 112-2 at 2. After SonicWall objected to this original disclosure, Finjan served supplemental infringement contentions on November 9, 2018. Dkt. No. 118 at 2. These did not satisfy SonicWall, which moved to compel further supplemental infringement contentions. Dkt. No. 112.

On May 1, 2019, the Court granted SonicWall's motion and ordered Finjan to amend its infringement contentions. Dkt. No. 146. As relevant here, the Court ordered Finjan to eliminate open-ended language and references to unidentified components by, among other things, removing placeholder reference to unspecified products, services, or components, and specifying whether a product or service infringes alone or in combination. *Id.* The Court also ordered Finjan to revise its contentions to specifically identify the elements of the accused instrumentalities that satisfy certain limitations of claim 6 of the '305 patent, claim 22 of the '926 patent, claim 9 of the '408 patent, claims 1 and 15 of the '844 patent, claim 9 of the '780 patent, claims 1, 10, and 3 of the '154 patent, and claims 1, 7, and 11 of the '968 patent. *Id.*

Finjan served its second supplemental infringement contentions on May 31, 2019. Dkt. No. 170 at 2. SonicWall now moves to strike Finjan's second supplemental infringement contentions on the ground that they fail to comply with the Court's May 2019 order requiring amendment.

## II. LEGAL STANDARD

"Striking a patentee's infringement contentions is a severe sanction that should be used sparingly and only for good cause." *Avago Techs., Inc. v. IPtronics Inc.*, No. 5:10-CV-02863-EJD, 2015 WL 4647923, at *2 (N.D. Cal. 2015) (citation omitted). As a result, "motions to strike initial infringement [contentions] are frequently treated as motions to compel amendment of the infringement contentions." *Geovector Corp. v. Samsung Elecs. Co.*, No. 16-CV-02463-WHO, 2017 WL 76950, at *7 (N.D. Cal. Jan. 9, 2017). However, courts may strike, with prejudice, supplemental or amended infringement contentions where patentees repeatedly fail to comply with Patent Local Rule 3-1 and earlier orders concerning amendment. *Compare, e.g.*, *id.* (declining to strike plaintiff's infringement contentions with prejudice on defendant's first motion to strike) *with Shared Memory Graphics LLC v. Apple Inc.*, No. C-10-02475-MMC (JSC), 2011 WL

2

1    3878388, at *11–12  (N.D. Cal. Nov. 2, 2011) (denying leave to serve third amended infringement

2    contentions where plaintiff had amended its contentions twice already but still failed to comply

3    with Patent Local Rule 3-1(c)) *and Huang v. Nephos Inc.*, No. C 18-06654 WHA, 2019 WL

4    5892988, at *4 (N.D. Cal. Nov. 12, 2019) (granting second motion to strike fourth amended

5    infringement contentions and dismissing case with prejudice "[a]fter multiple wasted chances" and

6    "despite repeated guidance from the Court").

Patent Local Rule 3-6 provides that a patentee may only amend its infringement contentions "by order of the Court upon a timely showing of good cause."

### III. DISCUSSION

SonicWall moves to strike Finjan's second supplemental infringement contentions on four grounds. First, SonicWall says that Finjan's contentions do not clarify its infringement theories by providing separate charts for accused products alone and for accused products in combination with the Capture Advanced Threat Protection ("Capture ATP") product but instead continue to assert allegedly infringing combinations of standalone products and cloud-based resources. Second, SonicWall says that Finjan's contentions continue to use open-ended language that does not provide SonicWall fair notice of what is accused. Third, SonicWall says that Finjan's contentions for the '154 patent fail to comply with the Court's order to specify the instrumentality that meets the limitation of claim 1 that requires "transmitting the input to the security computer for inspection, when the first function is invoked." Fourth, SonicWall argues that for all asserted patents except for the '408 patent Finjan asserts new infringement theories that go beyond the scope of the amendments the Court previously permitted.

