April 17, 2020

**VIA ELECTRONIC FILING**

The Honorable Judge Virginia K. DeMarchi
Federal Court of the Northern District of California

  Re:  *Finjan, Inc. v. SonicWall Inc.*
     United States District Court Case No. 5:17-cv-04467-BLF-VKD
     Joint Discovery Letter

Dear Magistrate DeMarchi:

  Defendant SonicWall Inc. ("Defendant" or "SonicWall") and Plaintiff Finjan, Inc.
("Plaintiff" or "Finjan") (collectively "the Parties") submit this Joint Discovery Letter.

**I.**  **Joint Statement of Disputed Issue**

  SonicWall disputes Finjan's claim of work product immunity and privilege as to portions
of and exhibits to deposition transcripts of Yoav Samet, Philip Hartstein, Yuval Ben-Itzhak, and
Daniel Chinn regarding Finjan's intellectual property (the "Disputed Documents") that were
produced in another Finjan patent litigation, *Finjan, Inc. v. Cisco Systems, Inc.*, No. 5:17-cv-
00072-BLF-SVK (N.D. Cal.) ("Cisco Action").  The Disputed Documents are identified in
Finjan's privilege log, attached as Ex. A.[1, 2]

**II.**  **Defendant's Position and Proposed Resolution**

  As a threshold matter, Finjan's argument that SonicWall has not established the relevance
of the Disputed Documents is a non-sequitur, as SonicWall does not have access to the withheld
portions of the Disputed Documents.  These documents were the subject of four depositions in a
case between Finjan and Cisco involving five of the same asserted patents.  Finjan already
produced these transcripts and redacted versions of the documents in response to discovery
requests, and then withheld certain portions on the basis of privilege, not relevance.

  Finjan alleges that the Disputed Documents are protected by attorney-client and work
product privilege.  However, the deposition transcripts themselves are available to (and were
taken by) Cisco (Finjan's adversary) in the Cisco Action.  Each of the deposition exhibits was
produced by Cisco (not Finjan) in the Cisco Action.  Finjan, despite asserting privilege over the
exhibits in this case, did not even have them in its possession.  Instead, the source of the exhibits
was a former Cisco employee, **Y**oav **S**amet, as evidenced by the documents' Bates numbers in
the Cisco Action (i.e., Cisco-Finjan-**YS**).  Finjan's privilege log does not even list Samet as a

---

[1] SonicWall is not challenging Finjan's privilege claim for Finjan-RPD 414376.

[2] Per the Court's standing order, materials cited herein are not attached as exhibits, but are
available if requested by the Court.

recipient of most documents – instead listing Finjan's Board of Directors, employees and outside lawyers.

Mr. Samet possessed these documents even though he was ***not*** a Finjan employee or member of Finjan's Board.  Instead, Cisco was an ***investor*** in Finjan with a contractual right to "observe" portions of Finjan's board meetings.  Samet Dep., 23:17-24: 20; Chinn Dep., 38:8-39:17.  Cisco designated Mr. Samet as its board observer.  Samet Dep. 60:16-23.  This is unlike the former director in *Montgomery*, upon which Finjan relies. That court found that possessing an interest in a company (which is the correct characterization of Cisco's relationship with Finjan) does *not* allow access to privileged documents. 548 F. Supp. 2d at 1187.  Moreover, Mr. Samet is not a lawyer. Samet Dep. 16:12-18.  Finjan thus sent these exhibits beyond the audience identified in its log, to a party (Cisco) and non-lawyer (Samet), who merely had a contractual relationship with Finjan.  Finjan (who bears the burden) has no evidence that there was a shared privilege between these parties – much less a confirmation between them of a shared privilege.  Further, Finjan's claim that "many, if not most" of Finjan's interactions with Cisco related to patent matters is contradicted by the testimony of both Samet and Finjan's Chairman.  Samet Dep. 64:2-65:13; 68:12-16 (⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛); Chinn Dep. 219:1-15; 221:9-222:11 ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ .

Indeed, these very deposition transcripts were created in an *adverse* matter between these parties (i.e., they did not exist when Cisco had an investment in Finjan). All of the Disputed Documents (the transcripts and exhibits) relate to the subject matter of the Cisco Action, and likely will be presented to the trier of fact in that case.

