1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7
8

FINJAN, INC.,

Case No. 17-cv-04467-BLF   (VKD)

9

Plaintiff,

10

v.

**ORDER RE DISCOVERY DISPUTE RE PRIVILEGE CLAIMS**

11

SONICWALL, INC.,

Re: Dkt. No. 248

12

Defendant.

13
14

        Defendant SonicWall, Inc. ("SonicWall") disputes plaintiff Finjan, Inc.'s ("Finjan")

15

assertions of attorney-client privilege and attorney work product protection with respect to

16

portions of and exhibits to the depositions of four witnesses who provided testimony in a separate

17

litigation between Finjan and Cisco Systems, Inc. ("Cisco").  SonicWall moves to compel

18

production of those materials.  Finjan argues that the disputed materials are protected from

19

disclosure and that they are not relevant.  Dkt. No. 248.

20

        The Court has considered the parties' submissions dated April 17 and May 4, 2020,

21

including Finjan's submission of the disputed exhibits for in camera review, as well as the

22

arguments presented at the hearing on April 28, 2020.  Dkt. Nos. 254, 258, 259.  The Court

23

concludes that Finjan has waived both the attorney-client privilege and attorney work product

24

protection for the disputed materials.  As the materials appear to be responsive to SonicWall's

25

discovery requests and are not clearly irrelevant, the Court grants SonicWall's motion to compel.

26

**I.    BACKGROUND**

27

        In this action, Finjan asserts that SonicWall infringes ten of Finjan's patents.  Dkt. No. 1.

28

During discovery, Finjan produced to SonicWall partially redacted transcripts of the depositions of

United States District Court
Northern District of California

Yoav Samet, Philip Hartstein, Yuval Ben-Itzhak, and Daniel Chinn taken in another Finjan patent infringement action, *Finjan, Inc. v. Cisco Systems, Inc.*, No. 17-cv-00072-BLF-SVK (N.D. Cal.) ("the Cisco action").  The Cisco action involves some of the same patents asserted in this action. Dkt. No. 248 at 1.  Finjan also produced a privilege log listing the redacted portions of the four depositions as well as eight deposition exhibits (or portions thereof).  Dkt. No. 258 ¶ 4, Ex. 1. Finjan claims that these materials are protected from disclosure under both the attorney-client privilege and the attorney work product doctrine.  *Id.*

According to the parties, Cisco took the disputed depositions and produced the disputed deposition exhibits in the Cisco action.  Dkt. No. 248 at 1, 5 n.5.  The disputed testimony and documents concern information Finjan provided to Cisco several years before Finjan's patent infringement dispute with Cisco, when Cisco was an investor in Finjan and had a contractual right to observe meetings of Finjan's board of directors.  *Id.* at 2, 4.  Yoav Samet, then a Cisco employee, served as Cisco's board observer.  *Id.*  According to Finjan, it prepared and provided all disputed deposition exhibits to Cisco via Mr. Samet in 2005 and 2006, except for Document 3, which Finjan believes it prepared and provided in 2008.  *Id.* at 4; Dkt. No. 258 ¶ 5.

The parties agree that Cisco is among the signatories to Finjan's 2004 Investors' Rights Agreement ("IRA").  Dkt. No. 258 ¶ 7, Ex. 2.  The IRA includes the following provision directed to Cisco's rights to observe Finjan's board meetings:



. . .

Dkt. No. 256-6 at ECF p.18.  Finjan says that Mr. Samet executed a "strict" non-disclosure agreement ("NDA") on behalf of Cisco but apparently has no record of that agreement or its terms.  *See* Dkt. No. 248 at 4.

