**DUANE MORRIS LLP**
D. Stuart Bartow (SBN 233107)
Email: DSBartow@duanemorris.com
2475 Hanover Street
Palo Alto, CA 94304-1194
Telephone: 650.847.4150
Facsimile: 650.847.4151

**DUANE MORRIS LLP**
Joseph A. Powers (PA SBN 84590)
Admitted *Pro Hac Vice*
japowers@duanemorris.com
Jarrad M. Gunther (PA SBN 207038)
Admitted *Pro Hac Vice*
jmgunther@duanemorris.com
30 South 17th Street
Philadelphia, PA  19103
Telephone: 215.979.1000
Facsimile: 215.979.1020

**DUANE MORRIS LLP**
Matthew C. Gaudet (GA SBN 287759)
Admitted *Pro Hac Vice*
mcgaudet@duanemorris.com
Robin L. McGrath (GA SBN 493115)
Admitted *Pro Hac Vice*
rlmcgrath@duanemorris.com
David C. Dotson (GA SBN 138040)
Admitted *Pro Hac Vice*
dcdotson@duanemorris.com
Jennifer H. Forte (GA SBN 940650)
Admitted *Pro Hac Vice*
jhforte@duanemorris.com
1075 Peachtree Street, Ste. 2000
Atlanta, GA  30309
Telephone: 404.253.6900
Facsimile: 404.253.6901

*Attorneys for Defendant*
SONICWALL INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, LLC, a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SONICWALL INC., a Delaware Corporation<br><br>Defendant. | Case No. 5:17-cv-04467-BLF-VKD<br><br>**SONICWALL, INC.'S MOTION TO STRIKE NEW THEORIES IN FINJAN, LLC'S EXPERT REPORTS**<br><br>Date:   March 11, 2021<br>Time:  9:00 a.m.<br>Dept:   Courtroom 3, Fifth Floor<br>Judge:  Hon. Beth Labson Freeman |

**REDACTED**

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that on March 11, 2021, at 9:00 a.m. or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Beth Labson Freeman, at 280 S. 1st St, San Jose, CA 95113, Defendant SonicWall Inc. ("SonicWall") will and hereby does move for an order striking certain theories in Plaintiff Finjan, LLC's ("Finjan") expert reports.

This motion is based on this notice of motion and motion, the supporting memorandum of points and authorities set forth below, the accompanying declaration of David Dotson ("Dotson Decl."), the pleadings and papers on file with the Court and all other matters properly before this Court.

**STATEMENT OF RELIEF SOUGHT**

SonicWall seeks an Order from the Court striking certain theories from Finjan's Experts Reports that are not disclosed in Finjan's Operative Infringement Contentions.

**STATEMENT OF THE ISSUE TO BE DECIDED**

Whether Finjan's expert reports contain theories that are not disclosed in the Operative Infringement Contentions or violate the Court's November 20, 2019 Order (Dkt. No. 210).

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Finjan's expert reports on infringement contain a number of theories that were either not disclosed in Finjan's Third Supplemental Infringement Contentions (the "Operative Contentions") or are in direct violation of this Court's November 20, 2019 Order striking certain infringement theories ("November 20 Order") (Dkt. No. 210). Despite meeting and conferring to address each of these theories, Finjan has refused to withdraw the theories addressed herein.

## II. LEGAL STANDARD

This Court set forth the standard for a motion to strike based on new theories in a case:

> The dispositive inquiry in a motion to strike is thus whether the allegedly undisclosed "theory" is in fact a new theory or new element of the accused product alleged to practice a particular claim that was not previously identified in the plaintiff's contentions, or whether the "theory" is instead the identification of additional evidentiary proof showing that the accused element did in fact practice the limitation. . . . . If the theory is new, prejudice is "inherent in the assertion of a new theory after discovery has closed."

*Finjan, Inc. v. Blue Coat Sys., LLC*, No. 15-cv-03295, 2017 U.S. Dist. LEXIS 220192, *13 (N.D. Cal. July 28, 2017) (citations omitted).

## III. THE COURT SHOULD STRIKE FINJAN'S PREVIOUSLY UNDISCLOSED INFRINGEMENT THEORIES

### A. New Infringement Theories Concerning the '305 Patent

#### 1. The Network Traffic Probe Limitation

The asserted claims of the '305 Patent all recite "a network traffic probe . . . for selectively diverting incoming content from its intended destination to said rule-based content scanner" ("the Traffic Probe Limitation"). In his expert report on infringement, Dr. Medvidovic offers the following new theories for this limitation that were not identified in Finjan's Operative Contentions: (i) Capture ATP's "controller server or its Capture Engine" is the "network traffic probe"; and (ii) the "endpoint client computer" is the "intended destination."

