Juanita R. Brooks (CA SBN 75934) brooks@fr.com
Roger A. Denning (CA SBN 228998) denning@fr.com
Jason W. Wolff (CA SBN 215819) wolff@fr.com
John-Paul Fryckman (CA SBN 317591) fryckman@fr.com
K. Nicole Williams (CA291900) nwilliams@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Telephone:  (858) 678-5070 / Fax:  (858) 678-5099

Proshanto Mukherji (*Pro Hac Vice*) mukherji@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Phone: (617) 542-5070/ Fax: (617) 542-5906

Robert Courtney (CA SNB 248392) courtney@fr.com
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
Phone: (612) 335-5070 / Fax: (612) 288-9696

Attorneys for Plaintiff
FINJAN LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN JOSE DIVISION)

| | |
|---|---|
| FINJAN LLC, a Delaware Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> SONICWALL INC., a Delaware Corporation, <br><br> Defendant. | Case No. 5:17-cv-04467-BLF (VKD) <br><br> **PLAINTIFF FINJAN LLC'S OPPOSITION TO DEFENDANT SONICWALL INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Date: January 14, 2021 <br> Time: 9:00 AM <br> Judge: Hon. Beth Labson Freeman <br> Dept: Courtroom 3, Fifth Floor |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## TABLE OF CONTENTS

I.      INFRINGEMENT OF THE '154 PATENT ............................................................ 1

    A.      Application of the Claims to URL Rewrite ............................................ 2

    B.      Remote Creation of the First Function .................................................. 4

II.     INFRINGEMENT OF THE '844, '494, AND '926 PATENTS BASED ON CAPTURE ATP IN COMBINATION WITH ESA ............................................... 4

III.    SONICWALL GATEWAYS "RECEIVE" DOWNLOADABLES ................................... 6

IV.     INFRINGEMENT OF THE '633 AND '822 PATENTS ................................... 9

V.      INFRINGEMENT OF THE '305 AND '408 PATENTS BASED ON CAPTURE ATP IN COMBINATION WITH GATEWAYS AND ESA ............... 9

VI.     INFRINGEMENT OF THE '926 PATENT .......................................................11

    A.      Capture ATP Sends Downloadable Files to Destination Computers .....................12

    B.      Capture ATP also Sends Representations of Security Profile Data ......................13

    C.      Capture ATP Sends Information Using Transport Protocols and a Transmitter Coupled to a Receiver ....................................................14

    D.      Doctrine of Equivalents ...............................................................15

VII.    INFRINGEMENT OF THE '305 PATENT .......................................................15

    A.      Factual Disputes Exist Regarding the '305 Patent ...............................................15

VIII.   THE COURT SHOULD DENY SONICWALL'S MOTION AS TO DAMAGES ..........18

    A.      Ample Evidence Supports a Royalty on Overseas Business Because the Business Arose from Domestic Infringement .......................................18

    B.      There Is More Than Enough Evidence to Establish Actual Notice of Finjan's Patents on the Dates Cited in Finjan's Expert Reports...........................................21

        1.      The Evidence Demonstrates Actual Notice as to the '822, '968, '780, and '844 Patents ............................................................21

        2.      The Evidence Further Demonstrates Actual Notice as to the '926 Patent During the 2014–2017 Licensing Discussions ...........................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*01 Communique Lab., Inc. v. LogMeIn, Inc.*,
  687 F.3d 1292 (Fed. Cir. 2012) ................................................................... 11

*AFG Industries, Inc. v. Cardinal IG Co., Inc.*,
  375 F.3d 1367 (Fed. Cir. 2004) ..........................................................12, 17, 18

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
  24 F.3d 178 (Fed. Cir. 1994) ................................................................22, 24

*Apple, Inc. v. Samsung Elecs. Co.*,
  No. 12-CV-00630-LHK, 2014 WL 252045 (N.D. Cal. Jan. 21, 2014) ................ 10

*Armstrong v. Motorola, Inc.*,
  374 F.2d 764 (7th Cir. 1967) .................................................................... 22

*Baldwin Graphic Sys. v. Siebert*,
  512 F.3d 1338 (Fed. Cir. 2008) ...............................................................9, 10

*Bettcher Indus., Inc. v. Bunzl USA, Inc.*,
  661 F.3d 629 (Fed. Cir. 2011) ..................................................................... 9

*CNET Networks, Inc. v. Etilize, Inc.*,
  528 F. Supp. 2d 985 (N.D. Cal. 2007) ......................................................... 21

*Convolve v. Compaq Comp. Corp.*,
  812 F.3d 1313 (Fed. Cir. 2016) ................................................................... 9

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
  469 F.3d 1005 (Fed. Cir. 2006) .................................................................. 18

*Dunlap v. Schofield*,
  152 U.S. 244 ......................................................................................... 22

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010) .................................................................. 21

*Free Motion Fitness, Inc. v. Cybex Int'l*,
  423 F.3d 1343 (Fed. Cir. 2005) .................................................................. 10

*Funai Elec. Co. v. Daewoo Elecs. Corp.*,
  616 F.3d 1357 (Fed. Cir. 2010) .................................................................. 23

*Good Tech. Corp. v. MobileIron, Inc.*,
  No. 5:12-CV-05826-PSG, 2015 WL 4040416 (N.D. Cal. July 1, 2015) ............. 1, 8

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
  274 F.3d 1371 (Fed. Cir. 2001) ................................................................. 15

*Iron Oaks Techs. LLC v. Fujitsu Am., Inc.*,
  No. 3:18-md-2835, 2018 WL 6593709 (N.D. Tex. Dec. 14, 2018) ..................................... 23

*Netlist v. Smart Storage Sys*,
  No. 13-5889, 2014 WL 1320325 (N.D. Cal. Apr. 1, 2014) ................................................ 5

*Paragon Solutions, LLC v. Timex Corp.*,
  566 F.3d 1075 (Fed. Cir. May 22, 2009) ................................................................. 9

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
  378 F.3d 1396 (Fed. Cir. 2004) .......................................................................1, 16

*R.R. Dynamics, Inc. v. A. Stucki Co.*,
  727 F.2d 1506 ...........................................................................................19, 20

*Rates Tech. v. Mediatrix Telecom*,
  688 F.3d 742 (Fed. Cir. 2012) ............................................................................. 4

*SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
  376 F. Supp. 3d 369 (S.D.N.Y. 2019) .................................................................... 23

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*,
  127 F.3d 1462 (Fed. Cir. 1997) ........................................................................21, 22

*Symantec v. Comput. Assocs. Int'l*,
  522 F.3d 1279 (Fed. Cir. 2008) ........................................................................9, 10

*TecSec, Inc. v. IBM*,
  731 F.3d 1336 (Fed. Cir. 2013) ........................................................................... 4

*Tyco Healthcare Grp. LP v. Biolitec, Inc.*,
  No. C-08-3129 MMC (N.D. Cal. Aug. 11, 2010) ....................................................... 3

*Unwired Planet L.L.C. v. Google, Inc.*,
  660 Fed. Appx. 974 (Fed. Cir. Nov. 21, 2016) .......................................................10, 11

*WesternGeco LLC v. ION Geophysical Corp.*,
  138 S. Ct. 2129 (2018) ..................................................................................... 20

*Wi-LAN United States v. Ericsson, Inc.*,
  675 F. App'x 984 (Fed. Cir. 2017) ....................................................................... 17

**Statutes**

35 U.S.C. § 271(a) ............................................................................................ 5

**Other Authorities**

7 Chisum on Patents § 20.03[7][c][iv] (2020 ed.)........................................................................ 22

This Court warned SonicWall less than a month ago "to select its most viable claims and fully brief those issues" because "a motion that inadequately addresses too many issues risks denial on all issues." Dkt. No. 310. SonicWall ignored the Court's advice and filed a grab-bag of cross-cutting motions presenting nearly a dozen different arguments, implicating nearly every patent and product, and raising well over a dozen deeply contested issues of fact. Naturally, its brief gives conclusory treatment to each issue—heavy on assertion, light on evidence. It should be denied.

