**DUANE MORRIS LLP**
D. Stuart Bartow (SBN 233107)
Email: DSBartow@duanemorris.com
Nicole E. Grigg (SBN 307733)
Email: NEGrigg@duanemorris.com
2475 Hanover Street
Palo Alto, CA 94304-1194
Tel.: 650.847.4150
Fax: 650.847.4151

**DUANE MORRIS LLP**
Joseph A. Powers
Admitted *Pro Hac Vice*
japowers@duanemorris.com
Jarrad M. Gunther
Admitted *Pro Hac Vice*
jmgunther@duanemorris.com
30 South 17th Street
Philadelphia, PA 19103
Telephone: 215.979.1000
Facsimile: 215.979.1020

*Attorneys for Defendant*
SONICWALL INC.

**DUANE MORRIS LLP**
Matthew C. Gaudet
Admitted *Pro Hac Vice*
mcgaudet@duanemorris.com
Robin L. McGrath
Admitted *Pro Hac Vice*
rlmcgrath@duanemorris.com
David C. Dotson
Admitted *Pro Hac Vice*
dcdotson@duanemorris.com
Jennifer H. Forte
Admitted *Pro Hac Vice*
jhforte@duanemorris.com
1075 Peachtree Street, Ste. 2000
Atlanta, GA 30309
Telephone: 404.253.6900
Facsimile: 404.253.6901

(Complete list of counsel for Defendant
on signature page)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FINJAN LLC., a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>SONICWALL, INC., a Delaware Corporation<br><br>Defendant. | Case No. 5:17-cv-04467-BLF (VKD)<br><br>**DEFENDANT SONICWALL INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:        January 14, 2021<br>Time:        9:00 AM<br>Courtroom: 3, 5th Floor<br>Judge:       Hon. Beth Labson Freeman |

**REDACTED**

## <u>TABLE OF CONTENTS</u>

**Page**

I.     NON-INFRINGEMENT OF THE '154 PATENT ....................................................1

     A.     Gateways and Email Security (ES) Products.............................................. 1

     B.     URL Rewriting............................................................................................ 1

II.    THE COMBINATION OF ES PRODUCTS AND CAPTURE ATP DO NOT INFRINGE THE '844, '494, AND '926 PATENTS ............................................3

III.   SONICWALL GATEWAYS DO NOT RECEIVE "DOWNLOADABLES"...................4

IV.    NON-INFRINGEMENT BASED ON SAME COMPUTER ('305 AND '408 PATENTS)..........................................................................................................6

     A.     The '305 Patent ........................................................................................... 6

     B.     The '408 Patent ........................................................................................... 8

V.     NON-INFRINGEMENT OF THE '926 PATENT ............................................8

VI.    NON-INFRINGEMENT '305 PATENT .........................................................10

VII.   DAMAGES.................................................................................................11

     A.     Finjan Is Not Entitled to a Royalty on SonicWall's Non-U.S. Sales.................... 11

     B.     Finjan Is Not Entitled to Damages Prior to Actual Notice of Infringement ......... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*01 Communique Lab, Inc. v. LogMeIn, Inc.*
  687 F.3d 1292 (Fed. Cir. 2012)...................................................................................8

*Akzo Nobel Coatings, Inc. v. Dow Chemical Co.*
  811 F.3d 1334 (Fed. Cir. 2016)..................................................................................3

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*
  24 F. 3d 178 (Fed. Cir. 1994).............................................................................. 13-14

*Baldwin Graphic Sys. v. Siebert*
  512 F.3d 1338 (Fed. Cir. 2008)............................................................................. 6-7

*CNET Networks, Inc. v. Etilize, Inc.*
  528 F. Supp. 2d 985 (N.D. Cal. 2007) ......................................................................13

*FotoMedia Techs., LLC v. AOL, LLC*
  CIV.A. 2:07-CV-255, 2009 WL 2175845 (E.D. Tex. July 21, 2009) ......................................6

*Funai, Elec. Co., Ltd., v. Daewoo Elecs. Corp.*
  616 F. 3d 1357 (Fed. Cir. 2010).......................................................................13, 15

*Gart v. Logitech, Inc.*
  254 F.3d 1334 (Fed. Cir. 2001)...............................................................................13

*Iron Oaks Techs. LLC v. Fujitusu Am., Inc.*
  2018 WL 6593709 (N.D. Tex. Dec. 14, 2018) ..........................................................15

*K-Tec, Inc. v. Vita-Mix Corp.*
  696 F.3d 1364 (Fed. Cir. 2012)........................................................................13, 15

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*
  424 F.3d 1336 (Fed. Cir. 2005)...............................................................................5

*Microsoft Corp. v. AT&T Corp.*
  550 U.S. 437 (2007)...............................................................................................13

*Minks v. Polaris Indus., Inc.*
  546 F.3d 1364 (Fed. Cir. 2008)..............................................................................14

*Morrison v. Nat'l Australia Bank ltd.*
  561 U.S. 247 (2010)...............................................................................................12

*MShift, Inc. v. Dig. Insight Corp.*
  747 F. Supp. 2d 1147 (N.D. Cal. 2010) ...................................................................4

ii

*MyMail, Ltd. v. AOL, Inc.*
 476 F.3d 1372 (Fed. Cir. 2007).............................................................................5

*Novartis Corp. v. Ben Venue Labs., Inc.*
 271 F.3d 1043 (Fed. Cir. 2001).............................................................................4

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*
 491 F.3d 1342 (Fed. Cir. 2007).............................................................................9

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l., Inc.*
 711 F.3d 1348 (Fed. Cir. 2013)...........................................................................12

*R.R. Dynamics, Inc. v. A. Stucki Co.*
 727 F.2d 1506 (Fed. Cir. 1984)...........................................................................12

*Surrell v. Cal. Water Serv. Co.*
 518 F.3d 1097 (9th Cir. 2008) ...............................................................................4

*Symantec Corp. v. Computer Assocs. Int'l, Inc.*
 522 F.3d 1279 (Fed. Cir. 2008).............................................................................8

*Unwired Planet L.L.C. v. Google, Inc.*
 660 Fed. Appx. 974 (Fed. Cir. 2016)....................................................................7

