**DUANE MORRIS LLP**
D. Stuart Bartow (CA SBN 233107)
dsbartow@duanemorris.com
Nicole E. Grigg (CA SBN 307733)
negrigg@duanemorris.com
2475 Hanover Street
Palo Alto, CA 94304-1194
Telephone: 650.847.4150
Facsimile: 650.847.4151

**DUANE MORRIS LLP**
Joseph A. Powers (PA SBN 84590)
Admitted *Pro Hac Vice*
japowers@duanemorris.com
Jarrad M. Gunther (PA SBN 207038)
Admitted *Pro Hac Vice*
jmgunther@duanemorris.com
30 South 17th Street
Philadelphia, PA 19103
Telephone: 215.979.1000
Facsimile: 215.979.1020

**DUANE MORRIS LLP**
Matthew C. Gaudet (GA SBN 287789)
Admitted *Pro Hac Vice*
mcgaudet@duanemorris.com
John R. Gibson (GA SBN 454507)
Admitted *Pro Hac Vice*
jrgibson@duanemorris.com
Robin L. McGrath (GA SBN 493115)
Admitted *Pro Hac Vice*
rlmcgrath@duanemorris.com
David C. Dotson (GA SBN 138040)
Admitted *Pro Hac Vice*
dcdotson@duanemorris.com
Jennifer H. Forte (GA SBN 940650)
Admitted *Pro Hac Vice*
jhforte@duanemorris.com
1075 Peachtree NE, Suite 2000
Atlanta, GA 30309
Telephone: 404.253.6900
Facsimile: 404.253.6901

Attorneys for Defendant
SONICWALL INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

FINJAN, LLC, a Delaware Limited Liability Company,

Plaintiff,

v.

SONICWALL INC., a Delaware Corporation,

Defendant.

Case No.: 5:17-cv-04467-BLF-VKD

**DEFENDANT SONICWALL INC.'S MOTION *IN LIMINE* TO EXCLUDE DR. MCDUFF'S METHOD NO. 1 (MOTION IN LIMINE NO. 2)**

Date: March 18, 2021
Time: 1:30 PM
Courtroom: 3, 5th Floor
Judge: Hon. Beth Labson Freeman

**REDACTED**

**TABLE OF EXHIBITS REFERENCED**[1]

| | |
|---|---|
| September 4, 2020 Expert Report of DeForest McDuff, Ph.D | Ex. 1 |
| September 3, 2020 Expert Report of Michael Mitzenmacher, Ph.D. Regarding Infringement by SonicWall, Inc. of Patent Nos. 6,804,780; 6,965,968; and 7,613,926 | Ex. 4 |
| October 26, 2020 Deposition Transcript of Michael Mitzenmacher, Ph.D. | Ex. 8 |
| November 2, 2020 Deposition Transcript of DeForest McDuff, Ph.D. | Ex. 10 |
| Juniper Networks, Inc.'s Motion for Attorneys' Fees Pursuant to 35 U.S.C § 285, *Finjan, Inc. v. Juniper Networks, Inc.*, 3:17-cv-5659-WHA, Dkt. 634 (N.D. Cal. Nov. 30, 2020) | Ex. 11 |
| Order RE Request for Attorney Fees, *Finjan, Inc. v. Juniper Networks, Inc.*, 3:17-cv-5659-WHA, Dkt. 648 (N.D. Cal. Jan. 9, 2021) | Ex. 12 |
| Marker Advisors, LLC document marked as McDuff Deposition Ex. No. 5 | Ex. 13 |
| February 28, 2017 Email marked as McDuff Deposition Ex. No. 10 | Ex. 14 |
| Order on Motions in *Limine*, *Finjan, Inc. v. Cisco Sys., Inc.*, No. 17-cv-72-BLF, Dkt. 660 (N.D. Cal. June 5, 2020) | Ex. 15 |
| Order Regarding Motions in *Limine, Finjan, Inc. v. Blue Coat Sys.*, No. 15-cv-03295, Dkt. 404 (N.D. Cal. Nov. 4, 2017), | Ex. 16 |
| January 16, 2014 Email, bearing the bates numbers FINJAN-SW 403755 - FINJAN-SW 403759 | Ex. 17 |
| Joint Statement Regarding Dispute Regarding Additional Deposition Time of Dr. Christine Meyer, *Finjan, Inc. v. Symantec Corp.*, No. 14-cv-02998-HSG, Dkt. 361 (N.D. Cal. Feb. 6, 2018) | Ex. 18 |

[1]All exhibits are attached to the Declaration of Jarrad M. Gunther.

