**DUANE MORRIS LLP**
D. Stuart Bartow (CA SBN 233107)
dsbartow@duanemorris.com
Nicole E. Grigg (CA SBN 307733)
negrigg@duanemorris.com
2475 Hanover Street
Palo Alto, CA 94304-1194
Telephone: 650.847.4150
Facsimile: 650.847.4151

**DUANE MORRIS LLP**
Joseph A. Powers (PA SBN 84590)
Admitted *Pro Hac Vice*
japowers@duanemorris.com
Jarrad M. Gunther (PA SBN 207038)
Admitted *Pro Hac Vice*
jmgunther@duanemorris.com
30 South 17th Street
Philadelphia, PA 19103
Telephone: 215.979.1000
Facsimile: 215.979.1020

**DUANE MORRIS LLP**
Matthew C. Gaudet (GA SBN 287789)
Admitted *Pro Hac Vice*
mcgaudet@duanemorris.com
John R. Gibson (GA SBN 454507)
Admitted *Pro Hac Vice*
jrgibson@duanemorris.com
Robin L. McGrath (GA SBN 493115)
Admitted *Pro Hac Vice*
rlmcgrath@duanemorris.com
David C. Dotson (GA SBN 138040)
Admitted *Pro Hac Vice*
dcdotson@duanemorris.com
Jennifer H. Forte (GA SBN 940650)
Admitted *Pro Hac Vice*
jhforte@duanemorris.com
1075 Peachtree NE, Suite 2000
Atlanta, GA 30309
Telephone: 404.253.6900
Facsimile: 404.253.6901

Attorneys for Defendant
SONICWALL INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>SONICWALL INC., a Delaware Corporation,<br><br>Defendant. | Case No.: 5:17-cv-04467-BLF-VKD<br><br>**SONICWALL INC.'S MOTION TO EXCLUDE DR. STRIEGEL'S TECHNICAL APPORTIONMENT OPINIONS AND DR. MCDUFF'S RELIANCE THEREON (MOTION IN LIMINE NO. 3)**<br><br>Date: March 18, 2021<br>Time: 1:30 PM<br>Courtroom: 3, 5th Floor<br>Judge: Hon. Beth Labson Freeman |

**REDACTED**

# TABLE OF REFERENCED EXHIBITS[1]

| | |
|---|---|
| September 4, 2020 Expert Report of DeForest McDuff, Ph.D | Ex. 1 |
| September 3, 2020 Expert Report of Dr. Aaron Striegel | Ex. 6 |
| November 3, 2020 Deposition Transcript of Aaron Striegel, Ph.D. | Ex. 9 |
| Chart marked as Striegel Deposition Ex. No. 8 | Ex. 19 |
| SonicWall SonicWave and SonicPoint Series Wireless Access Points datasheet, bearing bates numbers SonicWall-Finjan_00365304 - SonicWall-Finjan_00365305 and SonicWall-Finjan_00365316 - SonicWall-Finjan_00365317, marked as Striegel Deposition Ex. No. 12 | Ex. 20 |
| SonicWall SuperMassive Series data sheet, bearing bates numbers SonicWall-Finjan_00000655 - SonicWall-Finjan_00000666, marked as Striegel Deposition Ex. No. 6 | Ex. 21 |

---

[1] All exhibits are attached to the Declaration of Jarrad M. Gunther.

i

SONICWALL, INC.'S MOTION TO EXCLUDE DR. STRIEGEL'S TECHNICAL APPORTIONMENT OPINIONS AND DR. MCDUFF'S RELIANCE THEREON (MOTION IN LIMINE NO. 3), CASE NO. 5:17-CV-04467-BLF-VKD

| | |
|---|---|
| 1 | SonicWall moves to exclude the technical apportionment opinions of Dr. Aaron Striegel (Ex. 6, at ¶¶ 86-123), pursuant to FRE 702 and *Daubert*. These opinions follow the following framework. Ignorant of the systems that Finjan actually accuses of infringement, Dr. Striegel grouped the accused products into ten "█████████████████████████" (Ex. 6 ¶ 87): (1) Supermassive/TZ SOHO Appliances/Network Security Appliances ("Gateways"); (2) SonicWave; (3) Advanced Gateway Security Suite ("AGSS"); (4) Comprehensive Gateway Security Suite ("CGSS"); (5) Capture ATP; (6) Gateway Antivirus, Antispyware, Intrusion Prevention, Application Intelligence and Control software bundle ("GAV/IPS"); (7); Email Security Appliances and Software; (8) Hosted Email; (9) Capture Client; and (10) WAN Acceleration Appliance ("WXA"). For each of these 10 categories, Dr. Striegel identified "█████████████████████████" *Id.* He then determined which top-level functions "overlap" with a given "Asserted Patent." *Id.* at ¶ 114. Finjan's damages expert (Dr. McDuff) then accepts Striegel's opinions (Ex. 6 at App. D; *see also* Ex. 19) *in toto* and puts it into percentage form, *i.e.*, if Dr. Striegel opines that an accused product is in a "category" that has 12 top-level functions and that 5 of the functions overlap with a patent, then Dr. McDuff applies an apportionment factor of 41.7% (5/12) to the products' revenue for that patent. Ex. 1 at Attachment E-1. This is a legally insufficient apportionment methodology for the reasons described below. |

