**DUANE MORRIS LLP**
D. Stuart Bartow (CA SBN 233107)
dsbartow@duanemorris.com
Nicole E. Grigg (CA SBN 307733)
negrigg@duanemorris.com
2475 Hanover Street
Palo Alto, CA  94304-1194
Telephone: 650.847.4150
Facsimile: 650.847.4151

**DUANE MORRIS LLP**
Joseph A. Powers (PA SBN 84590)
Admitted *Pro Hac Vice*
japowers@duanemorris.com
Jarrad M. Gunther (PA SBN 207038)
Admitted *Pro Hac Vice*
jmgunther@duanemorris.com
30 South 17th Street
Philadelphia, PA  19103
Telephone: 215.979.1000
Facsimile: 215.979.1020

**DUANE MORRIS LLP**
Matthew C. Gaudet (GA SBN 287789)
Admitted *Pro Hac Vice*
mcgaudet@duanemorris.com
John R. Gibson (GA SBN 454507)
Admitted *Pro Hac Vice*
jrgibson@duanemorris.com
Robin L. McGrath (GA SBN 493115)
Admitted *Pro Hac Vice*
rlmcgrath@duanemorris.com
David C. Dotson (GA SBN 138040)
Admitted *Pro Hac Vice*
dcdotson@duanemorris.com
Jennifer H. Forte (GA SBN 940650)
Admitted *Pro Hac Vice*
jhforte@duanemorris.com
1075 Peachtree NE, Suite 2000
Atlanta, GA 30309
Telephone: 404.253.6900
Facsimile: 404.253.6901

Attorneys for Defendant
SONICWALL INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>SONICWALL INC., a Delaware Corporation,<br><br>Defendant. | Case No.: 5:17-cv-04467-BLF-VKD<br><br>**DEFENDANT SONICWALL INC.'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF DR. MCDUFF'S PRICE PER SCAN OPINIONS (METHOD NO. 3) (MOTION IN LIMINE NO. 4)**<br><br>Date:          March 18, 2021<br>Time:          1:30 PM<br>Courtroom: 3, 5th Floor<br>Judge:        Hon. Beth Labson Freeman |

### REDACTED

# TABLE OF REFERENCED EXHIBITS[1]

| | |
|---|---|
| September 4, 2020 Expert Report of DeForest McDuff, Ph.D | Ex. 1 |
| Order on Daubert Motions [Re: ECF 421, 423, 425, 427, 429, 431], *Finjan, Inc. v. Cisco Systems, Inc.*, Case No. 17-cv-00072-BLF, Dkt. No. 555 (N.D. Cal. Apr. 21, 2020) | Ex. 2 |
| September 3, 2020 Expert Report of Dr. Aaron Striegel | Ex. 6 |
| November 3, 2020 Deposition Transcript of Aaron Striegel, Ph.D. | Ex. 9 |
| November 2, 2020 Deposition Transcript of DeForest McDuff, Ph.D. | Ex. 10 |
| Marker Advisors, LLC document marked as McDuff Deposition Ex. No. 5 | Ex. 13 |
| Agreement for VirusTotal Services, bearing bates numbers SonicWall-Finjan_00101991 - SonicWall-Finjan_00101996, marked as Striegel Deposition Ex. No. 2 | Ex. 22 |
| Agreement for VirusTotal Services, bearing bates numbers FINJAN-SW 158696 - FINJAN-SW 158701, marked as Striegel Deposition Ex. No. 3 | Ex. 23 |
| January 8, 2017 Email, bearing bates numbers Finjan-SW 403972 - Finjan-SW 403972 | Ex. 24 |
| February 27, 2020 Deposition Transcript of Julie Mar-Spinola | Ex. 25 |
| September 7, 2016 Transcript of Proceedings, *Finjan, Inc. v. Sophos, Inc.*, Case No. C 14-1197 WHO (N.D. Cal.), bearing bates numbers FINJAN-SW158070 - FINJAN-SW158104 | Ex. 26 |
| 2018 SonicWall Cyber Threat Report, bearing bates numbers FINJAN-SW 433167 – FINJAN-SW 433191, marked as McDuff Deposition Ex. No. 4 | Ex. 27 |
| October 9, 2020 Expert Report of Stephen L. Becker, Ph.D. on Behalf of Defendant | Ex. 28 |

---

[1]All exhibits are attached to the Declaration of Jarrad M. Gunther.

Pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), SonicWall seeks to exclude Finjan's damages expert, Dr. McDuff, from presenting his Method 3 (Price-Per-Scan) reasonable royalty opinions.  For Method 3, Dr. McDuff looked to "the number of accused scans multiplied by an appropriate royalty per scan."  Ex. 1 (McDuff Report) ¶ 150.  Because the manner in which he derived both his "royalty per scan" and the "number of accused scans" are methodologically flawed and without basis in the facts, this methodology should be excluded.

## A.   Legal Standard

The Court is well-familiar with the general legal standard governing admission of expert opinion and, therefore, SonicWall will not repeat it here.  *See*, *e.g.*, Ex. 2 (Cisco *Daubert* Order), at 1-2; *see also Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.,* 809 F.3d 1295, 1302 (Fed. Cir. 2015) ("*CSIRO*") ("'Where the data used is not sufficiently tied to the facts of the case,' a damages model cannot meet the 'substantive statutory requirement of apportionment of royalty damages to the invention's value.'") (quoting *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015)).

## B.   Dr. McDuff's Royalty Rate of ▮▮▮ Per Scan Relies On Dr. Striegel's Flawed Analysis of the ▮▮▮▮ Agreements



Dr. McDuff opines that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" and claims that this amount is supported by the "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" and "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Ex. 1 ¶ 154 (emphasis added).  Dr. McDuff's conclusions are based entirely on Dr. Striegel's separate, flawed analysis of Finjan and SonicWall's ▮▮▮ licenses.  Ex. 10 at 147:1-6.

Specifically, Dr. Striegel opined that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," and also that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Ex. 6 ¶ 126.  Dr. McDuff's ▮▮/scan calculation is based on the price for "▮▮▮▮▮▮▮." Ex. 1 ¶ 154 n. 347.  But the actual record evidence confirms that neither SonicWall nor Finjan ever paid for, or even obtained a license to, ▮▮▮▮▮▮▮.  Instead,

1

they both purchased and obtained a license to a completely *separate and distinct* ███ service – "███████████████" – which both Drs. Striegel and McDuff admit was priced at ████ or less per look-up (*i.e.*, ██████████ scan figure that Dr. McDuff uses for his Method 3 royalty rate).  Ex. 9 at 33:23-40:18, 41:20-22; Ex. 22; Ex. 23; Ex. 10 at 159:9-163:17.  Put simply, Dr. Striegel was just plain wrong in opining that either Finjan or SonicWall had a license to ████████████.  And by relying on the higher ██████████ pricing (instead of the much lower pricing for ██████████████ service that SonicWall and Finjan actually licensed), Dr. McDuff calculated a royalty rate that was over-inflated by at least 16X, improperly skewing the damages range.  Because his royalty rate analysis is not tied to the facts of record, Dr. McDuff's per scan royalty rate is flawed, and his opinions regarding this method must be excluded.  *See CSIRO*, 809 F.3d at 1302 ("[A]s damages models are fact-dependent, a distinct but integral part of the admissibility inquiry is whether the data utilized in the methodology is sufficiently tied to the facts of the case.").

Nor would it be acceptable for Dr. McDuff to simply maintain his use of the price of the ██████████████ service even though it was never used by either party.  To be clear, in determining the royalty rate to apply to this method, Dr. McDuff relied heavily on his understanding that the ████ figure was consistent with "████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████" Ex. 1 ¶ 154(b), (c).  Absent the threshold relevance of both parties subscribing to and licensing the technology there is no reason for Dr. McDuff to have chosen the pricing for this service as relevant to the hypothetical negotiation.  In fact, it is used by neither, and therefore there is no reason that it would have been considered at the hypothetical negotiation and Finjan has failed to provide the requisite technical and economic relevance to be considered here, warranting exclusion.  *Wordtech Sys, Inc. v. Integrated networks Solutions, Inc.*, 609 F.3d 1308, 1319-20 (Fed. Cir. 2010) ("[C]omparisons of past patent licenses to the infringement must account for 'the technological and economic differences between them.'") (quoting *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870 (Fed. Cir. 2010)).

