Juanita R. Brooks (CA SBN 75934)
brooks@fr.com
Roger A. Denning (CA SBN 228998)
denning@fr.com
Jason W. Wolff (CA SBN 215819)
wolff@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Telephone: (858) 678-5070 /
Fax: (858) 678-5099

*Additional attorneys on signature page*

Attorneys for Plaintiff
FINJAN LLC

D. Stuart Bartow (CA SBN 233107)
dsbartow@duanemorris.com
Nicole E. Grigg (CA SBN 307733)
negrigg@duanemorris.com
DUANE MORRIS LLP
2475 Hanover Street
Palo Alto, CA  94304-1194
Telephone: 650.847.4146
Facsimile: 650.847.4151

*Additional attorneys on signature page*

Attorneys for Defendant
SONICWALL, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FINJAN LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>SONICWALL, INC., a Delaware Corporation,<br><br>Defendant. | Case No.:   5:17-cv-04467-BLF (VKD)<br><br>**[PROPOSED] JOINT PRETRIAL STATEMENT AND ORDER**<br><br>Date:     March 18, 2021<br>Time:     1:30 PM<br>Place:    Courtroom 3, 5th Floor<br>Judge:   Hon. Beth Labson Freeman |

1

1    Pursuant to Judge Freeman's Standing Order regarding Civil Jury Trials, Plaintiff Finjan

2  LLC ("Finjan") and Defendant SonicWall, Inc. ("SonicWall") (collectively, "Parties") hereby

3  submit the Joint Pretrial Statement and Order.

4  **I.      THE ACTION**

5       **A.      The Parties**

6       The Parties to this action are Finjan, a Delaware Limited Liability Company with its

7  principal place of business at 2000 University Ave., Ste. 600, East Palo Alto, California 94303, and

8  SonicWall, a Delaware Corporation with its headquarters and principal place of business at 1033

9  McCarthy Blvd., Milpitas, California 95035.

10      **B.      Substance of the Action**

11      This is an action for patent infringement, and the jurisdiction of the court arises under the

12  Patent Act, 35 U.S.C. § 271 et seq.

13      Finjan alleges that SonicWall directly infringes pursuant to 35 U.S.C. § 271(a) the following

14  U.S. patents:

15           1.   U.S. Patent No. 6,965,968 ("the '968 Patent")

16           2.   U.S. Patent No. 7,975,305 ("the '305 Patent")
17

18           3.   U.S. Patent No. 8,225,408 ("the '408 Patent")

19           4.   U.S. Patent No. 6,154,844 ("the '844 Patent")

20           5.   U.S. Patent No. 8,677,494 ("the '494 Patent")

21
             6.   U.S. Patent No. 8,141,154 ("the '154 Patent")
22

23           7.   U.S. Patent No. 6,804,780 ("the '780 Patent")

24           8.   U.S. Patent No. 7,613,926 ("the '926 Patent")

25

Collectively, these patents are referred to as the "Asserted Patents."  Finjan alleges infringement of the following claims (collectively referred to as the "Asserted Claims"):

| Patent | Asserted Claims |
|---|---|
| '968 Patent | 1 |
| '305 Patent | 11, 12 |
| '408 Patent | 1, 22 |
| '844 Patent | 15, 16, 41, 43 |
| '494 Patent | 10, 14 |
| '154 Patent | 1 |
| '780 Patent | 9 |
| '926 Patent | 22, 25 |

To the extent SonicWall claims it does not practice any specific element literally, Finjan has asserted that SonicWall directly infringes certain elements of the Asserted Claims of each of the Asserted Patents under the doctrine of equivalents.

Finjan also alleges that SonicWall infringes the Asserted Claims pursuant to 35 U.S.C. § 271(b) by inducing its contractual partners (including its customers) and agents to practice the Asserted Claims using the Accused Products listed below.

Finjan alleges that SonicWall has made, used, sold and offered to sell the following products, methods and/or services (referred to collectively as "Accused Products"), which infringe, literally or under the doctrine of equivalents, one or more of the Asserted Claims of one or more of the Asserted Patents, as shown in the chart below:

| Accused Products | '968 | '305 | '408 | '844 | '494 | '154 | '780 | '926 |
|---|---|---|---|---|---|---|---|---|
| Gateway | | | | X | X | X | X | |
| Gateway + Capture ATP | | X | X | X | X | X | X | X |
| Capture ATP | | X | X | X | X | X | X | X |
| Email Security + Capture ATP | | X | | X | X | X | X | X |
| Email Security | | | | | | X | | |
| Capture Client | | | | | | X | | |
| Capture Client + Capture ATP | | | | | | X | | |
| Gateway + WXA | X | | | | | | | |

SonicWall disagrees with Finjan's statement of the accused products it accuses of infringing the '154 Patent in view of the Court's orders and Finjan's operative infringement contentions. SonicWall's position is that Finjan does not have a '154 infringement theory as to SonicWall's gateways, Capture ATP, Email Security, and Capture Client by themselves. Likewise, SonicWall's position is that Finjan's '154 infringement theories for the gateways, Email Security, and Capture Client all require these components combined with Capture ATP. SonicWall's disagreement regarding the '154 Patent will be resolved upon resolution of SonicWall's Motion to Strike (Dkt. Nos. 299-3).

