**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| FINJAN, INC., | Case No. 17-cv-04467-BLF |
| Plaintiff, | |
| v. | **ORDER ON MOTIONS *IN LIMINE*; STRIKING SUPPLEMENTAL BRIEF** |
| SONICWALL INC., | |
| Defendant. | [Re: ECF 360, 361, 362, 363, 364, 366, 367, 368, 369, 370, 431] |

Plaintiff Finjan, Inc. ("Finjan") brings this patent infringement lawsuit against Defendant SonicWall, Inc. ("SonicWall"), alleging infringement of seven[1] of Finjan's patents: 6,154,844 (the "'844 Patent"), 6,804,780 (the "'780 Patent"), 7,613,926 (the "'926 Patent"), 8,141,154 (the "'154 Patent"), 8,677,494 (the "'494 Patent"), 7,975,305 (the "'305 Patent"), and 8,225,408 (the "'408 Patent")(collectively, the "Asserted Patents"). Complaint ("Compl."), ECF 1. In preparation for trial, the parties submitted ten motions *in limine*. The Court held a final pretrial conference on March 18, 2021. With respect to each side's motions *in limine* ("MILs"), for the reasons set forth below and stated on the record at the Conference the Court rules as follows.

## I.   LEGAL STANDARD: *DAUBERT* MOTIONS *IN LIMINE*

Federal Rule of Evidence 702 provides that a qualified expert may testify if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied

---

[1] Finjan originally alleged infringement of ten patents. *See* Compl. The parties have since stipulated dismissal of Finjan's claims of infringement of U.S. Patent Nos. 7,058,822, 7,647,633, and 6,965,968. ECF 324; ECF 419.

the principles and methods to the facts of the case." Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. In *Kumho Tire Co., Ltd. v. Carmichael*, the Supreme Court clarified that the "basic gatekeeping obligation" articulated in *Daubert* applies not only to scientific testimony but to all expert testimony. 526 U.S. 137, 147 (1999). The Supreme Court also made clear that the reliability inquiry is a flexible one, and "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.* at 153; *see also Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391 (Fed. Cir. 2003).

"*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness." *i4i Ltd. P'ship v. Microsoft Corp*., 598 F.3d 831, 854 (Fed. Cir. 2010) *aff'd*, 131 S. Ct. 2238 (2011). So long as an expert's methodology is sound and his opinions satisfy the requirements of Rule 702, underlying factual disputes and how much weight to accord the expert's opinion are questions for the jury. *Micro Chem.*, 317 F.3d at 1392; *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).

## II.     FINJAN'S MOTIONS *IN LIMINE*

### A.     Finjan's Motion *in Limine* No. 1 to Preclude Testimony on Written Description from SonicWall's Technical Experts (ECF 369)

In its Motion *in Limine* No. 1, Finjan seeks to exclude "any testimonial opinions that any asserted patent claim lacks sufficient written description, and/or is invalid for that reason." Finjan's MIL No. 1, ECF 369 at 1; *see also* ECF 374-4. SonicWall objects to this motion, arguing that "SonicWall's experts followed [relevant] case law in every respect. For purposes of analyzing the written description support of a given claim element, SonicWall's experts determined and then applied the scope of that claim element based on Finjan's infringement assertions." Opposition to Finjan's MIL No. 1, ECF 405 at 4.

The Court DENIES WITHOUT PREJUDICE Finjan's Motion *in Limine* No. 1. Even ignoring that this motion provides the Court with no context about what patent, limitation, or claim

United States District Court
Northern District of California

language Finjan is discussing, the exhibits on which this motion is based are completely unrelated to the motion itself. *Compare* Finjan's MIL No. 1 at 1 (quoting Exh. 1 as stating "Finjan contends this claim language is met . . . ") *with* Exh. 1, ECF 371-10 ¶ 212 (discussing file history of the '926 Patent). And the Court agrees with SonicWall that Finjan does not identify any alternate claim construction adopted and relied upon by SonicWall experts. *See* Opposition to Finjan's MIL No. 1 at 5. In light of these deficiencies, the Court declines to preclude wholesale SonicWall testimony on written description. Nonetheless, to the extent a SonicWall expert offers testimony beyond the claim construction or the plain and ordinary claim language, Finjan may object at trial.

**B.   Finjan's Motion *in Limine* No. 2 to Preclude Certain Damages Testimony by Dr. Becker (ECF 370)**

Finjan's Motion *in Limine* No. 2 seeks to exclude SonicWall "from present[ing] to the jury damages opinions by Stephen Becker, Ph.D. that (1) are based on a legally improper damages model, or (2) rely on post-Complaint events not cognizable under a properly formed royalty analysis." Finjan's MIL No. 2, ECF 370 at 1; *see also* ECF 371-6.

**1.   Methodology**

Finjan contends that in violation of 35 U.S.C. § 287 and the rule detailed in *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324 (Fed. Cir. 2015), Dr. Becker relied on SonicWall's pre-notice revenue and excluded years of infringement in his damages model:

| Patent | End of Damages | Dr. Becker's Revenue Period | Unaddressed Term |
|---|---|---|---|
| '780 patent | November 6, 2017 | Feb. 1, 2010 through Jan. 31, 2015 | 2 years, 280 days |
| '968 patent | September 5, 2023 | Feb. 1, 2014 through Jan. 31, 2017 | 6 years, 218 days |
| '305 patent | August 18, 2020 | Feb. 1, 2014 through Jan. 31, 2019 | 1 year, 145 days |
| '408 patent | May 27, 2021 | Feb. 1, 2014 through Jan. 31, 2019 | 2 years, 119 days |
| '154 patent | December 12, 2025 | Feb. 1, 2014 through Jan. 31, 2019 | 6 years, 317 days |

Finjan's MIL No. 2 at 4. According to Finjan, this model, at its core, frustrates the statutory requirement that damages compensate a patent-holder for infringement because it "blind[s] itself to the actual damages periods—periods beginning as early as 2014 and extending as late as 2023." *Id.* at 5.

1    SonicWall objects, arguing that "Dr. Becker's methodology for first determining when

2    infringement began (and thus damages started to accrue), and then (second) limiting the damages

3    based on the date of actual notice, is in full compliance with the relevant damages law, and Finjan

4    has cited no authority to suggest otherwise." Opposition to Finjan's MIL No. 2, ECF 406 at 3; *see*

5    *also* ECF 404-5. It also contends that Dr. Becker's method is properly based on a lump sum

6    construct. *Id.* at 3-4.

7    The Court concludes that Dr. Becker properly included pre-notice revenue in his damages

8    model. Where a patentee relies on actual notice to the infringer, the Patent Act makes clear that any

9    damages must be limited to "infringement occurring after such notice." 35 U.S.C. § 287(a). When

10   an established royalty does not exist, a court may determine a reasonable royalty based on

11   "hypothetical negotiations between willing licensor and willing licensee." *Fromson v. W. Litho*

12   *Plate & Supply Co*., 853 F.2d 1568, 1575 (Fed. Cir. 1988), *overruled on other grounds by Knorr-*

13   *Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp*., 383 F.3d 1337 (Fed. Cir. 2004). "In

14   general, the date of the hypothetical negotiation is *the date that the infringement began*."