#### A. Finjan's Contentions for Products that Infringe "Alone"

In its May 2019 order, the Court ordered that "Finjan must specify whether a product or service infringes alone or in combination. For example, if Finjan contends that the Capture ATP product infringes an asserted claim, both alone and in combination with some other product or service, its infringement contentions should make that clear." Dkt. No. 146 at 5. Finjan's second supplemental contentions include separate charts that purport to describe its infringement theories for the accused Gateway and Email Security Appliance ("ESA") instrumentalities alone and

separately for those instrumentalities in combination with Capture ATP, which Finjan has previously described as "SonicWall's cloud-based sandbox network." Dkt. No. 118 at 6 n.6.

SonicWall argues that these second supplemental contentions do not comply with the Court's May 2019 order because the "alone" charts do not actually chart the accused Gateway or ESA instrumentalities alone; instead, Finjan's amended contentions require the combination of Gateway and ESA with additional components. Dkt. No. 164 at 6–7. Specifically, SonicWall says that Finjan has simply replaced references to "Capture ATP" with references to other external sandboxes—namely the "CloudAV sandbox" and the "GRID sandbox"—in its "alone" contentions. *Id.* at 9–12. According to SonicWall, the Gateway- or ESA-plus-sandbox infringement contentions do not comply with the Court's order because they do not actually chart infringement by the Gateway or ESA instrumentalities alone.[1]

Finjan responds that its contentions comply with the Court's order to separately chart infringement by the Gateway and ESA instrumentalities alone and in combination with Capture ATP. Finjan asserts that the CloudAV and GRID sandboxes are not separate products, but rather are components of the Gateway and ESA instrumentalities themselves, and therefore Finjan simply complied with the Court's directive to be more specific about its "alone" contentions. Dkt. No. 170 at 7–8. Finjan explains that its citations to the same documents and source code across the "alone" and "with CaptureATP" charts stem from the fact that the CloudAV, GRID, and Capture ATP sandboxes share mostly the same source code. *Id.* at 4–6, 7–9.

The question before the Court is whether Finjan's Gateway-only and ESA-only contentions disclose new "combination" theories of infringement, or whether they instead disclose with greater particularity Finjan's prior "alone" theories of infringement for Gateway and ESA. In answering this question, the Court finds significant Finjan's representations made in response to SonicWall's earlier motion to compel further supplemental infringement contentions. At that time, Finjan asserted that the accused Gateway and ESA instrumentalities were capable of infringing alone (i.e., "on the box") ***without connection to any cloud-based component***, as well as

---

[1] SonicWall does not move to strike Finjan's second supplemental infringement contentions for the Capture ATP product alone on this basis.

4

in combination with Capture ATP. *See, e.g.*, Dkt. No. 118 at 6 ("For example, certain products are appliances that are capable of infringing malware analysis 'on the box' (*without connecting to the cloud*) and infringe through the use of this analysis engine. However, these products can also connect to Capture ATP in the 'cloud' for further malware analysis that also infringes.") (emphasis added). At the March 12, 2019 hearing on SonicWall's earlier motion to compel, Finjan represented to the Court that its existing contentions embodied these two distinct theories of infringement and that it could amend its contentions to make the distinction clear. Dkt. No. 129 at 12:09–14:57. The Court ultimately ordered Finjan to make precisely these amendments to clearly distinguish its Gateway-only and ESA-only theories from its Gateway-combined with Capture ATP and ESA-combined with Capture ATP theories. Dkt. No. 146 at 5.

The Court has compared the portions of Finjan' first supplemental contentions and its second supplemental contentions for the Gateway-only and ESA-only instrumentalities that the parties submitted with their briefing. The second supplemental contentions contain some infringement contentions that *do* appear to be limited to functionality "on the box" that requires no connection to a cloud-based resource or some other external component. For example, Contention 1 for limitation 10b of claim 10 of the '494 patent discloses that the "Firewall [of the SonicWall Gateways] has a receiver for receiving an incoming Downloadable," because the Gateway instrumentalities include "hardware (network interface card) and software components (proxy software) that are receivers configured to received Downloadables from a source computer (i.e., Internet) for inspection to detect malware." Dkt. No. 184-8 at 2. Contention 1 thus does not rely on any cloud-based components as the basis for infringement.