<u>No Privilege Existed</u>.  The "attorney-client privilege is 'strictly construed,' and the party claiming the privilege bears the burden of establishing its claim."  *In re Napster v. Beretelsman AG*, 2005 U.S. Dist. LEXIS 11497, at *8 (N.D. Cal. 4/11/ 05).  Communications between attorneys and clients "made in the presence of, or shared with, third-parties destroys the confidentiality of the communications and the privilege protection that is dependent upon that confidentiality." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007).  An exception to waiver of privilege exists when the parties share a common *legal* interest regarding the subject matter of the communication.  *Napster,* 2005 U.S. Dist. LEXIS 11497, at *12.   There must be "a common legal, as opposed to commercial, interest" and such communications must be "designed to further *that* legal effort." *Nidec*, 249 F.R.D. at 579.   "[A] shared desire to see the same outcome in a legal matter is insufficient." *In re Pac.*, 679 F.3d at 1129.

Finjan claims the Disputed Documents are privileged based on its "specific, unique relationship" with Cisco.  This relationship was defined by the Investors' Rights Agreement ("IRA"), whereby Cisco obtained the right to send an observer to Finjan's board meetings.  Section 2.7.  Finjan argues that Cisco's board observer received these documents subject to a "strict NDA," but Finjan has not shown that such an NDA exists.  The NDA Finjan produced in this case is *Cisco's* "standard mutual NDA."  This NDA predates the IRA, was not executed by Finjan, and relates only to ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

██████████████████████  *Id.*[3]   The presence of a generic NDA is not enough to establish a
common legal interest. *Rembrandt Patent Innovations, LLC v. Apple Inc.*, 2016 U.S. Dist.
LEXIS 13749, at *26-27 (N.D. Cal. 2/4/16) ("The presence of a non-disclosure agreement
covering these disclosures . . . is not conclusive" in finding a common legal interest); *see also
SEC v. Berry*, 2011 U.S. Dist. LEXIS 28301, at *19 (N.D. Cal. 3/7/11) (work product waived
despite confidentiality agreements).   Nowhere do the IRA or the NDA say that Cisco would
receive *privileged* information, or that the parties had a common *legal* interest, or that Cisco was
required to maintain any *privilege* of Finjan (unlike the common interest NDA in *Devon*, upon
which Plaintiff relies).   The IRA says the opposite – it says that Finjan's "█████████████████
█████████████████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████" The
primary purpose of the right to exclude is to preserve the company's attorney-client privilege.
*See* WestLaw Practical Law Glossary ("[B]oard observers usually can be excluded from
meetings to preserve the company's attorney client privilege, particularly when the board is
discussing potential litigation …."). Thus, Finjan had a mechanism to maintain privileged
information and chose not to.

Moreover, any generalized interest in Finjan's litigation plans that Cisco had as an
investor was merely a commercial interest or "shared desire" that is insufficient for privilege
protection. *In re Pac.*, 679 F.3d at 1129.   Likewise, there is no "shared litigation threat in which
their interests are 'identically aligned'" to support a finding of privilege. *Planned Parenthood
Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2019 U.S. Dist. LEXIS 63638, at *36-38 (N.D. Cal.
Apr. 11, 2019); *Rembrandt*, 2016 U.S. Dist. LEXIS 13749, at *27-28 ("although the business
opportunities contemplated arose from . . . analysis of the patent and broad identification of
litigation targets", such information is not privileged as it "focused on exploring a business
relationship.").

For work product immunity, "documents that merely set forth a general strategy or
template that might relate to or be relevant to future litigation are not prepared in anticipation of
a particular trial." *Hatamian v. Advanced Micro Devices, Inc.*, 2016 U.S. Dist. LEXIS 60551, at
*21-22 (N.D. Cal. May 6, 2016).   Finjan has not shown that the Disputed Documents were in
preparation for any specific litigation.

<u>Any Privilege or Work Product Protection Was Waived</u>.   Finjan sued Cisco on its
intellectual property discussed in the Disputed Documents.   By definition, Finjan and Cisco are
adversaries specifically relating to the subject matter in the Disputed Documents.   "[I]t would be
absurd to extend the protection of the privilege to matters in which the two corporations' legal
interests were directly adverse to each other." *Napster,* 2005 U.S. Dist. LEXIS 11497, at 17.