SonicWall disputes the existence of any such NDA.  According to SonicWall, *Cisco* sent a proposed mutual NDA to Finjan using Cisco's standard form agreement in January 2004, several

United States District Court<br>Northern District of California

2

1   months before the IRA.  *Id.* at 2; Dkt. No. 259 ¶ 2, Ex. 1.  However, the Cisco mutual NDA

2   appears not to have been signed by Finjan.  Dkt. No. 248 at 2; Dkt. No. 259 ¶ 2, Ex. 1.  Moreover,

3   the Cisco mutual NDA recites that it governs the use and disclosure of confidential information for

4   the purpose of "[d]etermining whether a potential business opportunity exists between the

5   parties"; it does not refer to Cisco's board observer status or its role as an investor.  Dkt. No. 259

6   ¶ 2, Ex. 1, § 3.0.  In any event, by its terms, the Cisco mutual NDA would have terminated five

7   years after the receipt of confidential information, or at the latest in 2013 (assuming Finjan's last

8   disclosure to Cisco was in 2008).  *Id.* § 11.0.

9   SonicWall says that the only other NDA between Cisco and Finjan is one dated March 21,

10   2014, which post-dates the disclosure of the disputed documents by many years and was intended

11   to cover certain pre-suit licensing discussions between Cisco and Finjan.  Dkt. No. 248 at 3 n.3;

12   Dkt. No. 259 ¶ 4, Ex. 3.  Finjan does not contest this assertion.

13   SonicWall observes that all disputed exhibits and deposition testimony are likely to be

14   used as evidence in the Cisco action.  Dkt. No. 248 at 2.  Finjan acknowledges that the disputed

15   materials reflect "Cisco's intimate knowledge of Finjan's patents and its litigation activities and,

16   thus, serv[e] as evidence in [the Cisco action] of, among other things, Cisco's willful infringement

17   of Finjan's patents."  *Id.* at 5.  The Court has reviewed the lists of proposed witnesses and trial

18   exhibits the parties filed in the Cisco action, which is now set for trial in mid-October 2020.

19   *Cisco*, No. 17-cv-00072-BLF-SVK, Dkt. No. 646 (N.D. Cal. May 26, 2020).  Finjan identifies

20   each of Messrs. Samet, Hartstein, Ben-Itzhak, and Chinn as witnesses it will or may call at trial.

21   *See Cisco*, No. 17-cv-00072-BLF-SVK, Dkt. No. 547-1 (N.D. Cal. Apr. 16, 2020).  In addition,

22   Finjan lists six of the eight disputed deposition exhibits as trial exhibits (i.e., Documents 1, 3, 4, 5,

23   7 and 8), and Cisco lists the other two (i.e., Documents 2 and 6).  *See Cisco*, No. 17-cv-00072-

24   BLF-SVK, Dkt. No. 547-4 (N.D. Cal. Apr. 16, 2020) (Exs. 229, 238, 239, 602, 603 and 614);

25   *Cisco*, No. 17-cv-00072-BLF-SVK, Dkt. No. 547-5 (N.D. Cal. Apr. 16, 2020) (Exs. 2415 and

26   2416.  Finjan objects to Cisco's use of Documents 2 and 6 at trial in the Cisco action, but not on

27   the basis of attorney-client privilege or work product immunity.  *See Cisco*, No. 17-cv-00072-

28   BLF-SVK, Dkt. No. 547-5 (N.D. Cal. Apr. 16, 2020) (objections column).

United States District Court
Northern District of California

## II.     LEGAL STANDARDS

### A.     Scope of Discovery

A party may obtain discovery of any matter that is relevant to a claim or defense and that is "proportional to the needs of case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

### B.     Attorney-Client Privilege and Work Product Doctrine

The attorney-client privilege protects from discovery communications concerning legal advice sought from an attorney in his or her capacity as a professional legal advisor, where the communication is made in confidence, is intended to be maintained in confidence by the client, and is not disclosed to a third party.  *United States v. Martin*, 278 F.3d 988, 999–1000 (9th Cir. 2002) (citing 8 John H. Wigmore, *Evidence* § 2292, at 554 (McNaughton rev. 1961)).  The privilege extends to a client's confidential disclosures to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures.  *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (citations and quotations omitted).