In its Operative Contentions, Finjan offered a single theory for how all three accused products satisfy the Traffic Probe limitation:

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████████
████████████████████

Finjan's Third Supplemental Contentions, Appendices G-2 (Ex. A) at 16, 30; G-3 (Ex. B) at 15, 28; and G-4 (Ex. C), at 14, 28; ("████████████████████████████████████████████████████████████████████████

As shown, Finjan's Operative Contentions failed to identify a specific component that constitutes the claimed network traffic probe, and it identified only the "████████████████████████████████████" as the destination computer. In contrast, paragraphs 217 and 218 of Dr. Medvidovic's report identifies "Capture ATP's controller server or its Capture Engine" as the claimed network traffic probe and the "endpoint client computer" (in addition to the virtual machines) as the claimed destination computer.

Notably, after notifying Finjan of this issue, Finjan was unable to identify anywhere in its Operative Contentions that it identified Capture ATP's controller server or its Capture Engine as the claimed network traffic probe. Rather, it asserted only that SonicWall had sufficient notice from Finjan's conclusory assertions that Capture ATP had a network traffic probe. Ex. D, 10.2.20 Email from J. Wolff.  Similarly, Finjan could not identify anywhere in its Operative Contentions that it identified the "endpoint client computer" as the destination computer in connection with asserted claims 11 and 12. Instead, it pointed to the Contention's analysis of claim 13 (no longer asserted because it was rendered invalid), where the Contentions identified the client computer as the destination computer. *Id.* However, unlike asserted claims 11 and 12, claim 13 does not limit the "destination computer" to being the same computer that receives and selectively diverts incoming

content. Compare claim 13 ("receiving, at the computer, incoming content from the Internet *on its destination to an Internet application*") with claims 11 and 12 ("a computer, comprising: a network interface, housed within a computer, for receiving incoming content from the Internet on its destination to an Internet application *running on the computer*."). Thus, Finjan could identify a different destination computer for claim 13 than for claims 11 and 12. As such, identifying the endpoint client computer as the destination computer for claim 13 did not place SonicWall on notice of Finjan's theory that the endpoint computer is the destination computer of claims 11 and 12.

Because Finjan's Operative Contentions did not place SonicWall on notice of either theory, the Court should strike these theories from paragraphs 217 and 218 of Dr. Medvidovic's report.

### 2. The Update Manger Limitation

Asserted claims 11 and 12 also recite "a rule update manager . . . for updating said database of parser and analyzer rules periodically" ("the Rule Update Limitation"). In Paragraph 224 of his report, Dr. Medvidovic offers the new theory that Capture ATP's "controller (or Capture Engine) or an update server" is the rule update manager of the Rule Update Limitation.

Finjan's Operative Contentions offered a single theory that the claimed update manager is Capture ATP's "████████████": "████████████████████████████████████████████████████████████████████████████████████████████████████████████." Finjan's Third Supplemental Contentions, Appendices G-2 (Ex. A) at 19; G-3 (Ex. B) at 18; G-4 (Ex. C) at 17. Dr. Medvidovic's report likewise identifies the "████████████" as the rule update manager. Ex. E, Medvidovic Rep., ¶ 225 ("████████████████████████████████████████."). Paragraph 224 of Dr. Medvidovic's report, however, additionally offers the new theory that "████████████████████████████████████████████████████████████████████████" *Id.* ¶ 224.

Upon being notified of this issue, Finjan asserted only that the Operative Contentions identified ████████████ as the rule update manager, which is not the dispute at issue, and that its *initial* infringement contentions indicate the "rule update engine included in the SonicWall Gateway that is run on a server." Ex. D, 10.2.20 Email from J. Wolff. Finjan's initial

3

contentions, however, are not the Operative Contentions and were ultimately replaced by the Operative Contentions.

### B. New Infringement Theories Concerning the '408 Patent

#### 1. Dynamically Building a Parse Tree

The asserted claims of the '408 Patent recite "*dynamically* building, by the computer *while said receiving receives the incoming stream*, a parse tree . . . ,"[1] (the "Dynamically Building Limitation"). Dr. Medvidovic's infringement report offers a never before disclosed theory as to how the Capture ATP purported builds a parse tree "dynamically" while Capture ATP "receives the incoming stream."