SonicWall's noninfringement motions largely suffer the same flaw: they ask the Court to resolve whether a skilled artisan would conclude that the contested claim limitations (or the Court's constructions thereof) apply to the accused products. But "determination as to whether the claims, properly construed, read on the accused device is a question of fact." *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1406 (Fed. Cir. 2004). This is especially true where, as here, these factual issues are fiercely disputed by the opposing experts. When experts disagree on the ultimate issues of how the accused products work and whether the claim limitations are met, these issues are "classic jury fodder." *Good Tech. Corp. v. MobileIron, Inc.*, No. 5:12-CV-05826-PSG, 2015 WL 4040416, at *4 (N.D. Cal. July 1, 2015) (denying summary judgment).

The final pages of SonicWall's motion on damages fare no better. SonicWall's proposal to exclude sales to overseas customers from the damages base ignores clear law that sales derived from domestic infringement may support a royalty. And SonicWall's attacks on the dates of notice for certain patents err both as to the legal standard for actual notice (a low standard) and the contents of the record. SonicWall and Finjan negotiated over these patents for more than three years pre-suit. The contention that SonicWall was not on notice of Finjan's allegations is baseless.

## I.   INFRINGEMENT OF THE '154 PATENT

SonicWall's motion on the '154 Patent raises two main issues, which Finjan agrees parallel two infringement analyses addressed at summary judgment order in the *Cisco* litigation. As it pertains to this motion, the difference between the two analyses is where the "first function" (a

"substitute function") is created.  For one analysis, the first function is locally created in the infringing instrumentality (e.g., URL Rewrite), while in the other analyses, it is remotely created by a third party.  In the *Cisco* case, this Court denied summary judgment of no infringement for the former, but granted summary judgment for the latter.

### A.    Application of the Claims to URL Rewrite

With regard to the first infringement analysis, SonicWall's Email Security Appliance ("ESA") technology is similar to the ESA product in *Cisco*, on which this Court denied summary judgment of non-infringement.  Dkt. No. 320-2 (Ex. 1) at 12.  SonicWall's argument regarding its ESA products relies entirely on the report of Dr. Medvidovic—Finjan's expert—but Dr. Medvidovic's report is contrary to SonicWall's argument.  Specifically, SonicWall asserts that "ES products do not receive content (i.e., an email) including the call to the 'first function,' … since the rewritten URL did not exist until the ES product inserted it into a received email."  Mot. at 5:26-27.  But Dr. Medvidovic explained that the ESA "has a content processor which processes-Internet-based content, e.g., with its ██████████████" (Exh.[1] A at ¶ 292), and that based on that processing the "████████████████████████████ rewritten URLs" (*Id.* ¶ 293), thus receiving substitute URL.  SonicWall's witnesses confirmed the process too, explaining, "████████ ████████████████████████████████████████████ ████████████████████." *Id.* (citing Exh. B (King Tr.) at 66:1-4).

SonicWall admits that the ESA products substitute the rewritten URL into the received email for the second function (Mot. at 5:25–26), so the ESA products are capable of "processing content received over a network, the content including a call to a first function," as required by the claims.  Dr. Medvidovic's report identifies evidence supporting that fact and explains how that functionality

---

[1] "Exh." refers to the exhibits to the Declaration of Jason W. Wolff, filed herewith.

meets the claim limitations.  *See* Exh A at ¶¶ 292–295.[2]  SonicWall's analysis attempts to narrow the scope of the claim so that it is not possible to both receive content and replace the original function call with a substitute function call in the same system.  Yet this is described in the '154 Patent at Fig. 5 (*see, e.g.*, 500, 505, 515) and the specification beginning at 15:65.  Other evidence supports that the ESA receives rewritten URLs, too.  *See* Exh. C (Zhu Tr.) at 224:1-225:3, Exh. D (Hawkes Tr.) at 42:11-14, and Exh. B (King Tr.) at 65:4-66:4.  And Dr. Medvidovic's report applies the claims consistent with the Court's constructions and consistent with how a person of ordinary skill in the art would have understood the claims and supporting evidence cited in his report.  Exh. A ¶¶ 34–35.  No contrary analysis is identified.  At least genuine issues of material fact remain.

Lastly, SonicWall mischaracterizes Dr. Medvidovic's doctrine of equivalent analysis for the challenged limitation.  *See* Exh. A at ¶¶ 296–299.  While SonicWall admits Dr. Medvidovic performs a DOE analysis of the "content processor" limitation, it disputes the sufficiency of his analysis.  The analysis is sufficient.  It begins by explaining that, to the extent what is identified as literally satisfying the claim elements in the previous paragraphs is not found to be the same, it is both insubstantially different and equivalent because it achieves substantially the same function, substantially the same way, to achieve substantially the same result.  Exh. A at ¶ 296.  It then elaborates how the security function is the same (*id*. at ¶ 297), how the function is performed in the same way through the use of ███████████████████████████████ safe (*id*. at ¶ 298), and how it achieves the same result because it ██████████████████████████████ ██████████████████████████ are safe (*id*. at ¶ 299).  Simply put, this is not a summary judgment issue, rather it is a cross examination issue for trial.  *Tyco Healthcare Grp. LP v. Biolitec, Inc.*, No. C-08-3129 MMC, at *3 (N.D. Cal. Aug. 11, 2010) ("[I]t is axiomatic that disputes about

---

[2] SonicWall Ex. 3, which is an excerpt from Dr. Medvidovic's infringement report, is missing pages in the range where the infringement analyses being challenged by SonicWall occurs.

material facts and credibility determinations must be resolved at trial, not on summary judgment.").

Accordingly, summary judgment of the '154 Patent as applied to URL Rewrite should be denied.

### B.  Remote Creation of the First Function

With regard to the second infringement analysis—where the first function is created remotely—Finjan does not dispute that if the Court applies the claims as it did in *Cisco*, then the Court could grant summary judgment on that theory for the same reasons articulated in *Cisco*, namely the first function was substituted remotely by an "external factor."  Dkt. No. 320-02 (Ex. 1) at 7.  In *Cisco*, this Court largely followed Judge Alsup's reasoning from *Juniper*, which was affirmed without discussion in a Rule 36 judgment.  *Id.*  As multiple grounds for affirmance were in play in *Juniper* (a legal remedy and the claim constructions), the basis for the Court's affirmance is not known, and the proper construction and application of the claims remains unresolved by the appeal.  *See Rates Tech. v. Mediatrix Telecom*, 688 F.3d 742, 750 (Fed. Cir. 2012); *TecSec, Inc. v. IBM*, 731 F.3d 1336, 1343 (Fed. Cir. 2013).  Finjan, respectfully, responds as it did in *Cisco*: the claim language and constructions do not say where the first function must be created.