*Volterra Semiconductor Corp. v. Primarion, Inc.*
 796, F Supp. 2d 1025, 1037 (N.D. Cal. 2011) ....................................................14

*WesternGeco LLC v. ION Geophysical Corp.*
 138 S. Ct. 2129 (2018)................................................................................. 11-12

**Federal Statutes**

35 U.S.C. § 271(a) ........................................................................................ 12-13

35 U.S.C. § 271(f)(2)...........................................................................................12

35 U.S.C. § 287(a) ........................................................................................ 13-14

**Rules**

Rule 36...................................................................................................................1

**TABLE OF ABBREVIATIONS**

| Detailed Name | Abbreviation |
|---|---|
| Plaintiff Finjan, LLC | Finjan or Plaintiff |
| Defendant SonicWall, Inc. | SonicWall or Defendant |
| U.S. Patent No. 7,647,633 | '633 Patent |
| U.S. Patent No. 7,058,822 | '822 Patent |
| U.S. Patent No. 6,804,780 | '780 Patent |
| U.S. Patent No. 8,141,154 | '154 Patent |
| U.S. Patent No. 6,154,844 | '844 Patent |
| U.S. Patent No. 8,677,494 | '494 Patent |
| U.S. Patent No. 7,613,926 | '926 Patent |
| U.S. Patent No. 7,975,305 | '305 Patent |
| U.S. Patent No. 8,225,408 | '408 Patent |
| U.S. Patent No. 6,965,968 | '968 Patent |
| Mobile Protection Code | MPC |
| "information-destination of the downloadable" / "downloadable-information destination" | Information-Destination |
| 1.    SonicWall's Gateways<br>2.    SonicWall Email Security products<br>3.    Capture ATP<br>4.    Gateways + Capture ATP<br>5.    Email Security + Capture ATP<br>6.    Capture Client + Capture ATP<br>7.    Gateways + WXA | Accused Products or Accused Systems |
| Gateways<br>Capture ATP<br>Gateways + Capture ATP<br>Capture Client + Capture ATP<br>Email Security products<br>Email Security products + Capture ATP | '154 Accused Products[1] |

---

[1] In its Opposition to SonicWall's recently filed motion to strike Finjan's "Gateway alone" and "ESA alone" theories, Finjan represented that those "alone" theories likewise require Capture ATP. Dkt. 313 at 7-9.

| Detailed Name | Abbreviation |
|---|---|
| Email Security products, including Email Security Appliances and Cloud Email Security | ES products |
| WAN Acceleration Appliance | WXA |
| Content Filtering Service | CFS |
| Reassembly-free deep packet inspection | RFDPI |
| Doctrine of Equivalents | DOE |
| Comprehensive Gateway Security Suite | CGSS |
| October 22, 2020 Deposition Transcript of Dr. Eric Cole | Cole Dep. or Ex. 14 or Ex. 44[2] |
| October 26, 2020 Deposition Transcript of Dr. Michael Mitzenmacher | Mitz. Dep. or Ex. 15 |
| October 29, 2020 Deposition Transcript of Dr. Nenad Medvidović | Med. Dep. or Ex. 16 |
| Expert Report of Dr. Eric Cole Regarding Technology Tutorial and Infringement by SonicWall, Inc. of Patent Nos. 6,154,844; 7,058,822; 7,647,633; and 8,677,494 | Cole Report or Ex. 17 |
| Expert Report of Michael Mitzenmacher, Ph.D. Regarding Infringement by SonicWall, Inc. of Patent Nos. 6,804,780; 6,965,968; and 7,613,926 | Mitz. Report or Ex. 18 |
| Expert Report of Dr. Nenad Medvidović Regarding Infringement by SonicWall, Inc. of Patent Nos. 8,225,408; 7,975,305; and 8,141,154 | Med. Report or Ex. 3 |
| Expert Report of DeForest McDuff, Ph.D. | McDuff Report or Ex. 4 |
| Declaration of John Gmuender | Gmuender Decl. |
| Plaintiff Finjan, Inc.'s Third Supplemental Disclosure of Asserted Claims and Infringement Contentions and Document Production Pursuant to Patent Local Rules 3-1 and 3-2 | Operative Contentions |
| July 9, 2020 Deposition Transcript of Mr. John Gmuender | Gmuender Dep. or Ex. 5 |

---

[2] Unless otherwise noted, Exhibits 1-40 referenced herein are attached to the Declaration of Jarrad M. Gunther In Support of Defendant SonicWall Inc.'s Motion for Partial Summary Judgment, and Exhibits 41-48 reference herein are attached to the Declaration of Jarrad M. Gunther In Support of Defendant SonicWall Inc.'s Reply In Support of its Motion for Partial Summary Judgment.

| Detailed Name | Abbreviation |
|---|---|
| July 16, 2020 Deposition Transcript of Mr. Shunhui Zhu | Zhu Dep. or Ex. 6 |
| July 29, 2020 Deposition Transcript of Mr. Dmitriy Ayrapetov | Ayrapetov Dep. or Ex. 7 |
| July 24, 2020 Deposition Transcript of Mr. Matthew Neiderman | Neiderman Dep. or Ex. 8 |
| July 31, 2020 Deposition Transcript of Mr. Alex Dubrovsky | Dubrovsky Dep. or Ex. 21 |
| July 7, 2020 Deposition Transcript of Mr. Senthil Cheetancheri | Cheetancheri Dep. or Ex. 24 |
| November 10, 2020 Deposition Transcript of Dr. Alessandro Orso | Orso Dep. or Ex. 40 |
| Transcript of the Proceedings of the Official Electronic Sound Recording of January 28, 2020 Hearing | 1.28.2020 Hearing or Ex. 23 |
| *Finjan, Inc. v. Cisco Systems, Inc.*, Case No. 17-cv-00072-BLF | *Cisco* |
| *Finjan, Inc. v. Cisco Systems, Inc.*, Case No. 17-cv-00072-BLF (N.D. Cal. March 30, 2020), Dkt. No. 499 | Cisco MSJ Order or Ex. 1 |
| *Finjan, Inc. v. Cisco Systems, Inc.*, Case No. 17-cv-00072-BLF (N.D. Cal. July 23, 2018), Dkt. No. 134 | Cisco Markman Order or Ex. 2 |
| Defendant SonicWall Inc.'s Motion for Partial Summary Judgment | Motion or Dkt. No. 320 |
| Plaintiff Finjan LLC's Opposition to Defendant SonicWall Inc.'s Motion for Partial Summary Judgment | "Opposition," "Opp.," or Dkt. No. 326 |
| July 14, 2020 Deposition Transcript of Mr. John Gordineer | Gordineer Dep. or Ex. 41 |
| July 21, 2020 Deposition Transcript of Mr. Eric Hawkes | Hawkes Dep. or Ex. 42 |
| July 24, 2020 Deposition Transcript of Mr. Michael King | King Dep. or Ex. 43 |