Pursuant to FRE 702 and *Daubert*, SonicWall seeks to exclude Finjan's damages expert, Dr. McDuff, from presenting his Method 1 royalty opinions. Method 1 [REDACTED]," and results in a worldwide, undiscounted opinion of "[REDACTED]." Ex. 1 ¶ 8(c). Both the royalty base and royalty rate reflect disqualifying methodological flaws.

Royalty Base: Dr. McDuff's royalty base fails to account for instances where Finjan accuses a *combination* of products, not the individual products. He includes within his royalty base the entire revenue earned from every sale of every product, even if the customer did not buy all of the required components (and is thus not an infringement under Finjan's theory).

Royalty Rate: Dr. McDuff opines that the [REDACTED], Symantec, and Sophos lump sum settlements are "highly relevant" and that the jury verdicts confirm that the lump sum amount reflects application of 8 and 16% royalty rates. But there is no evidence to suggest that the royalty rates found by the juries played any part in the calculation of the lump sum settlement figures agreed to years later.

## I. Dr. McDuff's Royalty Base Is Not Tied to Finjan's Actual Infringement Theories

Dr. McDuff's royalty base includes substantially more than "[REDACTED]" (Ex. 1 ¶ 8(c)), because it ignores that most of Finjan's infringement allegations require *combinations* of multiple products, not just the individual products themselves.

'968 Patent: Finjan's only infringement theory for the '968 Patent accuses the ***combination*** of a SonicWall WXA ***with*** a SonicWall Gateway. Ex. 4 ¶ 18; Ex. 8 at 72:25-73:14. Dr. McDuff agrees that SonicWall has sold only [REDACTED] units to date, earning less than [REDACTED] in worldwide revenues. Ex. 10 at 212:14-214:2. Nonetheless, his royalty base for the '968 Patent includes all revenues for every SonicWall Gateway and WXA sold – making no attempt to identify the very small portion of Gateways actually sold or used with a WXA (which by definition could not exceed [REDACTED]). Ex. 1, at Attachment B-5.

This is erroneous as a matter of law, as the mere sale of one component of an allegedly infringing combination does not by itself infringe. *See Deepsouth Packing Co. v. Laitram Corp.*, 406

U.S. 518, 528 (1972); *see also Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 344 (1961) ("[I]f anything is settled in the patent law, it is that the combination patent covers only the totality of the elements in the claim and that no element, separately viewed, is within the grant."); *Centillion Data Systems., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1288 (Fed. Cir. 2011); *Ball Aerosol & Specialty Container, Inc. v. Limited Brands, Inc.*, 555 F.3d 984, 995 (Fed. Cir. 2009). The Court should thus strike Dr. McDuff's '968 damages opinions, *i.e.*, that SonicWall would agree to pay Finjan a royalty of [REDACTED] to license just the '968 Patent. Ex. 1, at Attachment B-2. By providing Finjan a royalty on Gateway units that Finjan has not shown have been combined with a WXA (and thus do not infringe), the royalty improperly "punishes beyond the reach of the statute." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333-34 (Fed. Cir. 2009) (a patent holder must prove the extent of infringement, and cannot recover damages for non-infringing uses). Dr. McDuff's opinion so far outstrips the revenues from the mere [REDACTED] of the WXA (whose WXA sales generated [REDACTED]), that it cannot possibly be methodologically sound. *See* Ex. 11 (quoting Judge Alsup's *Daubert* Order: "that Expert Arst would suggest that Juniper would have been willing to pay an eyepopping $60-$70 million as a royalty for the sake of $1.8 million in revenue is preposterous. This order therefore agrees with Juniper that Expert Arst's testimony 'defies basic laws of economics' such that its unreliability renders it inadmissible under FRE 702.'"); Ex. 12 ("Finjan's first-round '494 patent damages fiasco wasted a great deal of everyone's time and energy. … Finjan tried to sneak this theory in with its expert-damages report, but we caught it, and the *Daubert* order excluded the trick.").