**I.   Legal Standard**

The "Supreme Court made clear that 'when a *patent is for an improvement*, … the patentee must show in what particulars his improvement has *added to the usefulness* of the machine or contrivance. He must separate its results distinctly from those of the other parts, . . . .' In other words, the patent holder should only be compensated for the approximate incremental benefit derived from his invention." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1233 (Fed. Cir. 2014). The Federal Circuit has thus held "[w]hen the accused technology does not make up the whole of the accused product, apportionment is required." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1309 (Fed. Cir. 2018). "This principle – apportionment – is the governing rule where multi-component products are involved. Consequently, to be admissible, all expert damages opinions must separate the value of the allegedly infringing features from the value of all other features." *Commonwealth Sci. & Indus.*

1

*Research Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) ("*CSIRO*"). The apportionment evidence "must be reliable and tangible, and not conjectural or speculative." *Garretson v. Clark*, 111 U.S. 120, 121 (1884). "[G]iven the great financial incentive parties have to exploit the inherent imprecision in patent valuation, courts must be proactive to ensure that the testimony presented … is sufficiently reliable to support a damages award." *CSIRO*, 809 F.3d at 1301.

Dr. Striegel's technical apportionment opinions cannot meet this essential requirement because they are "plagued by logical deficiencies" and use data that is "not sufficiently tied to the facts of the case." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1297 (Fed. Cir. 2015).

## II. Dr. Striegel's Technical Apportionment Opinions Should Be Struck for Two Reasons

### A. Dr. Striegel Failed to Undertake the Necessary Further Apportionment

When an initial apportionment still leaves multiple discrete functions – some of which are alleged to infringe, others not – then further apportionment is required. *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014) ("Where the smallest salable unit is, in fact, a multi-component product containing several non-infringing features with no relation to the patented feature … , the patentee must do more to estimate what portion of the value of that product is attributable to the patented technology."); *Blue Coat*, 879 F.3d at 1311 ("[I]f the … smallest identifiable technical component—contains non-infringing features, additional apportionment is still required.").

As noted above, Dr. Striegel opined that each of his 10 product groups consisted of various top-level functions and then determined which top-level functions overlap with the Asserted Claims of the Asserted Patents. Ex. 6 at ¶¶ 111-123. Dr. Striegel confirmed at his deposition that, in determining whether "overlap" existed, he made no attempt to determine whether the top-level function he identified *also* included substantial non-patented features that must be apportioned out, but instead only whether the function "would receive a reasonable benefit from the asserted patents." Ex. 9 at 223:17-23; *see also id.* at 54:11-21, 56:17-57:8, 57:24-58:22, 83:12-84:1, 109:16-110:1, 137:19-138:17. Indeed, rather than rigorously avoid the inclusion of substantial non-patented features, Dr. Striegel testified that he simply sought to determine whether his decision to attribute the top-level function to a benefit of the patent would "pass a sniff test," such that the overlap would not

2

be considered "miniscule" or "just minor or an edge case or a niche case that's almost meaningless." *Id.* at 225:12-228:4; *see also id. at* 173:23-174:12 (describing the question as whether it would be "plausible," and to confirm for himself that the overlap would be "not just small and miniscule"). This is a meaningless standard, and is neither reliable nor repeatable. Moreover, by attributing to Finjan 100% of the benefits of a top-level function merely when the alleged overlap is "not just small and miniscule," he did not conduct the further apportionment required by the law to exclude the value provided by non-accused features within the top-level function. *Blue Coat*, 879 F.3d at 1310-11; *VirnetX*, 767 F.3d at 1327.