2

1   Although Dr. McDuff briefly mentions other alleged bases of support, none could possibly

2   provide a methodologically sound basis for use of this royalty rate here.  First, he references otherwise

3   undocumented discussions with Mr. Hartstein and Ms. Mar-Spinola saying that they used ████/scan

4   in negotiations with "████████████."  Ex. 1 ¶ 154 & n. 346.  As to Sophos, the final settlement

5   itself says nothing at all about a price per scan, and contemporaneous emails between Sophos and

6   Finjan confirm that ████████████████████ either.  *See, e.g.*, Ex. 24

7   (offering terms "████████████████████████████

8   ████████████████████████████████████

9   ████████████████████████████████████

10  ████████"  Ex. 1 ¶ 45(b).  The "others" are never identified and thus cannot be a basis for an analysis

11  of technical or economic comparability, especially in view of Ms. Mar-Spinola's testimony that

12  Finjan does not have "a standard pricing" and instead "[i]t's all dependent on the prospect."  Ex. 25

13  at 57:18-58:5.  Nor do any of Finjan's other licenses reflect any price per scan rate, much less a

14  ████/scan rate.  *Id.* at 55:6-11 (confirming that "████████████████████

15  ████████████████████).  In short, there is no basis to even begin an

16  analysis of economic or technical comparability from these data points; indeed, it is even worse than

17  the "starting point" rejected by the Federal Circuit in *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d

18  1299, 1312 (Fed. Cir. 2018), as there is nothing tying a ████████████ to what the parties

19  would have used at the hypothetical negotiation in the 2012-2014 period.  *See id.* ("Mr. Chaperot's

20  testimony that an 8–16% royalty rate would be the *current starting point* in licensing negotiations

21  says little about what the parties would have proposed or agreed to in a hypothetical arm's length

22  negotiation in 2008.").

23       Dr. McDuff also references Mr. Hartstein's testimony from the *Sophos* case (Ex. 1 at n. 346,

24  citing Finjan-SW 158070, at -85 (Ex. 26)), but the cited testimony is clearly discussing the *Blue Coat*

25  *I* jury verdict, which had nothing to do with a price per scan, and in any event, was overturned on

26  appeal after the Federal Circuit found that Finjan's testimony used figures that were "plucked from

27  thin air and, as such, cannot be the basis for a reasonable royalty calculation."  *Blue Coat*, 879 F.3d

28  at 1312.  This level of *ipse dixit* cannot sustain a methodology that would increase damages by an

3

order of magnitude.  *See DSU Med. Corp. v. JMS Co.*, 296 F. Supp. 2d 1140, 1158 (N.D. Cal. 2003), *aff'd,* 471 F.3d 1293 (Fed. Cir. 2006) ("Picking this million dollar number is classic ipse dixit and would remain so even if Dr. Degnan were to now essay an expansion of his reconstruction of the market.").

**C.      Dr. McDuff's Royalty Base Is Improperly Predicated On His Incorrect, Layman's Understanding of a Single Statement In SonicWall's Annual Cyber Threat Reports**

Dr. McDuff opined that ███████████████████████████████████████████ ██████████████." Ex. 1 ¶ 151.  Dr. McDuff then identified what he believed to be the "██████ ████████████████████████████████████████████████████████████████" (*id.* ¶ 153) based solely on statements in SonicWall's annual Cyber Threat Reports indicating that SonicWall as a company had collected, *e.g.*, "████████████████████████" in 2017.  *See id.* ¶ 152 and Attachment J-3 thereto (notes and sources, citing SonicWall's 2018-2020 Cyber Threat Reports)); Ex. 10 at 109:22-114:12; Ex. 27.  But the number of "unique malware samples" set forth in SonicWall's Cyber Threat Report is demonstrably ***not*** the number of "scans" performed by any SonicWall product, let alone one very specific product, *i.e.*, Capture ATP.  Instead, it represents the number of malware samples identified generally by the industry, *i.e.*, by SonicWall itself and third parties.  *See* Ex. 28 ¶ 550 (confirming understanding with SonicWall's Alex Dubrovsky).