SonicWall also (i) denies that it has in the past infringed any Asserted Claim of the Asserted Patents, either literally or through the doctrine of equivalents, (ii) denies that it literally or through the doctrine of equivalents infringes the three Asserted Patent that have not yet expired (the '154 Patent, the '408 Patent, and the '968 Patent), and (iii) denies that Finjan is entitled to any damages or an injunction. SonicWall also contends that Finjan's claims of infringement as to the '844, '780,

'968, and '494 Patent are barred, in whole or in part, by the doctrine of prosecution history estoppel. Finally, SonicWall contends that the Asserted Claims of the Asserted Patents are invalid based upon one or more of the following: lack of patentable subject matter, anticipation, obviousness, and written description. Specifically, SonicWall alleges that:

- the Asserted Claims of the Asserted Patents are invalid for lack of a written description;

- the asserted claims of the '780 and '494 Patents are invalid for lack of patentable subject matter;

- the asserted claims of the '154 Patent are invalid based upon obviousness in view of view of Sweep/InterCheck[1] and in view of Ross[2];

- the asserted claims of the '780 Patent are invalid as obvious from Atkinson[3] and obvious from Dongarra[4];

---

[1]   The Sweep/InterCheck system consists of Sophos' SWEEP anti-virus detection utility, which can run on a server, and Sophos' InterCheck software, which runs on a workstation/client device ("Sweep/InterCheck").

[2]   U.S. Patent Application Publication No. 2007/0113282 to Ross ("Ross").

[3]   U.S. Patent No. 5,892,904 ("Atkinson").

[4]   Dongarra, "Management of the NHSE – A Virtual Distributed Library" ("Dongarra").

- the asserted claims of the '494 Patent are invalid as anticipated by and/or obvious from Zwienenberg[5] and obvious from Testbed[6] in view of Zwienenberg;

- the asserted claims of the '844 Patent are invalid as obvious from Zwienenberg, obvious from the combination of Shear[7] and Zwienenberg, obvious from the combination of Islam[8] and Testbed, and obvious from the combination of Shear and Testbed;

- the asserted claims of the '408 Patent are invalid based upon anticipation and/or obviousness in view of Zurko[9] and obviousness in view of the combination of Li[10] and Zurko;

- the asserted claims of the '305 Patent are invalid based upon anticipation in view of Li and obviousness in view of the combination of Zurko and Jordan[11] and in view of the combination of Sandu[12] and Jordan;

---

[5]   Zwienenberg, "Heuristic Scanners: Artificial Intelligence?" ("Zwienenberg").

[6]   Crawford et al., "A Testbed for Malicious Code Detection: A Synthesis of Static and Dynamic Analysis Techniques," ("Testbed").

[7]   U.S. Patent No. 6,157,721 ("Shear").

[8]   A Flexible Security System for Using Internet Content," by Islam et al. ("Islam").

[9]   U.S. Patent Application 2005/0198692 ("Zurko").

[10]   U.S. Patent 7,398,553 ("Li").

[11]   U.S. Patent 8,839,417 ("Jordan").

[12]   U.S. Patent 7,707,634 ("Sandu").

- the asserted claims of the '968 Patent are invalid based upon anticipation and/or obviousness in view of McClain,[13] anticipation and/or obviousness in view of Shunsuke,[14] and anticipation and/or obviousness in view of Hege[15];

- the asserted claims of the '926 Patent are invalid based upon obviousness in view of the combination of Grecsek[16] and Zwienenberg and the combination of Dongarra and Zwienenberg.

SonicWall previously alleged that the '494 Patent is unenforceable due to inequitable conduct occurring during the prosecution thereof, but solely in the interests of streamlining issues in preparation for trial, is hereby withdrawing that allegation.  Further, this case is exceptional under 35 U.S.C. § 285, and SonicWall seeks its fees and expenses thereunder and any other relief the Court deems appropriate.

## C. Relief Sought

### 1. Finjan's Position

As set forth in Finjan's Complaint and Rule 26(a)(1) disclosures, Finjan seeks, among other relief, monetary and equitable relief.  Finjan is seeking no less than a reasonable royalty for SonicWall's infringement (past, present, and future) and, separately, injunctive relief against future infringement of the '154 Patent, '968 Patent, and '408 Patent (the "Unexpired Patents").  Finjan also seeks an accounting of past damages for infringement up to the date of the payment, along with prejudgment and post-judgment interest.  In addition, upon a finding of willful infringement,

---

[13]   U.S. Patent 6,772,214 ("McClain").

[14]   Japanese Patent Publication No. 2002-358229 ("Shunsuke").

[15]   German Patent Document DE10104486 ("Hege").

[16]   U.S. Patent 6,088,801 ("Grecsek").

Finjan further seeks enhanced damages up to the statutorily permissible trebling of damages, as well as reasonable attorney's fees and costs.  Finjan identifies the following points of relief:

- an entry of judgment that the Asserted Claims are not invalid;
- an entry of judgment that SonicWall has infringed the Asserted Patents;
- an entry of judgment that SonicWall continues to infringe the Unexpired Patents;
- an injunction to enjoin SonicWall and those in privity with SonicWall from infringing the Unexpired Patents;
- an award of damages in the form of a reasonable royalty;
- a finding that SonicWall's infringement has been willful, wanton, and deliberate and that Finjan is entitled to trebled damages on this basis;
- a finding that the case is exceptional;
- an award of Finjan's costs and reasonable attorneys' fees permitted under 35 U.S.C. § 285;
- an accounting of SonicWall's infringing sales and revenues, along with prejudgment and post-judgment interest from the first date of infringement to the present; and
- any further relief that the Court may deem proper and just.