15   *LaserDynamics, Inc. v. Quanta Computer, Inc*., 694 F.3d 51, 75 (Fed. Cir. 2012) (emphasis added).

16   This rule applies even where "limitations [such as 35 U.S.C. § 287] may apply to the period for

17   which damages may be recovered." *Wang Lab'ys, Inc. v. Toshiba Corp*., 993 F.2d 858, 870 (Fed.

18   Cir. 1993). And while Finjan relies heavily on *AstraZeneca* to suggest that Dr. Becker's model

19   should not include pre-notice damages, in *AstraZeneca* the Court found it was improper to include

20   revenues *post-dating* patent expiration in a royalty base because "there can be no infringement once

21   the patent expires." 782 F.3d at 1343. Under this reasoning, it does not follow that it is improper to

22   include revenues *pre-dating notice* in a damages model because such damages flowed from

23   infringing conduct, even if damages flowing from that conduct are not ultimately recoverable.

24   The Court further finds that Dr. Becker properly relied on a lump sum methodology in his

25   damages model. Dr. Becker explains that based on Finjan's lump sum licensing practices, any

26   hypothetical negotiation would be based on a lump sum payment: "the evidence indicates that Finjan

27   typically takes into account a base of revenues associated with the products licensed in the

28   agreements for a limited number of years in arriving at the lump-sum payment, despite the fact that

United States District Court
Northern District of California

4

1    the license grant itself covers the entire life of the patent portfolio." Becker Report ¶ 298, ECF 404-

2    11; *see also id*. ¶¶ 415, 423. The Court finds the evidence on which the methodology is based is

3    relevant and the methodology itself is sound. *Micro Chem.*, 317 F.3d at 1392. Although Finjan may

4    not prefer Dr. Becker's opinion, that concern may be resolved during cross-examination—not in a

5    *Daubert* motion.

6         **2.   Finjan Acquisition**

7         Finjan additionally asks the Court to exclude Dr. Becker's opinions about the acquisition of

8    Finjan by Fortress in late 2020 because, while relevant to damages, it would nonetheless confuse

9    the jury. Finjan's MIL No. 2 at 5. According to Finjan, "Dr. Becker's own analysis does not deem

10   the acquisition to be a consideration at the hypothetical negotiation." *Id*. SonicWall rebuts this

11   argument, insisting that "Dr. Becker repeatedly points to the Fortress acquisition as supportive of

12   his reasonable royalty opinions" as well as in his criticism of Dr. McDuff's opinions. Opposition to

13   Finjan's MIL No. 2 at 5. The Court has reviewed the Becker Report and finds that Dr. Becker has

14   reasonably related the Fortress acquisition to his damages opinions. Becker Report ¶ 447(G). Dr.

15   Becker's opinion on the acquisition is also proper under Fed. R. Evid. 403. The acquisition is

16   unquestionably relevant to the question of damages and its probative value outweighs any potential

17   risk of confusion or time it would take to explain to the jury the relevance and limitations of the

18   acquisitions with respect to damages. *See Finjan LLC v. Cisco Sys., Inc*., Case No. 17-cv-00072-

19   BLF ("*Cisco*"), ECF 713 (N.D. Cal. Sept. 21, 2020) (granting defendant leave to supplement expert

20   report to consider Finjan acquisition).

21                                              ***

22        The Court DENIES Finjan's Motion *in Limine* No. 2.

23   **C.   Finjan's Motion *in Limine* No. 3 to Preclude Argument That SonicWall Is Not**
          **Successor-In-Interest to Dell (ECF 368)**
24

25        In its Motion *in Limine* No. 3, Finjan seeks to "exclude from presentation to the jury at trial

26   any argument by SonicWall, or evidence purporting to relate thereto, that actual notice of Finjan's

27   infringement claims, conveyed to SonicWall's prior owner Dell, does not relate to SonicWall." *See*

28   Finjan's MIL No. 3, ECF 368 at 1; *see also* ECF 371-8. According to Finjan, this "new defense"

was forfeited as it did not appear in SonicWall's damage contentions or interrogatory responses. *Id.* SonicWall responds that Finjan bears the burden of proof with respect to its compliance with the marking statute, that it identified this defense during discovery, and that this subject is improper for a motion *in limine.* Opposition to Finjan's MIL No. 3, ECF 407 at 1.

As a legal matter, the Court agrees with SonicWall that Finjan bears the burden of proving its compliance with 35 U.S.C. § 287(a). *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017); *see* Opposition to Finjan's MIL No. 3 at 2-3. The marking statute is "not a statutory defense to an action for infringement; it [is] a limitation on damages," *Bradford Co. v. Jefferson Smurfit Corp.*, 2001 WL 35738792, *9 (Fed. Cir. 2001), and it is thus Finjan's responsibility to prove notice to SonicWall. And, conversely, it is not SonicWall's responsibility to disprove that it was on notice by virtue of conversations Finjan had with Dell.

As a factual matter, the Court has reviewed the papers related to SonicWall's answer, discovery responses, and damages contentions and finds that SonicWall properly represented its position on imputed notice. Although SonicWall referenced Dell as its predecessor-in-interest in some discovery responses, it in no way represented that it was on notice by virtue of conversations between Dell and Finjan. For example, in SonicWall's response to Interrogatory No. 1, it stated that "SonicWall, and its predecessor-in-interest, Dell Inc. ("Dell"), engaged in FRE 408 discussions directly with Finjan. . . As part of the FRE 408 discussions, Finjan sent written communications to Dell, and later, SonicWall, that identified the existence of certain of the Asserted Patents." ECF 371-72 at 4; *see also* Answer and Affirmative Defense of SonicWall, ECF 74 at 5-6 (admitting that SonicWall and Dell "engaged in discussion subject to Federal Rule of Evidence 408"); SonicWall's Responsive Damages Contentions, ECF 404-9 at 5-6 ("SonicWall further disputes that Finjan is entitled to pre-suit damages because Finjan cannot satisfy its burden of proving compliance with the marking statute."). Finjan suggests that this response is a smoking gun, arguing that "[a]t no point in this or any other interrogatory response did SonicWall suggest that it did not inherit Dell's awareness of Finjan's patents and claims." Finjan's MIL No. 3, ECF 368 at 2. But this argument reads SonicWall's response out of context and ignores that the burden under 35 U.S.C. § 287(a) is Finjan's. At bottom, this is a factual dispute that is the province of the jury.

The Court DENIES Finjan's Motion *in Limine* No. 3.