However, Finjan's second supplemental contentions also include sets of contentions that are not so limited and, more importantly, do not appear to have been disclosed previously. Contention 2 discloses CloudAV as possessing a receiver for receiving an incoming Downloadable, which then "receives executable files from the Firewall for further analysis on servers *located in the cloud* (aka CloudAV Sandbox)." *Id.* at 4 (emphasis added). Contention 3 discloses GRID as having a receiver, which "receives incoming files through its honeypots and webcrawlers for further processing by the GRID Sandbox." *Id.* at 7. And Contention 4 discloses

5

GRID's receiver as receiving "incoming files through *SonicWall Capture cloud service* for further processing by the GRID Sandbox." *Id.* at 8 (emphasis added).

The Court will hold Finjan to its earlier representations that the Gateway and ESA instrumentalities infringe "alone" and "on the box," without connection to cloud-based components. To the extent Finjan's second supplemental infringement contentions purport to disclose infringement theories for Gateway and ESA "alone" that rely on claim limitations met by cloud-based components, such as the CloudAV and GRID sandboxes, such contentions are outside the scope of the amendments permitted in the Court's May 2019 order, and the Court grants SonicWall's motion to strike these contentions.[2] Finjan shall re-serve its Gateway-only and ESA-only disclosures to eliminate contentions that certain limitations are met by cloud-based resources or components.

### B. Finjan's Use of Combinations of Contentions

In its May 2019 order, the Court found that Finjan's use of open-ended language and references to unidentified components rendered Finjan's contentions unacceptably vague. Dkt. No. 146 at 4. The Court ordered Finjan to amend its contentions to eliminate the use of "and/or" language and "examples" of infringement and to specifically identify the products, services, and components at issue. *Id.* at 5, 9, 10, 22.

SonicWall argues that Finjan's second supplemental contentions do not comply with this directive. Dkt. No. 164 at 12. SonicWall points to Finjan's use of numbered "contentions" for the limitations of certain asserted patents and its reliance on the "catch-all" statement: "Any contentions below can be used in any combination with the other contentions unless explicitly stated." *See, e.g.*, Dkt. No. 169-6 at 1. According to SonicWall, this formulation produces an "astronomical number of potential infringement permutations." Dkt. No. 714 at 3–4.

At the hearing, Finjan explained that the numbered contentions are the "explicit statement"

---

[2] Contrary to its prior representations, at the October 31, 2019 hearing on the present motion to strike, Finjan insisted that the Gateway and ESA instrumentalities would be essentially useless without a connection to the CloudAV and GRID sandboxes. Dkt. No. 189 at 26:24–27:19. If that is the case, Finjan may wish to withdraw its Gateway-only and ESA-only contentions in their entirety.

6

of permitted combinations for those contentions that have numbers. *See* Dkt. No. 189 at 44:5–45:8, 47:16–48:4, 49:8–50:16. For example, Finjan says, "contention 1" for limitation 15a of claim 15 of the '844 patent may only be combined with "contention 1" for limitations 15b, 15c, and 15d of claim 15, and not with "contention 2" or "contention 3" for those limitations.[3] *Id.* at 44:5–45:8, 47:16–48:4. Finjan agreed to clarify which, if any, numbered contentions may be combined with others. Dkt. No. 189 at 38:21–51:17.

As this dispute arises from an ambiguity in Finjan's supplemental contentions that the parties easily could have resolved without the Court's assistance, the Court denies SonicWall's motion to strike on this ground. However, Finjan must revise its infringement contentions to eliminate ambiguity and to clarify which combinations of contentions it asserts. It may not rely on correspondence with counsel for SonicWall.

### C. Finjan's Contentions for the '154 Patent

In its May 2019 order, the Court ordered Finjan to revise its contentions as to certain limitations of claims 1, 3, and 10. Dkt. No. 146 at 20–24. Among other things, the Court required Finjan to amend its contentions to specifically identify the basis for its view that the accused instrumentalities meet the requirements of claim 1 of "transmitting the input to the security computer for inspection, when the first function is invoked." *Id.* at 20–23.