Accordingly, even if the Court were to find that the Disputed Documents were initially
privileged, such privilege was waived once the parties became adversaries.   Similar to a joint
representation, "the policy of encouraging confidential communications between a lawyer and

---

[3] Finjan points to the NDA referenced during Samet's deposition.   Samet Dep., 194:6-13.   This
NDA covers the parties' pre-suit licensing discussions and was executed in 2014, nearly a
decade *after* Finjan provided the Disputed Documents to Cisco.   Cisco Action, Dkt. 1 at ¶ 9.

… clients would not be advanced by protecting those communications from disclosure after … those clients have sued each over a matter falling within the scope of the attorney's representation." *Napster,* 2005 U.S. Dist. LEXIS 11497, at 16.  Additionally, "[o]nce a party has disclosed work product to one adversary, it waives work-product protection as to all other adversaries." *Waymo LLC v. Uber Techs., Inc.*, 2017 U.S. Dist. LEXIS 88411, at *43 (N.D. Cal. June 5, 2017).

Likewise, work product protection is lost when disclosure to third parties "enables an adversary to gain access to the information." *Nidec,* 249 F.R.D. at 580.  Here, the deposition transcript was created in the very case in which the parties are adversaries; it would be absurd to say a deposition transcript and the exhibits thereto are the protected work product of one of the adversaries.

### III.   Defendant's View on a Hearing

Defendant requests a telephonic hearing on this dispute.

### IV.   Plaintiff's Position and Proposed Resolution

The Disputed Documents are privileged and contain attorney work product because they are materials from Finjan's Board of Directors (from 9-15 years ago) containing the legal advice of counsel regarding patent litigation and enforcement matters — a dispositive fact that SonicWall does not dispute.  Ex. A, 2-16.

Cisco's possession of these documents and *subsequent* adversity to Finjan more than a decade after the disclosure does not waive privilege or work-product immunity.  Finjan only shared these documents with Cisco under the parties' specific, confidential, common-interest relationship where Cisco, which became a major Finjan investor in 2004, had an observer position on Finjan's Board.  Samet Dep. 60:19-61:6.  Subject to a strict NDA, limiting Cisco's use of any information obtained from Finjan, Cisco's observer had access to Finjan's most sensitive and confidential information through this special relationship with Finjan, receiving the documents with the expectation and contractual obligation to maintain such sensitive information as confidential and privileged.  *Id.* 194:8-11.  Cisco only obtained the Disputed Documents through this NDA and common-interest-relationship.  At the time Finjan shared the materials, Finjan and Cisco were not adversaries and worked collaboratively to further their common legal interests to obtain favorable business and legal outcomes on multiple fronts (Cisco did not divest its significant stake in Finjan's stock until 2017, months after Finjan filed suit against Cisco).  *Id.* 24:21-26:23; SEC filing.[4]  Cisco's obligation to keep confidential the Disputed Documents

---

[4] SonicWall tries to confuse the record by referring to deposition testimony that Samet stopped regularly attending board meetings after Finjan's IP-litigation activities intensified.  This deposition testimony refers to the ***2008 to 2010*** timeframe, which is ***years after*** Finjan provided all but one of the Disputed Documents to Cisco.  Samet Dep. 63:3-64:14; Chinn Dep. 219:1-220:16; Ex. A.

continues to this day.  Under these circumstances there is no waiver and SonicWall is not entitled to these privileged and work-product materials.[5]

The Court should further deny SonicWall's request because the Disputed Documents are irrelevant to this action.  Cisco produced the Disputed Documents in its case because they related to Cisco's intimate knowledge of Finjan's patents and its litigation activities and, thus, served as evidence in that case of, among other things, Cisco's willful infringement of Finjan's patents.  Here, SonicWall concedes it has no basis to conclude that these 14-year old documents are relevant to the issues in this case.  Relevance is never a "non-sequitur" in a motion to compel, as SonicWall contends.  It is the sine qua non.  Indeed, the Disputed Documents do not reference SonicWall, and the only connection seems to be that the same counsel represents both Cisco and SonicWall.  However, the Court already rebuffed SonicWall's attempt to import materials from another case.  Dkt. 142 ("This request seems geared to manipulate the Patent Local Rules where counsel in this case is simultaneously representing a different defendant in a separate case involving the same patents.  The Patent Local Rules do not condone this conduct and neither does this Court.").