The work product doctrine protects from discovery materials that are prepared by or for a party or its representative in anticipation of litigation. Fed. R. Civ. P. 26(b)(3).  Typically, the doctrine provides qualified protection against discovery of the legal strategies and mental impressions of a party's attorney.  *Upjohn Co. v. United States*, 449 U.S. 383, 390–91 (1981); *Hickman v. Taylor*, 329 U.S. 495, 508–10 (1947).

Finjan, as the party asserting attorney-client privilege and work product protection, bears the burden of proving that the privilege or protection applies.  *See Ruehle*, 583 F.3d at 607–08; *In re Appl. of Republic of Ecuador*, 280 F.R.D. 506, 514 (N.D. Cal. 2012).

### C.     Common Interest Doctrine

The voluntary disclosure of a privileged or protected document to a third party ordinarily waives that privilege or protection.  *Ruehle*, 583 F.3d at 612; *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).  The "common interest" or "joint defense" doctrine is

an exception to ordinary waiver rules that applies when parties represented by separate counsel communicate in confidence about a matter of common legal interest, in furtherance of that common legal interest. *See In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012). The doctrine does not create a privilege but comes into play only if a privilege already covers the material disclosed to the third party. *Id.*; *see also Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578–79 (N.D. Cal. 2007) (describing boundaries and application of common interest doctrine).

## III.   DISCUSSION

### A.   Relevance

Finjan argues that it should not be required to produce the disputed exhibits and deposition testimony because the materials are not relevant to any claim or defense in this action. Dkt. No. 248 at 5. SonicWall responds that the Cisco action concerns patents that are also at issue in this action and that while it cannot know what Finjan has withheld or redacted, the fact that Finjan included the depositions and exhibits on its privilege log without objection on grounds of relevance indicates that they are relevant to the dispute between Finjan and SonicWall. *Id.* at 1. The parties' respective arguments about relevance are not well-developed in the discovery dispute letter submitted to the Court.

The Court has reviewed the eight disputed deposition exhibits in camera. Without the benefit of more information from the parties about the issues in this case, the Court cannot say definitively that the exhibits are clearly irrelevant. The Court presumes that the documents are at least responsive to SonicWall's document requests, otherwise Finjan would have no obligation to log its privilege objections with respect to these documents. *See* Fed. R. Civ. P. 26(b)(5) (requiring a privilege log "[w]hen a party withholds information *otherwise discoverable*") (emphasis added); Fed. R. Civ. P. 26(b)(1) (describing discoverable material as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."). Further, even if portions of the exhibits or testimony are not relevant, a party generally may not redact or withhold from production irrelevant portions of documents that also contain relevant and responsive information. *See, e.g.*, *Doe v. Trump*, 329 F.R.D. 262, 276 (W.D.

Wash. 2018) ("[T]he unilateral redaction of irrelevant or nonresponsive material from otherwise responsive documents gives rise to suspicion that relevant material harmful to the producing party has been obscured and tends to make documents confusing or difficult to use.") (internal quotation marks and citation omitted); *United States v. McGraw-Hill Cos., Inc.*, No. 13-CV-0779-DOCJCGX, 2014 WL 8662657, at *4 (C.D. Cal. Sept. 25, 2014) ("[U]nilateral redactions are inappropriate if they seek not to protect sensitive or protected information, but merely to keep non-responsive information out of an adversary's hands.").

In these circumstances, the Court finds that the disputed materials are likely responsive to SonicWall's discovery requests, and that Finjan (the only party with access to the materials) has not shown that the deposition exhibits and testimony identified on its privilege log should be withheld from production because they are not relevant to a claim or defense.