In its Operative Contentions, Finjan asserted that a parse tree is dynamically built in Capture ATP's " ███████ " and its " ███████ ." Finjan's Third Supp. Contentions, Appx. E-2, (Ex. F), at 17. Other than characterizing the building of these purported parse trees as "dynamic," the Operative Contentions included no theory as to how Capture ATP builds a parse tree "dynamically" or while it "receives the incoming stream."

Dr. Medvidovic's report, on the hand, dedicates four full paragraphs to describing why the purported building of parse trees occurs dynamically while the incoming stream is being received. Ex. E, Medvidovic Rep., ¶¶ 146-149. Specifically, Dr. Medvidovic's report details a three-phase process that purportedly occurs inside of Capture ATP, involving ███████ ███████ ███████ *Id.* at ¶¶ 146-148. According to Dr. Medvidovic's report, the foregoing is "an ongoing process that adjusts as more information is received," resulting "in a parse tree being dynamically built while said receiving receives the incoming stream as the tree is dynamically adjusted based on the incoming content." *Id.* at ¶ 149.

Dr. Medvidovic's report is the first time Finjan identified this three-phrase process (or any other theory) as satisfying the requirement that the parse tree be built "dynamically" while Capture

---

[1] The language of asserted claim 22 is slightly different, reciting: "dynamically building, while said receiving receives the incoming stream, a parse tree whose . . . ."

ATP "receives the incoming stream." In response to this issue, Finjan could not identify where the Operative Contentions disclose this theory, stating only that paragraphs 146-149 of Dr. Medvidovic's report merely offers "additional evidence for the theory originally presented." Because ¶¶146-149 of Dr. Medvidovic's report contain new theories, they should be struck. Ex. D, 10.2.20 Email from J. Wolff.

### 2. Dynamically detecting . . . potential exploits

The asserted claims of the '408 Patent all recite "*dynamically* detecting, by the computer *while said dynamically building builds the parse tree*, combinations of nodes in the parse tree which are indicators of potential exploits" (the "Dynamically Detecting Limitation"). Like the Dynamically Building Limitation, Dr. Medvidovic's infringement report provides a new theory as to how Capture ATP purportedly detects indicators of potential exploits "dynamically" while it "builds the parse tree."

In its Operative Contentions, Finjan asserted that the "███████████" and "███████████" both satisfy the Dynamically Detecting Limitation. However, other than conclusively asserting that the detection is "dynamic," the Operative Contentions offered no theory as to how Capture ATP detects indicators of exploits "dynamically" while it "builds the parse tree."

Paragraph 158 of Dr. Medvidovic's report, on the hand, details a never before disclosed theory as to how this element is satisfied, namely the same three-phase process he describes in connection with the Dynamically Building Limitation:

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████

Ex. E, Medvidovic Rep., ¶ 158. Dr. Medvidovic's report is the first time Finjan identified this process (or any other theory) as satisfying the detecting "dynamically" while the parse tree is being built requirement. In response to this issue, Finjan could not identify anywhere in the Operative Contentions that this theory was disclosed, stating only that paragraph 158 of Dr. Medvidovic's

report merely offers "additional evidence for the theory originally presented." Ex. D, 10.2.20 Email from J. Wolff. Because it contains a new theory, the Court should strike paragraph 158 of Dr. Medvidovic's report.

### C.  New Infringement Theories Regarding the '780 Patent

Asserted Claim 9 recites "a Downloadable that includes one or more references to software components required to be executed by the Downloadable," and an "ID generator…that fetches at least one software component . . . for performing a hashing function on the Downloadable and the fetched software components . . . ." (the "Fetching Limitaiton"). In its Operative Contentions, Finjan identified the claimed "Downloadables" with referenced "software components" as "a web page that includes references to JavaScript, visual basic script, ActiveX, injected iframes; and a PDF that includes references to JavaScript, swf files or other executables."  Finjan's Third Supplemental Contentions, Appendices D-1 (Ex. G), at 2; D-2 (Ex. H) at 2, D-3 (Ex. I) at 2, D-4 (Ex. J) at 2. Finjan does not identify archive or compressed files (*e.g.*, a ZIP file) that may include one or more files within the archive as being a Downloadable with referenced software components. Additionally, for the Fetching Limitation, Finjan's Operative Contentions refer only to the downloading of additional content from the Internet. *See*, *e.g.*, Appx. D-1 (Ex. G) at 6.  Nowhere does Finjan's Operative Contentions reference archive files or articulate a theory for the Fetching Limitation in which a file is extracted from an archive file and then hashed.