SonicWall raises a second ground for summary judgment of non-infringement for the remote creation application.  SonicWall's argument is unclear, but the premise seems to be that the substitute function in the accused products does not "perform[] the security functionality of the claim" (Mot. at 4:6-7).  But that is not a requirement of the claim or the Court's construction of the "first function," so it does not support summary judgment.

## II.  INFRINGEMENT OF THE '844, '494, AND '926 PATENTS BASED ON CAPTURE ATP IN COMBINATION WITH ESA

SonicWall's errs as a matter of law and fact in its argument that Capture ATP in combination with the Email Security Appliance (ESA) does not infringe the '844, '494, and '926 Patents because "Capture ATP [allegedly] was not ***commercially available*** for use with any ES product" before the relevant patents expired.  Mot. at 6:22-26, 7:1-14.  Legally, commercial availability is not a

requirement for infringement. *See Netlist v. Smart Storage Sys*, No. 13-5889, 2014 WL 1320325, at *3 (N.D. Cal. Apr. 1, 2014) (35 U.S.C. § 271 "does not require that the infringing product be 'commercially available.'"). The Patent Act is clear: "[W]hoever without authority **makes, uses**, offers to sell, **or sells** any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). SonicWall infringes because it at least "made" and "used" Capture ATP in combination with ESA long before any relevant patent expired, regardless of whether it also "sold" them commercially. Exh. E (SonicWall-Finjan_00549272-291, "Capture ATP/Email Security Integration") at 00549277 (Capture ATP was integrated with ESA in at least September 2016).

Factually, the record is overwhelming that the combination of Capture ATP and SonicWall's ESA products was at least **made** and **used** long before the '844, '494, and '926 Patents expired in 2017. As Dr. Cole testified, the first date of infringement for "SonicWall's Gateways, Capture ATP and Email Security combinations" was in 2012. *See* Exh. F, 52:8-14. And SonicWall's documents corroborate that the combined system was made and sold long before 2017. As one example, a SonicWall document entitled "Capture ATP/Email Security Integration – Extending Advance Threat Protection to Email," dated September **2016**,[3] states that a system had been made that combined the two systems. Exh. E (SonicWall-Finjan_00549272-291, "Capture ATP/Email Security Integration") at 00549277 (describing features based on an ability to "[i]ntegrate Capture ATP into Email Security"). That document also describes the development plans and testing results for the integrated system. *Id.* at 00549282-83 (discussing integration challenges and solutions). The document also shows screenshots and other outputs of the combined system in use. *Id.* at 00549279-

---

[3] The document's September 2016 date is confirmed by both the document's metadata and its contents. *See* Exh. E at 00549280 (screenshot showing contemporary emails dated September 2016); *id.* (document metadata identifying the last modified date as September 15, 2016).

280 (showing web user interfaces for the integrated system).  SonicWall even used the document to promote the features of the integrated system to third parties.  *Id.* (third party presentation for ███ customers).  SonicWall does not dispute this in its brief.  Accordingly, SonicWall's motion for summary judgment of noninfringement should be denied.

## III.   SONICWALL GATEWAYS "RECEIVE" DOWNLOADABLES

SonicWall's request (at 8–10) for summary judgment on the '494, '844 and '780 Patents based on the argument that its gateway products in isolation do not "receive 'Downloadables'" is meritless.  SonicWall raises no claim construction disputes that are resolvable as a matter of law.  Instead, SonicWall's raises disputes of fact involving the ***application*** of the construed claims to the accused products.  A jury could, at a minimum, find in Finjan's favor on these issues.

SonicWall's argument that the way its gateways receive files over a network somehow does not constitute "receiving" is plainly incorrect.  The gateways "receive" program files exactly as every device on the Internet does—in a sequence of network packets that contain the file's bits.  Exh. G at ¶¶ 97, 102-105; Exh. H at ¶¶ 547-554, 858-866, and 1146-1153; Exh. I (Almeroth 10-21-20 Tr.) at 232:2-6 ("A. ███████████████████████████████████ ███████████████████████████████████████████████████████."); Exh. J (Gmuender Tr.) at 25:20-22 ██████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████  This and the other undisputed facts favor a finding of infringement.

*First*, SonicWall does not dispute (at least for purposes of this motion) the well-supported opinions of Finjan's experts that the gateways *analyze* Downloadables exactly as the asserted claims specify.  *See, e.g.,* Exh. H (Cole Rep.) ¶¶ 582-599, 895-907, and 1208-1226; Exh. G (Mitzenmacher Rep.) ¶¶ 106-115.  For example, SonicWall does not dispute the gateways "identify suspicious code in a Downloadable," per claim 15 of the '844 Patent, or "perform a hashing function on the

Downloadable," per claim 9 of the '780 Patent.  The SonicWall gateways undisputedly do everything the claims require to be done with a Downloadable.  SonicWall's position (Mot. at 8–10)—that gateways analyze these files without "receiving" them—is unsupportable.

*Second*, it is also undisputed that the gateways do *receive packets containing* Downloadables (executable application programs) such as ActiveX, Visual Basic, and JAR files.  Finjan's experts say so, and SonicWall's experts agree.  *See, e.g.*, Exh. G at ¶¶ 97, 102-105; Exh. H at ¶¶ 547-554, 858-866, and 1146-1153; Exh. K (McDaniel 10/23/20 Tr.) at 57:5–7, 57:25–58:7 ("Q ██████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████."); *id.* 58:11–25 (same for Visual Basic programs); *id.*, 56:16–24 (Java applets); *id.*, 22:10–12; 59:2–59:12 (JAR programs).

*Third*, it is also undisputed that every network device that receives a Downloadable does it in this very way: by receiving packets that contain the file.  Finjan's experts say so, with supporting evidence, *see, e.g.,* Exh. H at ¶¶ 547-554, 858-866, and 1146-1153, and Exh. G at ¶¶ 102-105, and SonicWall's experts agree.  For example, Drs. McDaniel and Almeroth testified as follows:

| Dr. McDaniel | Dr. Almeroth |
|---|---|
| Q. Files when transferred over the Internet are transferred in multiple packets, correct?<br><br>**A. That's correct.**<br><br>████████████████████████████<br>██████ ████ ████ ████████ ████<br><br>████████████████████████<br><br>██████████ (Exh. K, 146:25–147:6.) | Q. When a file is transmitted from one place to the next over a network, is it frequently the case with HTTP that it's broken into packets?<br><br>**A. Yes.**<br><br><br>(Exh. I, 232:21-24.) |

In short, (1) every bit of each Downloadable file is contained within packets and received by the SonicWall gateways, (2) this is exactly how every device on every network receives every file, and (3) Downloadables received this way can be and are analyzed exactly as the claims require. A jury could, at a minimum, find that this constitutes "receiving" the Downloadable.