# I.     NON-INFRINGEMENT OF THE '154 PATENT

## A.     Gateways and Email Security (ES) Products

Finjan does not dispute summary judgment on the ES Products. Opp. at 4. For the record, Finjan disputes the application of collateral estoppel from the *Juniper* decision as a result of the Federal Circuit's Rule 36 Affirmance. *Id.* Finjan is wrong about "multiple grounds of affirmance" on the '154 Patent, but that is irrelevant; the claim construction here is not based on collateral estoppel, but is an agreed construction, as analyzed by this Court in *Cisco*.

## B.     URL Rewriting

To be clear, Finjan presents a *different* infringement theory regarding SonicWall's "URL Rewriting" than its theory for the URL re-writing product in *Cisco*. The key difference is what Finjan accuses as the claimed "content processor," which (according to the claim) must receive content (*e.g.*, an email) over the network – and, of crucial importance, the content received by the "content processor" must include a call to a first [substitute] function (alleged to be a rewritten URL). In *Cisco*, Finjan asserted that the "content processor" was a client device that received an email that contained a re-written URL. Cisco MSJ Order at 12. Here, Finjan asserts that the "content processor" is the ESA itself, *i.e.*, the SonicWall device that actually rewrites the URLs in the email.

Finjan's theory that the ESA is the "content processor" fails as a matter of law, as the claim requires "a content processor (i) for processing content <u>*received* over a network</u>, <u>the content *including* a call to a first function</u> [substitute function]." By that plain language, the content "received over a network" must *include* the "call to a first function" (which according to Finjan is the rewritten URL) when it is *received*. Finjan's URL Rewriting theory requires the Court to ignore the requirement that the "content" *received* by the "content processor" must "include[e] a call to a first function [substitute function]". Finjan instead argues that the content received by the "content processor" need not include a call to a substitute function, but that the "content processor" (alleged to be the ESA) can itself modify that content to insert a call to a substitute function that was not there when the content processor received the content. Opp. at 2-3. Finjan's theory fails as a matter of law because it contradicts the claim language.

Notably, there is no dispute on the facts. Opp. at 2. Finjan confirmed that (i) it accuses the

1

ESA as the "content processor" and (ii) it is the ESA that rewrites the URL:  "Dr. Medvidovic explained that the ESA 'has a content processor which processes-Internet-based content, e.g., with its ███████████' (Exh. 1 A at ¶ 292), and that based on that processing the '███████████ ███████████████████████████' (*Id.* ¶ 293)".  Opp. at 2.  The only dispute is a legal one:  does a content processor (the alleged ESA) that admittedly does not receive content including a call to a first [substitute] function – but that instead creates the alleged call to the substitute function in the content *after* it receives that content over the network – satisfy the claim requirement of "processing content received over a network, the content including a call to a first function."  The answer is unambiguously no.

Faced with clear claim language and undisputed facts, Finjan reengages in claim construction, arguing that Figure 5 supports its position.  Opp. at 3.  Finjan is wrong.  Claim 1 requires that the "content processor" also "invok[e] a second function [original function] with the input, only if a security computer indicates" that it is safe to do so.  In Fig. 5, the "client computer" is the only device that "invoke[s] original function with input" (step 595), when it is safe to do so.  The "client computer" also receives the content from the gateway computer (step 525) including the call to the first function that the gateway computer inserted (steps 515, 520).  The client computer's content processor is what is covered by claim 1.  There is no support for Finjan's theory.

Finally, Finjan concludes that "[o]ther evidence supports that the ESA receives rewritten URLs, too," with a string cite to deposition testimony but no further explanation.  Opp. at 3.  The cited testimony does not support Finjan's argument.  *See* Opp., Ex. C at 224:1-225:3 (no discussion of URL rewriting); Ex. D at 42:11-14 (confirming name of plugin related to rewritten URLs); Ex. B at 65:4-66:4 (confirming URL in an email is rewritten by the ESA and delivered to recipient).  In sum, none of this testimony indicates that the ESA receives emails containing rewritten URLs.  This is not surprising, as Dr. Medvidovic did not make any such claim in his report.

With respect to DOE, Finjan attempts a summary of Dr. Medvidovic's overall DOE analysis, but does not point to any specific analysis by Dr. Medvidovic describing any equivalent to the claim's requirement of receiving content including "a call to a first function", which is the substitute function.  Opp. at 3.  A generalized DOE analysis is not legally sufficient to support DOE for a

1   specific claim requirement, such as the "call to first function" element at issue here. *Akzo Nobel*

2   *Coatings, Inc. v. Dow Chemical Co.,* 811 F.3d 1334, 1342 (Fed. Cir. 2016) (equivalency must be

3   established on limitation-by-limitation basis by "particularized testimony and linking argument").

## II.   THE COMBINATION OF ES PRODUCTS AND CAPTURE ATP DO NOT INFRINGE THE '844, '494, AND '926 PATENTS

Finjan does not dispute that ES products were not commercially released with Capture ATP

until after the '844, '494, and '926 Patents expired. Opp. at 4-6. Instead, Finjan claims there is

"overwhelming" evidence that the combination of ESA with Capture ATP was "at least *made* and

*used* long before the '844, '494, and '926 Patents expired in 2017." *Id.* at 5. Finjan cannot

substitute rhetoric for evidence. The sum total of its cited evidence is (1) a single document

purportedly from September 2016 (four months before the '844, '494, and '926 Patents expired) and

(2) speculative testimony about the first use of Capture ATP from its infringement experts, including

Dr. Cole, who have no first-hand knowledge of that issue. *Id.* at 4-6. Each is addressed below.