Even as to the [REDACTED] customers who bought a WXA (the outer limit on '968 damages), Dr. McDuff has no opinion as to how many have actually been combined with a Gateway into an allegedly infringing system. Ex. 10 at 211:17-22; *id.*at 181:14-25 ("So in terms of determining the number of units that are infringing, that would be a question for the finder of fact and for the technical experts in the case."). He thus has no opinion on the revenues earned on the combination actually alleged to infringe the '968 Patent: a WXA *plus* a Gateway.

<u>Patents Asserted Against Capture ATP.</u> There are two problems with Dr. McDuff's damages

opinion regarding the other seven patents as they relate to allegations that include Capture ATP.

*Combinations*. The first problem is similar to the failure regarding the ’968 Patent. Specifically, for each of the other Patents-in-Suit (’305, ’408, ’844, ’494, ’154, ’780, and ’926 Patents), many of Finjan’s infringement allegations require the ***combination*** of Capture ATP with either a Gateway or an ESA. Again, Dr. McDuff has no opinion regarding the revenues from sales or the number of customers who bought *both* components of the accused combinations (as opposed to including every sale of a Gateway and ESA, regardless of whether the customer ever bought or used Capture ATP). Instead, he admitted his assumption of infringement was not made “with that level of specificity” as to what combinations were required (Ex. 10 at 79:17-80:20), and he was “not performing that level of technical analysis” to know the product combinations (*id.*at 180:16-22).

Consistent with his failure to offer a damages opinion where Capture ATP is required as part of a combination, Dr. McDuff presented a table (Table 14) that purports to identify the “Accused Products by Patent” – but it simply lists dozens of products without noting whether Finjan’s experts allege infringement by a combination (and, if so, how that impacts his damages analysis). Ex. 1 at Table 14. This failure to account for the accused combinations will be further compounded if the Court’s summary judgment rulings eliminate the Gateway-only theories, such that *every* infringement theory will require Capture ATP (alone or in combination with another product).

*Revenue Period*. The second problem on these seven patents is that Dr. McDuff’s royalty base erroneously includes tens of millions of dollars generated before Capture ATP was commercially available. Dr. McDuff concedes that Capture ATP was not commercially available with the Gateways until at least August 1, 2016, and not available with ESAs until February 2017. Ex. 10 at 201:5-9, *see also id.* 131:11-133:23; Ex. 13; Ex. 10 at 201:10-203:8; Ex. 14. It is axiomatic that sales of Gateways/ESAs before these dates cannot infringe, because they could not be combined with the product (Capture ATP) required for the purported infringement. Nevertheless, Dr. McDuff’s unapportioned royalty base includes [REDACTED] of individual Gateway and ESA revenues before these dates. *See* Ex. 1 at Attachment D-1 – D-17.

Both of these errors infect Method 1 ([REDACTED] [REDACTED]) and Method 2, which calculates a royalty per infringing unit. *See* Ex. 1 ¶ 142 & Table 9.

**II. Dr. McDuff's Reliance On Outlier Settlement Agreements Should Be Excluded**

Dr. McDuff opines that there [redacted]": [redacted], Sophos, and Symantec. Ex. 1 ¶ 45. According to Dr. McDuff, each of these lump sum settlements reflect the application of "[redacted]." *Id.* There are no facts to support this claim, and the Court should exclude reference to these litigation-related settlements. *See* Ex. 15, at 16-17 ("The Court addresses each agreement bearing in mind that these agreements must be viewed critically because they may be tainted due to external factors such as threatened or actual litigation.") (citing *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012)).

[redacted]. Dr. McDuff should be precluded from referencing: (1) the *Secure Computing* jury's $9.18 million verdict and the court's $37.3 million award; and (2) the [redacted]. The Court has previously precluded Finjan's use of the $37.3 million award, as "that award was enhanced after the jury's finding of willful infringement." Ex. 15 at 18; Ex. 16, at 18-20 (excluding [redacted] agreement "for all purposes except for arguing validity as rebuttal" and holding that Finjan's damages expert could not rely on litigation-related settlements "to show the dollar amount of licensing" and thus precluding Finjan from introducing evidence regarding "the amount of settlement"). There is no reason to deviate from those rulings here. The Court should also exclude Dr. McDuff's opinion connecting the jury's verdict (and its use of 8 and 16% rates to calculate the damages figure) to the lump sum figure found in the [redacted] agreement. The [redacted] settlement followed several additional actions and a threat of injunction, among other differentiating facts. Ex. 1 ¶ 45(a). The Court has not only previously excluded that figure as "an outlier," but further excluded it because "it is unclear from the record … how and why [redacted] agreed to make that payment." Ex. 15 at 17-18. Dr. McDuff provides no explanation here, offering only that "[redacted]." Ex. 10 at 232:23-24; *see also id.* at 233:5-234:5. This is nothing more than unsupported *ipse dixit* that is actually contradicted by Finjan's own statements. *See, e.g.*, Ex. 17 (FINJAN-SW 403755) ("[redacted]"). The Court should preclude Dr.