To be clear, Dr. Striegel did not even examine the top-level features to see if non-accused or non-patented functions are present within these top-level functions, much less determine their relative significance. For example, Dr. Striegel opined that the benefits provided by the '305 and '408 Patents overlap with the top-level function of Comprehensive Wireless Security for SonicWave Access Points. Ex. 6 at App. D; Ex. 19. The same marketing document that Dr. Striegel relies on to identify this top-level function also lists **12** sub-features under this one top-level function; Dr. Striegel only points to one of those 12 sub-features of this top-level feature as overlapping with the patent (in other words, he lifts one of these 12 sub-features word-for-word, and says nothing about the other 11). Ex. 9 at 260:17-262:20; Ex. 20. Dr. Striegel admitted that he did not render any opinion as to whether any of the Patents-in-Suit have anything to do with the other 11 features. *Id.* at 265:24-267:22. But his opinions have the effect of Finjan – via Dr. McDuff's damages opinions – capturing 100% of the value of all 12 of these sub-features, even though Dr. Striegel's actual opinion is only that 1 of the 12 (1/12th of that top-level feature) is implicated by the patent. Likewise, for the Gateways, he concluded it was "much cleaner" for him to ignore – rather than apportion out – the scores of features listed under each of his 12 top-level functions. *Id.* at 249:5-251:13; Ex. 21. Dr. Striegel also failed to apportion numerous other non-accused features: the same datasheet that he relies on to identify 12 top-level functions for the Gateways (Ex. 9 at 147:17-149:5; Ex. 21) includes a page titled "Feature summary" that contains 12 *different* bolded headings with bulleted sub-features, many of which – *e.g.*, "Wireless," "VoIP," and "SSL/SSH decryption and inspection" – are clearly not accused of infringement. Dr. Striegel conceded that he made no attempt to map these non-accused features to

3

his top-level functions and, therefore, did not apportion them out.  Ex. 9 at 157:14-159:6.

### B. Dr. Striegel Did Not Perform the Necessary Analysis to Conduct Apportionment

The substantive failure described above is a direct result of the fundamental defects in Dr. Striegel's methdology.  As a matter of basic methodological process, Dr. Striegel did not take the steps required by the law to make his apportionment opinion reliable and tied to the facts of this case.

<u>No Knowledge of Finjan's Infringement Allegations.</u>  Dr. Striegel admitted having no understanding of the specific product features alleged to infringe each patent, and instead generically assumed that the list of product groups he was provided by counsel infringed.  *See*, *e.g.*, Ex. 9 at 53:8-54:1, 67:8-70:6, 109:5-111:7, 135:2-15, 248:18-249:4, 290:4-291:14.  Indeed, he testified that it would simply have been too much work to "go through and check the box" with Finjan's other experts to learn what was actually accused of infringing each patent.  *Id.* at 292:19-22.  By definition then, Dr. Striegel's technical apportionment opinions are not tied to "the claimed inventions' footprint in the marketplace," nor do they address the "harm caused by infringement of the claimed invention." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010); *see also Riles v. Shell Exploration & Production Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002) (excluding damages expert; "model does not account for the actual losses due to infringement of the patented method").

On the '968 Patent, for example, Dr. Striegel's apportionment opinion included functionality within products that Finjan admitted it is not accusing.  *Compare* Ex. 6 ¶¶ 114, 116 (and App. D thereto) and Ex. 19 (identifying "Content Filtering" as a "top-level function" of the Gateways and AGSS software bundle that maps to a benefit provided by the '968 Patent), *with* Dkt. 320-36 (Finjan's counsel admitting that Content Filtering is not accused).  This failure to understand what Finjan actually accuses of infringement permeates the entirety of Dr. Striegel's apportionment analysis.  Ex. 6 ¶¶ 114-123.  His opinions should be struck on this basis alone.

<u>No Knowledge of the State of the Art to Assess Incremental Improvement.</u>  Dr. Striegel admitted that he "did not attempt to identify the incremental value" that the patented invention adds to the end product – despite this being a legal requirement for apportionment.  Ex. 9 at 139:14-23; *Ericsson*, 773 F.3d at 1233.  He further made no effort to isolate the value of the patented improvement found in the accused products or identify the incremental improvement that the patent