Nor is this question just a battle of experts.  Dr. McDuff is not qualified to opine on the actual number of "scans" that Capture ATP performs for several reasons, and he points to no one else (*i.e.*, no fact witness or technical expert opinion) to justify this position.

*First*, Dr. McDuff does not have the necessary technical expertise that would allow him to render an expert opinion to calculate (or even approximate) the number of "scans" performed by Capture ATP.  Dr. McDuff admits he has no "formal expertise in computer science" and that he is not rendering any technical opinions in this case. Ex. 10 at 119:11-120:1.  Dr. McDuff further admits he did not consult with any of Finjan's technical experts to support his non-technical understanding of the statements in the Cyber Threat Report.  *Id.* at 116:2-6.  Nor is his interpretation of a statement in SonicWall's annual Cyber Threat Report a question of economics or damages, which is where Dr. McDuff's expertise resides.  *Id.* at 122:6-123:2.  Simply put, Dr. McDuff is not qualified to opine as

4

to his "understanding" that "a unique malware sample" as discussed in the Cyber Threat Report is the same "kind of scans that are performed by Capture ATP" and accused of infringement here. *Id.* at 119:4-10.

*Second*, Dr. McDuff's interpretation is directly contradicted by his opinions on other issues. For example, Dr. McDuff, citing to third-party market research firm Gartner, opined that SonicWall did not have a sandboxing technology (*i.e.*, Capture ATP) in the market until August 2016, at the earliest. Ex. 1 ¶ 13 ("                                                                            ."); Ex. 10 at 131:15-133:23; Ex. 13 (admitting Capture ATP was not released until summer of 2016).  It would thus be impossible for at least 172 million of the purported "scans" Dr. McDuff calculated using the Cyber Threat Report from 2014-August 2016—which account for over half of his royalty base—to represent "scans" performed by Capture ATP (which had not even been released during that period).  Ex. 10 at 123:9-124:18.

In sum, Dr. McDuff's "understanding" as to what the Cyber Threat Reports represented is not only unsupported by any technical foundation, but it is an area in which he does not possess expertise to offer an opinion.  Further, the opinion he does offer is contradicted by other opinions and citations to third party market analysis.

### D.    Conclusion

Dr. McDuff's Methodology No. 3 is the result of a flawed methodology for calculating a royalty rate, and an unsupported technical opinion by an economist to calculate the relevant royalty base.  Accordingly, the Court should preclude Dr. McDuff from providing his Method No. 3 opinions.

Dated:  March 4, 2021                              Respectfully Submitted,

*/s/ Nicole E. Grigg*
Nicole E. Grigg (formerly Johnson)
Email: NEGrigg@duanemorris.com
**DUANE MORRIS LLP**
2475 Hanover Street
Palo Alto, CA  94304-1194

Matthew C. Gaudet (*Pro Hac Vice*)
Email: mcgaudet@duanemorris.com

5

DEFENDANT SONICWALL, INC.'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF DR. MCDUFF'S PRICE PER SCAN
OPINIONS (METHOD NO. 3) (MOTION IN LIMINE NO. 4), CASE NO. 5:17-CV-04467-BLF-VKD

John R. Gibson (*Pro Hac Vice*)
Email: jrgibson@duanemorris.com
Robin L. McGrath (*Pro Hac Vice*)
Email: rlmcgrath@duanemorris.com
David C. Dotson (*Pro Hac Vice*)
Email: dcdotson@duanemorris.com
Jennifer H. Forte (*Pro Hac Vice*)
Email: jhforte@duanemorris.com
1075 Peachtree Street, Ste. 2000
Atlanta, GA  30309

Joseph A. Powers (*Pro Hac Vice*)
Email: japowers@duanemorris.com
Jarrad M. Gunther (*Pro Hac Vice*)
Email: jmgunther@duanemorris.com
30 South 17th Street
Philadelphia, PA  19103

*Attorneys for Defendant*
SONICWALL INC.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of **DEFENDANT SONICWALL INC.'S MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF DR. MCDUFF'S PRICE PER SCAN OPINIONS (METHOD NO. 3)** was served by ECF on all counsel of record on March 4, 2021.

*/s/ Nicole E. Grigg*
Nicole E. Grigg