### 2. SonicWall's Position

SonicWall denies that it has infringed or is infringing any of the Asserted Patents, and Finjan is not entitled to any of its requested relief.  To the extent any Accused Product is found to infringe any valid claim of the Asserted Patents, SonicWall further denies that Finjan is entitled to its requested damages or an accounting. Finjan has also failed to carry its burden of establishing an appropriate reasonable royalty in this matter, and the damages it does seek do not comply with Federal Circuit law relating to the calculation of reasonable royalty damages.  SonicWall also

1   denies that Finjan is entitled to recover foreign sales or worldwide damages.  SonicWall also denies

2   that Finjan is entitled to injunctive relief as to the Unexpired Patents, including because (i) Finjan

3   presently makes and sells no products that practice the Unexpired Patents, and (ii) the damages

4   opinions presented by both parties cover any alleged future infringement, and would thus constitute

5   a fully paid up royalty.  Further, the parties have agreed that whether an injunction is warranted as

6   to the Unexpired Patents is an issue for the Court, not the jury, as set forth in Section VII. SonicWall

7   seeks the following relief:

8   • A judgment that SonicWall does not infringe, directly or indirectly, whether literally

9     or under the doctrine of equivalents, any of the Asserted Claims of the Asserted

10    Patents.

11  • A judgment that Finjan is precluded from any relief under the doctrine of equivalents

12    based on claim vitiation.

13  • A judgment that Finjan is precluded from any relief under the doctrine of equivalents

14    based on ensnarement.

15  • A judgment that the asserted claims of the '780 and '494 Patents are invalid under

16    § 101.

17  • A judgment that the Asserted Claims of the Asserted Patents are invalid under § 102

18    and/or 103.

19  • A judgment that the Asserted Claims of the Asserted Patents are invalid under § 112.

20  • A judgment that Finjan is not entitled to any damages pursuant to at least 35 U.S.C.

21    §§ 286 and 287.

22  • A judgment that Finjan is not entitled to an injunction.

23  • A judgment that this is an "exceptional case" and an award of SonicWall's

24    reasonable attorneys' fees, expenses, and costs in this action under § 285.

25

1

    **D.**    **Federal Jurisdiction and Venue**

2

    The Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and

3

1338(a).  Jurisdiction and venue are not disputed.

4

**II.**    **FACTUAL BASIS OF THE ACTION**

5

    **A.**    **Undisputed Facts**

6

        1.    <u>The Parties</u>

7

    1.    Finjan is a Delaware corporation with its principal place of business at 2000

8

        University Ave., Ste. 600, East Palo Alto, California 94303.

9

    2.    SonicWall is a Delaware Corporation incorporated on September 23, 2016, with its

10

        headquarters and principal place of business at 1033 McCarthy Blvd., Milpitas,

11

        California 95035.

12

        2.    <u>The Patents in Suit</u>

13

    3.    Finjan filed the Complaint alleging infringement of the Asserted Patents on August

14

        4, 2017.

15

    4.    Finjan is the owner of the Asserted Patents.

16

    5.    The patent application for the '844 Patent was filed on December 22, 1997.

17

    6.    Shlomo Touboul and Nachson Gal are listed as inventors on the '844 Patent.

18

    7.    The '844 Patent issued on November 28, 2000.

19

    8.    The '844 Patent expired on January 29, 2017.

20

    9.    The patent application for the '780 Patent was filed on March 30, 2000.

21

    10.    Shlomo Touboul is listed as an inventor on the '780 Patent.

22

    11.    The '780 Patent issued on October 12, 2004.

23

    12.    The '780 Patent expired on November 6, 2017.

24

    13.    The patent application for the '926 Patent was filed on March 7, 2006.

25

14.     Yigal Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll, and Shlomo Touboul are listed as inventors on the '926 Patent.

15.     The '926 Patent issued on November 3, 2009.

16.     The '926 Patent expired on January 29, 2017.

17.     The patent application for the '154 Patent was filed on June 14, 2010.

18.     David Gruzman and Yuval Ben-Itzhak are listed as inventors on the '154 Patent.

19.     The '154 Patent issued on March 20, 2012.

20.     The '154 Patent expires on December 12, 2025.

21.     The patent application for the '494 Patent was filed on November 7, 2011.

22.     Yigal Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll, and Shlomo Touboul are listed as inventors on the face of the '494 Patent.

23.     The '494 Patent issued on March 18, 2014.

24.     The '494 Patent expired on January 29, 2017.

25.     The patent application for the '305 Patent was filed on December 9, 2004.

26.     Moshe Rubin, Moshe Matitya, Artem Melnick, Shlomo Touboul, Alexander Yermakov, and Amit Shaked are listed as inventors on the '305 Patent.