**D.    Finjan's Motion *in Limine* No. 4 to Preclude Evidence or Testimony Regarding Mr. Touboul's Replacement as CEO of Finjan (ECF 367)**

In its Motion *in Limine* No. 4, Finjan seeks to "exclude from presentation to the jury at trial any discussion of: the replacement of Finjan's founder, Shlomo Touboul, as CEO of Finjan, because Mr. Touboul's replacement is of no relevance to the issues in this case and because of the likely prejudice and confusion that would result should such evidence or testimony be presented." Finjan's MIL No. 4, ECF 367 at 1. SonicWall responds that Finjan's motion "cherry-pick[s]" facts and that ███████████████ is relevant. Opposition to Finjan's MIL No. 4, ECF 408 at 1-2; *see also* ECF 404-5.

Finjan's motion is made in anticipation of how SonicWall *may* use evidence of Touboul's replacement. *See* at Finjan's MIL No. 4 at 2 ("[T]he jury may improperly believe that Mr. Touboul's replacement reflects negatively on the significance/success of his inventions . . . The jury might also improperly believe that Mr. Touboul's replacement as CEO reflects negatively on his character . . ."). The Court credits Finjan's concerns about the jury making speculative inferences about ███████████████. But the Court simultaneously credits SonicWall's argument that, should Finjan introduce evidence regarding its corporate history and Touboul at trial, information about ███████████████ is relevant as it "goes to the heart of credibility." Opposition to Finjan's MIL No. 4 at 1.[2]

The Court GRANTS IN PART Finjan's Motion *in Limine* No. 4. The Court finds that there is almost no probative value that ███████████████████████████████████

The Court DENIES the motion as to the Touboul's litigation consulting agreements as they are

---

[2] The Court is less convinced—and quite frankly confused—by SonicWall's second argument that Touboul's replacement, Asher Polani is "highly relevant" to infringement "regardless of what Finjan tells the jury about its history." Opposition to Finjan's MIL No. 4 at 2-3. Finjan's motion does not seek to preclude SonicWall from introducing evidence about Polani's succession of Touboul and his subsequent tenure at Finjan. Instead, Finjan seeks to exclude evidence that ███████████████ at all—regardless of who replaced him and the opinions of the replacement CEO. *See generally* Finjan's MIL No. 4 at 1-2 ("The fact that in 2005 Mr. Touboul was replaced as CEO of Finjan has no relevance to any claim or defense in this patent infringement case.").

7

highly probative of Touboul's credibility and biases. SonicWall may not, however, offer evidence of these agreements for any other purpose.

### E.     Finjan's Motion *in Limine* No. 5 to Preclude Evidence of Other Pending Proceedings Involving Finjan (ECF 366)

In its Motion *in Limine* No. 5, Finjan seeks to exclude SonicWall "from present[ing] to the jury at trial any discussion of other pending proceedings—namely, proceedings that have not reached final disposition or remain on appeal—involving Finjan and Finjan's patents." Finjan's MIL No. 5, ECF 366 at 1 . In support of this request, Finjan argues that (1) "the mere existence of these proceedings (and the substance/outcome of any interlocutory rulings) has no bearing or relevance to the issues here," (2) "given the non-final nature of the co-pending proceedings, any alleged probative value would be far outweighed by the significant risk of prejudice and confusion" pursuant to Fed. R. Evid. 403, and (3) "introducing evidence of other pending litigations also carries a substantial risk that the jury will perceive Finjan negatively simply because it is involved in other litigations." *Id*. at 1-2.

Based on the agreement of the parties, the Court GRANTS Finjan's Motion *in Limine* No. 5 with respect to pending United States Patent and Trademark Office ("PTO") proceedings. *See* Opposition to Finjan's MIL No. 5, ECF 408 at 1; *see also* ECF 404-7.

With respect to pending litigation, SonicWall argues that Finjan's pending litigation is relevant to witness bias, damages, and willfulness. Opposition to Finjan's MIL No. 5 at 1. The Court GRANTS IN PART Finjan's motion. As a starting point, SonicWall shall not introduce argument or evidence on co-pending lawsuits that have not reached a jury verdict. The Court generally finds that the limited probative value of the pending lawsuits is substantially outweighed by the risk of confusion and waste of time that such evidence would create at trial. *See* Fed. R. Evid. 403. However, the Court identifies the following limited circumstances under which SonicWall may introduce this evidence in response to Finjan's case in chief.

*Witness bias*. The Court agrees with SonicWall that experts' potential bias is highly probative of their credibility Opposition to Finjan's MIL No. 5 at 1; *Cisco*, ECF 660 at 3. SonicWall

may probe the expert witnesses' bias in cross examination about the compensation they receive from Finjan for their work on Finjan's pending lawsuits.

*Damages and willfulness*. SonicWall argues that Finjan's "willfulness claim is predicated, in part, on SonicWall's alleged knowledge of its various patent lawsuits. SonicWall should be permitted to explain how those lawsuits do not demonstrate any knowledge regarding SonicWall's own alleged infringement, or otherwise show that it would need to take a license to Finjan's patents." Opposition to Finjan's MIL No. 5 at 3. The Court agrees with SonicWall and finds that evidence of pending lawsuits that have not reached a jury verdict may be relevant under these *narrow* circumstances in rebuttal to evidence submitted by Finjan. Transcript ("Tr."), ECF 438 at 60:1-6 ("[FINJAN]: But if we don't do that and our willfulness case is solely based on the fact that we put SonicWall or their predecessor, Dell, on notice that they were infringing these patents and that they had good reason to believe they were and yet they continued to do so, that's our willfulness case. If we overstep, I understand that we may open the door."); *see also Finjan, Inc. v. Blue Coat Sys., LLC*, Case No. 15-cv-03295-BLF, ECF 404 at 5 (N.D. Cal. Nov. 4, 2017).

## III.   SONICWALL'S MOTIONS *IN LIMINE*

### A.   SonicWall's Motion *in Limine* No. 1 to Exclude Improper Expert Testimony Based on Finjan's Willfulness Allegations (ECF 360)

In its Motion *in Limine* No. 1, SonicWall seeks to exclude two sets of opinions provided by Finjan's experts: (1) Dr. McDuff's opinions on discounting and (2) the opinions of Drs. Cole, Mitzenmacher, and Striegel regarding SonicWall's prior knowledge of Finjan's technology and patents. SonicWall's MIL No. 1, ECF 360 at 1; *see also* ECF 359-4. Finjan objects to both of SonicWall's requests. Opposition to SonicWall's MIL No. 1, ECF 398 at 1; *see also* ECF 401-4. It further argues that SonicWall improperly squeezes two unrelated requests into one motion *in limine* and that the Court should refuse to consider it on that basis. *Id.*

#### 1.  Dr. McDuff Opinions and Discounting

Finjan damages expert Dr. McDuff uses three methods to calculate a reasonable royalty. McDuff Report, ECF 359-11 ¶ 8(c). For each method, Dr. McDuff provides two sets of calculations, one which discounts projected sales to the date of the report and one which discounts past and

United States District Court
Northern District of California

projected sales to the start of the damages period, June 10, 2014. *Id*. ¶ 116. Dr. McDuff concludes that the more reasonable assessment is the former—treating past sales without discounting and applying a discount factor to projected sales to discount the value to the present day. *Id*. ¶¶ 114, 116. Dr. McDuff explains that it is appropriate to rely on the model that does not discount past sales because, among other reasons, "it reflects that SonicWall has earned revenue and profits through ongoing infringement over time via Finjan's technology without compensating Finjan" and "is consistent with the structure of Finjan's licensing and policies, which evaluate infringement to date and projected expected infringement at the time at which a payment occurs (here, using the date of this report or ultimately the date of trial and jury award)." *Id*. ¶ 114.