SonicWall argues that Finjan's second supplemental contentions for the '154 patent do not disclose whether or how the accused instrumentalities meet limitation 1c of claim 1 of the '154 patent, which requires "a transmitter for transmitting the input to the security computer for inspection, when the first function is invoked." Dkt. No. 164 at 13. Specifically, SonicWall says that Finjan does not disclose that the accused instrumentality transmits the input "when the first function is invoked." *Id.*

Finjan responds that its contentions do indeed disclose this limitation, but that the disclosure appears in the contentions for the "content processor" in limitation 1b of claim 1. Dkt.

---

[3] The Court observes, however, that Finjan's contentions for limitation 15a of claim 15 of the '844 patent only discloses one contention: contention 1. Dkt. No. 169-8 at 1. Either contention 1 for limitation 15a must be combined with contentions 2, 3, and 4 for the remaining limitations of claim 15, or Finjan has not fully disclosed its infringement theories as to contentions 2, 3, and 4.

7

No. 70 at 10; Dkt. No. 189 at 52:16–57:2. At the hearing, Finjan agreed to revise its contentions for the '154 patent to specify its contentions for the "transmitting . . . when" portion of limitation 1c of claim 1. Dkt. No. 189 at 54:23–58:11.

As the parties also could have resolved this dispute without the Court's assistance, the Court denies SonicWall's motion to strike on this ground. However, Finjan must revise its infringement contentions for the '154 patent to make explicit whether and how the accused instrumentalities meet the "transmitting . . . when" portion of limitation 1c of claim 1.

### D. Finjan's Allegedly New Infringement Theories

SonicWall contends that Finjan's second supplemental contentions include new infringement theories outside the scope of the amendment permitted and required in the Court's May 2019 order with respect to the '926, '968, '305, '844, '633, '154, '780, '822, and '494 patents. SonicWall argues that these unauthorized amendments cannot be made absent leave of Court and require a showing of good cause and diligence by Finjan. The Court considers each allegedly new theory.

First, with respect to the '926, '305, '844, '633, '154, '780, '822, and '494 patents, SonicWall challenges Finjan's inclusion of references to the CloudAV and GRID sandboxes and to components identified as "honeypots" and "webcrawlers,"[4] which SonicWall says were not identified as infringing components in Finjan's earlier contentions. Dkt. No. 164 at 14–15, 16–21. Finjan repeats its argument that the CloudAV and GRID sandboxes are components of the accused Gateway and ESA instrumentalities and further asserts that honeypots and webcrawlers are merely cloud-based components of the "GRID" component, and therefore also part of the Gateway and ESA instrumentalities. Dkt. No. 170 at 12, 17–18, 19, 20. As discussed above, Finjan's references to the CloudAV and GRID sandboxes, including the honeypots and webcrawlers, were not previously disclosed, and Finjan was not authorized to include those infringement theories in its Gateway-only and ESA-only contentions. *See supra* Section III.A.

---

[4] The Court understands that, in the context of this case, a "honeypot" is a security mechanism that traps or otherwise diverts and isolates malware, and a "webcrawler" is a software program that systematically browses the Internet for malware content.