### A.      The Disputed Documents are Attorney Work Product

The Disputed Documents include advice prepared by Finjan's outside counsel in anticipation of litigation.  Ex. A, 2-16.  As such they are immune from discovery as attorney work product.  *Skynet Elec. Co., Ltd v. Flextronics Int'l, Ltd.,* 12-06317 WHA, 2013 WL 6623874, at *3 (N.D. Cal. Dec. 16, 2013) ("The work product doctrine protects from discovery documents … prepared … in anticipation of litigation.").  Finjan's assertions of work product immunity are narrowly limited.  For example, Finjan redacted only 13 pages out of a 118-page Board presentation.  To the extent it will aid the Court's assessment of this dispute, Finjan will provide the Disputed Documents for *in camera* review.

Finjan did not waive work product immunity when it shared the Disputed Documents with Cisco's Board observer a decade before the parties became adversaries.  Immunity is maintained when a document is prepared "in anticipation of litigation" and is only disclosed to third-parties "bound to maintain its confidence," as was the case here.  *Skynet,* 2013 WL 6623874, at *2-3 (waiver only occurs when a party discloses protected information to a third party not bound to maintain confidentiality).  Here, Finjan provided the Disputed Documents under an NDA that limited Cisco's use of received information, precluding any waiver.  Samet Dep. 194:8-10; *Mondis Tech., Ltd. v. LG Elecs., Inc.,* No. 2:07-CV-565-TJW-CE, 2011 WL 1714304, at *3 (E.D. Tex. May 4, 2011) (documents prepared for future litigation are protected work product when only disclosed to third parties under an NDA).

That Cisco and Finjan subsequently became adversaries in litigation 13 years later, does not change the dispositive fact that, when Cisco obtained the Disputed Documents in 2004-2008, Cisco and Finjan enjoyed a positive, collaborative relationship and there was no indication they could become adversaries.  *Mondis,* *2 ("[d]isclosure of work-product waives the work-product protection only if work-product is given to adversaries or treated in a manner than substantially

---

[5] Finjan did not locate these documents, which are 9-15 years old, in its files, and only had them when Cisco produced them.  Having obtained the documents through that action, Finjan duly identified them to SonicWall in its privilege log in this case.

increases the likelihood that an adversary will come into possession of the material."). This is supported by Mr. Samet's claims that he initially had an open invitation to Finjan's board meetings, indicating the alignment of Cisco's and Finjan's interests to achieve commercial and legal success concerning Finjan's potential patent enforcement litigation. Samet Dep. 62:15-16; *Securitypoint Holdings, Inc. v. United States*, No. 11-268C, at 4 (Ct. Cl. Apr. 16, 2019 (unpub.) (finding no waiver when plaintiff shared privileged documents with equity investor in company due to "common legal interest in the validity of the patent-in-suit").

Thus, SonicWall's reliance on *Napster* is misplaced, as the parties were already adverse to one another at the time they exchanged the documents at issue in that case. *Id.* at *11. SonicWall attempts to muddy the waters by implying that Finjan and Cisco were in an adversarial relationship when they exchanged the Disputed Documents. But Finjan's suit against Cisco did not come until more than a decade later. Because Finjan and Cisco were not adverse during the relevant timeframe, disclosure of the Disputed Documents did not waive immunity. *Mondis,* 2011 WL 1714304 at *3.

The absence of waiver is further confirmed by the specific relationship between Finjan and its Board observer. This type of arrangement creates an especially close, trusted confidential relationship between the two companies, as acknowledged in Defendant's cited materials. Westlaw Glossary(a board observer is "[a]n individual who is permitted to attend and participate in meetings of the board of directors and to *receive all information provided to members of the board*," subject to the "*same confidentiality obligations as members of the board*"); *Securitypoint Holdings*, at 4 (no waiver from sharing materials with investor).

Thus, the Court should deny SonicWall's request to obtain Finjan's attorney-work product.

## C.    The Disputed Documents are Attorney-Client Privileged

The Disputed Documents are privileged because they contain legal advice communicated by Finjan's outside counsel to its client. Ex. A, 2-16. As such, they are immune from discovery. Dkt. No. 99 (Order on discovery dispute letter) ("[a] party is not entitled to discovery of information protected by the attorney-client privilege."), quoting, *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation,* 331 F.3d 1041, 1046 (9th Cir. 2003).

Finjan did not waive attorney-client privilege in the Disputed Document. Attorney-client privilege attaches to both individuals and corporations. *Upjohn Co. v. United States,* 449 U.S. 383, 390 (1981). Only Finjan, as the "holder of the attorney-client privilege may waive it." *Tennenbaum v. Deloitte & Touche,* 77 F.3d 337, 340-41 (9th Cir. 1996). Here, Finjan as the holder of the privilege has vigilantly and correctly asserted its protection.