### B.   Attorney-Client Privilege

Finjan argues that all disputed materials are protected from disclosure by the attorney-client privilege because they contain legal advice from Finjan's outside counsel to Finjan.  Dkt. No. 248 at 6.  Finjan says that disclosure of these materials to Mr. Samet, as Cisco's board observer, did not waive the privilege because Cisco and Finjan had a common legal interest in the validity and enforcement of Finjan's patents.  *Id.* at 6–7.  SonicWall argues that no privilege exists because the legal advice was shared with Mr. Samet and Cisco, who are third parties, and that at the time Finjan and Cisco shared only a common commercial interest, not a common legal interest.  *Id.* at 2–3.

The Court agrees with SonicWall.  Cisco's investment in Finjan and its status as a board observer, with or without an obligation of confidentiality, did not create a common legal interest between Cisco and Finjan.  None of Cisco's legal rights were implicated by Finjan's efforts to enforce its patents or defend their validity.  Cisco did not own any interest in any of the patents; its sole interest was as a shareholder of Finjan.  Nor did Finjan and Cisco anticipate joint litigation. *See Nidec*, 249 F.R.D. at 578–79 (communications between company and third-party bidders were not made to further common legal interest, but rather to facilitate commercial transaction); *cf. Rembrandt Patent Innovations, LLC v. Apple Inc*., No. C 14-05093 WHA, 2016 WL 427363, at *7

(N.D. Cal. Feb. 4, 2016) (finding common legal interest where one party had acquired an exclusive option to purchase the other party's patent and the parties began to pursue joint legal interests, including perfecting title to the patent and identifying targets for litigation).  Rather, Finjan voluntarily disclosed the disputed materials to a third-party investor who merely observed its board meetings.  This voluntary disclosure waived whatever attorney-client privilege otherwise attached to these materials.  *See In re Pacific Pictures*, 679 F.3d at 1126–27, 1128–29 (voluntary disclosure waives privilege, even where disclosure is made pursuant to a confidentiality agreement).

The Court is not persuaded by the decisions in *Devon IT, Inc. v. IBM Corp.*, No. 10-2899, 2012 WL 4748160 (E.D. Pa. Sept. 27, 2012) or *SecurityPoint Holdings, Inc. v. United States*, No. 11-268C, 2019 WL 1751194 (Fed. Cl. Apr. 16, 2019), on which Finjan relies.  Neither decision explains how a litigation funder (*Devon*) or outside investor (*SecurityPoint*) has any legal interest—as opposed to financial interest—at stake in the successful outcome of litigation, or how declining to find a waiver of privilege in the circumstances presented in those cases serves the interests the attorney-client privilege protects.  *See In re Pacific Pictures*, 679 F.3d at 1126–27.

For these reasons, the Court concludes that Finjan waived any attorney-client privilege it may have had with respect to the disputed materials by voluntarily disclosing them to Cisco.

### C.    Attorney Work Product

Finjan argues that all disputed materials are protected from disclosure under the attorney work product doctrine because they reflect attorney advice Finjan's outside counsel prepared in anticipation of litigation.  *See* Dkt. No. 248 at 5.  Finjan says that disclosure of these materials to Mr. Samet, as Cisco's board observer, did not waive work product protection because Cisco and Finjan were not adversaries at the time of disclosure, and because Cisco had an obligation to maintain the materials in confidence.  *Id.* at 5–6.  SonicWall argues that Finjan has not shown that the disputed materials were prepared in anticipation of specific litigation, and that Finjan did not take steps to require Cisco to maintain the information in confidence.  *Id.* at 2–3.

The Court agrees with Finjan that the disputed materials include discussion of litigation strategy regarding several matters concerning its patents and reflect that Finjan was contemplating

United States District Court
Northern District of California

1   enforcement of its patents against specific targets.  Accordingly, the disputed materials include

2   attorney work product.  The question is whether Finjan waived the attorney work product

3   protection when it disclosed the materials to Cisco.  Even in the absence of a common legal

4   interest between Finjan and Cisco, "the disclosure [of work product] to a third party does not

5   necessarily constitute a waiver."  *Nidec*, 249 F.R.D. at 580.  "For work product, 'protection is

6   waived where disclosure of the otherwise privileged documents is made to a third party, and that

7   disclosure enables an adversary to gain access to the information.'"  *Id.* (quoting *United States v.*

8   *Bergonzi*, 216 F.R.D. 487, 497 (N.D. Cal. 2003)).