However, Paragraph 134 of Dr. Mitzenmacher's expert report includes this exact theory:



Ex. K, Mitzenmacher Rep., ¶ 134 (emphases added).

Because Finjan's theory of extracting files from an archive file was not disclosed in its Operative Contentions, Paragraph 134 of Dr. Mitzenmacher's report should be struck.

### D. New Infringement Theories Regarding '154 Patent

#### 1. Gateway Alone and ESA Alone Theories

In his expert report, Dr. Medvidovic asserts that the Gateways and ESAs each "individually" infringe claim 1 of the '154 Patent. Ex. E, Medvidovic Rep., ¶¶ 268, 288. However, the operative contentions for the '154 Patent – Finjan's Fourth Supplemental Appendices H-2-H-4, and H-6-H-7 – accuse only the "Gateways in combination with Capture ATP" and "ESAs in combination with Capture ATP." Ex. L, Appx. H-2, Ex. M, Appx. H-4.

Upon notice of this issue, Finjan argued that these theories are supported by Appendices H-1 and H-5 of its infringement contentions. Ex. D, 10.2.20 Email from J. Wolff. But Finjan's prior counsel of record withdrew these appendices after a meet and confer with SonicWall, a fact now disputed by Finjan's new counsel, who neither participated in the discussions nor was counsel of record at the time. See Ex. N, 4.2.20 Email from McGrath. But SonicWall memorialized that "Finjan is withdrawing Appendices H-1 and H-5 . . ." in a post-meet and confer email, in which it explicitly asked Finjan to "please advise immediately" if it "believe[d] we have misunderstood any of the foregoing," *Id.* Finjan never advised of any disagreement regarding the withdrawal of Appendices H-1 or H-5. Months later, after Finjan served revised Appendices H-2 – H-4 (*not* H-1 or H-5), counsel for SonicWall emailed Finjan about Appendices H-3, H-6, and H-7, leading Finjan to serve further revised versions of those appendices. Ex. O, 7-23-20 Email from J. Hannah; Ex. P, 7-24-20 Email from J. Hannah; Ex Q, 7-2-20 Email from J. Hannah; Ex. R, 7-13-20 Email from D. Dotson. Despite further confirmatory emails from SonicWall that Appendices H-1 and H-5 had been withdrawn, Finjan never disputed this fact nor did it serve revised appendices, as it did with Appx. H-3 after explicitly refusing to withdraw that appendix. Ex. S, 7-23-20 Email from D. Dotson; Ex. T, 7-24-20 Email from D. Dotson; Ex. U, 7-24-20 Email from J. Hannah.

Notwithstanding the foregoing, Finjan now contends Appendices H-1 and H-5 were never withdrawn, taking advantage of Finjan's change of counsel. To allow Finjan to succeed in such gamesmanship would frustrate the Court's telephonic meet and confer requirements and the ability

of parties to resolve issues without Court involvement.  Had Finjan given any indication it was not withdrawing H-1 and H-5, SonicWall would have brought this issue to the Court's attention months ago, as it expressly advised Finjan it would do if agreement could not be reached. Ex. V, 7-23-20 Email from D. Dotson.

If, despite the foregoing, the Court nevertheless concludes that Appendices H-1 and H-5 were not withdrawn, they should be struck (along with the portions of ¶¶270, 274, 275, 276-281, 283-285, 287, 288-291, 293, 294, 296-302, and 304-305 of Dr. Medvidovic's report regarding Gateway/ESA only theories), because they are in direct violation of Magistrate Judge DeMarchi's November 20, 2019 Order striking Finjan's Gateway and ESA alone theories (Dkt. No. 210), which is the very reason SonicWall insisted that Finjan withdraw Appendices H-1 and H-5 in the first place:

> In Finjan's Second Supplemental Infringement Contentions, Finjan's gateway and ESA alone charts each asserted that the claimed "security computer" is satisfied by the Cloud AV and GRID sandboxes, ***both of which have been stricken from Finjan's Contentions*** by the Court's November 20 Order. ***In light of the Court's Order, Finjan does not have any gateway or ESA alone theory that has been previously disclosed***. Upon review of the current versions of H-1 and H-5, it appears that all Finjan did was remove the reference to the Cloud AV and GRID sandbox and instead, simply refer generically to a "security computer" without identifying which component constitutes the security computer. ***To the extent Finjan contends that the security computer is satisfied by the Cloud AV and GRIDS sandboxes, Appendices H-1 and -5 are in violation of the Court's Nov. 20 Order and must be withdrawn***. To the extent Finjan contends the security computer is satisfied by a different component, please (i) identify which component(s) within the gateway and ESA devices Finjan contends is the security computer; and (ii) identify where in its First Supplemental Contentions Finjan identified that component as the security computer.