SonicWall's contrary assertions are *non sequiturs* or at most fact disputes about how a skilled artisan would apply the construed claims to the products. Its argument (at 9:13–15) that the gateways "analyze[] the data within the IP packets" without first "extracting the packet data and reassembling (i.e., reconstructing) [the] file" is irrelevant. None of the claims require that the Downloadables must be "reassembled" and "reconstructed"—only that they are "received" and "obtained" as part of the packets that contain them, which they are in the SonicWall products. *See, e.g.*, '494 Patent, cl. 10; '844 Patent, cls. 41 and 43; and '780 Patent, cl. 9. At most, the experts dispute whether a skilled artisan would understand "receiving" to require "reassembly." SonicWall offers zero evidence for this—not even its experts' *ipse dixit* (*see* Mot. at 9:13–10:6)—and such expert disputes "are classic jury fodder" in any case. *Good Tech.*, 2015 WL 4040416, at *4.

Also for a jury to decide is SonicWall's factual contention (Mot. at 9:24–25) that "any given IP packet itself is not executable because it does not contain the entirety of the file." *First*, its own expert refutes this and admits there *are* files that fit into a single packet. Exh. I at 235:9-13 ("Q. Are all files sent through multiple packets? **A. I don't think so. If you had *a file that could fit into a single packet*, then the answer would be no.**"). *Second*, the plain language of the court's construction of "Downloadable" specifies that the underlying *programs* must be executable, not the packets that contain them. As discussed, there is no dispute that the ActiveX, Visual Basic, JAR files and other programs within the received packets are "executable application programs." *See* Exh. K (McDaniel 10-23-2020 Tr.) at 57:5–7, 57:25–8:7 (ActiveX), 58:11–25 (Visual Basic), 56:16–24 (Java), and 22:10–12, 59:2–59:12 (JAR programs). *Finally*, a skilled artisan would understand that merely transmitting an executable program over a network in packets does not

change its inherently executable nature.  SonicWall cited zero evidence that a skilled artisan would

think otherwise and any such factual expert dispute would be a question for the jury anyway.

## IV.  INFRINGEMENT OF THE '633 AND '822 PATENTS

This issue is moot because the '633 and '822 Patents were dismissed.  Dkt. No. 324.

## V.  INFRINGEMENT OF THE '305 AND '408 PATENTS BASED ON CAPTURE ATP IN COMBINATION WITH GATEWAYS AND ESA

Summary judgment is not appropriate here because the claims of the '408 and '305 Patents

are not limited to being "performed by or located within the *same* computer" as SonicWall alleges

(at 13).[4]  The asserted claims are open-ended, and as a matter of law the articles "a" and "the" within

them means "one or more."  *Convolve v. Compaq Comp. Corp.*, 812 F.3d 1313, 1321 (Fed. Cir.

2016).  The Federal Circuit has held: "[t]hat 'a' or 'an' can mean 'one or more' is best described as

a rule, rather than merely as a presumption or even a convention," and that "[t]he exceptions to this

rule are extremely limited: a patentee must evince a clear intent to limit 'a' or 'an' to 'one.'"  *Baldwin*

*Graphic Sys. v. Siebert*, 512 F.3d 1338, 1342-43 (Fed. Cir. 2008) (internal quotation marks and

citations omitted).  In view of this basic claim construction principle, it is legal error to limit "a"

claimed article to a single, unitary structure absent a compelling reason in the intrinsic evidence.

*Symantec v. Comput. Assocs. Int'l*, 522 F.3d 1279, 1291 (Fed. Cir. 2008) (concluding "that the

ordinary meaning of the terms 'computer' and 'computer system' to one of ordinary skill in the art

in 1990 was not limited to a single, stand-alone computer or workstation and that the district court

erred by unduly limiting its construction of those terms."); *see also Paragon Solutions, LLC v. Timex*

*Corp.*, 566 F.3d 1075, 1086 (Fed. Cir. May 22, 2009) ("the claim term 'data acquisition unit' is not

limited to a single structure but may comprise multiple physically separate structures").

In this case, SonicWall has never sought a specialized or limited meaning for the phrase "a

computer."  *See Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 640-41 (Fed. Cir. 2011)

---

[4] Emphasis in original unless otherwise noted.

(holding that party waived opportunity to seek construction for terms not proposed during claim construction process); *see also Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014 WL 252045, at *3 (N.D. Cal. Jan. 21, 2014).   SonicWall acknowledges that "a computer' can mean one or more computers," however, it incorrectly asserts that "*each* of the one more computers must perform the recited steps attributed to that computer."  Mot. at 14.  SonicWall is wrong as a matter of law.  SonicWall bases its position on the claims' usage of the definite article "the" preceding the recited computer.  Mot. at 14 ("by *the* computer"), 15 ("stored within *the* computer").   But the Federal Circuit has repeatedly rejected the notion that the use of the word "the" in connection with the disputed term later in the claim shows that the earlier reference to "a" denotes singularity. *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342-43 (Fed. Cir. 2008) ("The subsequent use of definite articles 'the' or 'said' in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning."); *Free Motion Fitness, Inc. v. Cybex Int'l*, 423 F.3d 1343, 1350 (Fed. Cir. 2005).  Therefore, SonicWall's attempt to improperly limit the scope of the asserted claims of the '305 and '408 Patents should be denied.

The second prong of SonicWall's argument (i.e., one of the one or more computers must perform every step) is also legally incorrect because one or more computers operating in combination can (and do) satisfy the claims.  SonicWall's position (at 14) is that *each* computer must perform *all* of the steps and (at 15) that "the same computer that houses the network interface must also house the recited Internet application and the recited database of parser and analyzer rules."  Here, SonicWall seeks to require that the same single computer perform each of the claimed steps and that all of its components are in the same location.  The Federal Circuit has also rejected such attempts to limit "a computer" to a single computer performing all recited steps.  *See, e.g.*, *Unwired Planet L.L.C. v. Google, Inc.*, 660 Fed. Appx. 974, 980 (Fed. Cir. Nov. 21, 2016) (rejecting construction that "required that each computer perform each and every one of the claimed functions" because it improperly imported a limitation into the claims); *Symantec Corp. v. Comput. Assocs.*

10

*Int'l, Inc.*, 522 F.3d 1279, 1291 (Fed. Cir. 2008) (vacating summary judgment of non-infringement, finding "that the terms 'computer' and 'computer system' are not limited to a single computer"); *01 Communique Lab., Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1300 (Fed. Cir. 2012) (vacating summary judgment of non-infringement, rejecting construction that required "the [claimed] location facility be contained on a single computer").  In each case, the Federal Circuit rejected district court constructions requiring a single computer perform each of the steps of the claim while acknowledging that one or more computers working together may perform the claimed functionality.  *See Unwired Planet*, 660 Fed. Appx. at 980 ("Nor does the claim rule out multiple computers or programs working in concert to operate as the claimed server node").  *Communique Lab*, 687 F.3d at 1299-1300 ("The locator server computer may comprise one or more computers, and the location facility may be distributed among one or more locator server computers.").  In *LogMeIn*, the district court granted summary judgment after determining that the accused products "use multiple server computers, and that no single one of those computers performs all of the functions of the location facility," which the Federal Circuit vacated after correcting the district court's construction.  *Id*.  The Federal Circuit concluded that one or more computers located at separate locations could satisfy the claim element after properly construing the claim term.  *Id*.