*First*, the purported September 2016 document is labeled "MRD," *i.e.*, it is a "**M**arket

**R**equirements **D**ocument" – it is written in the future tense to describe what the product *shall* do in

the future and what the development team needs to implement to achieve those goals. Ex. 41 at

56:22-57:1 ("…. So MRDs -- to tell development what to build."); *see* Opp., Ex. E at 00549277

("*MRD:* Integrate Capture ATP into Email Security," identifying desired goals of the integration)

(emphasis added), 00549282 ("ES / Capture Integration Challenges"), 00549290 ("ES/Capture:

Additional Work"). This document is not evidence that the accused combination was made or used

as of September 2016, and its date is consistent with the actual evidence that the ES products were

first available with Capture ATP in February 2017. Motion at 7; Gmuender Decl. ¶ 7. The fact that

this September 2016 document does not reflect a then-existing product is confirmed by the testimony

of both SonicWall witnesses to whom Finjan showed the document that the document does not

reflect the actual architecture of the ES products when they were eventually integrated with Capture

ATP, as reflected in the source code. Ex. 42 at 123:14-124:5, 125:11-126:9; Ex. 43 at 83:20-84:1,

85:5-24. Thus, the document shows nothing more than SonicWall's intent in September 2016 to

integrate ES products with Capture ATP and cannot support any inference to the contrary.

3

*Second*, neither Dr. Cole nor any other expert stated that the combination of the ES products and Capture ATP first infringed in 2012.  Rather, Dr. Cole stated that the first date of infringement by ***any*** accused SonicWall product was in 2012 when "█████████████████████████ ██" Ex. 44 at 51:17-20, 55:18-56:9.  Dr. Cole alleged Capture ATP was "developed and deployed" in the winter of 2013, but he admitted he has no direct knowledge of Capture ATP's development history, Motion at 7 (citing Ex. 14 at 57:2-59:16), and Finjan admits that it was not released until later.  Opp. at 24, ll. 6-11.  Moreover, he never opined on when the ES products were first combined with Capture ATP.  Dr. Cole's opinions concerning the development and release of Capture ATP are based solely on speculation and do not even speak to its combination with the ES products.  *MShift, Inc. v. Dig. Insight Corp.*, 747 F. Supp. 2d 1147, 1165 (N.D. Cal. 2010) ("…unsupported conjecture or conclusory statements are insufficient to defeat summary judgment.  *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).").  The question of what SonicWall did or did not do with respect to products is a historical fact about which an "expert" without first-hand knowledge has nothing to add, and an expert cannot create a question of fact by speculating in a manner to his client's liking.  *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1051 (Fed. Cir. 2001) ("If all expert opinions on infringement … were accepted without inquiry into their factual basis, summary judgment would disappear from patent litigation.").  In sum, there is no dispute of fact that SonicWall's ES products were first available with Capture ATP in February 2017.

## III.    SONICWALL GATEWAYS DO NOT RECEIVE "DOWNLOADABLES"

Finjan's Opposition does not demonstrate any fact issue regarding the receiving/obtaining of "Downloadables," as required by the '494, '844, and '780 Patents.  There is no dispute that files are transmitted via the Internet in a series of packets (or, in rare cases, a single packet), with each packet including (i) packet data and (ii) additional information used only for transmitting the packet data.  Opp. at 6; Motion at 9-10.  This is akin to disassembling a device (*e.g.*, a bicycle) and sending its various components in packages through the mail, which components can then be reassembled upon receipt.  It is also undisputed that SonicWall's Gateways do not reassemble files.

As a matter of law, one (or more) IP packets cannot meet the Court's construction of a "Downloadable," which is "an ***executable*** application program, which is downloaded from a source

4

computer and run on the destination computer."  Finjan agreed to this construction, and its experts have admitted that to be ***executable***, an application program must be structured "in a certain way so that it can be executed."  Motion at 9 (citing Ex. 14 at 69:17-70:6).  Finjan offers no evidence or expert opinion that an IP packet is structured such that it can be executed.  Opp. at 7-9.  This is because it cannot.  Just as a disassembled bicycle that is sent in pieces through the mail in one or more packages needs to be unwrapped and reassembled before the bike can be ridden (*e.g.*, executed), the data sent in an IP packet is not executable until it extracted from the IP packet(s) and reassembled.  Motion at 9-10.  Whether the file data travels in multiple packets (almost always the case) or a single packet is irrelevant; the data must be extracted and assembled to be "executable."  Ex. 16 at 57:23-59:11; Gmuender Decl. ¶¶ 3-5.  Most of Finjan's long list of other defendant-targets appear to do exactly that at their firewalls (*i.e.*, reassemble files into executable form for inspection at the gateway); SonicWall does not, and no evidence suggests otherwise.  Gmuender Decl. ¶ 5.

This is not, as Finjan claims, a jury question.  The ***application*** of an agreed claim construction to undisputed facts is properly resolved at summary judgment.  *MyMail, Ltd. v. AOL, Inc.*, 476 F.3d 1372, 1378 (Fed. Cir. 2007) ("MyMail argues that even under the district court's claim construction, the third-party modem banks in the defendants' systems perform 'authentication,' as the patent defines that term.  Because there is no dispute regarding the operation of the accused systems, that issue reduces to a question of claim interpretation and is amenable to summary judgment.").  Likewise, the fact that Finjan's agreement results in summary judgment does not relieve Finjan from the consequence of its agreement.  *Id.*; *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1341 (Fed. Cir. 2005) (plaintiff "cannot now argue against that claim construction simply because it resulted in an adverse ruling on summary judgment.").