McDuff (and fact witnesses) from referencing the *Secure Computing* verdict and resulting award, and the [REDACTED], and preclude Dr. McDuff from relying on these amounts.

Symantec. The Court previously held the Symantec settlement "relevant to the issues of damages and non-obviousness." Ex. 15 at 18. SonicWall, however, respectfully submits that establishing the litigation history (which included over a dozen actions across the world) during cross will not sufficiently address the prejudicial nature of this settlement and thus requests that the [REDACTED] be excluded here pursuant to FRE 403. If the lump sum figure is permitted into evidence, however, there is no support for Dr. McDuff's opinion that the figure was calculated by application of 8% and 16% royalty rates. Dr. McDuff points solely to the trial testimony of Finjan's expert from the 2013 Blue Coat case (5:13-cv-03999-BLF) opining that a reasonable royalty would reflect a rate of 6 to 8%. He then notes that "[REDACTED]" Ex. 1 ¶ 45(c). But many portions of this verdict were overturned on appeal by the Federal Circuit, which concluded that there was no basis to equate an $8-per-user fee to 8-16% royalty rates. *Finjan, Inc. v. Blue Coat Sys.*, 879 F.3d 1299, 1312 (Fed. Cir. 2018). Finjan also sought nearly $500 million in damages from Symantec alone. Ex. 18, at 1-2. Thus, even if the Court allows the lump sum figure, it should preclude Dr. McDuff from opining that it was the result of the parties applying 8 and 16% royalty rates.

Sophos. In 2016, a jury awarded Finjan $15 million against Sophos, [REDACTED]. There is no factual basis to opine, however, that the [REDACTED] was based on rates of 8 and 16%. The trial court found it "unclear how the jury calculated its award" of $15 million. *Finjan, Inc. v. Sophos, Inc.*, 244 F. Supp. 3d 1016, 1037 (N.D. Cal. Mar. 14, 2017) (holding that it was "not clear that the jury adopted Layne-Farrar's opinion," and "the jury easily could have calculated an appropriate one-time lump sum" using Sophos' expert's opinions). The Court should thus exclude any opinion tying the Sophos settlement to 8 & 16% rates.

Finally, if the Court excludes one or more of these settlements, the Court should also exclude any mention of the aggregate amount of Finjan's settlements. *See* Ex. 15 at 19.

Dated: March 4, 2021

Respectfully Submitted,

*/s/ Nicole E. Grigg*
Nicole E. Grigg (formerly Johnson)
Email: NEGrigg@duanemorris.com
**DUANE MORRIS LLP**
2475 Hanover Street
Palo Alto, CA 94304-1194

Matthew C. Gaudet (*Pro Hac Vice*)
Email: mcgaudet@duanemorris.com
John R. Gibson (*Pro Hac Vice*)
Email: jrgibson@duanemorris.com
Robin L. McGrath (*Pro Hac Vice*)
Email: rlmcgrath@duanemorris.com
David C. Dotson (*Pro Hac Vice*)
Email: dcdotson@duanemorris.com
Jennifer H. Forte (*Pro Hac Vice*)
Email: jhforte@duanemorris.com
1075 Peachtree Street, Ste. 2000
Atlanta, GA 30309

Joseph A. Powers (*Pro Hac Vice*)
Email: japowers@duanemorris.com
Jarrad M. Gunther (*Pro Hac Vice*)
Email: jmgunther@duanemorris.com
30 South 17th Street
Philadelphia, PA 19103

*Attorneys for Defendant*
SONICWALL INC.

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of **DEFENDANT SONICWALL INC.'S MOTION *IN LIMINE* TO EXCLUDE DR. MCDUFF'S METHOD NO. 1** was served by ECF on all counsel of record on March 4, 2021.

*/s/ Nicole E. Grigg*
Nicole E. Grigg