4

SONICWALL, INC.'S MOTION TO EXCLUDE DR. STRIEGEL'S TECHNICAL APPORTIONMENT OPINIONS AND DR. MCDUFF'S
RELIANCE THEREON (MOTION IN LIMINE NO. 3), CASE NO. 5:17-CV-04467-BLF-VKD

brings over the prior art. *Id.* at 139:24-141:2.  Indeed, he confirmed he "was not asked to assess the prior art." *Id.*.  These failures led Dr. Striegel to capture on Finjan's behalf value that Dr. Striegel himself conceded was present in the prior art.  For example, as to the Gateways, Dr. Striegel opined that the "top-level function" of "RFDPI Engine" "overlaps" with the benefits of the '844, '494, and '926 Patents merely because it is involved in "receiving" network traffic.  *See*, *e.g.*, Ex. 6 ¶ 114.  But he admitted that receiving network traffic is a component of **all** networks and is not a function whose value can be attributed to the patents-in-suit.  Ex. 9 at 150:4-12.  As another example, he captured on Finjan's behalf value provided by functionality found in unasserted Claim 1 of the '305 Patent (from which asserted claims 11 and 12 depend), because he was unaware that Claim 1 had been cancelled. *Id.* at 116:25-117:5, 120:2-20, 121:6-122:7.  Attributing to Finjan the value of functionality present in the prior art is the exact opposite of what the governing principles of apportionment require.

Dr. Striegel went so far as to attribute to Finjan 100% of the value of SonicWall's patented security processing known as "Reassembly-Free Deep Packet Inspection" (or "RFDPI"). Ex. 6 ¶ 114. Specifically, he admitted that "DPI would have been around for quite some time," "Finjan did not invent the DPI portion" of RFDPI, and none of the Patents-in-Suit "focus on the aspects of doing [DPI] in a manner as espoused by the RFDPI in the sense of the reassembly-free version of DPI that SonicWall touts as a top-level feature." Ex. 9 at 251:15-21. Nevertheless, Dr. Striegel opined that SonicWall's "[REDACTED]" of the Gateways (Ex. 6 ¶¶ 91) that maps to the benefits provided by all 8 of the Patents-in-Suit (*id.* ¶ 114) and, therefore, he attributed 100% of the value of that function to Finjan.  This is improper. *Exmark Mfg. Co. v. Briggs & Stratton Power Products Grp., Inc.*, 879 F.3d 1332, 1350 (Fed. Cir. 2018) (where defendant owns patents on the accused functionality, the patentee must do more than conclude these patented "components do not affect the value of the accused mower," because that "amounts to nothing more than speculation.").

The Court should strike paragraphs 86-123 of Dr. Striegel's report and preclude Dr. Striegel from offering these opinions.  Because Dr. McDuff relies on Dr. Striegel as the sole basis for apportionment, Dr. McDuff's opinions should similarly be excluded. *See NetFuel, Inc. v. Cisco Sys., Inc.*, No. 5:18-cv-02352-EJD, 2020 WL 1274985, *10-*11 (N.D. Cal. Mar. 17, 2020); *AVM Techns., LLC v. Intel Corp.*, No. 15-33-RGA, 2017 WL 1536390, *4-*5 (D. Del. Apr. 27, 2017).

| | |
|---|---|
| Dated:  March 4, 2021 | Respectfully Submitted, |
| | /s/ Nicole E. Grigg |
| | Nicole E. Grigg (formerly Johnson) |
| | Email: NEGrigg@duanemorris.com |
| | **DUANE MORRIS LLP** |
| | 2475 Hanover Street |
| | Palo Alto, CA  94304-1194 |
| | |
| | Matthew C. Gaudet (*Pro Hac Vice*) |
| | Email: mcgaudet@duanemorris.com |
| | John R. Gibson (*Pro Hac Vice*) |
| | Email: jrgibson@duanemorris.com |
| | Robin L. McGrath (*Pro Hac Vice*) |
| | Email: rlmcgrath@duanemorris.com |
| | David C. Dotson (*Pro Hac Vice*) |
| | Email: dcdotson@duanemorris.com |
| | Jennifer H. Forte (*Pro Hac Vice*) |
| | Email: jhforte@duanemorris.com |
| | 1075 Peachtree Street, Ste. 2000 |
| | Atlanta, GA  30309 |
| | |
| | Joseph A. Powers (*Pro Hac Vice*) |
| | Email: japowers@duanemorris.com |
| | Jarrad M. Gunther (*Pro Hac Vice*) |
| | Email: jmgunther@duanemorris.com |
| | 30 South 17th Street |
| | Philadelphia, PA  19103 |
| | |
| | *Attorneys for Defendant* |
| | SONICWALL INC. |

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of **SONICWALL INC.'S MOTION TO EXCLUDE DR. STRIEGEL'S TECHNICAL APPORTIONMENT OPINIONS AND DR. MCDUFF'S RELIANCE THEREON** was served by ECF on all counsel of record on March 4, 2021.

*/s/ Nicole E. Grigg*
Nicole E. Grigg