27.     The '305 Patent issued on July 5, 2011.

28.     The '305 Patent expired on August 18, 2020.

29.     The patent application for the '408 Patent was filed on August 30, 2004.

30.     Moshe Rubin, Moshe Matitya, Artem Melnick, Shlomo Touboul, Alexander Yermakov, and Amit Shaked are listed as inventors on the '408 Patent.

31.     The '408 Patent issued on July 17, 2012.

32.     The '408 Patent expires on May 27, 2021.

33.     The patent application for the '968 Patent was filed on February 27, 2003.

1    34.    Shlomo Touboul is listed as the inventor of the '968 Patent.

2    35.    The '968 Patent issued on November 15, 2005.

3    36.    The '968 Patent expires on September 5, 2023.

4             3.    <u>Damages</u>

5    37.    The dates of the hypothetical negotiation for the asserted patents are as follows:

6             a.    '844 Patent: 2012

7             b.    '780 Patent: 2010

8             c.    '494 Patent: Mar. 18, 2014

9             d.    '926 Patent: 2013–2014

10            e.    '968 Patent: 2011–2012

11            f.    '305 Patent: 2013–2014

12            g.    '408 Patent: 2013–2014

13            h.    '154 Patent: 2013–2014

14   38.    Finjan will not rely on patent marking pursuant to 35 U.S.C. § 287 to prove notice

15          and, therefore, the starting date for any damages owed by SonicWall to Finjan

16          begins with actual notice of infringement by Finjan pursuant to 35 U.S.C. § 287.

17          Dkt. No. 318.

18   **B.**    **Disputed Facts**

19            1.    <u>Finjan's Disputed Facts</u>

20   Finjan identifies the below listed issues of fact for trial.  Finjan reserves the right to amend

21   this statement in light of SonicWall's statements of fact or law that remain to be litigated or any

22   revisions thereto.  Finjan reserves the right to address additional issues not set forth herein to the

23   extent they are raised by SonicWall at trial. These issues of fact may change based on the Court's

24   decisions on various motions, including motions *in limine*.

25

JOINT PRETRIAL STATEMENT          11
5:17-cv-04467-BLF-VKD

1.    Whether Finjan has proven by a preponderance of the evidence that SonicWall directly or indirectly infringed, literally or under the doctrine of equivalents, each of the Asserted Patents:

    a.  the '305 Patent

    b.  the '408 Patent

    c.  the '968 Patent

    d.  the '494 Patent

    e.  the '154 Patent

    f.  the '926 Patent

    g.  the '844 Patent

    h.   the '780 Patent

2.    Whether Finjan has proven by a preponderance of the evidence that SonicWall's infringement of any of the Asserted Patents was willful, and if so, which ones.

3.    Whether SonicWall knew or should have known that its conduct involved an unreasonable risk of infringement of Finjan's Asserted Patents, and recklessly disregarded Finjan's patent rights.

4.    The amount adequate to compensate Finjan for SonicWall's infringement.

5.    Whether Finjan has established that it is entitled to enhanced damages under 35 U.S.C. § 284 for SonicWall's willful infringement of the Patents-in-Suit and, if so, what the degree of enhancement should be.

6.    Whether Finjan has established that this is an exceptional case and that it is entitled to an award of attorneys' fees and costs under 35 U.S.C. § 285 and, if so, the amount.

7.    Whether SonicWall can prove by clear and convincing evidence that any of the Asserted Claims are invalid.

8. Whether objective indicia of non-obviousness support a finding that the Asserted claims are not invalid.

2. SonicWall's Disputed Facts

1. The priority date of the '844 Patent.

2. The priority date of the '780 Patent.

3. The priority date of the '305 Patent.

4. The priority date of the '926 Patent.

5. Whether SonicWall directly infringes or induces infringement any of the Asserted Claims of the Asserted Patents, either literally or through the doctrine of equivalents;

6. Whether there is a lack of a written description in the Asserted Patents that renders the Asserted Claims invalid under 35 U.S.C. § 112;

7. Whether there is a lack of patentable subject matter claimed in the '780 and '494 Patents that renders them invalid under § 101;

8. Whether the Asserted Claims are invalid pursuant to 35 U.S.C. § 102 and/or 103;

9. Should SonicWall be found to infringe any of the Asserted Claims of a valid Asserted Patent, the date that Finjan provided SonicWall with actual notice of infringement.

10. Should SonicWall be found to infringe any of the Asserted Claims of a valid Asserted Patent, the amount adequate to compensate Finjan for SonicWall's infringement;

11. Whether SonicWall knew or should have known that its conduct involved an unreasonable risk of infringement of Finjan's Asserted Patents and recklessly disregarded Finjan's patent rights.

1      **C.      Disputed Legal Issues**

2              1.      Finjan's Disputed Legal Issues

3      Finjan identifies the below listed issues of law.  Finjan's identification of issues of law that

4      remain to be litigated is based, in part, on Finjan's understanding of Defendant's arguments

5      regarding infringement and validity, which are based on Defendant's interrogatory responses and

6      expert reports.  Finjan reserves the right to amend this statement in light of Defendant's statements

7      of fact or law that remain to be litigated or any revisions thereto.  Finjan reserves the right to address

8      additional issues not set forth herein to the extent they are raised by Defendant at trial.  These issues

9      of law may change based on the Court's decision on various motions, including motions *in limine*.