SonicWall argues that McDuff's preferred damages model fails to consider "what the parties would have agreed to at the hypothetical negotiation—which the parties agree would have occurred between 2012-2014." SonicWall's MIL No. 1 at 2. According to SonicWall, "[a]t the time of the hypothetical negotiation, all infringement would be 'projected expected infringement,' and thus discounting would be necessary." *Id*. SonicWall further argues that "'presenting both discount calculations to a jury would be intractably confusing.'" *Id*. (quoting *Finjan, Inc. v. Blue Coat Sys., Inc*., No. 13-CV-03999-BLF, 2015 WL 4272870, at *7 (N.D. Cal. July 14, 2015)). Finjan responds that "Dr. McDuff properly discounted where appropriate, and described in detail his basis for doing so." Opposition to SonicWall's MIL No. 1 at 3-4; *see also id*. at 2 ("Dr. McDuff noted there is no uncertainty as to past infringement at the time of SonicWall's payment to Finjan, and thus concluded that, as an economic matter, no discounting was required. ")

Dr. McDuff's decision to not discount past sales is divorced from assumptions underlying a lump sum license. In the McDuff Report, Dr. McDuff states that he made "an economically reasonable assessment by treating past sales without discounting." McDuff Report ¶ 114. But in a hypothetical negotiation for a lump sum license, there are no past sales to consider. *LaserDynamics*, 694 F.3d at 75 ("In general, the date of the hypothetical negotiation is the date that the infringement began."). Indeed, Dr. McDuff himself acknowledges that "the extent of infringement would be unknown when the parties were agreeing to a one-time royalty *at the time of the hypothetical negotiation* to compensate for the value of all projected infringement." McDuff Report ¶ 116(b)

United States District Court
Northern District of California

1  (emphasis added). The Court finds that Dr. McDuff's undiscounted damages methodology is

2  unsound and is therefore improper to offer at trial. *See* Fed. R. Evid. 702*; Micro Chem.*, 317 F.3d at

3  1392. The Court further finds, as it has in the past, that "presenting both discount calculations to a

4  jury would be intractably confusing." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 2015 WL 4272870, at *7.

5       The Court GRANTS SonicWall's Motion *in Limine* No. 1. Finjan may not offer Dr.

6  McDuff's damages opinion that relies on undiscounted past sales.

7       **2.  Drs. Cole, Mitzenmacher, and Striegel Opinions and Prior Knowledge**

8       SonicWall argues that the Court should exclude the opinions of Drs. Cole, Mitzenmacher,

9  Medvidovic, and Striegel regarding SonicWall's purported prior knowledge of Finjan's technology

10  and patents because "[t]hese opinions are not based on any scientific, technical, or other specialized

11  knowledge, but are thinly disguised 'willfulness' opinions." SonicWall's MIL No. 1 at 3. It further

12  argues that SonicWall improperly squeezes two unrelated requests into one motion in limine, and

13  that the Court should refuse to consider it on that basis. Opposition to SonicWall's MIL No. 1 at 1.

14       The Court agrees with Finjan. These sub-motions are on two separate issues—one discussing

15  adequacy of justification for discounting and the other discussing the appropriateness of expert

16  testimony regarding SonicWall's prior knowledge. To the extent that willfulness is commonly

17  addressed in both motions, it is only nominally relevant to the Court's analysis, and there is no

18  overlap in the reports addressed in each motion. SonicWall has sought to cram as many arguments

19  as possible into its motions throughout this litigation—even if that means its motions fail to provide

20  the Court with necessary context surrounding its requests. *See, e.g.*, ECF 320 (motion for summary

21  judgment). Accordingly, the Court STRIKES the second request in SonicWall's Motion *in Limine*

22  No 1.

23       The Court cautions Finjan, however, that SonicWall may re-assert this motion during trial,

24  where appropriate. The Court has held in the past that speculative testimony regarding SonicWall's

25  knowledge is not within the purview of technical experts. *See Cisco,* ECF 549 at 3 (excluding Drs.

26  Cole, Mitzenmacher, and Medvidovic from testifying about "a high-level timeline of the

27  relationship and communications between the parties"); *see also Finjan, Inc. v. Blue Coat Sys., Inc.*,

28

2015 WL 4272870, at *3 (excluding Drs. Cole and Medvidovic from testifying on "Defendants' subjective beliefs").

### B.   SonicWall's Motion *in Limine* No. 2 to Exclude Dr. McDuff's Method No. 1 (ECF 361)

In its Motion *in Limine* No. 2, SonicWall seeks to exclude Finjan damages expert Dr. McDuff from presenting his Method No. 1 royalty opinions. SonicWall's MIL No. 2, ECF 361 at 1; *see also* ECF 359-6. Method No. 1 "███████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████" and results in a worldwide, undiscounted opinion of "████████████████████." McDuff Report ¶ 8(c). According to SonicWall, "[b]oth the royalty base and royalty rate reflect disqualifying methodological flaws." SonicWall's MIL No. 2 at 1.

#### 1.   Royalty Base

SonicWall first argues that "Dr. McDuff's royalty base includes substantially more than 'the infringing sales and associated revenues', because it ignores that most of Finjan's infringement allegations require combinations of multiple products, not just the individual products themselves." SonicWall's MIL No. 2 at 1 (citing McDuff Report ¶ 8(c)). Finjan concedes that the McDuff Report calculates only single-product royalty bases, but nonetheless states that

> The McDuff report supports *mechanically* adjusting the apportioned royalty base for the relevant patent based on the number of infringing units for the less-sold product in the combination . . . With such an adjustment, Dr. McDuff's apportioned royalty base would comprise the apportioned revenue from (1) all of the less-sold (on a unit basis) product in the combination, and (2) a matching number of units from the more-sold product."

Opposition to SonicWall's MIL No. 2, ECF 399 at 3 (emphasis added); *see also* ECF 401-6. Since the pretrial conference, Finjan served SonicWall with updated damages computations for the remaining combination products that will be asserted at trial. ECF 454. The parties agree that this issue is now moot. *Id*. Accordingly, the Court TERMINATES SonicWall's Motion *in Limine* No. 2 as to its objections on Dr. McDuff's royalty base.