8

Second, with respect to the '154 patent, SonicWall says that in addition to identifying the CloudAV and GRID sandboxes as the "security computer" of claim 1 for the Gateway instrumentalities "alone," Finjan now also identifies the "Stats server" as the "security computer." Similarly, in addition to identifying the GRID sandbox as the "security computer" for the ESA instrumentalities "alone," Finjan now also identifies the "URL Thumbprint Database" as the "security computer." Dkt. No. 164 at 18–19. Finjan responds that the Stats server is a component of the Gateway instrumentalities and the URL Thumbprint Database is a component of the ESA instrumentalities, and that its amendments naming those components provide greater specificity. Dkt. No. 170 at 18–19. An examination of Finjan's contentions, however, suggests that the Stats server and URL Thumbprint Database are separate from the Gateway and ESA instrumentalities, respectively. Finjan's Gateway-only contentions state that "[t]he main components of SonicWall Gateways is the Firewall, CloudAV, and GRID"; the Stats server is not included. Elsewhere, Finjan's contentions describes the Stats server as separate from the Firewall, CloudAV, and GRID. *See, e.g.*, Dkt. No. 169-28 at 1, 12, 14 ("The Stats Server acts a security computer and will use the information sent to it by the contents processor of the Firewall, GRID Sandbox, and Cloud AV Sandbox . . . . The Firewall includes a transmitter to send the input to the Cloud AV and GRID Sandbox and to the Stats Server."). Finjan's ESA-only contentions likewise suggest that the URL Thumbprint Database is not a part of the ESA instrumentalities. *See, e.g.*, Dkt. No. 169-30 at 9 ("Upon determining . . . suspicious obfuscated scripts are present, the Email Security Appliance sends the URL (input) to a security computer (the URL Thumbprint Database). The security computer will use the information sent to it by the Email Security Appliance to determine whether the URL is malicious . . . ."). Accordingly, the Court finds that Finjan's reliance on the Stats server and the URL Thumbprint Database constitutes new theories of infringement not previously disclosed and not within the scope of the Court's May 2019 order.

Third, with respect to the '968 patent, SonicWall says that Finjan previously identified "WXA appliances" as meeting aspects of limitations 1a and 1b of claim 1, but Finjan now identifies WXA appliances as meeting aspects of limitation 1c and 1d and a different aspect of limitation 1b. Dkt. No. 164 at 15–16. Finjan responds that it previously identified WXA

9

appliances in combination with the Gateway instrumentalities as infringing and that its second supplemental contentions merely provide more detail about that previously disclosed theory. Dkt. No. 170 at 14–15. A review of Finjan's earlier contentions shows that Finjan identified the Gateway instrumentalities in combination with WXA appliances as the "policy-based cache manager" of limitation 1a and as the "cache of digital content" of limitation 1b. Dkt. No. 111-30 at 1, 4–5, 7, 14, 21. However, Finjan now contends that the Gateway instrumentalities combined with WXA appliances meets the "plurality of policies" and "policy index" of limitation 1b, as well as aspects of limitations 1c and 1d. Dkt. No. 169-32. These contentions were not previously disclosed. Accordingly, the Court finds that Finjan's current contentions concerning the WXA appliances disclose a new infringement theory beyond the scope of the Court's May 2019 order, and grants SonicWall's motion to strike on this ground.

Finjan must revise its infringement contentions to eliminate these new theories of infringement.

### E. Leave to Amend

A plaintiff may amend its infringement contentions "only by order of the Court upon a timely showing of good cause," such as the "[r]ecent discovery of nonpublic information about the Accused Instrumentality." Patent L.R. 3-6. When determining whether to grant leave to amend, the Court first considers whether the party seeking leave acted diligently. *Apple Inc. v. Samsung Elecs. Co.*, No. CF 12-00630 LHK, 2012 WL 5632618, at *2 (N.D. Cal. Nov. 15, 2012) (citation omitted). The Court then considers whether the proposed amendment would unduly prejudice the non-moving party. *Id.* (citation omitted). The parties have not adequately briefed whether Finjan has good cause for amending its contentions to add new infringement theories and whether those amendments would prejudice SonicWall. If Finjan wishes to amend its infringement contentions to add the theories the Court has stricken, or any other new theories of infringement, it may file a motion for leave to amend that comports with the requirements of Patent Local Rule 3-6, after first conferring with counsel for SonicWall about the proposed amendments.

### IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part SonicWall's motion

to strike Finjan's second supplemental infringement contentions.  Finjan shall serve revised contentions consistent with this order by **December 11, 2019**.

**IT IS SO ORDERED.**

Dated: November 20, 2019



VIRGINIA K. DEMARCHI
United States Magistrate Judge