Providing Disputed Documents to Cisco's Board observer under an NDA did not waive privilege because of the common interest between Finjan and Cisco at that time. *Mondis Tech.,* 2011 WL 1714304, at *3 (finding privilege covers documents prepared for investors that covered potential litigation); *Devon It, Inc. v. IBM Corp.,* 10-2899, 2012 WL 4748160, at *1 (E.D. Pa. Sept. 27, 2012) (finding plaintiff and its investor have a common interest in the successful outcome of the litigation). Finjan and Cisco's falling out a decade later does not change Cisco's obligation to maintain the confidentiality of the Disputed Documents. *Montgomery v. eTreppid Techs., LLC*, 548 F. Supp. 2d 1175, 1187 (D. Nev. 2008) (finding attorney-client privilege is the

corporation's and a now adverse former director still has a duty to keep information confidential).

SonicWall entirely misses the point in arguing that Finjan had the ability to exclude Mr. Samet from board meetings.  The salient point is that Cisco had a common legal interest with Finjan in the validity and enforcement of the company's infringed patents, and Cisco and its representative were obligated to preserve as confidential all information that Finjan provided. Thus, there was no need to exclude Mr. Samet, there was no waiver, and attorney-client privilege prevents SonicWall from obtaining the Disputed Documents.  *Devon It,* 2012 WL 4748160, at *1.

## V.      **Plaintiff's View on a Hearing**

Plaintiff requests a telephonic hearing on this dispute.

## VI.     **Discovery Cut-Off Dates**

Fact discovery closes on May 1, 2020 and expert discovery ends on September 18, 2020.

## VII.    **Compliance with Meet and Confer Requirement**

The parties telephonically met and conferred on this dispute on March 16, 2020, but were unable to resolve this dispute.

Dated:  April 17, 2020

Respectfully submitted,                          Respectfully submitted,

By: */s/  Lisa Kobialka*                         By: */s/ Matthew C. Gaudet*
Paul Andre (SBN 196585)                          Matthew C. Gaudet (Admitted *Pro Hac Vice*)
pandre@kramerlevin.com                           mcgaudet@duanemorris.com
Lisa Kobialka (SBN 191404)                       Robin L. McGrath (Admitted *Pro Hac Vice*)
lkobialka@kramerlevin.com                        rlmcgrath@duanemorris.com
James Hannah (SBN 237978)                        David C. Dotson (Admitted *Pro Hac Vice*)
jhannah@kramerlevin.com                          dcdotson@duanemorris.com
Hannah Lee (SBN 253197)                          John R. Gibson( Admitted *Pro Hac Vice*)
hlee@kramerlevin.com                             jrgibson@duanemorris.com
**KRAMER LEVIN NAFTALIS**                        Jennifer H. Forte (Admitted *Pro Hac Vice*)
**  & FRANKEL LLP**                              jhforte@duanemorris.com
990 Marsh Road                                   Alice E. Snedeker (Admitted *Pro Hac Vice*)
Menlo Park, CA  94025                            aesnedeker@duanemorris.com
Telephone: (650) 752-1700                        **DUANE MORRIS LLP**
Facsimile: (650) 752-1800                        1075 Peachtree NE, Suite 2000
                                                 Atlanta, GA 30309-3929
Aaron M. Frankel (*pro hac vice*)                Telephone: 404.253.6900
afrankel@kramerlevin.com
**KRAMER LEVIN NAFTALIS**                        D. Stuart Bartow (SBN 233107)
**  & FRANKEL LLP**                              Email: DSBartow@duanemorris.com

7

1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 7793

Attorneys for Plaintiff
FINJAN, INC.

Nicole E. Grigg (SBN 307733)
Email: NEGrigg@duanemorris.com
**DUANE MORRIS LLP**
2475 Hanover Street
Palo Alto, CA 94304-1194
Tel.:  650.847.4150
Fax:  650.847.4151

Joseph A. Powers (Admitted *Pro Hac Vice*)
Email: japowers@duanemorris.com
Jarrad M. Gunther (Admitted *Pro Hac Vice*)
Email: jmgunther@duanemorris.com
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103
Telephone: 215.979.1000

Counsel for Defendant
SONICWALL, INC.