9        Here, Finjan has not shown that it ever entered into a confidentiality agreement with Mr.

10   Samet or Cisco to protect the disputed materials from disclosure, even though section 2.7 of the

11   IRA apparently required it.  Mr. Samet testified that it was his "habit" to treat information received

12   from Cisco's portfolio companies, like Finjan, as confidential, and some—but not all—of the

13   documents he received were marked "confidential."  *See, e.g.*, Dkt. No. 256-10 at 5 (Samet dep. at

14   214:3-14).  However, the Court doubts that the mere habit of Cisco's board observer and Finjan's

15   inconsistent confidentiality marking, without more, are sufficient to support Finjan's position that

16   it disclosed the disputed materials to Cisco in a manner that reasonably ensured they would be

17   kept confidential and would not be shared with an adversary.  The fact that Cisco is now Finjan's

18   adversary is an additional complication, particularly as there is no evidence that Finjan ever

19   demanded return of its confidential materials once Cisco ceased attending board meetings and

20   became a target of Finjan's patent enforcement efforts.  However, the Court need not resolve how

21   these circumstances impact Finjan's claim to work product protection because Finjan's more

22   recent conduct in the Cisco action clearly waives any such protection.

23        The purpose of the work product doctrine is to shield the mental impressions, conclusions,

24   opinions, or legal theories of a party's counsel from that party's adversary.  *See Hickman v*, 329

25   U.S. at 510–11 ("[I]t is essential that a lawyer work with a certain degree of privacy, free from

26   unnecessary intrusion by opposing parties and their counsel.  Proper preparation of a client's case

27   demands that he assemble information, sift what he considers to be the relevant from the irrelevant

28   facts, prepare his legal theories and plan his strategy without undue and needless interference.").

As noted above, Cisco produced the disputed exhibits and obtained the disputed depositions during discovery in the Cisco action, and Finjan has made no efforts to shield those materials from use or disclosure in that action.  To the contrary, Finjan and SonicWall agree that the parties in the Cisco action will use the disputed materials as evidence in that case.  Using these materials as evidence is fundamentally inconsistent with Finjan's purported desire to protect them from disclosure as work product.  *United States v. Nobles*, 422 U.S. 225, 239 (1975) (finding waiver of work product protection for investigator's work where party elected to use investigator's testimony at trial); *see also Moeller v. Taco Bell Corp.,* No. C 02-5849 PJH (JL), 2009 WL 10710495, at *3 (N.D. Cal. Oct. 6, 2009) (applying *Nobles* in civil litigation).  It does not matter that the disputed materials are proposed to be used as evidence in the Cisco action as opposed to this action, as once Finjan has deliberately waived its work product protection, the waiver cannot be undone.  *See Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, No. 02CV2258 B (AJB), 2005 WL 8173278, at *4 (S.D. Cal. Aug. 19, 2005) ("Waiver is the deliberate relinquishment of a right which might otherwise be claimed. . . .  [A] right that is waived is not available to be picked up again as if it were a handy tool.").

For these reasons, the Court concludes that Finjan affirmatively waived any attorney work product protection it may have had with respect to the disputed materials by electing to use the materials in evidence against an adversary.

## IV.    CONCLUSION

The Court grants SonicWall's motion to compel the production of the disputed materials described above.  Unless the parties stipulate otherwise, Finjan must produce the disputed materials no later than seven days from the date of this order.

**IT IS SO ORDERED.**

Dated: July 7, 2020

VIRGINIA K. DEMARCHI
United States Magistrate Judge