Ex. W, 12.17.19 Email from R. McGrath (emphasis added).  Notably, Appendices H-1 and H-5 on which Finjan now relies identify no component as the "security computer." Ex. X, Appx. H-1 at 10;

Ex. Y, Appx. H-5 at 10.

Paragraphs 274, 281, 294, 301 of Dr. Medvidovic's report, for example, attempt to revive Finjan's Gateway and ESA alone theories, pointing to Capture ATP, "SonicWall's server", and/or "server computer" as the alleged "security computers". Ex. E, Medvidovic Rep. ¶¶ 274, 281, 294, 301. As for Capture ATP being the security computer – that is not a Gateway/ESA "alone" theory, but is duplicative of Finjan's Gateway plus Capture ATP and ESA plus Capture ATP theories. Ex. L, Appx. H-2 at 7, 14; Ex. M, Appx. H-4 at 7, 14. Regarding the generic "SonicWall's server" and "server computer" as the claimed "security computer," there is no support for these theories in Finjan's Operative Contentions.

### 2. "URL Rewriting" Theory

Claim 1 recites "a content processor (i) for processing content received over a network, the content including a call to a first function, and the call including an input." Dr. Medvidovic's expert report accuses a "URL Rewriting" feature within the ESAs of infringing claim 1, asserting that the rewritten URL is the claimed "first function," which the Court has construed as a "substitute function." Ex. E, Medvidovic Rep., ¶ 293; *see also id.* at ¶¶ 294, 301, 302.

Neither the operative infringement contentions for the ESAs (i.e., Appx. H-4 (ESA + Capture ATP) and withdrawn Appx. H-5 (ESA alone)) even reference the ESA's URL Rewriting feature, much less allege that a rewritten URL is the claimed "first function." During the Parties' meet and confer, Finjan could not show otherwise, but pointed only to generic discussions of URLs in its contentions. Ex. D, 10.2.20 Email from J. Wolff.

### IV. THE COURT SHOULD STRIKE FINJAN'S INFRINGEMENT THEORIES THAT VIOLATE THE COURT'S NOVEMBER 20 ORDER

The Court's November 20, 2019 Order required Finjan to "re-serve its Gateway-only and ESA-only disclosures to eliminate contentions that certain limitations are met by cloud-based resources or components." Dkt. No. 210 at 6. In so ordering, the Court relied on Finjan's representation that "the accused Gateway and ESA instrumentalities were capable of infringing along (i.e., "one the box") ***without connection to any cloud-based component***, as well as in combination with Capture ATP." *Id*. at 4-5.

9

During the hearing on Finjan's motion for leave to supplement its infringement contention, Judge DeMarchi confirmed that the Gateway and Email Security appliances must infringe *without accessing any* cloud-based functionality:

> THE COURT: So Finjan writes . . . that it understands . . . the contentions that it wants to add would have been unobjectionable had they simply been characterized as Cloud based rather than as local gateways and ESA technology and that my order striking the contentions was formal rather than substantive.
>
> So that is a misreading of my order . . . what I concluded was that Finjan had identified two categories of infringing instrumentalities, at least as relates to this question of gateways and ESA, and that was *gateways and ESA alone that don't require access to any cloud-based functionality but infringe on the box and the gateways and ESA in combination with a cloud functionality called Capture ATP*.

Dkt. 232, 1/28/2020 Hearing Transcript at 5:4-20 (emphasis added).

Despite this express guidance from the Court, Finjan's expert reports include Gateway-only infringement theories that require access to cloud-based functionality.

**A.      Finjan's Gateway-only Theory for the '494**

Claim 10 of the '494 Patent recites a "database manager . . . for storing the Downloadable security profile in a database." In claiming that the Gateways alone infringe claim 10, Paragraph 1361 of Dr. Cole's infringement report identifies a SQL database storing content strings as the database in which Downloadable security profiles are stored. Ex. Z, Cole Rep., ¶ 1361. The document Dr. Cole cites for this proposition, however, clearly states that this SQL database " ▊

▊

▊ " *i.e.*, it is not on the Gateways. *Id.* citing SonicWall-Finjan_00519307 at 309.

Because Finjan's Gateway alone infringement theory requires storing data in a database located in the cloud, the theory violates the Court's November 20 Order and should be struck from paragraph 1361 of Dr. Cole's report.