For these reasons, SonicWall's motion for summary judgment should be denied.

## VI.   INFRINGEMENT OF THE '926 PATENT

Nowhere is SonicWall's disregard of the court's instruction (Dkt. No. 310) to "select its most viable claims and fully brief those issues" more apparent than in this part of the motion, where SonicWall (Mot. at 16-18) purports to cram challenges to five different factual theories, each on multiple factual grounds into less than three pages of conclusory briefing.  SonicWall does not raise any legal question, but rather asserts there is "no proof" to support multiple opinions of Finjan's expert, many independently sufficient to avoid summary judgment.  These underdeveloped arguments, to the extent they can be understood, are incorrect on their face since SonicWall admits

Case No. 5:17-cv-04467-BLF (VKD)
FINJAN'S OPPOSITION TO SONICWALL'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

Finjan has put forward expert testimony, which is supported by documentary evidence on all these points. *See AFG Industries, Inc. v. Cardinal IG Co.*, Inc., 375 F.3d 1367, 1371 (Fed. Cir. 2004) ("[A] trial court cannot reach a conclusive finding of noninfringement if the record shows . . . some evidence to the contrary."). SonicWall's disagreements are at best issues for the jury.

Each of SonicWall's arguments is also plainly incorrect—or at least genuinely disputed—in its specifics. Its many disputes can be summarized as five categories. Four relate to transmission: (1) whether CaptureATP transmits Downloadables to various types of destination computers; (2) for one type of destination computer only, whether it also transmits representations of the files' security profile data; (3) whether it has a transmitter coupled to a receiver that received the Downloadable; and (4) for one type of destination only, whether transport protocols are used for the transmission. The fifth relates to the Doctrine of Equivalents. All are disputed questions of fact.

### A.    Capture ATP Sends Downloadable Files to Destination Computers

Finjan's expert has opined, with strong record support, that Capture ATP infringes by sending Downloadable files to the SonicWall GRID sever, Threat team, Sandbox/CloudATP database, known-file database, and cloud database. *See* Exh. G (Mitzenmacher Rep.) ¶ 387, 390-92. Each independently establishes infringement, as each is a "destination computer," thus SonicWall must show that it is entitled to summary judgment on all of them. It does not come close.

We begin with the GRID and Threat Team server. It is undisputed that CaptureATP does send the Downloadable to the GRID server: the documents say so (see figure at right) and SonicWall appears (at 16:26–17:4) to concede it. SonicWall's argument (17:13–14) seems to be that the Threat Team are humans, whereas the Downloadables are sent to the "file systems" of the computers those humans use. As Finjan's infringement theory is that the Downloadables are sent to "destination" computers that threat teams can access, rather than to individual humans themselves, this supports infringement.

We turn next to the Sandbox/Capture and known-file databases.  Finjan's expert opines that Capture ATP transmits files by ██████████████████████████████████████████████████████████████████████████████████████████ Finjan cites to evidence that demonstrates where downloadable files are stored in the Sandbox/Capture database ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ SonicWall concedes that the cited evidence further discloses this feature for the known-file database.  *See* Mot. at 18:2-5 (citing Ex. 18 (Mitzenmacher Rep.) ¶ 286 (noting where SonicWall stores "the █████ of both known benign files and malicious files."); *see also* Exh. L (SonicWall-Finjan_00002532-50) at 2539.  It only (citing zero evidence) disagrees with Finjan's expert's opinion that a skilled artisan would understand transmitting a file by █████████████████ ████████████████████████████████ counts as "transmitting" the file.  *See* Exh. G (Mitzenmacher Rep.) ¶ 284. This is plainly a dispute of material fact for the jury.

Furthermore, Finjan identifies evidence that Downloadables are transmitted to the cloud database.  *See, e.g.*, Exh. G at ¶ 392.  SonicWall acknowledges that the cited documents state that Capture ATP uploads files to this database, but—this isn't clear from its underdeveloped brief—appears to dispute something about how they are uploaded.  *See* Mot. 18:13-14; *see also* Exh. G at ¶ 392. This is at best another question for the jury.

## B.   Capture ATP also Sends Representations of Security Profile Data

Turning to SonicWall's second category of fact disputes, the record amply supports Finjan's expert's opinion that CaptureATP sends representations of security profile data to the destination computer.  Finjan's expert identifies security profile data as █████████████████████████████████████████████ ████████████████████████ Exh. G at ¶ 387.  The security profile may also identify matched signatures for a malicious file.  Exh. G at ¶ 265, 370, 472.  He explains that Capture ATP sends

* Only this code ran.

security profile data to the SonicWall GRID server, Sandbox/Capture database, known file database, and cloud database.  Exh. G at ¶ 387-88, 390-92.  Of these four destinations, SonicWall's motion only disputes whether DSP data is sent to the GRID server.  SonicWall's underdeveloped brief at most raises factual disputes for the jury.  SonicWall's documents show, for example, that Capture ATP includes a feature for rapid signature deployment, and when Capture ATP identifies a file as malicious, a representation of the file's security profile data such as a file "signature is immediately deployed to . . . GRID Gateway Anti-Virus and IPS signature databases." *See, e.g.,* Exh. G at ¶ 85 (citing Exh. M (SonicWall-Finjan_00000655-66) at 661).  SonicWall's disputes regarding the presented evidence should be resolved by a jury.

C. **Capture ATP Sends Information Using Transport Protocols and a Transmitter Coupled to a Receiver**

SonicWall also contests whether transport protocols are used to transmit information to the GRID server, Sandbox/Capture database, known-file database, and cloud database.  As SonicWall acknowledges (at 17:25-26), however, Finjan provides evidence that Capture ATP communicates with other SonicWall products to transmit information using protocols such as UFTP and HTTP, such as using HTTP over TCP/IP, HTTPS over TCP/IP, and UFTP.  For example, documents disclose that Capture ATP communicates with third party applications using an API where various API commands are based on HTTP protocols.  *See* Exh. N (SonicWall-Finjan_00002574-92) at 2575.  If SonicWall disputes this evidence, this is yet another factual dispute.

For the Sandbox database only, SonicWall contests whether "transmissions protocols are used when components *within* Capture ATP . . . communicate with other components *within* Capture ATP."  This too is without merit.  Capture ATP is a cloud-based system, Mot. 15:27-28, and as such uses distributed network components where the system components transmit information to and from each other using network communication protocols.  Exh. G (Mitzenmacher Rep.) ¶ 283.  SonicWall offers no evidence to the contrary.

SonicWall also disputes whether the cited evidence demonstrates where the transmitter is coupled to the receiver that receives the Downloadable.  Finjan identifies and cites to documents that illustrate that the receiver and a transmitter are coupled to one another as they are both located within the very same Capture ATP system architecture.  Exh. G (Mitzenmacher Rep.) ¶ 201-02, 282-83; *see also* Mot. Ex. 20 (SonicWall-Finjan_00002468-95) at 2472.  Also, in the SonicWall system, the transmitter and receiver are necessarily coupled together (perhaps indirectly), because the device receives the Downloadable through the receiver, and then transmits it along with information about it through the transmitter, which means that the data has to be able to pass from one to the other.  *See* Exh. G at ¶¶ 304-20, 385-93.  The parties dispute whether this evidence sufficiently satisfies the "coupled to" limitation, but this issue is question of fact for the jury.