Finally, Finjan's Opposition raises what could have been a DOE dispute over whether receiving IP packets containing parts of an executable application program is *equivalent* to receiving a Downloadable.  Opp. at 7.  Finjan, however, has admittedly failed to preserve a DOE theory for this element, and thus cites no expert opinion no DOE.  Opp. at 6-9.  The fact SonicWall's Motion does not dispute other elements of the asserted '494, '844, and '780 Patent claims is irrelevant, as SonicWall's Gateways neither receive nor obtain Downloadables.

**IV.     NON-INFRINGEMENT BASED ON SAME COMPUTER ('305 AND '408 PATENTS)**

Finjan seeks to avoid summary judgment on the '305 and '408 Patents by ignoring the plainly stated physical requirements of the asserted claims.

**A.     The '305 Patent**

The relevant portion of asserted claims 11 and 12 state:

a network interface, **housed within a computer**, for receiving incoming content from the Internet on its destination to **an Internet application running on the computer**;

a database of parser and analyzer rules corresponding to computer exploits, **stored within the computer**,

It is irrelevant that the word "a" means "one or more" computer, which is the entire basis of Finjan's Opposition. As demonstrated by the *Baldwin* case that Finjan cites, the rule that "a" can mean "one or more" simply means that the claims do not *limit* a claimed apparatus to having a single one of the claimed article.  *See Baldwin Graphic Sys. v. Siebert*, 512 F.3d 1338 (Fed. Cir. 2008). But to qualify as a claimed article, an accused article must contain all specified elements in the claim.  Here, that means that to qualify as the "computer" recited in the claims, at least one computer in each accused system must have three things:  (i) a "network interface" that is "housed within" the computer, which network interface must receive incoming content from the Internet; (ii) an "Internet application" running on the computer; and (iii) a "database of parser and analyzer rules" stored by the computer.  An accused system can have multiple such "computers," but to qualify as a claimed "computer" in the first place, these three requirements must each be met. *See, e.g.*, *FotoMedia Techs., LLC v. AOL, LLC*, CIV.A. 2:07-CV-255, 2009 WL 2175845, at *6–7 (E.D. Tex. July 21, 2009) (addressing issue of "whether the steps recited in the claims" that recite "a server" can "be performed by different servers" and concluding that "a single server must execute all of the steps of the claimed invention" because "a system which distributes processing of the various claimed steps amongst multiple servers would be beyond the scope of the claims.").

There is no case law suggesting the article "a" nullifies the requirements of a claim. For example, the claim in *Baldwin* recited a "cleaning system" with "a pre-soaked fabric roll." The Federal Circuit held that "a pre-soaked fabric roll" did not limit the claimed system to only a single

6

such fabric roll, and so the claim could be infringed by a cleaning system with multiple fabric rolls. *Baldwin*, 512 F.3d at 1341. (Defendant "sold its accused fabric rolls in sets of three or between six and nine, but not individually."). However, the Federal Circuit required the accused cleaning system to include at least one "pre-soaked fabric roll" that satisfied each of the claimed requirements, namely being saturated to equilibrium and having a sealed sleeve. *Id.* at 1343-44. The Federal Circuit did not permit what Finjan attempts here, *e.g.*, declaring infringement by a system that has two separate fabric rolls, one of which is saturated to equilibrium but does not have a sealed sleeve and the other of which has a sealed sleeve but which is not saturated to equilibrium. *Id.* Here Finjan must show that the Capture ATP plus Gateways/ESA combinations include at least one computer that houses a network interface, has an Internet application, and stores a database of parser and analyzer rules, which it has not done.

None of the cases Finjan cites holds otherwise.  Indeed, in *Unwired Planet L.L.C. v. Google, Inc.*, 660 Fed. Appx. 974, 980 (Fed. Cir. 2016), the Federal Circuit confirmed SonicWall's point here, *i.e.*, that "[t]he claim [] requires that a single server node perform every claimed function." The issue in that case was whether the claimed "server node" itself could comprise multiple computers. Relying on the specification, the Court held that it could. *Id.* ("the node consists of a collection of computers."). The claim at issue, however, did not recite particular requirements for each individual computer (*e.g.,* there was no requirement that each computer "house" a component such as the claimed "network interface" or "store" something such as the claimed "database of parser and analyzer rules," as is the case here).  *Id.* Instead, the requirements were directed to the "server node" as a whole and what that server node must do. *Id.*  Thus, the separate computers that made up the server node could separately perform different ones of the claimed steps because doing so meant the "singular server node" performed all steps. *Id.* The same cannot be said of the claimed "computer" here.  The '305 claims do not recite a broader device (such as a "server node") that perform functions; instead, they recite a "computer" that includes specific components.  To be analogous to *Unwired Planet*, Finjan would have to show that the accused Gateways (which Finjan says houses the "network interface"), the accused client computer (which Finjan says has the "Internet application"); and Capture ATP (which Finjan says stores the "database") together

comprise the claimed "computer." Such a theory is nowhere in Finjan's expert reports, and Finjan has represented the opposite to this Court, *i.e.*, that these are each separate computers. Opp. at 14-16.

Likewise, the *Symantec* and *Communique* cases concerned the construction of the terms "computer system" and "location facility" to include multiple computers.  *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1290 (Fed. Cir. 2008) (the issue is "whether the term 'computer system' is properly limited to a single computer, or whether it covers a network of multiple computers"); *01 Communique Lab,, Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1297 (Fed. Cir. 2012) (holding "the location facility may be distributed among one or more locator server computers.").  Again, the computers that comprised the broader claimed "computer system" and "location facility" could separately satisfy certain claim elements because doing so meant the computer system and location facility each satisfied all claim elements.  Here, unlike a "computer system" and "location facility," multiple separate computers do not make up the claimed "computer" – Finjan has conceded that the Gateway, client computer, and Capture ATP are separate computers (Opp. at 14-16), and its expert reports offer no theory in which these three separate computers comprise "a computer."