10             1.      Whether Finjan has established that it is entitled to enhanced damages under 35

11                     U.S.C. § 284 for Defendants' willful infringement of the Asserted Patents and, if so,

12                     what the degree of enhancement should be.

13             2.      Whether Finjan has established that this is an exceptional case and that it is entitled

14                     to an award of attorneys' fees and costs under 35 U.S.C. § 285 and, if so, the amount.

15             3.      Whether Finjan is entitled to prejudgment and post-judgment interest pursuant to

16                     U.S.C. § 284.

17             4.      Whether Finjan should be awarded its costs pursuant to Federal Rule of Civil

18                     Procedure 54(d).

19             5.      Whether Finjan is entitled to a permanent injunction pursuant to 35 U.S.C. § 283.

20             6.      Whether U.S. Patent No. 8,839,417 to Jordan ("the Jordan reference") relied upon

21                     by SonicWall qualifies as prior art to the '305 Patent under 35 U.S.C. §§ 102 and/or

22                     103.

23             7.      Whether U.S. Patent No. 5,892,904 to Atkinson et al. ("the Atkinson reference")

24                     and "Management of the National HPCC Software Exchange -- A Virtual

25

Distributed Digital Library" by Dongarra et al. ("the Dongarra reference") relied upon by SonicWall qualify as prior art to the '780 Patent under 35 U.S.C. §§ 102 and/or 103.

8.   Whether "Heuristic Scanners: Artificial Intelligence?" by Zwienenberg ("the Zwienenberg reference") and "A Testbed for Malicious Code Detection: A Synthesis of Static and Dynamic Analysis Techniques" by Crawford et al. (the Testbed reference") relied upon by SonicWall qualify as prior art to the '494 Patent under 35 U.S.C. §§ 102 and/or 103.

9.   Whether "A Flexible Security Model for Using Internet Content" by Islam et al. ("the Islam reference"), Zwienenberg, and Testbed references relied upon by SonicWall qualify as prior art to the '844 Patent under 35 U.S.C. §§ 102 and/or 103.

10.  Whether U.S. Patent No. 6,088,801 to Grecsek ("the Grecsek reference"), Zwienenberg, Dongarra, and Islam references relied upon by SonicWall qualify as prior art to the '926 Patent under 35 U.S.C. §§ 102 and/or 103.

11.  Whether SonicWall can prove by clear and convincing evidence that any of the Asserted Claims are invalid.

12.  Whether SonicWall has waived its argument (raised for the first time in this Proposed Joint Pretrial Statement) that Dell's knowledge of Finjan's claims of infringement of each Accused Product as to the relevant Asserted Patents cannot be imputed to SonicWall.[17]

---

[17]   SonicWall disagrees that it has waived this argument.

1

2.      <u>SonicWall's Disputed Legal Issues</u>

2      SonicWall has identified and briefed legal issues in connection with its summary judgment

3 motion, and incorporates those issues herein by reference.   SonicWall identifies the following

4 additional legal issues:

5     1.     Whether Finjan can present legally sufficient evidence that SonicWall directly

6             infringes or induces infringement of, literally or under the doctrine of equivalents,

7             the Asserted Claims of the Asserted Patents under 35 U.S.C. § 271(a).

8     2.     Whether Finjan is precluded from arguing that SonicWall infringes the '844, '494,

9             '968, and '780 Patents under the doctrine of equivalents as a result of prosecution

10            history estoppel.

11     3.     Whether Finjan's theories of infringement under the doctrine of equivalents for the

12            Asserted Patents are barred under the doctrine of claim vitiation;

13     4.     Whether Finjan's theories of infringement under the doctrine of equivalents for the

14            Asserted Patents are barred under the doctrine of ensnarement;

15     5.     Whether Finjan's damages claims, including worldwide damages arising from

16            foreign sales, are legally viable.

17     6.     Whether Dell's knowledge of Finjan's claims of infringement of each accused

18            Product as to the relevant Asserted Patent can be imputed to SonicWall.

19     7.     Whether and when Finjan gave SonicWall actual notice of infringement of each

20            accused product as to the relevant Asserted Patent prior to the filing of the

21            complaint.

22     8.     Whether Finjan is entitled to a finding that SonicWall's alleged infringement is

23            willful, wanton, and deliberate and that Finjan is entitled to trebled damages on this

24

25

1    basis if SonicWall is found to infringe any Asserted Claim of any valid Asserted

2    Patent.

3    9.    Whether SonicWall is entitled to a judgment and order that this is an exceptional

4    case within the meaning of 35 U.S.C. § 285 and awarding SonicWall its costs,

5    enhanced damages, and reasonable attorneys' fees.

6    10.    Whether Finjan is entitled to a permanent injunction pursuant to 35 U.S.C. § 283 if

7    SonicWall is found to literally infringe any valid Asserted Claim the '154, '408, and

8    '968 Patents.

9    11.    Whether SonicWall may designate the deposition testimony of Michael Noonan

10    taken in the *Finjan v. Cisco* case.

11    The Parties also incorporate the disputed facts listed in Section II.B above to the extent that

12    they involve disputed legal issues and/or mixed questions of law and fact.