United States District Court
Northern District of California

### 2. Revenue Period

SonicWall also argues that "Dr. McDuff's royalty base erroneously includes tens of millions of dollars generated before Capture ATP was commercially available." SonicWall's MIL No. 2 at 3. In support of this assertion, SonicWall explains that "Dr. McDuff concedes that Capture ATP was not commercially available with the Gateways until at least August 1, 2016, and not available with ESAs until February 2017." *Id.* Finjan responds that this request is partly mooted by this Court's determination that Capture ATP and ES products were not sold until February 2017. Opposition to SonicWall's MIL No. 2 at 3 (citing ECF 381 at 15). Finjan contends that the McDuff Report "readily permits recomputation of damages to accommodate that determination by removing from the royalty base sales of ES products before that date." *Id.* at 3. As to the remainder of SonicWall's motion, Finjan argues that there is a factual dispute about when infringement of Capture ATP commenced. *Id.* at 3. According to Finjan, the factual nature of this dispute makes this dispute inappropriate for a motion *in limine*. *Id.* at 3-4.

The Court GRANTS IN PART SonicWall's Motion *in Limine* No. 2 as to objections on Dr. McDuff's revenue period. Finjan shall offer only damages calculations that incorporate this Court's finding at summary judgment that Capture ATP and ES products were not sold until February 2017. Because there is a factual dispute as to the first date of infringement of Capture ATP, the Court DENIES the remainder of SonicWall's request.

### 3. Settlement Agreements

SonicWall's final request in this multi-part motion is for the Court to exclude Dr. McDuff's reliance on "outlier" settlement agreements with ████████████ and Sophos. SonicWall's MIL No. 2 at 4-5. According to Dr. McDuff, each of these settlements reflect the application of "████ ██████████████████████████████" McDuff Report ¶ 45.

████ By way of background,



> In 2012, Finjan entered into a settlement, release, and patent license agreement with ████████████. This agreement followed two patent infringement lawsuits brought by Finjan against ████ ████ was bought by ████ and ████ was later bought by ████ In the lawsuit against ████ ████████ the jury awarded Finjan $9.18 million in damages. The

13

1
2
3

> jury also found willful infringement. Based on the jury's finding of willful infringement the court in the ██████████ case increased the damages award to approximately $37.3 million. Later in 2011, ████ and Finjan negotiated an additional lump sum license fee of ████████

4
5
6
7
8
9

*Cisco*, ECF 640 at 17 (internal citations omitted); *see also* McDuff Report ¶ 45(a). In *Cisco*, the Court excluded reference to the $37.3 million judgment, explaining that the judgment was based on a finding of willful infringement. *Id*. at 17-18. The Court also excluded reference to the ████████ licensing payment, explaining that it was "an outlier" and that it was unclear from the record ████████ ████████ agreed to make that payment." *Id*. at 18.

10
11
12
13
14
15
16

SonicWall now seeks to exclude the $9.18 million jury award, the $37.3 million judgment (which reflects an increase for willful infringement), and the follow-on payment of ████████. *See* SonicWall's MIL No. 2 at 4. It also seeks to exclude Dr. McDuff's opinion connecting the ████ jury verdict (and its use of 8 and 16% rates to calculate damages) to the ████████ agreement. *Id*. Finjan responds that the jury award and license fee payment "are direct evidence of the value of Finjan's rights once issues of infringement and validity—which are assumed settled in the hypothetical negotiation—are settled amount." Opposition to SonicWall's MIL No. 2 at 4.

17
18
19
20
21
22
23

The Court GRANTS SonicWall's as to the $37.3 million judgment as Finjan does not dispute this request. *See* Opposition to SonicWall's MIL No. 2 at 4. The Court GRANTS SonicWall's motion as to the ████████ settlement payment. As this Court concluded in *Cisco*, it is unclear ████ ████████ agreed to made this payment, and Finjan does not otherwise provide the Court with a compelling reason to deviate from its prior ruling. The Court DENIES SonicWall's motion as to the $9.18 million jury award because that award is relevant to damages. Because the Court has excluded evidence of the settlement payment, the Court TERMINATES as moot SonicWall's request to exclude Dr. McDuff's opinion connecting the jury verdict to the settlement payment.

24
25
26
27

████████ In 2018, Finjan entered into a patent license agreement and settlement with ████████████████████████████ *Cisco*, ECF 640 at 18; *see also* McDuff Report 45(c). The agreement was part of a settlement resolving numerous patent infringement suits and provided for a lump sum payment of ████████. *Cisco*, ECF 640 at 18. In *Cisco*, this Court

28

United States District Court
Northern District of California

1    denied a motion *in limine* to exclude evidence of this agreement, explaining that "the ████

2    license agreement is relevant to the issues of damages and non-obviousness. It is true that the lump

3    sum amount agreed upon in this agreement reflects the parties' desire to settle multiple lawsuits –

4    but SonicWall can address the litigation history behind the agreement during cross examination and

5    ensure that the jury is presented with the proper context." *Id.*

6          In light of this Court's ruling in *Cisco*, SonicWall now "respectfully submits that establishing

7    the litigation history (which included over a dozen actions across the world) during cross will not

8    sufficiently address the prejudicial nature of this settlement and thus requests that the ████

9    figure be excluded here pursuant to FRE 403." SonicWall's MIL No. 2 at 5. The Court disagrees,

10   and SonicWall has not offered any particularized balancing of probative value against prejudice,

11   confusion, or waste of time. *See* Fed. R. Evid 403.

12         SonicWall persists that "[i]f the lump sum figure is permitted into evidence, however, there

13   is no support for Dr. McDuff's opinion that the figure was calculated by application of 8% and 16%

14   royalty rates." SonicWall's MIL No. 2 at 5. SonicWall argues that Dr. McDuff supports this opinion

15   "solely" with Finjan's expert testimony in the 2013 *Blue Coat* case, which was partially overturned

16   on appeal. *Id.* (citing *Finjan, Inc. v. Blue Coat Sys.*, 879 F.3d 1299 (Fed. Cir. 2018)). Finjan responds

17   that the Federal Circuit did not overturn the rates or award relied on by Dr. McDuff. Opposition to

18   SonicWall's MIL No. 2 at 5. The Court agrees with Finjan. While the Federal Circuit did overturn

19   part of the verdict in *Blue Coat*, this decision was based on apportionment and an expert's use of a

20   per-user royalty rate. *Blue Coat Sys.*, 879 F.3d at 1309-1313. The Court DENIES SonicWall's

21   request to eliminate evidence of the ████ settlement.

22         ***Sophos.*** In 2016, a jury awarded Finjan $15 million against Sophos, ████████

23   ████████████████████████████ SonicWall's MIL No. 2 at 5;

24   *see also* McDuff Report ¶ 45(b). According to SonicWall, "[t]here is no factual basis to opine,

25   however, that the ████████ was based on ████ because "the trial

26   court found it 'unclear how the jury calculated its award' of $15 million." *Id.* (quoting *Finjan, Inc.*

27   *v. Sophos, Inc.*, 244 F. Supp.3d 1016, 1037 (N.D. Cal. Mar. 14, 2017). Finjan responds that this "is

28   yet another fact dispute in the guise of a pretrial motion" and "Dr. McDuff's report describes in

detail how the history of the ████████, including litigation, supports observed rates of ████

████ Opposition to SonicWall's MIL No. 2 at 5. While crediting SonicWall's reading of *Sophos*, the Court nonetheless agrees with Finjan and DENIES SonicWall's request to exclude evidence of the Sophos jury award.