### D.      Doctrine of Equivalents

SonicWall raises another factual dispute to contest Finjan's doctrine of equivalents (DOE) theories for the transmitting limitation.  "Determination of infringement by equivalents is an issue of fact, which after a jury trial we review for substantial evidence."  *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1376 (Fed. Cir. 2001).  Here, Finjan's DOE theories are not conclusory statements.  As explained in Finjan's expert report, the accused products perform the same function in the same way to achieve the same results because, as explained above, Capture ATP transmits files and "information corresponding to the behavior performed [by the files], like ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" to numerous computing devices. Mot. Ex. 18 (Mitzenmacher Rep.) ¶¶ 288-91.  It is up to the jury to decide these issues.

## VII.    INFRINGEMENT OF THE '305 PATENT

### A.      Factual Disputes Exist Regarding the '305 Patent

In addition to its "single computer" argument (addressed above at Section V) SonicWall presents another basis for a motion for noninfringement of the '305 Patent.  Here, SonicWall again mischaracterizes and ignores evidence that directly supports Finjan's infringement theories.

SonicWall's motion goes to the core, material fact disputes around applying the claims to the accused product: specifically, whether Capture ATP satisfies the network traffic probe limitation. It argues it "is entitled to summary judgment of noninfringement because Finjan cannot prove that Capture ATP has 'a network traffic probe, operatively coupled to said network interface and to said rule-based content scanner, for selectively diverting incoming content from its intended destination to said rule-based content scanner,' as recited in claims 5 and 6, as content is never 'diverted' from an 'intended destination.'" Mot. at 19.  As an initial matter, claims 5 and 6 are not asserted against SonicWall, claims 11 and 12 are.  Second, SonicWall's argument regarding selectively diverting content from its intended destination is at odds with its own documents, source code, and testimony describing, for example, blocking content that is deemed a threat from reaching the user's computer. Further, SonicWall's argument illustrates a fact dispute regarding the accused products selectively diverting incoming content from the intended destination precludes summary judgment as the parties disagree regarding how the claims read on the accused products.  *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1406 (Fed. Cir. 2004) (The "determination as to whether the claims, properly construed, read on the accused device is a question of fact").

Here, the parties dispute whether Capture ATP selectively diverts incoming content from its intended destination ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Finjan's expert explained how Capture ATP diverts incoming content from ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓ and cited documentary evidence of the selective diversion taking place. Mot. Ex. 3 (Medvidovic Op. Rep.) ¶ 217.  First, SonicWall argues that there is no selective diversion of incoming content from the client computer because "the undisputed record evidence shows that when ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" Notably, SonicWall does not base its arguments on documents or source code for the accused products.  *See id.*  SonicWall's

arguments ignore its own documents cited by Finjan's expert that describe diverting selected

incoming content from the ███████████████████████████████████████

███████████████████████████████████████. *See, e.g.*, Mot. Ex. 3

(Medvidovic Rep.) ¶ 217 (citing SonicWall-Finjan_00845356 ███████████████

███████████████████████████████████████████████████████████

███████████████; SonicWall-Finjan_00685827 at 5848 ███████████████████

███████████████████████████████████████████████████████████

███████████████ SonicWall-Finjan_00596850 at 6851 ████████████████

███████████████████████████████████████████████████████████

███████████████████. Despite this and other evidence relating to Capture

ATP blocking and diverting content from reaching the end user, ██████████████████

███████████████████████████████████████████████████████████

████████████ Mot. at 19-20.  SonicWall's argument ignores evidence to the contrary and seeks

to place greater weight on *its* evidence, which the Federal Circuit has said is improper for summary

judgment.  *See AFG Industries, Inc. v. Cardinal IG Co.*, Inc., 375 F.3d 1367, 1371 (Fed. Cir. 2004)

("[A] trial court cannot reach a conclusive finding of noninfringement if the record shows . . . some

evidence to the contrary."); *Wi-LAN United States v. Ericsson, Inc.*, 675 F. App'x 984, 995 (Fed.

Cir. 2017) (vacating summary judgment of noninfringement after finding "[t]he District Court erred

in entering summary judgment because it ignored conflicting evidence in the record and placed

greater weight on Ericsson's evidence").  Thus, summary judgment is improper on this point.

     Second, SonicWall argues that there is no selective diversion of incoming content from

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████." Mot. at 20.  These facts are disputed and Finjan's position is well supported.  Again,

SonicWall's arguments ignore its documents cited by Finjan's expert that describe diverting some

incoming content from ████████████████████████████████████████████

████████. *See, e.g.*, Mot. Ex. 3 (Medvidovic Op. Rep.) ¶ 217 (citing (SonicWall-

Finjan_00002551) at 2559 █████████████████████████████████████████;

(SonicWall-Finjan_00873017) at 3020 and 3022 █████████████████████

████████████; SonicWall-Finjan_00639853 at 9869 █████████████████

██████████████████. SonicWall also ignores the source code evidence Finjan's expert cited

and explained which shows selective diversion from the intended destination. *See, e.g.*, Mot. Ex. 3

(Medvidovic Rep.) ¶ 218 ███████████████████████████████████████

████████████████████████████████████████████████████████.

Yet again, SonicWall's argument ignores evidence to the contrary and seeks to place greater weight

on its evidence, which the Federal Circuit has said is improper for summary judgment. *See AFG

Industries, Inc. v. Cardinal IG Co., Inc.*, 375 F.3d 1367, 1371 (Fed. Cir. 2004).

As shown above, numerous factual disputes exist precluding summary judgment, including

whether content is being selectively diverted to ████████████████████ SonicWall's

arguments mischaracterize Finjan's application of the "selectively diverting incoming content from

its intended destination" limitation and ignore evidence in the record showing that incoming content

is in fact selectively diverted from its intended destination.

Finally, SonicWall's proposed summary judgment motion as to the '305 Patent also fails

because it does not even address Finjan's alternative infringement arguments under the doctrine of

equivalents. Infringement under the doctrine of equivalents is also a question of fact. *Depuy Spine,

Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1013 (Fed. Cir. 2006).

## VIII.   THE COURT SHOULD DENY SONICWALL'S MOTION AS TO DAMAGES

### A.   Ample Evidence Supports a Royalty on Overseas Business Because the Business Arose from Domestic Infringement

Finjan's damages claim is not "predicated on non-U.S. activity," so SonicWall's motion is

misplaced.  Mot. at 20.  The evidence confirms SonicWall's business with non-U.S. entities (e.g., the revenue, unit sales, and scans addressed by the motion) directly arises from acts of domestic infringement.  In such cases, customers' overseas locations are "irrelevant" to liability.  *R.R. Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1519 ("Whether [infringing] carsets were sold in the U.S. or elsewhere is irrelevant[.]").  Because clear evidence indicates that SonicWall's overseas business arose from domestic acts of infringement, and because Finjan's right to damages is thus not limited by the beneficiary's location, the Court should deny SonicWall's motion for immunity as to its revenues from overseas customers.