**B.     The '408 Patent**

The foregoing analysis applies equally to claims 1 and 22 of the '408 Patent which require at least one computer to perform each claimed step. *See* claim 1 ("receiving, ***by a computer***, an incoming stream of program code; determining, ***by the computer***, any specific one of a plurality of programming languages in which the incoming stream is written; instantiating, ***by the computer*** . . . .").  There is no legal support for Finjan's assertion that these claims can be satisfied by a system in which one computer receives an incoming stream, but a separate computer instantiates (as Finjan accuses in this case).  While "a computer" might mean "one or more computers," Finjan would have to show that the accused Capture ATP plus Gateways/ESA combination includes at least one computer that performs all steps, which Finjan admits it has not done.

**V.     NON-INFRINGEMENT OF THE '926 PATENT**

Finjan has failed to create an issue of fact that the accused systems include a transmitter (i) coupled with a receiver (ii) for transmitting an incoming Downloadable and a representation of

8

DSP; (iii) to a destination computer; (iv) via a transport protocol transmission.  As an initial matter, Finjan has come forward with *no* evidence that the accused systems have a "transmitter" that is "coupled with" the receiver that receives the Downloadable.  Finjan argues that the documents cited in Dr. Mitzenmacher's report show such coupling (Opp. at 15), yet the cited documents do not even show a transmitter or a receiver, much less the coupling thereof.  They simply contain high-level graphics with arrows pointing to and from various boxes. Opp., Ex. G at ¶¶ 201-202, 282-283. Finjan's only other argument is that "the transmitter and receiver are necessarily coupled together (perhaps indirectly)" because Downloadables are received and transmitted, which means the data passes from one to the other. Opp. at 15.  But, this is a completely new theory unsupported by Finjan's expert reports, and for which there is no other evidentiary support.  While the paragraphs of Dr. Mitzenmacher's report Finjan cites address the transmitter and receiver limitations (304-20; 285-93), they do not address the requirement that the two be "coupled."  SonicWall is thus entitled to summary judgment on this basis alone. Finjan's other failures are addressed below.

**Grid and Threat Team Server as Destination (First, Fifth Theories)**:  The *only* evidence Finjan offers to show that Capture ATP transmits a Downloadable to GRID/Threat Research Team ███ ████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ " Opp. at 12. Such evidence is insufficient to avoid summary judgment given the uncontroverted testimony of SonicWall's CTO that ██████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ Gmuender ¶27.  *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.* 491 F.3d 1342, 1351-52 (Fed. Cir. 2007) (marketing materials insufficient to show infringement absent evidence of actual operation).  Similarly, Dr. Mitzenmacher states that ██████████████, but points to nothing showing that to be the case. Opp., Ex. G ¶388 ████████████████████████████████████████████████ ████████████████████████████████ ¶389 (citing SonicWall-Finjan_00002574 at 2586-2587 which does not show any DSP being sent to a GRID server).

**Sandbox and Known-File Databases as Destination Computer (Second, Third**

1   **Theories)**:  Finjan concedes that Capture ATP does not transmit any files to either database, but

2   asserts Capture ATP transmits files "by reference" "via a file-hash pointer to the file's location."

3   Opp. at 13.  There is no dispute, therefore, that Capture ATP does not *send* files, but simply stores a

4   hash of the file.  Under no understanding of "transmitting" can storing a hash satisfy the transmitter

5   limitation. Notably, Dr. Mitzenmacher's report includes no opinion that a skilled artisan would

6   understand storing a hash of a file to mean the same thing as "transmitting" the file.  *Id.* Finjan has

7   also not shown that this "file-hash pointer" uses a transmission protocol, as the claims require.  The

8   fact that Capture ATP uses such protocols when communicating with "third party applications" is

9   entirely irrelevant and does not create a disputed issue of fact.

10          **Cloud Database (Fourth Theory)**: Paragraph 392 of Dr. Mitzenmacher's report, the sole

11   paragraph on which Finjan relies to support this theory, cites nothing to show that a Downloadable is

12   transmitted from Capture ATP to a "cloud database," nor has Finjan come forward with even

13   modicum of evidence to show that a transport protocol is used to store records in a database. Opp.,

14   Ex. G. Regarding the doctrine of equivalents, Finjan ironically relies on conclusory statements of

15   denial to show that its "DOE theories are not conclusory statements." Opp. at 15.

16   **VI.     NON-INFRINGEMENT '305 PATENT**

17          Finjan offers two arguments to create a disputed issue of fact, both of which fail.

18          *First*, Finjan asserts that Capture ATP's "Block Until Verdict" ("BUV") feature "diverts"

19   files "from the end user" to the Capture ATP pre-filters until a verdict is reached.  Finjan supports

20   this argument by citing to various marketing documents which indicate that the BUV feature

21   ██████████████████████████████████████████████ but tellingly offers no evidence

22   to show *how* the BUV feature works.  Opp. at 17.  The evidence of record, however, shows that

23   while the BUV feature ███████████████████████████████████, it does not

24   do so by diverting the file from an end user to the pre-filters.  To the contrary, as set forth in

25   SonicWall's opening brief, the undisputed evidence shows that ██████████████████

26   ████████████████████████████████████████████████████████████

27   ██████████████████████  Motion at 19.  This occurs even in the small number of

28   instances where BUV is enabled, but with BUV, ███████████████████████████████

                                                    10

1    ████████████████████████ Ex. 6 at 208:19-209:18.  Thus even with BUV, ██████████████

2    ████████████████████████████████████████████████████████████████

3    ██████████████████████████████████████████████

4         Finjan next attempts to create a dispute by citing a single document and source code excerpts

5    that it *claims* in its opposition brief shows ██████████████████████████████████████

6    ████████████████████████████████████████ Yet, in the lone document

7    Finjan cites (2551 at 2559), there is nothing to suggest, much less state, ████████████████

8    ██████. Ex. 26. In fact, the document indicates just the opposite █████████████████

9    ████████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████ *Id.* And even

11   Finjan concedes that the cited source code shows █████████████████████████████

12   ████████████████████████████████ Opp. at 18. Thus, the only record evidence as to whether

13   files are "selectively" diverted to the pre-filters is █████████████████████████████

14   ████████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████

16   ████████████████████████ Gmuender ¶12. Because the undisputed evidence shows that

17   ██████████████████████████████, Finjan has failed to create a disputed issue of fact that

18   files in the accused systems are "selectively divert[ed]," as the claims require.