13    ## III.    ESTIMATE OF TRIAL TIME

14    The Parties anticipate that each party will have 20 hours of trial time, excluding jury

15    selection, opening statements, and closing statements, starting on May 3, 2021.  The Parties agree

16    that there will be no more than one hour per side for opening statements and no more than ninety

17    minutes per side for closing statements.

18    ## IV.    TRIAL ALTERNATIVES AND OPTIONS

19    ### A.    Settlement Discussion

20    The Parties have engaged in early settlement discussions, which have been unsuccessful.

21    Further negotiations may occur but are not likely to be productive at this time.

22    ### B.    Amendments or Dismissals

23    SonicWall is withdrawing its defense that the '494 Patent is unenforceable due to

24    inequitable conduct occurring during the prosecution thereof, solely in the interests of streamlining

25

JOINT PRETRIAL STATEMENT                17
5:17-cv-04467-BLF-VKD
DM2\13834472.1

1   issues in preparation for trial.  Otherwise, neither party intends to make any amendments to the

2   pleadings and neither party intends to voluntarily dismiss any claim or defense.

3   **C.      Bifurcation or Separate Trial of Issues**

4        Neither party desires bifurcation or separate trial of specific issues.

5   **V.    APPENDICES**

6        The following Appendices are attached hereto:

| | |
|---|---|
| Appendix A | Finjan's Witness List |
| Appendix B | SonicWall's Witness List |
| Appendix C-1 | Placeholder for Joint Exhibit List |
| Appendix C-2 | Finjan's Exhibit List and Objections Thereto |
| Appendix C-3 | SonicWall's Exhibit List and Objections Thereto |
| Appendix D | Finjan's Discovery Responses (excluding Deposition Designations) and Objections Thereto |
| Appendix E | SonicWall's Discovery Responses (excluding Deposition Designations) and Objections Thereto |

16        Pursuant to Part III.B.1 of the Court's Standing Order re Civil Jury Trials, the Parties are

17   continuing to discuss streamlining exhibits, including a joint exhibit list.

18        Part III.A.1 of the Court's Standing Order re Civil Jury Trials provides for the filing of

19   certain materials as appendices to this Joint Pretrial Statement.  Because of the volume of material

20   of a confidential nature, the Parties will deliver a USB flash drive containing their Parties'

21   respective expert witness CVs and reports with the Court's chambers copy of this Joint Pretrial

22   Statement, and also make that material available over a secure FTP.

23

24

25

## VI.   PROCEDURAL DISPUTES

1.     The Parties disagree whether they should exchange demonstratives to be used during closing arguments one hour before closing arguments are to begin, in order to allow the other Party to review and determine its objections, if any, before the closing arguments are presented to the jury. (SonicWall contends they should; Finjan contends they should not.)

2.     The Parties disagree whether they should be precluded from asking any witness a question that they know is likely to invoke an invocation of a privilege by opposing counsel in order to avoid such objections during a witness's live testimony in front of the jury.  (SonicWall contends they should be precluded; Finjan contends that the stipulation SonicWall proposes is unnecessary and unworkable.)

3.     The Parties disagree on whether a party may argue or present evidence to the jury regarding claim vitiation, prosecution history estoppel, and lack of patent-eligible subject matter (Finjan contends they cannot be; SonicWall contends they can be.)

## VII.   STIPULATIONS

The following stipulations are agreed upon by the Parties and are made a part of this Pretrial Order.

### A.     Order of Proof

1.     For those issues properly presented to the jury, the parties agree that the presentation of evidence will follow the burden of proof at trial.  Finjan will first present its case-in-chief on infringement and damages.  SonicWall may then present its response on infringement and damages along with its case-in-chief on validity.  Finjan may then present its response on validity and rebuttal on infringement and damages.  SonicWall may then present its rebuttal on validity.

2.     The Parties agree that no party may argue or present evidence to the jury regarding ensnarement, injunction, interest on damages, or an appeal of the verdict.

3.      Pursuant to Dkt. No. 318, Finjan will not rely on patent marking pursuant to 35 U.S.C. § 287 to prove notice.

4.      Pursuant to Dkt. No. 324, Finjan's claims for infringement of U.S. Patent Nos. 7,058,822 and 7,647,633 (Counts III and IV of Dkt. No. 1) and SonicWall's claims and defenses with regard to these same patents have been dismissed with prejudice.

5.      Pursuant to the parties' agreement, Finjan will not offer testimony from Dr. Striegel that Dr. Striegel reviewed or considered source code in forming his opinions or preparing his report, nor will Finjan suggest as much via attorney argument.  SonicWall will not ask Dr. Striegel if Dr. Striegel reviewed or considered source code in forming his opinions or preparing his report. SonicWall may elicit testimony from its experts and otherwise argue that Dr. Striegel did not identify or cite to any specific modules or lines of source code to support his apportionment analysis/opinions.

**B.      Procedures for Disclosure and Objections to Evidence and Demonstratives**

6.      At **6:30 PM**[18] two calendar days before each day of trial (*e.g.*, Saturday night for a Monday trial day), each party will exchange by email the following for that trial day:

      a.   A list of witnesses the party intends to call for direct examination;

      b.   A list of trial exhibits for each witness it intends to present through direct examination;

      c.   A list of the deposition testimony it intends to introduce (either by video or through a reading of the transcript) as direct examination;

7.      At **6:30 PM** the calendar day before a day of trial (*e.g.*, Sunday night for a Monday trial day), each party will exchange by email the following for that trial day:

---

[18]   All times are the Pacific Time zone unless otherwise indicated.

     a.   Copies of demonstratives to be used during direct examination in its case-in-chief, responsive case, and rebuttal case.

     b.   Identification of deposition counter designations to be included when the other party introduces its identified deposition testimony.