> **Aggregate Amount.** The Court DENIES SonicWall's motion to exclude the aggregate amount of revenue Finjan has received from licensing its patent portfolio. SonicWall's MIL No. 2 at 5. Any aggregate figure Finjan intends to introduce, however, must account for the Court's exclusion of the aforementioned evidence.

## C.   SonicWall's Motion *in Limine* No. 3 to Exclude Dr. Striegel's Technical Apportionment Opinions and Dr. McDuff's Reliance Thereon (ECF 362)[3]

In its Motion *in Limine* No. 3, SonicWall moves to exclude the technical apportionment opinion of Dr. Aaron Striegel. SonicWall's MIL No. 3, ECF 362 at 1; *see also* ECF 359-8. According to SonicWall, Dr. Striegel applied a legally insufficient methodology. *Id.*

Upon a finding of infringement, a patentee is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer...." 35 U.S.C. § 284. "A 'reasonable royalty' derives from a hypothetical negotiation between the patentee and the infringer when the infringement began." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868–69 (Fed. Cir. 2010) (citation omitted). A comprehensive list of relevant factors for a reasonable royalty calculation appears in *Georgia–Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

"A patentee is only entitled to a reasonable royalty attributable to the infringing features." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 1265 (2019). The patentee bears the burden of proving damages. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). Thus, the patentee "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's

---

[3] The Court STRIKES Finjan's supplemental brief on this issue. ECF 431. The submission of this unsolicited, post-conference brief violates the Court's Standing Order and prejudices SonicWall. And, even ignoring this problem, Dr. Striegel's deposition testimony cannot cure his report's methodological failings or the omission of a necessary opinion.

United States District Court
Northern District of California

damages between the patented feature and the unpatented features . . . " *Garretson v. Clark*, 111 U.S. 120, 121 (1884) (internal marks omitted). Accordingly, royalties must be apportioned between the infringing and non-infringing features of the product. *Ericsson, Inc. v. D-Link Sys., Inc*., 773 F.3d 1201, 1226 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc*., 767 F.3d 1308, 1326 (Fed. Cir. 2014); *Uniloc USA, Inc. v. Microsoft Corp*., 632 F.3d 1292, 1318 (Fed. Cir. 2011); *Lucent*, 580 F.3d at 1336–37. "As a substantive matter, it is the 'value of what was taken' that measures a 'reasonable royalty' under 35 U.S.C. § 284." *Ericsson*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) (citation omitted). If the patentee fails to tie the theory to the facts of the case, the testimony is excluded pursuant to *Daubert*. *Uniloc USA*, 632 F.3d at 1315.

"[A]pportionment can be addressed in a variety of ways, including 'by careful selection of the royalty base to reflect the value added by the patented feature [or] . . . by adjustment of the royalty rate so as to discount the value of a product's non-patented features; or by a combination thereof.'" *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018) (alterations in original) (quoting *Ericsson*, 773 F.3d at 1226). Therefore, there is "'nothing inherently wrong with using the market value of the entire product [as a royalty base], especially when there is no established market value for the infringing component or feature, so long as the multiplier accounts for the proportion of the base represented by the infringing component or feature.'" *Id*. (quoting *Lucent*, at 1339).

SonicWall argues that Dr. Striegel failed to undertake necessary further apportionment. SonicWall's MIL No. 3 at 2-4. According to SonicWall, Dr. Striegel grouped the accused products into ten categories, opined that each group consisted of various top-level functions, and then determined which of those top-level functions overlapped with the Asserted Claims. *Id*. (citing Striegel Report, ECF 359-15 ¶¶ 111-123); *see also* Opposition to SonicWall's MIL No. 3, ECF 396 at 1-2. Dr. Striegel then shared his opinion with damages expert Dr. McDuff, who used them to apportion his royalty base. SonicWall's MIL No. 3 at 1; Opposition to SonicWall's MIL No. 3 at 2. Dr. McDuff then converted Dr. Striegel's opinion into percentage form and applied that apportionment factor to the accused products' revenue. SonicWall's MIL No. 3 at 1; *see also*

1   McDuff Report ¶ 117 (describing apportionment of royalty base), Attachment E-1 (Dr. Striegel

2   conclusions).

3          SonicWall asserts that Dr. Striegel failed to "determine whether the top-level function he

4   identified also included substantial non-patented features that must be apportioned out, but instead

5   only whether the function 'would receive a reasonable benefit from the asserted patents.'"

6   SonicWall's MIL No. 3 at 2. Finjan responds that neither law nor evidence requires further

7   apportionment. Opposition to SonicWall's MIL No. 3 at 3.

8          Both parties rely on the Federal Circuit's decision in *Finjan v. Blue Coat,* 879 F.3d 1299

9   (Fed. Cir. 2018), to support their argument. In *Blue Coat*, the Federal Circuit reached a mixed result

10  when considering Finjan's expert's opinions on apportionment. As to the '844 Patent, the court

11  considered the infringing product WebPulse, a cloud-based system that associates URLs with over

12  eighty different categories. *Id*. at 1310. DRTR, which stands for dynamic real-time rating engine,

13  was the part of WebPulse responsible for analyzing URLs that had not already been categorized.

14  DRTR performed infringing and non-infringing functions. *Id*. All of WebPulse's infringing

15  functionality occurred in DRTR, but some DRTR functions infringed and some did not. *Id*. At trial,

16  Finjan tied the royalty base to the incremental value of the infringement by multiplying WebPulse's

17  total number of users by the percentage of web traffic that passed through DRTR. Even though

18  DRTR performed additional non-infringing functions, Finjan did not perform further

19  apportionment. *Id*. The Federal Circuit rejected this approach, explaining that

20          Because DRTR is itself a multi-component software engine that
21          includes non-infringing features, *the percentage of web traffic
            handled by DRTR is not a proxy for the incremental value of the
22          patented technology to WebPulse as a whole*. Further apportionment
            was required to reflect the value of the patented technology
23          compared to the value of the unpatented elements.

24  *Id*. at 1311 (emphasis added).

25          But the Federal Circuit affirmed Finjan damages expert Dr. Layne–Farrar's apportionment

26  analysis with respect to the '731 and '631 Patents. *Id*. at 1312-1313. There, Dr. Layne-Farrar

27  apportioned revenues comprising the royalty base between the infringing and non-infringing

28  functionality of accused product Proxy SG and based her analysis on a Blue Coat architectural

1    diagram that included twenty-four boxes representing different parts of the Secure Web Gateway.

2    *Id.* Dr. Layne–Farrar assumed that each box represented a single top-level function and that each

3    function was equally valuable. *Id.* Over Blue Coat's challenge, the Federal Circuit found that there

4    was "evidence to support Dr. Layne–Farrar's assumption that each box represents a function and

5    that each function should be treated as equally valuable." *Id.* (internal marks omitted).