**As to Capture ATP,** the evidence shows that any overseas revenues arise from domestic infringement.  According to SonicWall's documents, a crucial feature of "Capture ATP" is its ability to propagate signatures of new computer security threats to all users worldwide as soon as SonicWall detects a threat, either on its own or by reporting from a SonicWall customer.   Exh. O (SonicWall_00000413-15) at 413.  Even SonicWall does not dispute that its "Capture ATP" system is hosted on servers in San Jose and in Miami, nor that its global thumbprint servers are in the U.S. Exh. P (SonicWall-Finjan_00599079-109); Exh B (King Tr.) at 30:4–31:15; Exh. Q (SonicWall-Finjan_00373438-72) at 373442; Exh. R (SonicWall-Finjan_00465540-43) at 465541; Exh. C (Zhu Tr.) at 45:13–15 *see also* Exh. H (Cole Rep.) ¶ 2119; Exh. G (Mitzenmacher Rep.) ¶ 507; Exh. A (Medvidovic Report) ¶ 327.  Evidence from SonicWall further confirms that ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ Exh. S (Chopra Tr.) at 98:18–25.  At trial, Finjan's experts will describe how this means that the majority of these crucially important signatures are generated by acts of infringement ***within the U.S.***, either by SonicWall itself or by its domestic customers at SonicWall's inducement, and moreover are then stored in the U.S. and then propagated from the U.S. to SonicWall's customers worldwide.[5]  *E.g.*,

---

[5] SonicWall does not address inducement, and so concedes there is a triable inducement case.

Case No. 5:17-cv-04467-BLF (VKD)
FINJAN'S OPPOSITION TO SONICWALL'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

Exh. H at ¶¶ 133–34, 2120; Exh. A at ¶¶ 73–76, 328; Exh. G at ¶¶ 82–83, 508; *see also* Exh. C (Zhu Tr.) at 50:21–51:14, 51:22–52:6, 52:22–53:24 (further describing SonicWall's U.S. use).  Finjan's experts' reports describe how the use of Capture ATP that leads to signature recognition infringes Finjan's patents.  As noted, SonicWall relies on the key signature database deriving from said use to provide significant value for its customers worldwide—both domestic and overseas.

In its bid to remove overseas sales of Capture ATP from the damages case, SonicWall makes two contentions, both defective.  The first—that overseas customers' "use" of Capture ATP is extraterritorial and thus noninfringing (Mot. 21)—is a red herring.  The issue is not overseas customers' use; it is the clear evidence that domestic infringement makes the sales to overseas customers possible in the first place.  Second, SonicWall erroneously urges, "[t]here is no act of infringement alleged as to 'propagat[ing]' signatures to international customers."  *Id.* at 22.  Not so.  As already discussed, the propagated signatures arose from domestic infringement—i.e., domestic usage of Capture ATP by SonicWall and SonicWall-induced customer use.  *See* Exh. H (Cole Rep.) ¶¶ 133–34, 2119–20; Exh. G at ¶¶ 82–83, 507–08; Exh. A at ¶¶ 73–76, 327–28.  Both the Supreme Court and Federal Circuit have confirmed that overseas revenues, when they arise from domestic infringement, are to be considered for damages.  *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2138–39 (2018) ("The ***domestic infringement*** is the object of the state's solicitude in this context.  The conduct in this case that is relevant to that focus clearly occurred in the United States, as it was ION's domestic act [that infringed]. . . .  [O]verseas events were merely incidental to the infringement." (emphasis added)); *R.R. Dynamics*, 727 F.2d at 1519.  There is no legal reason why SonicWall's overseas sales relating to Capture ATP should be immunized from damages.

**As to ESA,** SonicWall does not dispute that its source code repository—its site of storage and compilation for the accused code—is in the U.S.  Mot. 22; *see also* Exh. D (Hawke Tr.) at 19:21–23, 164:8–13 (describing U.S.-based storage/compilation).  Such is a dispositive basis for denial.  Two asserted claims ('844 claim 41 and '408 claim 22) are "computer-readable medium

CRM)" claims, infringed whenever patented code is made, copied, or stored.  *E.g.*, *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204–05 (Fed. Cir. 2010) (describing how a CRM claim requires only that the code be "written"); *see also CNET Networks, Inc. v. Etilize, Inc.*, 528 F. Supp. 2d 985, 994 (N.D. Cal. 2007) (describing how software becomes tangible "when expressed and stored as machine-readable object code, e.g., burned on a CD-ROM or written to a server hard drive").  Because it is undisputed SonicWall makes domestic copies of ESA's code, overseas sales arising from those copies are cognizable for damages.  Similar logic applies for the other asserted claims.  Testimony from SonicWall confirms that it again uses a ***domestic*** server to propagate signatures for ESA.  Exh. B (King Tr.) at 30:1–31:19; *see also* Exh. H at ¶ 2121; Exh. A (at ¶ 329; Exh. G at ¶ 509 (discussing same).  For the reasons already discussed, this means that just as domestic infringement relating to Capture ATP drove overseas sales (at least by permitting U.S.-based collection of signatures for the benefit of overseas customers), domestic infringement relating to ESA has the same effect.  It is because of domestic infringement that SonicWall can make overseas sales, and Finjan is thus entitled to a royalty on those sales.

### B.   There Is More Than Enough Evidence to Establish Actual Notice of Finjan's Patents on the Dates Cited in Finjan's Expert Reports

SonicWall's attempt to argue that it was not on notice of certain Finjan patents by mid-2014 contravenes both the law and the facts.  "The requirement of actual notice under § 287(a) is designed to assure that the recipient ***knew of the adverse patent during the period in which liability accrues***[.]"  *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997) (emphasis added).  The record clearly establishes such notice.

### 1.   The Evidence Demonstrates Actual Notice as to the '822, '968, '780, and '844 Patents

SonicWall does not dispute—because it cannot—that Finjan expressly brought each of these patents to the attention of SonicWall's predecessor Dell in mid-2014.

**SonicWall ignores the ongoing discussion between Finjan and SonicWall on these patents from June 2014 until the Complaint (August 2017).** SonicWall's motion misses the foundational objective of the notice requirement: protecting infringers from owing damages on pre-complaint behavior that they had no meaningful opportunity to cure. *E.g.*, *SRI*, 127 F.3d at 1470; *see also Dunlap v. Schofield*, 152 U.S. 244, 247–48 (a patentee "cannot recover damages . . . , unless he has given notice of his right, either to the whole public, by marking his article 'Patented,' or to the particular defendants, by informing them of his patent, and their infringement of it."). For each of the patents here, it is essentially undisputed that *SonicWall was on notice of the patents since mid-2014.* SonicWall's complaints that the notice back then did not reflect the specific infringement theories to be tried years later or name every currently accused product *in haec verba* are off point. SonicWall's motion cites no law indicating that actual notice must reflect the precise theories later used at trial. The caselaw teaches the opposite. *Armstrong v. Motorola, Inc.*, 374 F.2d 764 (7th Cir. 1967), noted how actual notice requires little more than constructive notice (which only requires attaching the patent number to some product alleged to practice it: "[Actual notice] is satisfied whenever the infringer is notified of the same information which the statute requires for patent marking, which need only include the word 'patent,' or its abbreviation, and the patent number.").