19   **VII.    DAMAGES**

20        **A.    Finjan Is Not Entitled to a Royalty on SonicWall's Non-U.S. Sales**

21        Finjan does not dispute that the opinions of its technical experts (as identified by SonicWall)

22   are the only bases for Finjan's claim for worldwide damages.  Rather than identify any material

23   issues of fact, Finjan attempts to make new law.  Finjan argues that the Supreme Court's decision in

24   *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129 (2018), means that a claim of U.S.

25   patent infringement can cover extraterritorial actions if those extraterritorial actors are beneficiaries

26   of some action taken inside of the United States.  Thus, Finjan argues that SonicWall's overseas

27   revenues, unit sales, and "scans" can be swept within Dr. McDuff's royalty base because

28   SonicWall's overseas customers are the beneficiaries of a "crucial feature" of SonicWall's products

1    (the propagation of "signatures"), ▮▮▮ of which are allegedly generated in the United States.  Opp.

2    at 19 (hypothesizing that "it stands to reason" that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).  That is not the law.

4            The Federal Circuit has rejected similar efforts to expand the scope of U.S. patent laws to

5    cover anything other than the actions that constitute infringement in the U.S.  *Power Integrations,*

6    *Inc. v. Fairchild Semiconductor Int'l., Inc.*, 711 F.3d 1348, 1371 (Fed. Cir. 2013) ("Power

7    Integrations is incorrect that, having established one or more acts of direct infringement in the

8    United States, it may recover damages for Fairchild's worldwide sales of the patented invention

9    because those foreign sales were the direct, foreseeable result of Fairchild's domestic

10   infringement."); *cf. Morrison v. Nat'l Australia Bank ltd.*, 561 U.S. 247, 266 (2010) ("But the

11   presumption against extraterritorial application would be a craven watchdog indeed if it retreated to

12   its kennel whenever some domestic activity is involved in the case.").  It is thus unsurprising that

13   nothing in *WesternGeco* – which did not deal with either a claim of infringement under §271(a) or

14   (b), or a claim for a reasonable royalty (as opposed to lost profits) – supports Finjan's position.  In

15   that case, the Court noted that 35 U.S.C. § 271(a) – which Finjan's infringement claim is based upon

16   – "covers most infringement that occur 'within the United States,'" whereas § 271(f)(2) –  the

17   subsection it was addressing – "expands the definition of infringement to include supplying from the

18   United States a patented invention's components." *WesternGeco,* 138 S. Ct. at 2134.  The Supreme

19   Court ruled that the presumption against extraterritoriality did not apply to a claim for lost profits

20   under § 271(f)(2), and it declined to extend its holding beyond that specific section.  *Id.* at 2136-39.

21           Finjan's citation to *R.R. Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506 (Fed. Cir. 1984),

22   fares no better, given that infringement in the U.S. via "making" was admitted, entitling the patentee

23   to a reasonable royalty on the ensuing sales.  Here, with the exception of the ESA source code

24   (discussed below), Finjan's experts make no attempt to prove that SonicWall's own actions in the

25   U.S. constitute direct infringement entitling it to a percentage of SonicWall's overseas revenues.

26   Nor could SonicWall be liable for the actions of its overseas customers based on inducement, as the

27   predicate act of direct infringement by a customer in the U.S. does not exist.  *See Power*

28   *Integrations*, 711 F.3d at 1371 ("Even indirect infringement … requires underlying direct

infringement in the United States.").

Finjan's arguments as to the location of the ESA source code repository also fail. For the two CRM claims, Finjan offers no evidence to support its new assertion that SonicWall "makes domestic copies of ESA's code" (Opp. at 21), and sells those *specific* copies overseas.  That SonicWall may also have a copy of the source code in the U.S. is irrelevant because the source code is copied, tangibly expressed as machine-readable object code, and installed on the ESAs *outside the U.S. Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 442 (2007) (finding liability does not "extend to computers made in another country when loaded with [] software copied abroad from a master disk or electronic transmission dispatched by [defendant] from the United States.").  Likewise, the discussion of Section 271(a) in *CNET Networks, Inc. v. Etilize, Inc.*, 528 F. Supp. 2d 985 (N.D. Cal. 2007), confirms that SonicWall is correct.  *See id.* at 990-992 ("[t]he territorial reach of section 271(a) is limited since the section is only applicable to patent infringement that occurs within the United States"; where "the situs of use of the system as a whole … is Pakistan, not the United States," there is no domestic infringement).  Finjan's arguments as to the non-CRM claims fail for the same reasons discussed above: Finjan is not entitled to a royalty on SonicWall's foreign sales.

**B.    Finjan Is Not Entitled to Damages Prior to Actual Notice of Infringement**

Finjan is wrong that notice of an asserted *patent* is sufficient to satisfy actual notice under § 287 (a).  The law is clear – Finjan must prove that for each asserted patent it communicated a specific charge of infringement *by a specific accused product*. *Amseted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F. 3d 178, 187 (Fed. Cir. 1994).  Finjan is also wrong that pre-suit notice as to one product suffices as notice for "any other SonicWall products" that discovery might reveal to be infringing (Opp. at 23). For such notice to be sufficient, Finjan must prove that the later identified product is essentially the same as the previously identified products (meaning that the accused products are "other models" or "related products" of the noticed product, for example, where the products use "the same item number" or customers "will never even notice the change" between the products). *K-Tec, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1379 (Fed. Cir. 2012);  *Funai, Elec. Co., Ltd., v. Daewoo Elecs. Corp.*, 616 F. 3d 1357, 1377 (Fed. Cir. 2010); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345-47 (Fed. Cir. 2001) (finding no actual notice for certain products not identified in

pre-suit correspondence),  Finjan has not offered *any* evidence to meet this burden, and it has

ignored SonicWall's evidence that the products identified pre-suit are entirely different from what it

now accuses. Gumuender Decl. ¶¶ 4, 5, 7, 28-29; Ex. 37; Ex. 8 at 175:14-17.

      To be clear, SonicWall is not arguing, as Finjan alleges, that Finjan failed to disclose specific

infringement theories or to identify the now-accused products by their proper name.  Opp. at 22.