8.     At **8:30 PM** the calendar day before a day of trial, the Parties shall meet and confer regarding objections to witnesses, trial exhibits, deposition testimony, and demonstratives. To the extent there are unresolved issues, the issues will be presented to the Court the following morning of the trial day.

9.     The Parties will exchange demonstratives to be used during opening and closing arguments by **6:30 PM** the calendar day before the trial day they will be used, and meet-and-confer at **8:30 PM** that day regarding objections to those demonstratives.

10.     At **6:30 PM** two calendar days before the day when a party expects in good faith to rest its case-in-chief, responsive case, or rebuttal case, the party shall so notify the opposing party.

11.     For clarity, the notice provisions of this section shall not apply to demonstratives created during testimony or to exhibits, demonstratives, or deposition testimony to be used for cross-examination, none of which need to be provided to the other side in advance of their use. Also for clarity, excerpts of documents or testimony (e.g. blow ups or blow outs of documents or testimony with or without highlighting) that may be used with a witness are not demonstratives and are not subject to the notice provisions of this section.

12.     Copies of physical exhibits will be available for inspection 48 hours before a party intends to use the physical exhibit at trial.  The Parties reserve the right to lodge objections related to the quality and accuracy of the exhibits upon inspection of the physical exhibits.

C.     **Procedures for Live Witnesses**

13.     No party shall be required to present live testimony from any witness on its list of live witnesses attached hereto.

14.     With the exception of expert witnesses and a corporate representative (if applicable) for each party, the parties agree that witnesses should be prevented from hearing the testimony of other witnesses pursuant to Federal Rules of Evidence 615.

15.     Each party will provide the other with a final list of witnesses it intends to call live ("live witness list") at the trial by fourteen calendar days before the start of trial, currently, April 19, 2021, to provide the parties with sufficient time to provide designations of prior testimony for any witness originally identified as live but no longer on the live witness list.  Once a party has identified a witness on its live witness list, the party must make a good faith effort to call the witness or otherwise make them available to be called by the other party.  To the extent that a witness becomes unavailable for trial, the parties agree to timely notify the other parties and revise their live witness list.  In the event a fact witness either of the parties have identified as testifying live at trial becomes unavailable, each party reserves the right to call that witness by deposition.

16.     The parties each reserve the right to call, live, any witness who appears on the other party's live witness list, to the extent that they are not called by the party listing that witness.

17.     Any witness not listed in the parties' live witness lists or otherwise provided for in this pretrial order will be precluded from testifying absent good cause shown (without waiver of either parties' objections to witnesses who are listed in the parties' live witness lists or otherwise provided for in this pretrial order).

18.     If a party calls a fact witness live in its case, and the other party would have to subpoena that fact witness to secure their live testimony in its case, the live witness will be available to testify live at the request of the other party in its case without the need for a subpoena. For third

1  parties, both sides shall conduct their examinations of the third-party witness consecutively, such

2  that once a witness is called the witness will not be required to be re-called, and  the cross examining

3  party shall be permitted to exceed the scope of direct examination in its cross examination so as to

4  avoid having to re-call the witness during the cross-examining party's case.  All other objections to

5  such questioning or testimony are reserved.

6       19.    The Parties are precluded from raising any argument, evidence, testimony,

7  insinuation, reference, or assertion that the Court has the power to dismiss frivolous suits and/or

8  frivolous counterclaims or defenses and from implying or explicitly that the claims, counterclaims,

9  or defenses are not frivolous because they are being tried.

10       20.    When a live witness is impeached on cross-examination with prior deposition

11  testimony, the transcript of that prior deposition testimony may be displayed to the jury (rather than

12  only being read or played by video) in connection with such impeachment.

13       21.    When an expert witness is impeached on cross-examination with his or her expert

14  report, the relevant portion of that expert report may be displayed to the jury (rather than only being

15  read) in connection with such impeachment.

16  **D.**    **Testimony by Designation**

17       22.    The manner of using counter-designations at trial shall be in the same manner (video

18  versus read deposition transcripts) as that used for the designation sought to be rebutted, such that

19  all designations and counter-designations will be played or read to the jury, as the case may be, as

20  one consecutive segment in the order the testimony appears in the transcript.  The party who initially

21  proposes to offer testimony by designation shall choose the method of offering the testimony,

22  whether by read-in or by video.  If a party offers video testimony, that party shall be responsible

23  for including video portions of counter-designated testimony that is designated as described in this

24

25

1   section.  If a party does not offer video testimony, that party need not offer video of the other party's

2   counter-designations.

3       23.     The party who initially proposes the use of the deposition testimony will provide the

4   Court with an accounting of the time for each party's designations based on the parties' proportional

5   share of lines of testimony for read-in testimony and by actual time for video testimony so that the

6   Court may accurately charge time to the designating parties.

7       24.     The Parties shall be precluded, to the extent possible, from raising any argument,

8   evidence, testimony, insinuation, reference, or assertion regarding non-relevant exchanges between

9   counsel during depositions (including objections) when reading or showing deposition excerpts.