6         The Court finds that Dr. Striegel's apportionment method fails to "separate the value of the

7    allegedly infringing features from the value of all other features." *Commonwealth Sci. & Indus.*

8    *Research Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015). While at first

9    glance it appears that Dr. Striegel followed the affirmed portion of *Blue Coat*, a deeper examination

10   reveals that Dr. Striegel merely slapped top-level function labels onto the accused products without

11   particularizing how apt the labels were. For example, Dr. Striegel opined that the benefits provided

12   by the '305 and '408 Patents overlap with the top-level function of SonicWall SuperMassive's

13   RFDPI Engine. Striegel Report ¶¶ 111-113 (overview of methodology), ¶ 114 (opinion on

14   SuperMassive/TZ SOHO Appliances/Network Security), Appx. D (chart mapping top-level

15   functions to asserted patents). Dr. Striegel states that "[f]or the '305 and '408 Patents, the RFDPI

16   Engine overlaps at least by how incoming content ('305) and program code ('408) is received."

17   Striegel Report ¶ 114. But the marketing document on which Dr. Striegel relies to identify the top-

18   level function lists five sub-features, and Dr. Striegel fails to point to any of these sub-features as

19   overlapping with the patent. Striegel Report ¶ 115, Appendix D (chart on SuperMassive product);

20   Striegel Deposition at 260:17-262:20, 265:24-267:22; SonicWall SuperMassive Series, ECF 365-

21   21 at 660 (marketing document). Nor is it clear the extent to which these sub-features involve

22   receiving incoming content and program code. *See, e.g.*, SonicWall SuperMassive Series at 660

23   ("This high-performance, proprietary and patented inspection engine performs stream-based, bi-

24   directional traffic analysis, without proxying or buffering, to uncover intrusion attempts and

25   malware and to identify application traffic regardless of port"). Indeed, Dr. Striegel offers no

26   analysis of whether SonicWall customers derived value solely from the patented features of the top-

27   level function or whether the top-level functions included non-accused or non-patented functions at

28   all.

United States District Court
Northern District of California

While Finjan insists that the Federal Circuit affirmed Dr. Striegel's method in *Blue Coat*, the Court disagrees. *See* Opposition to SonicWall's MIL No. 3 at 3. Here, SonicWall takes issue with the fact that Dr. Striegel failed to examine the top-level features to determine if non-accused or non-patented subfunctions were implicated. SonicWall's MIL No. 3 at 3. In *Blue Coat*, Blue Coat did not raise, and the Federal Circuit did not consider, whether each identified function in the architectural diagram included substantial non-patented features that needed to be further apportioned. And in *Blue Coat*, the Federal Circuit emphasized the importance of ensuring that apportionment isolates the patented feature: "Whether viewed as valuable, important, or even essential, the patented feature must be separated." 879 F.3d at 1311 (quoting *VirnetX,* 767 F.3d at 1329 (quoting *LaserDynamics,* 694 F.3d at 68)) (internal citation marks omitted). Dr. Striegel's methodology falls short of this standard.

In sum, Dr. Striegel's apportionment methodology fails to "*carefully* tie proof of damages to the claimed invention's footprint in the market place." *ResQNet.com*, 594 F.3d at 869 (emphasis added). The Court need not consider SonicWall's alternate objection to Dr. Striegel's apportionment, *see* SonicWall's MIL No. 3 at 4-5 (failure to perform necessary analysis), as its finding here is dispositive. The Court GRANTS SonicWALL's Motion in Limine No. 3 and excludes the technical apportionment opinions of Dr. Striegel along with Dr. McDuff's related damages opinions.

**D.    SonicWall's Motion *in Limine* No. 4 to Exclude the Testimony of Dr. McDuff's Price Per Scan Opinions (Method No. 3) (ECF 363)**

In its Motion *in Limine* No. 4, SonicWall seeks to exclude Finjan's damages expert, Dr. McDuff, from presenting his Method No. 3: price-per-scan reasonable royalty opinions. SonicWall's MIL No. 4, ECF 363 at 1; *see also* ECF 359-10. SonicWall's motion is based on two grounds. First, it argues that Dr. McDuff's royalty rate per scan relies on Dr. Striegel's flawed analysis of VirusTotal licenses. *Id*. Second, it argues that Dr. McDuff's royalty base is improperly predicated on his layman understating of a single statement in SonicWall's annual Cyber Threat Reports. *Id*. at 4. Finjan objects and argues that this motion is "an improper attempt to take the role of fact-finder from the jury." Opposition to SonicWall's MIL No. 4, ECF 401-8 at 1. To this end,

1    Finjan explains that "SonicWall fails to identify errors in methodology and instead attacks the

2    degree of relevance or accuracy of Dr. McDuff's opinion." *Id*. at 5.

3         In his expert report, Dr. McDuff opined that "[a]n appropriate royalty base is the total

4    number of malware scans by Capture ATP." McDuff Report ¶ 151. Dr. McDuff then identified the

5    "total malware scans from the 'start of damages' period in June 2014 through the last patent

6    expiration date" based on statements in SonicWall's annual Cyber Threat Reports indicating that

7    SonicWall collected 56 million unique malware samples in 2017. *See id*. ¶¶ 152-153; *see also id*.,

8    Attachment J-3.

9         The Court has serious concerns about Dr. McDuff's royalty base methodology. The

10   number of "unique malware samples" set forth in SonicWall's Cyber Threat Report is clearly not

11   the number of scans performed by a given SonicWall product. *See* SonicWall Annual Threat

12   Report Highlights Advances Made By Both Security Professionals And Cyber Criminals,

13   https://www.sonicwall.com/news/sonicwall-annual-threat-report-highlights-advances/; Becker

14   Report ¶ 550 ("SonicWall has indicated that it does not track the number of 'scans' performed by

15   the Accused Instrumentalities . . . the 'unique malware samples' referenced in SonicWall's annual

16   Threat Reports represent the number of unique malware samples collected by SonicWall from

17   third party and internal sources."). SonicWall also correctly notes that Dr. McDuff's figures

18   include scans from 2014 and 2015—a time period during which infringement of Capture ATP is

19   not at issue. SonicWall's MIL No. 4 at 5; *see* McDuff Report ¶¶ 151-153 (explaining

20   methodology), Attachment J-3 (citing to SonicWall Annual Threat Reports). These facts

21   significantly undermine Dr. McDuff's methodology. The Court also highlights that McDuff's

22   royalty base figure incorporates global scans, and the Court ruled in its Summary Judgment Order

23   that Finjan could not rely upon worldwide sales in its reasonable royalty calculations. ECF 381 at

24   37-41. More troublingly, there is no indication that Dr. McDuff's methodology would allow him

25   to isolate domestic sales.