The Federal Circuit has confirmed that actual notice is conveyed upon "the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994); *see also* 7 Chisum on Patents § 20.03[7][c][iv] (2020 ed.) ("[T]he notice need not contain a detailed statement or an explication of the patent owner's theory concerning infringement."). Under those standards, Finjan's satisfaction of the actual notice requirement is plain. Indeed, SonicWall's motion itself *concedes* that SonicWall has been on notice, in one way or another, of Finjan's infringement charges since 2014. (Mot. 23–25.) No more was or is required, and this consideration alone is grounds to deny SonicWall's motion. Finally, Finjan invites the Court to note that the

SonicWall-Finjan licensing discussions continued for more than *three years*, during which time Finjan attempted (without much success) to learn more about SonicWall's technology, while SonicWall interrogated Finjan about its claims. *E.g.*, Exh. T (FINJAN-SW 047873-76) at 47873–74 (describing back-and-forth discussions between SonicWall and Finjan). Those discussions, which SonicWall ignores entirely, are per se evidence that, far from being unaware of Finjan's patent claims, SonicWall was deeply involved in analyzing them. In such circumstances, SonicWall's contention it was not on actual notice of Finjan's claims challenges belief.

**As to the '968 Patent,** SonicWall's motion fails to acknowledge that, by email in September 2014, Finjan *specifically accused* "SonicWALL Comprehensive Gateway Security Suite," as well as the TZ and NSA products, of infringing the '968 Patent. Mot. Ex. 32 at 47936, 47938. The motion further ignores that in March 2017, SonicWall confirmed that the "SuperMassive" and "SOHO" products were also among the '968 Patent accused products. Mot. Ex. 34 at 1044819. This set the date of notice not only for those products, but for any other SonicWall products that subsequent discovery might reveal to be infringing. *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010) ("[W]hen the threshold specificity [of initial notice] is met, the ensuing discovery of *other models and related products* may bring those products within the scope of the notice." (emphasis added)). "[T]he inquiry is not whether an accused product is identified by name, but rather whether notice to the alleged infringer provided information sufficient to apprise the infringer of the patent(s) in issue and the nature of the alleged infringement[.]" *Iron Oaks Techs. LLC v. Fujitsu Am., Inc.*, No. 3:18-md-2835, 2018 WL 6593709, at *4 (N.D. Tex. Dec. 14, 2018). Indeed, the "Capture ATP" product described in SonicWall's motion *had not been publicly released* as of the July 2014 notice, so there is no way Finjan could have accused it. *See* Exh. H (Cole Rep.) ¶131 (describing Capture ATP's launch no earlier than "late summer of 2014"). The argument in SonicWall's motion that the theory of infringement has evolved over time—from one focused on the "CFS" to one addressing other technologies within SonicWall's product lines—has no

relevance.  *E.g.*, *Amsted*, 24 F.3d at 187 (requiring only identification of "a specific accused product or device").  SonicWall's motion as to the '968 Patent should fail.

**As to the '780 Patent,** Finjan provided specific notice in September 2014 that GAV, CGSS, TZ, and NSA each infringed the '780 Patent, particularly in their use of hashing.  Mot. Ex. 32 at 47942 (naming GAV), 47938 (describing how accusations against GAV lie against the CGSS, TZ, and NSA products), 47943 (discussing hashing).  Finjan provided further notice in November 2014 that SonicWall's "Anti-Spam and Email Security" products also infringed.  Mot. Ex. 31 at 47916. Nothing about Capture ATP (which did not exist until later) negates these notices.  Once Capture ATP was on the market and Finjan had reviewed it, its June 2017 presentation specifically described how Capture ATP was further covered by the already-noticed patents.  Mot. Ex. 38 at 146174–76 (describing Capture ATP).  Though that presentation did not specifically discuss how the "Capture ATP" functions practice the '780 Patent, it did call SonicWall's attention to Finjan's "hashing" patents (like '780), and specifically reminded SonicWall of the '780 Patent's remaining term.  *Id.* at 146181, 146184.  SonicWall's motion as to the '780 Patent should fail.

**As to the '844 Patent,** Finjan again provided notice back in September 2014, naming the "SecureWorks Managed Security Services" as accused.  Mot. Ex. 32 at 47936.  That allegation was discussed in detail two months later at the parties' in-person meeting.  *E.g.*, Mot. Ex. 31 at 47895– 47903.  Even SonicWall concedes that Finjan regularly updated this notice to add information as it became available through the parties' discussions.  In June 2016, Finjan specifically wrote that the "Advanced Threat Protection Service," and other services infringed the '844 Patent, and in March 2017 Finjan confirmed infringement by "Capture Advanced Threat Protection, Advanced Gateway Security Suite, TotalSecure Bundle, Comprehensive Gateway Security Suite, Gateway Security Services, [and] Malware Prevention," as well as the Supermassive, NSA, and TZ products.  Mot. Ex. 34 at 1044809.  The notion that SonicWall was in any way deprived of actual notice on this record is inconceivable.  The Court should deny SonicWall's motion.

2. **The Evidence Further Demonstrates Actual Notice as to the '926 Patent During the 2014–2017 Licensing Discussions**

As noted, licensing discussions between Finjan and Dell, Inc. (SonicWall's predecessor-in-interest) began in June 2014.  The documents produced to date confirm that the '926 Patent was among those under discussion during that time.  *E.g.*, Mot. Ex. 33 at 47998 (naming '926 Patent as a "cybersecurity patent" that SonicWall was invited to license); Mot. Ex. 38 at 146184 (same).  They also demonstrate that SonicWall's parent company Dell was on notice of the '926 Patent from 2014, albeit in a different context.  Mot. Ex. 33 at 47993.  This documentation, plus the parties' years of discussion and correspondence concerning Finjan's portfolio, is more than enough for a jury to find that SonicWall was on notice of the '926 Patent infringement charges prior to that patent's expiration in January 2017.

Dated: December 21, 2020

/s/ Jason W. Wolff
Juanita R. Brooks (CA SBN 75934)
brooks@fr.com
Roger A. Denning (CA SBN 228998)
denning@fr.com
Jason W. Wolff (CA SBN 215819)
wolff@fr.com
John-Paul Fryckman (CA 317591)
fryckman@fr.com
K. Nicole Williams (CA 291900)
nwilliams@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Phone: (858) 678-5070 / Fax: (858) 678-5099

Proshanto Mukherji (*Pro Hac Vice*)
mukherji@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Phone: (617) 542-5070/ Fax: (617) 542-5906

Robert Courtney (CA SNB 248392)
courtney@fr.com
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
Phone: (612) 335-5070 / Fax: (612) 288-9696

Attorneys for Plaintiff
FINJAN LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 21, 2020, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system. Any other counsel of record will be served by electronic mail and regular mail.

/s/ Jason W. Wolff
Jason W. Wolff

Attorney for Plaintiff
FINJAN LLC.

Case No. 5:17-cv-04467-BLF (VKD)
FINJAN'S OPPOSITION TO SONICWALL'S
MOTION FOR PARTIAL SUMMARY JUDGMENT