The issue is that Finjan never placed SonicWall on actual notice under § 287 (a) for a number of

accused products. The law is clear:  to avoid summary judgment, Finjan must have admissible

evidence linking the products it accused pre-suit with the products it accuses now, evidence Finjan

does not have.  *Volterra Semiconductor Corp. v. Primarion, Inc.*, 796, F Supp. 2d 1025, 1037 (N.D.

Cal. 2011) (a court may consider only admissible evidence in ruling on summary judgment).

Remarkably, in its attempt to obfuscate the issue, Finjan relies on communications (Ex. T) that it

clawed back during discovery.  *See* Opp. at p. 23; Opp. Ex. T; Ex. 45. These communications (and

the arguments related thereto) are inadmissible and thus must be disregarded.

      **The '926 Patent**. Finjan concedes it never identified an accused product of infringing the

'926 Patent prior to filing the Complaint. Opp. at 25. References to documents and discussions that

merely identify the '926 Patent are insufficient as a matter of law: "Notice must be of the 'the

infringement,' not merely notice of the patents existence or ownership.  Actual notice requires the

affirmative communication of a specific charge of infringement by a specific accused product or

device." *Amsted*, 24 F. 3d at 187. "General letters referring to the patent and including an

admonishment not to infringe do not constitute actual notice."  *Minks v. Polaris Indus., Inc.*, 546

F.3d 1364, 1376 (Fed. Cir. 2008).

      **The '968 Patent**.  Finjan does not dispute that the product it identified pre-suit is the CFS,

which Finjan does *not* accuse in this case.  Finjan instead relies on references to CGSS and certain

firewalls, but that fails as a matter of law. The September 14 email and chart reference CGSS merely

because it is the software bundle that includes the CFS, but CFS was the only feature then accused.

*See* Ex. 32 at Finjan-SW 047938 ("CGSS includes Dell SonicWall Content Filtering Service

(CFS)").  Moreover, the now accused WXA + Gateway combination has never been sold as part of

CGSS and the two are unrelated. Finjan has not offered any evidence to the contrary.  Ex. 46; Ex. 47.

Likewise, in accusing CFS, Finjan's September 2014 chart made one cursory reference to the TZ and NSA firewalls.  Ex. 32 at Finjan-SW 047938.  But, this does not suffice as notice that the firewalls infringe *separate and apart from CFS*, as now accused.  *See Iron Oaks Techs. LLC v. Fujitusu Am., Inc.*, 2018 WL 6593709, at *4 (N.D. Tex. Dec. 14, 2018) (cursory claim chart references to software being installed on devices insufficient to establish actual notice).  Similarly, Finjan's March 2017 email identified only CFS as infringing technology and identified the firewalls only in their role of running the CFS.  Ex. 34 at SonicWall-Finjan_01044810.  Finjan's infringement theory did not simply "evolve" over time (which is legally irrelevant anyway).  Rather, Finjan dropped its allegations against the CFS (including its use on a firewall) and now accuses the WXA + Gateway, an entirely different product offering identified nowhere in the pre-suit communications. Gmuender Decl. ¶¶ 28-29. Finjan has presented no evidence linking the WXA + Gateway as essentially the same as CFS – because it is not and no such evidence exists.

**The '780 Patent**: SonicWall seeks relief only on Finjan's infringement allegations that *require* Capture ATP.  Ex. 18 ¶ 15. Finjan's September 2014 identification of GAV, CGSS, and the TZ/NSA firewalls are not notice of infringement by Capture ATP, which Finjan agrees is a different product. Motion at 16. The question is not whether the products have one common function (e.g., hashing), but whether they are essentially the same (i.e., "other models" or "related products" as set forth in *Funai* and *K-TEC*). Finjan ignores this standard because it cannot meet it. Gmuender Decl. ¶¶ 4, 5, 7. Finjan's cited evidence proves the absence of notice: the 2014 documents *do not mention* Capture ATP (Ex. 31, 32), which Finjan admits *did not exist* in 2014 (Opp. at 24). There is *no allegation of infringement* of the '780 Patent by *any* product in the June 2017 presentation (Ex. 38).

**The '844 Patent**:  Finjan does not contend that it identified the accused SonicWall products in 2014.  Instead, Finjan points to its identification of a SecureWorks product as its only evidence of notice in 2014.  SecureWorks is an entirely *different company* acquired by Dell. Ex. 48. SonicWall never sold SecureWorks' products and they are not at issue here. Finjan has not asserted that the SecureWorks product is essentially the same as the accused products. Finjan admits that it first identified Capture ATP in June 2016 and Gateways in March 2017. Opp. at 24. Finjan does not contend that it identified the ES products prior to June 2017.  *Id*.

15

1

2  Dated: December 31, 2020

Respectfully submitted,

3
*/s/ Nicole E. Grigg*
Nicole E. Grigg (SBN 307733)
Email: NEGrigg@duanemorris.com

4  **DUANE MORRIS LLP**
D. Stuart Bartow (SBN 233107)

5  2475 Hanover Street
Palo Alto, CA 94304-1194

6  Tel.: 650.847.4150
Fax: 650.847.4151

7

8  Matthew C. Gaudet (admitted *pro hac vice*)
Email: mcgaudet@duanemorris.com

9  Robin L. McGrath (admitted *pro hac vice*)
Email: rlmcgrath@duanemorris.com

10  David C. Dotson (admitted *pro hac vice*)
Email: dcdotson@duanemorris.com

11  Jennifer H. Forte (admitted *pro hac vice*)
Email: jhforte@duanemorris.com

12  1075 Peachtree Street, Ste. 2000
Atlanta, GA 30309

13  Telephone: 404.253.6900

14  Joseph A. Powers (admitted *pro hac vice*)
Email: japowers@duanemorris.com

15  Jarrad M. Gunther (admitted *pro hac vice*)
Email: jmgunther@duanemorris.com

16  30 South 17th Street
Philadelphia, PA 19103

17  Telephone: 215.979.1000

18  Attorneys for Defendant
SONICWALL, INC.

19

20

21

22

23

24

25

26

27

28