10      25.     Pursuant to Dkt. No. 236, the parties may designate the deposition testimony of the

11  witnesses identified therein.

12      **E.    Exhibits**

13      26.     The parties agree that documents are *prima facie* genuine and authentic and have

14  been prepared in the ordinary course of business on or about the dates that are reflected on the

15  document if they are (a) a document produced in this case from a party's files that on its face

16  appears to have been authored by an employee, officer, or agent of that party; (b) source code

17  produced from a party's files; or (c) a United States or foreign patent office publication.  The parties

18  reserve the right with respect to individual documents to adduce proof to the contrary or to require

19  that the offering party provide authenticating evidence or evidence the document is a business

20  record if the opposing party has a reasonable basis to believe the document is not authentic or not

21  a business record and if an appropriate objection was made by the opposing party on the exhibit

22  lists attached to this Order.  This stipulation shall not be deemed or interpreted to be a waiver of

23  any other objections a party may have or a stipulation that any document is admissible in evidence.

24

25

JOINT PRETRIAL STATEMENT                    24
5:17-cv-04467-BLF-VKD
DM2\13834472.1

1    27.    The parties stipulate that a duplicate of any document or photograph may be marked

2    for identification, and, if otherwise admissible, offered and received into evidence with the same

3    force and effect as the original.

4    28.    The Parties agree that prior to presentation of source code, Finjan's licenses, or

5    SonicWall financial information, the Parties shall meet and confer in good faith regarding whether

6    sealing of the courtroom is required.

7    29.    The Parties may use electronic, native versions of exhibits that are spreadsheets or

8    slide presentations.  Counsel who entered the electronic exhibits into evidence will work with the

9    Court to provide a means for jurors to access and review these exhibits during deliberations.

10   **VIII.   BINDING EFFECT OF THE JOINT PRETRIAL STATEMENT AND ORDER**

11   The foregoing admissions having been made by the parties, and the parties having specified

12   the foregoing issues of fact and law remaining to be litigated, this order shall supplement the

13   pleadings and govern the course of trial of this action, unless modified to prevent manifest injustice.

1

2   Dated: March 4, 2021

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**FISH & RICHARDSON P.C.**

By:  */s/ Proshanto Mukherji*
Juanita R. Brooks (CA SBN 75934)
brooks@fr.com
Roger A. Denning (CA SBN 228998)
denning@fr.com
Jason W. Wolff (CA SBN 215819)
wolff@fr.com
John-Paul Fryckman (CA 317591)
fryckman@fr.com
K. Nicole Williams (CA 291900)
nwilliams@fr.com
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Phone: (858) 678-5070 / Fax: (858) 678-5099

Proshanto Mukherji (*Pro Hac Vice*)
mukherji@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Phone: (617) 542-5070/ Fax: (617) 542-5906

Robert Courtney (CA SBN 248392)
courtney@fr.com
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
Phone: (612) 335-5070 / Fax: (612) 288-9696

Attorneys for Plaintiff
FINJAN LLC

1

**DUANE MORRIS LLP**

2     Dated: March 4, 2021

By:  */s/ Matthew C. Gaudet*

3

Nicole E. Grigg (SBN 307733)
Email: NEGrigg@duanemorris.com
D. Stuart Bartow (SBN 233107)
Email: DSBartow@duanemorris.com

4

**DUANE MORRIS LLP**
2475 Hanover Street

5

Palo Alto, CA  94304-1194
Tel.: 650.847.4150

6

Fax: 650.847.4151

7

Matthew C. Gaudet (*Pro Hac Vice*)
Email: mcgaudet@duanemorris.com
Robin L. McGrath (*Pro Hac Vice*)

8

Email: rlmcgrath@duanemorris.com
David C. Dotson (*Pro Hac Vice*)

9

Email: dcdotson@duanemorris.com
Jennifer H. Forte (*Pro Hac Vice*)

10

Email: jhforte@duanemorris.com
Alice E. Snedeker (*Pro Hac Vice*)

11

Email: aesnedeker@duanemorris.com
1075 Peachtree Street, Ste. 2000
Atlanta, GA  30309

12

Telephone: 404.253.6900

13

Joseph A. Powers (*Pro Hac Vice*)
Email: japowers@duanemorris.com
Jarrad M. Gunther (*Pro Hac Vice*)

14

Email: jmgunther@duanemorris.com
30 South 17th Street

15

Philadelphia, PA  19103
Telephone: 215.979.1000

16

17

*Attorneys for Defendant*
SONICWALL, INC.

18

19

20

21

22

23

24

25

1

**ORDER**

IT IS SO ORDERED.

2

3

4   Dated: _____    _____

Hon. Beth Labson Freeman

5                                                         United States District Judge

6

7

**ATTESTATION PURSUANT TO CIVIL L.R. 5-1(i)**

8

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this

9

document has been obtained from any other signatory to this document.

10

11                                                 */s/ Proshanto Mukherji*
Proshanto Mukherji

12

13

14

15

16

17

18

19

20

21

22

23

24

25