26        In light of these methodological flaws, the Court GRANTS SonicWall's Motion *in Limine*

27   No. 4 and excludes McDuff's Method No. 3 price-per-scan reasonable royalty opinions.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

### E. SonicWall's Motion *in Limine* No. 5 Re Evidence or Arguments About Post-Grant Proceedings (ECF 364)

In its Motion *in Limine* No. 5, SonicWall moves to "preclude Finjan from presenting any evidence or argument about inter partes reviews ('IPRs') and other post-grant proceedings before the [PTO]." SonicWall's MIL No. 5, ECF 364 at 1. SonicWall argues that evidence and arguments about PTO proceedings would "only confuse the jury and make their task more difficult." *Id.*

Evidence of post-grant proceedings are generally of marginal relevance and their probative value is greatly outweighed by likely confusion to the jury and time that would be required to instruct the jury on the full context necessary to understand the "relevance and limitations" of those proceedings. *See Finjan, Inc. v. Sophos, Inc.*, No. 14-CV-01197-WHO, 2016 WL 4560071, at *14 (N.D. Cal. Aug. 22, 2016). Evidence of post-grant proceedings before the PTO is likely to mislead the jury into believing that because the Asserted Patents have survived many attacks, they must be valid against the attacks presented in this case. *Cisco*, ECF 640 at 14. Moreover, explaining the process applicable in PTO proceedings, the relevant legal standards, the evidence the PTO considered in each proceeding, and the outcome of each proceeding will be a waste of time that will confuse the jury as to the standards applicable in this case and mislead them into improperly deferring to the PTO on validity matters. *See id.* It is within this context that the Court considers the parties' arguments.

#### 1. Pending Post-Grant Proceedings

As discussed in Section II.E, the parties agree to the exclusion of pending post-grant proceedings. *See also* Opposition to SonicWall's MIL No. 5, ECF 395 at 1. Accordingly, as to pending post-grant proceedings, the Court GRANTS IN PART SonicWall's Motion *in Limine* No. 5 as unopposed.

#### 2. Concluded Post-Grant Proceedings

SonicWall requests that the Court exclude evidence of post-grant proceedings not involving SonicWall as such evidence is of limited probative value. SonicWall's MIL No. 5 at 2-3. It further requests that the Court "preclude Finjan from presenting evidence or argument about the single reexamination request concerning the '305 Patent filed by SonicWall" because "[t]he '305 Patent reexamination proceedings are complex and will be confusing to the jury." *Id.* at 3. Finally,

United States District Court
Northern District of California

1    SonicWall argues that post-grant proceedings are irrelevant to damages and the hypothetical

2    negotiation. *Id*. at 4-5.

3           Finjan objects to the exclusion of final post grant proceedings because "SonicWall has failed

4    to carry its burden to demonstrate that the probative value of this evidence is outweighed by undue

5    prejudice." Opposition to SonicWall's MIL No. 5 at 1. It further argues that (1) "SonicWall relies

6    on post grant activity to support its non-infringement and invalidity defenses," (2) "findings by the

7    Patent Trial and Appeals Board ('PTAB') are probative of the strength and value of Finjan's patents,

8    as well as the prior art advanced as part of SonicWall's invalidity and willfulness defenses—

9    particularly where SonicWall is relying on the same prior art that has already been considered by

10   the PTAB—and to assess the strength of the patents for damages purposes," and (3) "Finjan should

11   be permitted to use evidence of IPR proceedings for impeachment and rebuttal purposes." *Id*. at 1.

12   Finjan generally urges the Court to adopt its holdings from *Cisco*. *Id*. at 1 (citing *Cisco*, ECF 640);

13   *see also* Tr. 125:23-24.

14          With two exceptions, the Court adopts the approach it took in *Cisco*, as follows. First, any

15   probative value that evidence of post-grant proceedings might have on the ***validity*** of the Asserted

16   Patents is outweighed by the complexity involved in giving the jury the full context of PTO

17   proceedings and would pose a significant risk of confusion of the issues and waste of time. Even if

18   there is overlap in the prior art references asserted in the PTO proceedings and in this case, the

19   choice of references and combination of those references involve highly strategic decisions – and

20   explaining the intricacies of the differences between the arguments and selections presented to the

21   PTO and what is at issue in this case would be too complicated and time-consuming. *See Cisco*,

22   ECF 640 at 15-16. Second, the strength of the Asserted Patents would be relevant to what SonicWall

23   would have considered during its hypothetical negotiations with Finjan – and is therefore relevant

24   to ***damages***. The Court is also persuaded, as it was in *Cisco*, that the strength of the Asserted Patents

25   is relevant to SonicWall's good faith belief as to the validity of the Asserted Patents – and is

26   therefore relevant to ***willfulness***.

27          The Court further finds that concluded post-grant proceedings may be used for ***impeachment***

28   purposes. Opposition to SonicWall's MIL No. 5; *see Pac. Biosciences of California, Inc. v. Oxford*

*Nanopore Techs., Inc.*, No. 17-cv-1353, 2020 WL 954938, at *2 (D. Del. Feb. 27, 2020) (allowing IPR petition and declaration to be used to impeach defendant's witnesses). Finally, the Court DEFERS ruling on whether Finjan may introduce post-grant proceeding evidence on rebuttal should SonicWall introduce evidence of court proceedings to suggest that companies accused of infringement by Finjan are wholly successful in their defense efforts. *See* Tr. at 126:13-16 ("[FINJAN]: And is it fair then that SonicWall gets to bring out these pending litigations, but we're not allowed to bring out what some of those litigants did in terms of trying to invalidate our patents unsuccessfully?").

The Court DENIES IN PART SonicWall's motion with regard to concluded post-grant proceedings involving the Asserted Patents but Finjan's presentation of evidence is limited to impeachment, damages, and willfulness. Finjan may re-assert this motion for the limited purpose defined above at trial.

## IV.   ORDER

For the reasons stated on the record at the Conference and discussed above, the Court orders as follows:

Finjan's Motion *in Limine* No. 1: DENIED WITHOUT PREJUDICE

Finjan's Motion *in Limine* No. 2: DENIED

Finjan's Motion *in Limine* No. 3: DENIED

Finjan's Motion *in Limine* No. 4: GRANTED IN PART and DENIED IN PART

Finjan's Motion *in Limine* No. 5: GRANTED IN PART and DENIED IN PART

SonicWall's Motion *in Limine* No. 1: GRANTED IN PART and STRUCK IN PART

SonicWall's Motion *in Limine* No. 2: GRANTED IN PART, DENIED IN PART, and TERMINATED IN PART

SonicWall's Motion *in Limine* No. 3: GRANTED IN PART and DENIED IN PART

SonicWall's Motion *in Limine* No. 4: GRANTED

SonicWall's Motion *in Limine* No. 5: GRANTED IN PART, DENIED IN PART, AND DEFERRED IN PART

***

To the extent disputes arise during trial, the Court is available to address motions on the record at 8:30 A.M. each Court day before the jury arrives. Although a written motion is not required, a party choosing to file a written motion for a hearing the next morning is limited to one three-page motion due by 5:00 P.M. the preceding Court day. If a party intends to raise matters orally it shall inform the Court and the other parties on or before 5:00 P.M. of the intention to appear for a hearing at 8:30 A.M. the following Court day.

**IT IS SO ORDERED.**

Dated: May 12, 2021

_____
BETH LABSON FREEMAN
United States District Judge