Juanita R. Brooks (CA SBN 75934)
brooks@fr.com
Roger A. Denning (CA SBN 228998)
denning@fr.com
Jason W. Wolff (CA SBN 215819)
wolff@fr.com
John-Paul Fryckman (CA SBN 317591)
fryckman@fr.com
K. Nicole Williams (CA291900)
nwilliams@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Phone: (858) 678-5070
Fax:  (858) 678-5099

*Additional counsel listed on signature page*

***Attorneys for Plaintiff***
FINJAN LLC

D. Stuart Bartow (SBN 233107)
Email: DSBartow@duanemorris.com
DUANE MORRIS LLP
2475 Hanover Street
Palo Alto, CA 94304-1194
Tel.: 650.847.4150
Fax: 650.847.4151

*Additional counsel listed on signature page*

***Attorneys for Defendant***
SONICWALL, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FINJAN LLC, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SONICWALL, INC., a Delaware Corporation,<br><br>Defendant. | Case No.:  5:17-cv-04467-BLF (VKD)<br><br>**STIPULATION AND [PROPOSED] ORDER RE: SUBMISSION OF BRIEFS RELATING TO COLLATERAL ESTOPPEL ISSUES FOR THE '844, '780, AND '494 PATENTS**<br><br>Judge: Hon. Beth Labson Freeman<br>Dept: Courtroom 3, Fifth Floor |

Plaintiff Finjan, LLC ("Finjan") and Defendant SonicWall, Inc. ("SonicWall") (collectively, the "Parties"), respectfully submit this Stipulation and [Proposed] Order Re: Submission of Briefs Relating to Collateral Estoppel Issues for the '844, '780, and '494 Patents.

WHEREAS, in the matter of *Finjan, LLC v. Cisco Systems, Inc.*, No. 5:17-cv-00072-BLF-SVK (N.D. Cal.) ("Cisco Action"), Cisco Systems, Inc. ("Cisco") and Finjan filed the following motion and briefs: Cisco's Motion for Judgment of Invalidity of the '844, '780, and '494 Patents Based on Collateral Estoppel (Dkt. No. 759) (attached hereto as Ex. A); Finjan's Opposition to Cisco's Motion for Judgment of Invalidity of the '844, '780, and '494 Patents Based on Collateral Estoppel (Dkt. No. 762) (attached hereto as Ex. B); and Cisco's Reply in Support of its Motion for Judgment of Invalidity of the '844, '780, and '494 Patents Based on Collateral Estoppel (Dkt. No. 764) (attached hereto as Ex. C) (collectively "Collateral Estoppel Briefs").

WHEREAS, the Parties respectfully request that the Collateral Estoppel Briefs filed in the Cisco Action be deemed filed in this case.

WHEREAS, the Parties further request that Cisco's motion and reply brief (Exs. A and C hereto) and the relief requested therein be deemed filed by SonicWall in this case and Finjan's opposition (Ex. B hereto) be deemed filed by Finjan in this case.

WHEREAS, with the Collateral Estoppel Briefs deemed as filed in this case, the Parties respectfully submit that the Motion for Judgment of Invalidity of the '844, '780, and '494 Patents Based on Collateral Estoppel is ripe in this case and ready for resolution by the Court.

NOW, THEREFORE, the Parties respectfully request that the Court issue the proposed order consistent with the above jointly submitted herewith.

Dated:  June 21, 2021

By: /s/ *Juanita R. Brooks*
Juanita R. Brooks (CA SBN 75934)
brooks@fr.com
Roger A. Denning (CA SBN 228998)
denning@fr.com
Jason W. Wolff (CA SBN 215819)
wolff@fr.com
John-Paul Fryckman (CA SBN 317591)
fryckman@fr.com
K. Nicole Williams (CA291900)
nwilliams@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile:  (858) 678-5099

Proshanto Mukherji (*Pro Hac Vice*)
mukherji@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070

Robert Courtney (CA SNB 248392)
courtney@fr.com
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 335-5070

**Attorneys for Plaintiff**
FINJAN LLC

By: /s/ *Matthew C. Gaudet*
D. Stuart Bartow (SBN 233107)
Email: DSBartow@duanemorris.com
DUANE MORRIS LLP
2475 Hanover Street
Palo Alto, CA 94304-1194
Tel.: 650.847.4150
Fax: 650.847.4151

Matthew C. Gaudet (Admitted *Pro Hac Vice*)
mcgaudet@duanemorris.com
David C. Dotson (Admitted *Pro Hac Vice*)
dcdotson@duanemorris.com
Robin McGrath
rlmcgrath@duanemorris.com
Jennifer H. Forte (Admitted *Pro Hac Vice*)
jhforte@duanemorris.com
Alice E. Snedeker
aesnedeker@duanemorris.com
DUANE MORRIS LLP
1075 Peachtree NE, Suite 2000
Atlanta, GA 30309-3929
Telephone: 404.253.6900

Joseph A. Powers (Admitted *Pro Hac Vice*)
Email: japowers@duanemorris.com
Jarrad M. Gunther (Admitted *Pro Hac Vice*)
Email: jmgunther@duanemorris.com
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
Telephone: 215.979.1000

**Attorneys for Defendant**
SONICWALL, INC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCURRENCE IN FILING**

I, Matthew C. Gaudet, hereby attest that the concurrence to the filing of this document has been obtained from each signatory hereto.

*/s/ Matthew C. Gaudet*
Matthew C. Gaudet

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 21, 2021, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Matthew C. Gaudet*
Matthew C. Gaudet

CASE NO.: 5:17-CV-04467-BLF (VKD)
STIPULATION AND [PROPOSED] ORDER

# EXHIBIT A

1  D. Stuart Bartow (CA SBN 233107)
   dsbartow@duanemorris.com
2  Nicole E. Grigg (CA SBN 307733)
   negrigg@duanemorris.com
3  DUANE MORRIS LLP
   2475 Hanover Street
4  Palo Alto, CA  94304-1194
   Telephone: 650.847.4146
5  Facsimile: 650.847.4151

6

7  *Additional attorneys on signature page*

8  Attorneys for Defendant
   CISCO SYSTEMS, INC.

9

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA,

12                      (SAN JOSE DIVISION)

13  FINJAN LLC, a Delaware Limited Liability          Case No. 5:17-cv-00072-BLF-SVK
    Company,
14                                                    **CISCO SYSTEMS, INC.'S MOTION FOR**
                      Plaintiff,                      **JUDGMENT OF INVALIDITY OF THE**
15                                                    **'844, '780, AND '494 PATENTS  BASED**
                                                      **ON COLLATERAL ESTOPPEL**
16           ,.

17  CISCO SYSTEMS, INC., a California
    Corporation,
18
19                    Defendant.

20

21

22

23

24

25

26

27

28

Defendant Cisco Systems, Inc. ("Cisco") seeks judgment that the '844 and '780 Patents are invalid based on the ESET Order and that the '494 Patent is invalid based on the same "issue" resolved against Finjan in the ESET Order. For the '494 Patent, Federal Circuit law is clear that the ESET Order applies with equal force to patents whose intrinsic record presents the same "issue" that led to the invalidity ruling. The '494 Patent satisfies this test because it is a continuation of a patent found invalid in the ESET Order (the '086 Patent), with the same "Downloadable" term, the same specification, and the same intrinsic record on which the ESET Order relied (in fact, the same intrinsic record on which the ESET Order relied to invalidate all five related patents). Based on the reasoning of the ESET Order and the collective treatment of those five patents, the '494 Patent unquestionably would have been found invalid in that case had Finjan asserted it there. The Federal Circuit case law confirms that this is a distinction without a difference; the patent holder is estopped with respect to all patents that present the same "issue." The law is equally clear that Cisco's prior positions in this case do not protect Finjan from the impact of the ESET Order on the '494 Patent. Collateral estoppel renders the '494 Patent invalid, regardless of what has previously occurred in this case.

## I.    BACKGROUND

On March 23, 2021, Judge Bencivengo issued a summary judgment order invalidating the '844 and '780 Patents, along with U.S. Patent Nos. 8,079,086 ("'086 Patent"); 9,189,621 ("'621 Patent"); and 9,219,755 ("'755 Patent") (collectively, "Invalidated Patents"), as indefinite based on the term "Downloadable." *Finjan, Inc. v. ESET, LLC*, Case No. 3:17-cv-0183-CAB-BGS, Dkt. No. 864 ("ESET Order," attached as Ex. A) at 8. Judge Bencivengo based her decision on her construction of "Downloadable" as "a small executable or interpretable application program which is downloaded from a source computer and run on a destination computer," which is the express definition set forth in U.S. Patent Nos. 6,167,520 ("'520 Patent") and 6,480,962 ("'962 Patent") that the Invalidated Patents incorporate by reference. *Id*. at 4-5.

The '494 Patent is a direct continuation (with the identical specification) of the '086 Patent, which the ESET Order invalidated. Dkt. No. 1-5 ('494 Patent) at 1:7-11. Every claim of the '494 Patent contains the now-indefinite term "Downloadable." Just like each of the

Invalidated Patents, the '494 Patent incorporates by reference the subject matter of the '520 and '962 Patents that served the basis of the ESET Court's indefiniteness decision. *Id*. at 1:43-55.

## II.   GOVERNING LAW FOR COLLATERAL ESTOPPEL

"To foreclose relitigation of an issue under collateral estoppel, four conditions must be met: '(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits.'" *Arista Networks, Inc. v. Cisco Sys., Inc.*, No. 16-CV-00923-BLF, 2017 WL 6102804, at *11 (N.D. Cal. 10/10/17) (quoting *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012)). Under Ninth Circuit law, a summary judgment order satisfies the requirement of a "final judgment" for the purpose of collateral estoppel, regardless of whether it is appealable yet. *Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*, C04-02123MJJ, 2007 WL 1239220, at *12 (N.D. Cal. 4/27/07) ("Under Ninth Circuit law, to be 'final' for collateral estoppel purposes, a decision need not possess 'finality' in the sense of 28 U.S.C. § 1291. Instead, a final judgment for purposes of collateral estoppel is any prior adjudication of an issue in another action that is determined to be 'sufficiently firm' to be accorded preclusive effect." (internal citations omitted)). Even "the pendency of an appeal in the Federal Circuit 'does not suspend the operation of an otherwise final judgment as *res judicata* or collateral estoppel.'" *Gonzalez v. Tagged, Inc.*, 16-cv-00574-YGR, 2016 WL 3257734, at *2 (N.D. Cal. 6/14/16) (quoting *Convergence Corp. v. Videomedia*, 539 F. Supp. 760, 762 (N.D. Cal. 1981)).

## III.   THE '844 AND '780 PATENTS ARE INVALID

The ESET Order satisfies the four elements for collateral estoppel for the '844 and '780 Patents and already qualifies as a "final judgment" for purposes of collateral estoppel. *Id*. This Court therefore should enter judgment of invalidity.

## IV.   THE '494 PATENT IS ALSO INVALID

The ESET Order also satisfies the four collateral estoppel elements for "Downloadable" in the '494 Patent. The first element ("identical issue") is met for the reasons discussed below. The ESET Order on its face confirms the last three elements: the issue (whether the claim term "Downloadable" is indefinite on this intrinsic record) was litigated and decided in the ESET

2

Order; Finjan had a "full and fair opportunity" to litigate it; and the issue was necessary to decide the merits of invalidity. Finjan's arguments about why it disagrees with the ESET Order are irrelevant; the "full and fair opportunity" prong is a limited inquiry. *Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 709 (Fed. Cir. 1983) ("it is clear from the case law that has developed since *Blonder-Tongue* that an inappropriate inquiry is whether the prior finding of invalidity was correct; instead, the court is only to decide whether the patentee had a full and fair opportunity to litigate the validity of his patent in the prior unsuccessful suit").

### A. The '494 Patent Is Invalid Based on the "Identical Issue" as the ESET Order

Although the '494 Patent is not referenced in the ESET Order (because it was not asserted against ESET), the same indefinite term ("Downloadable") appears in every claim of the '494 Patent, and the '494 Patent has the same intrinsic record on which the ESET Order relied. In other words, every basis for the ESET Order exists and applies with equal force to the '494 Patent. To bring this issue into clear focus, if Finjan had asserted the '494 Patent in the ESET case, the ESET Order already would have held the '494 Patent invalid.

The *Blonder-Tongue* principle therefore applies equally to the '494 Patent. *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) ("Our precedent does not limit collateral estoppel to patent claims that are identical. Rather, it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply."). In cases applying the "same issue" principle from *Ohio Willow*, the Federal Circuit has used collateral estoppel to invalidate a related patent (i.e., a *different* patent than the patent on which collateral estoppel arises) as a matter of law, where the "issue" was the same -- and the Federal Circuit did so even where the issue was raised for the first time on appeal:

> It is undisputed that the claims at issue in the two appeals use the term "aseptic" (or its related variation "aseptically disinfecting") in a similar fashion. *Compare* '468 patent, col. 26 l. 20 . . . *with* '013 patent, col. 16 ll. 36-62 . . . . More critically, the two patents also provide identical lexicography for the term 'aseptic' in their specifications… Neither party has pointed to any material difference between the two patents or their prosecution histories that would give rise to claim construction issues in this appeal different from

3

those raised in the prior appeal. Accordingly, Steuben Foods has had a full and fair

opportunity to litigate the issue of claim construction during the prior appeal.

*Nestlé USA, Inc. v. Steuben Foods, Inc.,* 884 F.3d 1350, 1351-52 (Fed. Cir. 2018).  *See also Papst*

*Licensing GMBH & Co. v. Samsung Elecs. Am., Inc.,* 924 F.3d 1243, 1252-53 (Fed. Cir. 2019)

("The '*144 Patent Aytac Decision* resolved against Papst the claim construction and Aytac-

teaching issues now before us [on the '437 Patent], and those resolutions were essential to the

Board's decision.. . . . Issue preclusion therefore applies . . . .")

Any difference in surrounding claim language is irrelevant; it is the identity of the "issue"

(i.e., whether the term "Downloadable" is indefinite based on the ESET Court's claim

construction) that is controlling.  *Arunachalam v. Presidio Bank,* 801 F. App'x 750, 752-53 (Fed.

Cir. 2020) ("As to the first condition for applying collateral estoppel (identical issue), we find that

the remaining claims in the '500, '492, and '158 patents all rely on at least one of the claim terms

found indefinite, not enabled, or failing written description by *JPMorgan* and that these remaining

claims do not significantly alter the analysis of those terms.").

### B.  The Details of the Earlier Proceedings In This Case Are Irrelevant

Finjan seeks to avoid the application of collateral estoppel to the '494 Patent based on

Cisco's stipulation to a different construction of the term "Downloadable" in this case, but that

stipulation is no more relevant to the invalidity of the '494 Patent than it is to the '844 and '780

Patents.  In applying collateral estoppel in this context, a court simply determines whether the 4-

factor test is met, and does not revisit whether it agrees with the other court's ultimate decision on

invalidity or the sub-issues that led to the invalidity finding.  *Crossroads Sys. (Tex.), Inc. v. Dot*

*Hill Sys. Corp.,* 2006 WL 1544621, at *5 (W.D. Tex. 5/31/06) ("the overwhelming weight of

authority suggests that the 'issue' that is to be given issue-preclusive effect to a judgment in the

patent context is the ultimate determination on patent validity itself, not the sub-issues or the

individual pieces of evidence and arguments that may have been necessary to support the validity

determination").  Under *Ohio Willow,* the "issue" for all three patents is the same, i.e., the

invalidity of the patents arising from the indefiniteness of the term "Downloadable" based on the

same intrinsic record.  Just like the '844 and '780 Patents, the earlier stipulation in this case on the

4

**CISCO SYSTEMS, INC.'S MOTION FOR JUDGMENT OF INVALIDITY
OF THE '844, '780, AND '494 PATENT BASED ON COLLATERAL ESTOPPEL
Case No. 5:17-cv-00072-BLF-SVK**

'494 Patent is legally irrelevant.  Indeed, the doctrine would apply even if Cisco had previously lost the issue of validity at trial.  *Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1579-80 Fed. Cir. 1994).

Cisco's stipulation on the underlying issue of the construction of "Downloadable" cannot change the outcome that the '494 Patent is now invalid. Regardless of what happened earlier in this case, the doctrine of collateral estoppel does not allow the '494 Patent to be invalid when asserted against the rest of the world, but still valid against Cisco.  Indeed, in *Mendenhall*, the Federal Circuit reversed a district court's refusal to apply collateral estoppel where the defendant seeking to apply the invalidity ruling from another case (i.e., the party situated like Cisco here) had itself *already tried and lost* the issue of invalidity, and then after that trial a different court found the patent to be invalid:

> [O]ur precedent holds that the defense of collateral estoppel based on a final judgment of patent invalidity in another suit can "be timely made at any stage of the affected proceedings."  . . . [A]ppellants' defense of collateral estoppel is not untimely.

*Id.* at 1579-80.  A district court has rejected the materially identical argument that Finjan makes:

> Quest also contends that collateral estoppel should not apply because A.Hak has stipulated to definitions of certain claim terms that are different than the constructions applied by Judge Robinson. That, however, is an issue of claim construction that does not alter the preclusive effect of Judge Robinson's express findings that specific patent claims at issue in this action are invalid. The Court finds that collateral estoppel applies . . . .

*Quest Integrity USA, LLC v. A.Hak Indus. Servs. US, LLC,* No. C14-1971-RAJ, 2017 U.S. Dist. LEXIS 119821, at *10-11 (W.D. Wash. 7/31/17), *vacated on other grounds by agreement of the parties*, 2:14-cv-01971 RAJ, 2019 U.S. Dist. LEXIS 79571, at *1 (W.D. Wash. 5/10/19).  The Federal Circuit has likewise repeatedly held that a defense of collateral estoppel based on a final judgment of patent invalidity in another suit can "be timely made at any stage of the affected proceedings." *Dana Corp. v. NOK, Inc.*, 882 F.2d 505, 507 (Fed. Cir. 1989). *See also Thompson-Hayward Chem. Co. v. Rohm & Hass Co.,* 745 F.2d 27, 32-33 (Fed. Cir. 1984) (applying estoppel to invalidity judgment on appeal even though infringer did not challenge validity at trial).

5

**CISCO SYSTEMS, INC.'S MOTION FOR JUDGMENT OF INVALIDITY
OF THE '844, '780, AND '494 PATENT BASED ON COLLATERAL ESTOPPEL
Case No. 5:17-cv-00072-BLF-SVK**

| | |
|---|---|
| 1 | Dated:  April 19, 2021 |

Respectfully Submitted,

DUANE MORRIS LLP

By:____/s/ Nicole E. Grigg_____
D. Stuart Bartow (CA SBN 233107)
dsbartow@duanemorris.com
Nicole E. Grigg (CA SBN 307733)
negrigg@duanemorris.com
2475 Hanover Street
Palo Alto, CA  94304-1194
Telephone: 650.847.4146
Facsimile: 650.847.4151

L. Norwood Jameson (admitted *pro hac vice*)
Email:  wjameson@duanemorris.com
Matthew C. Gaudet (admitted *pro hac vice*)
Email:  mcgaudet@duanemorris.com
Robin L. McGrath (admitted *pro hac vice*)
Email: rlmcgrath@duanemorris.com
David C. Dotson (admitted *pro hac vice*)
Email:  dcdotson@duanemorris.com
John R. Gibson (admitted *pro hac vice*)
Email:  jrgibson@duanemorris.com
Jennifer H. Forte (admitted *pro hac vice*)
Email:  jhforte@duanemorris.com
Alice E. Snedeker (admitted *pro hac vice*)
Email: aesnedeker@duanemorris.com
1075 Peachtree Street, Ste. 2000
Atlanta, GA  30309
Telephone: 404.253.6900
Facsimile: 404.253.6901

Joseph A. Powers (admitted *pro hac vice*)
Email:  japowers@duanemorris.com
Jarrad M. Gunther (admitted *pro hac vice*)
Email: jmgunther@duanemorris.com
30 South 17th Street
Philadelphia, PA  19103
Telephone: 215.979.1000
Facsimile: 215.979.1020

*Attorneys for Defendant*
CISCO SYSTEMS, INC.

6

**CISCO SYSTEMS, INC.'S MOTION FOR JUDGMENT OF INVALIDITY
OF THE '844, '780, AND '494 PATENT BASED ON COLLATERAL ESTOPPEL
Case No. 5:17-cv-00072-BLF-SVK**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 19, 2021 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Nicole E. Grigg*
Nicole E. Grigg

1

**[PROPOSED] ORDER**

Upon consideration of all pleadings, papers, and arguments submitted in support of and

opposition to Defendant Cisco Systems, Inc.'s Motion for Judgment of Invalidity of the '844,

'780, and '494 Patents Based on Collateral Estoppel ("Cisco's Motion"), and good cause

appearing therefor, the Court hereby GRANTS Cisco's Motion and enters judgment that the '844,

'780, and '494 Patents are invalid for the reasons set forth in Cisco's Motion.


Dated: _____          _____
                                Hon. Beth Labson Freeman
                                United States District Court Judge

# Exhibit A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

FINJAN, INC.,

                     Plaintiff,

v.

ESET, LLC, a California Limited Liability and ESET SPOL. S.R.O., a Slovak Republic Corporation,

                     Defendants.

Case No.: 3:17-cv-0183-CAB-BGS

**ORDER ON DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT OF INDEFINITENESS**
**[Doc. No. 806]**

    Before the Court is the renewed motion of Defendants ESET, LLC and ESET spol. s.r.o (collectively "ESET") for summary judgment to invalidate Plaintiff Finjan's United States Patent Nos. 6,154,844; 6,804,780; 8,079,086; 9,189,621; and 9,219,755 ("the patents at-issue") as indefinite pursuant to 35 U.S.C. § 112 based on this Court's construction of the claim term "Downloadable." The motion is fully briefed, and the Court deems it suitable for submission without oral argument.

## I.    Background

    This motion has an unusual history. ESET filed a motion for summary judgment asserting that the patents at-issue are indefinite at the close of fact discovery in this case, and the Court held argument on September 26, 2019. Finding that there were factual disputes regarding what a skilled artisan in 1997 would have understood constituted a

"Downloadable" based on the Court's construction of that term, the Court denied the motion without prejudice. [Doc. No. 699.] It was anticipated that trial testimony would establish what was generally understood in the art in 1997 as a "Downloadable" and such testimony would inform the scope of infringement. [Doc. No. 697, at 22:3-15.]

A jury trial commenced in this case on March 10, 2020. After three trial days the Court was forced to vacate the remainder of the trial, excuse the jury and declare a mistrial due to the COVID-19 pandemic and the issuance of the State of California's stay-home order. [Doc. No. 783.] This District's continuing moratorium on civil jury trials and backlog of criminal jury trials currently precludes scheduling a new trial in this matter.

Having heard testimony from Finjan's expert during the vacated trial on this issue, however, the Court permitted ESET to renew this motion in consideration of the testimony that was taken. Although Finjan's patents have been the subject of much litigation, and the term "Downloadable" has been construed by other courts, the issue raised in ESET's current motion does not appear to have been addressed by any prior constructions.

Finjan is the owner of a large family tree of patents for security systems and methods of detecting malware in computer programs. Finjan has litigated many of their patents, including some of the patents at-issue in this motion, in other district courts. Many have also been subject to *inter partes* review by the Patent and Trademark Office (PTO). The Federal Circuit has issued at least nine opinions, precedential and non-precedential, on appeals from district courts and the PTO regarding Finjan patents. Yet none of these orders or opinions discuss how earlier references incorporated into the patents at-issue inform the construction of the term "Downloadable."

## II. The Construction of "Downloadable"

In 2017, Finjan filed this litigation against defendants ESET asserting infringement of the patents at-issue, and United States Patent No. 7,975,305.[1] Finjan claims priority for

---

[1] The '305 patent is not subject to this motion as it does not include the claim term "Downloadable."

the patents at-issue back to an application filed on November 8, 1996, Provisional Application 60/030639. [Doc. No. 139-24.]  The application is directed at "a system and method for protecting computers from hostile Downloadables," described as executable application programs automatically downloaded from a source computer and run on the destination computer that might carry computer "viruses."  [Id., at 5-6.] The claim term "Downloadable" is presented as a capitalized term in the provisional application and all the patents at-issue, signaling it is a specifically defined term. The definition of "Downloadables," however, is not consistent throughout Finjan's subsequently issued patents.  The explicit definitions include:

- "applets" (little applications) described in the 1990s as small interpreted or executable programs.  *See* Provisional Application 60/030639 (filed November 8, 1996) [*Id.* at 5-6.]

- "Downloadables (i.e., applets)" as "a small executable or interpretable application program which is downloaded from a source computer and run on a destination computer," in conformity with the original provisional application. *See* U.S. Patent No. 6,167,520, at Col. 1:31-34 (application filed January 29, 1997); U.S. Patent No. 6,480,962, at Col. 1:38-41 (filed April 18, 2000).

- "an executable application program which is downloaded from a source computer and run on a destination computer" (without "i.e., applet," "small" or "interpretable" included in the definition but using applets and interpretable programs as examples of a "Downloadable" and incorporating the earlier definition by reference).  *See* U.S. Patent No. 6,092,194, at Col. 1:44-55 (filed November 6, 1997); U.S. Patent No. 6,804,780 at Col. 1:50-60 (filed March 30, 2000).

Other district courts have determined that "Downloadable" lacked ordinary meaning when the patents were filed and construed it as "an executable application program which is downloaded from a source computer and run on a destination computer," applying the

explicit definition from the '194 patent. [Doc. No. 139-10, at 3; Doc. No. 138-4, at 2-5 (the term was not amenable to plain and ordinary meaning and the patent applicant intended to act as the lexicographer of this term, therefore the specification definition controls).]  None of these orders, however, discussed the significance of the '520 patent's definition incorporated into the '194 patent and its continuations.  One district court, without explanation, applied the broader definition from the '194 patent specification to the construction of the term "Downloadable" in the '962 patent as "the same" definition [id., at 3, fn. 4], disregarding the fact the '962 patent explicitly defines "Downloadable" as "a *small* executable or interpretable application program which is downloaded from a source computer and run on a destination computer."  *See* U.S. Patent No. 6,480,962, at Col. 1:39-41 (*emphasis* added).

Incorporation by reference provides a method for integrating material from various documents into a host document by citing such material in a manner that makes clear that the material is effectively part of the host document as if it were explicitly contained therein.  *See Trustees of Columbia Univ. v. Symantec,* 811 F.3d 1359, 1365-66 (Fed. Cir. 2016) (*citing Advanced Display Sys. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000) (provisional applications incorporated by reference are effectively part of the specification as though it was explicitly contained therein.)).  By incorporating the earlier definition of "Downloadable" from the '520 Patent into the '194 Patent and subsequent continuations (including the patents at-issue), the scope of the term is limited to "*small* executable or interpretable application programs," and not *all* executable application programs (*emphasis* added).  *See Symantec*, 811 F.3d at 1365 (rejecting a broad interpretation of a claim term in part because a provisional application incorporated by reference the same term more narrowly defined.)  Inconsistent language used later cannot support a broad claim construction when the explicit definition is incorporated from earlier patents in the family tree.

In this case, the Court concluded that based on its incorporation by reference in all the patents at-issue, the explicit definition of "Downloadables" from the '520 patent and

the '962 patent, which is supported by the examples provided in the specification, is the proper construction of "Downloadables" – "a small executable or interpretable application program which is downloaded from a source computer and run on a destination computer." [Doc. No. 195.]

## III.     The Indefiniteness Determination

The Court's claim construction, not unexpectedly, resulted in the present dispute as to the scope of the modifier "small."  ESET argues that "small" is a term of degree with not technical meaning or defined boundaries and there is insufficient information in the intrinsic record for a skilled artisan to have clear notice of what constitutes a "small executable or interpretable application program." They further argue that this is demonstrated by the inability of Finjan's experts to come to a consistent opinion as to what objective boundaries constitute a small application program. [806-1, at 5, 17.]

The definiteness requirement of paragraph 2 of 35 U.S.C. §112 requires that the "specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  The definiteness requirement focuses on whether "a patent's claims, viewed in light of the specification and prosecution history inform those skilled in the art about the scope of the invention with reasonable certainty."  *Nautilus, Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898, 910 (2014).  The inquiry "trains on the understanding of a skilled artisan at the time of the patent application."  *Id.* at 911.

Terms of degree must provide sufficient certainty to one of skill in the art to afford clear notice of what is claimed and what is still open to the public. *See Biosig Instruments, Inc. v. Nautilus, Inc*., 738 F.3d 1374, 1378 (Fed. Cir. 2015) ("When a 'word of degree' is used, the court must determine whether the patent provides 'some standard for measuring that degree.'"); *Interval Licensing LLC v. AOL, Inc.,* 766 F.3d 1364, 1370 (Fed. Cir. 2014) (the definiteness standard must allow for a modicum of uncertainty but must also require clear notice of what is claimed thereby apprising the public of what is still open to them).

3:17-cv-0183-CAB-BGS

Finjan's contention that the claim term "Downloadable" cannot be indefinite simply because the Court was able to construe it by adopting the explicit definition provided by the inventor in the '520 patent fails to address the issue raised by ESET.  A defined term is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope.  *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008).  The issue therefore is whether a skilled artisan in 1997 would have understood with reasonable certainty based on the specification and prosecution history what the inventor meant by a "small" application program and therefore understood what comes within the scope of the claims.

The '510 patent, incorporated into all the later patents, describes a Downloadable as an "applet," a small interpretable or executable application program, and provides that "a Downloadable is used in a distributed environment such as the Java™ distributed environment produced by Sun Microsystems or in the Active X™ distributed environment produced by Microsoft Corporation." *See* '520 Patent, at Col. 1:31-32, 34-38.  Because such examples existed in the 1990s, there should be an objective standard for the size of a "small" program. While "absolute or mathematical precision" was not required, some objective boundary should be identifiable from the disclosed embodiments.  *See Biosig Instruments*, 738 F.3d at 1381.

Finjan opposed ESET's initial motion for summary judgment for indefiniteness as to the scope of "small" on the grounds that a numerical limitation or cut-off is not necessary because a skilled artisan could determine if an application is "small" from the examples in the '962 patent and based on the context.  Finjan, however, did not provide an explanation as to how that skilled artisan would therefore interpret "small" or the context that would apply.  [Doc. No. 610, at 8 and 15.][2]

---

[2] Finjan has also argued that the Court should reconsider its incorporation of "small" into the construction of Downloadable and disregard that modifier as other district courts have done to avoid this definiteness issue. [Doc. No. 812, at 6.] This solution may resolve Finjan's problem with defining "small," but the fact that the Court's construction results in indefiniteness is not a basis for reconsideration.

3:17-cv-0183-CAB-BGS

ESET argued then, as it does now, that Finjan's experts did not provide any objective boundaries for a "small" application program based on what a skilled artisan would have understood was upper end of "small" in the context of application programs being downloaded from a source computer to run on a destination computer at the time the application was filed. [Doc. No. 816, at 5.] Finjan's contention that the understanding of what is "small" depends on the context is not supported by the intrinsic evidence or even extrinsic evidence of the state of the art at the relevant time. It amounted to "unpredictable vagaries of any one person's opinion" and therefore failed to provide sufficient notice as to the scope of the term. *Interval Licensing*, 766 F.3d at 1371 ("[A] term of degree fails to provide sufficient notice of its scope if it depends on the unpredictable vagaries of any one persons' opinion.")

ESET contends that the trial testimony of Finjan expert Dr. Eric Cole did not remedy this defect.[3] Dr. Cole presented an explanation how a skilled artisan would interpret "small" that was neither disclosed in his previous declaration to the Court (small meant "a few megs … something that is not multiple gigs or really large" [Doc. No. 806-1, at 17]) or anchored to the specification or prosecution history. Rather than providing a range of application size that would have been construed as "small" by an artisan in 1997, Dr. Cole testified on Finjan's behalf that an application would be understood to be small if it "did not require installation" and opined that "small" depends not on size but on the function. Dr. Cole testified that a small executable is an application that does not require installation is "self-contained" and is "just running automatically" which is "typical if you go to any website nowadays," whereas an executable that is not small "requires installation" and has "a lot of shared libraries and dlls and other programs" in order to run. [Doc. No. 812, at 12.] Dr. Cole testified that regardless of time period, Internet speed and other factors related

---

[3] Although the trial was terminated early due to the pandemic, Dr. Cole's testimony was completed. Finjan suggests that Dr. Cole's testimony at a future trial will replace his completed testimony, but a subsequent trial is not an opportunity for Dr. Cole to change his opinions or supplement them with support he did not provide on the record at the first trial. [Doc. No. 816, at 11.]

to capacity, what fits the criteria of "small" may change but this distinction (installed or not installed) is constant. Dr. Cole did not however provide support from the specification, the prosecution history, or from any extrinsic sources in the relevant time period, for this new explanation that a skilled artisan in 1997 would understand "small" to be "uninstalled" or "not requiring installation."

In sum, Finjan never offered evidence of a reasonable range for the size of a small executable or interpretable application program as understood by a skilled artisan in 1997 based on examples provided in the patent specification. Instead, Finjan elected at trial to offer a new understanding without reference to the size of the application as the objective boundary of a "small" application. Finjan's new definition is not supported by the specification or prosecution history. It may be convenient to support Finjan's infringement contentions against ESET's accused devices, but Finjan's new explanation does provide clear notice of what constitutes a "small executable or interpretable application program."

## IV.    Conclusion

For the foregoing reasons, the Court finds that the term "Downloadable" as used in the patents at-issue is indefinite. Accordingly, it is hereby **ORDERED** that ESET's motion for summary judgment of invalidity of Finjan's United States Patent Nos. 6,154,844; 6,804,780; 8,079,086; 9,189,621; and 9,219,755 for indefiniteness is **GRANTED**.

It is **SO ORDERED**.

Dated:  March 23, 2021

_____
Hon. Cathy Ann Bencivengo
United States District Judge

# EXHIBIT B

Juanita R. Brooks (CA SBN 75934); brooks@fr.com
Roger A. Denning (CA SBN 228998); denning@fr.com
Frank J. Albert (CA SBN 247741); albert@fr.com
Megan A. Chacon (CA SBN 304912); chacon@fr.com
K. Nicole Williams (CA SBN 291900); nwilliams@fr.com
Oliver J. Richards (CA SBN 310972); ojr@fr.com
Jared A. Smith (CA SBN 306576); jasmith@fr.com
Tucker N. Terhufen (CA SBN 311038); terhufen@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Aamir Kazi (Admitted *Pro Hac Vice*); kazi@fr.com
Alana C. Mannige (CA SBN 313341); mannige@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile: (404) 892-5002

Attorneys for Plaintiff
FINJAN LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN JOSE DIVISION)

| | |
|---|---|
| FINJAN LLC, a Delaware Limited Liability Company, | Case No. 5:17-cv-00072-BLF-SVK |
| Plaintiff, | **FINJAN LLC'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION FOR JUDGMENT OF INVALIDITY OF THE '844, '780 AND '494 PATENTS BASED ON COLLATERAL ESTOPPEL** |
| v. | |
| CISCO SYSTEMS, INC., a California Corporation, | |
| Defendant. | |

## I.    INTRODUCTION

Finjan's Motion for Reconsideration of the ESET Court's summary judgment order (the "ESET Order") is currently pending, having been filed on April 12, 2021. If granted, the decision will undo the invalidity determination for the '844 and '780 Patents, and those patents could then be included in the upcoming trial in this case. However, until that motion is ruled upon, the ESET Order is not "sufficiently firm" to be accorded conclusive effect. And from a practical standpoint, applying collateral estoppel now to find those patents invalid in this case runs the risk of having to reverse course, should the Court in ESET grant the Motion for Reconsideration.

The '494 Patent was not asserted in ESET, so it is not addressed in the ESET Order. Moreover, this Court has construed the term "downloadable" in the '494 Patent in a manner that does not include the term "small," which was the basis for the ESET Court's indefiniteness determination as to the '844 and '780 Patents. And while Cisco argues collateral estoppel should apply to the '494 Patent, the decision to do so is completely within this Court's discretion.

## II.   BACKGROUND

Multiple courts—including in Finjan's cases against McAfee, Blue Coat, Proofpoint, Symantec, SonicWall, and Rapid7—have construed the term "downloadable" identical to the Court's construction in this case. Indeed, in this Court's first *Blue Coat* trial, the jury found that Blue Coat infringed claims of the '844 and '780 Patents by applying the Court's construction of "downloadable." (*See* Exh.[1] A at 2-3.) The Federal Circuit affirmed those findings on appeal. *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1306-07 (Fed. Cir. 2018). With this track record of courts consistently construing "downloadable" to have the same meaning, it is not surprising Cisco stipulated to that same construction in this case (ECF 85 at 1), and that this Court adopted the stipulated construction on July 23, 2018. (ECF 134 at 5.)

In contrast, the construction of "downloadable" by the Court in ESET stands alone. It is the only court that inserted the word "small" in the construction, as set out in the ESET Court's claim

---

[1] All exhibits cited herein are attached to the declaration of K. Nicole Williams ISO Finjan's Opp'n to Mot. For Judgment of Invalidity, filed contemporaneously herewith.

FINJAN'S OPPOSITION TO CISCO'S MOTION
FOR JUDGMENT OF INVALIDITY
Case No. 5:17-cv-00072-BLF-SVK

construction order on November 14, 2017. (*See* Exh. B at 3.) Yet even after the Court in ESET entered its outlier construction, Cisco continued to urge this Court to adopt a construction that did not include the word "small." In the Joint Claim Construction and Pre-Hearing Statement, the parties jointly requested that this Court construe "downloadable" without the word "small." (ECF 85 at 1.) Cisco maintained that position in its claim construction briefing, in which, despite using the term "downloadable" 285 times, Cisco never once used the word "small." (ECF 112.) This Court held a *Markman* hearing, and again Cisco did not withdraw its agreed-upon construction. (ECF 132.) In July 2018, this Court construed the term "downloadable" as jointly requested by the parties and in the same way the term had been construed in every case except ESET. (ECF 134 at 5.)

In Finjan's action against ESET, a jury trial commenced on March 10, 2020, which was halted shortly thereafter due to the COVID-19 pandemic. (*See* Exh. C.) On a renewed motion for summary judgment following the mistrial, the ESET Court found that "Finjan never offered evidence of a reasonable range for the size of a small executable" and held five Finjan patents invalid as indefinite, including the '780 and '844 Patents asserted here. (*See* Exh. D at 8.) On April 12, 2021, Finjan moved for reconsideration of the ESET Order because there was clear error in shifting the burden to Finjan to prove patent validity and the order was manifestly unjust since, at the time of the mistrial, neither party had presented evidence on whether downloadable was indefinite. (*See generally* Exh. E.)

## III. LEGAL STANDARDS

Collateral estoppel is considered under the law of the regional circuit. *RF Del., Inc. v. Pac. Keystone Techs., Inc.*, 326 F.3d 1255, 1261 (Fed. Cir. 2003). In the Ninth Circuit, collateral estoppel applies in a patent case if: "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be re-litigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." *Droplets, Inc. v. Yahoo! Inc.*, 2019 WL 5781915, at *2 (N.D. Cal. Oct. 15, 2019) (citing *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000)). The party asserting issue preclusion bears the burden of showing these elements are met. *Hydranautics*,

FINJAN'S OPPOSITION TO CISCO'S MOTION
FOR JUDGMENT OF INVALIDITY
Case No. 5:17-cv-00072-BLF-SVK

204 F.3d at 885. A "final judgment" for purposes of issue preclusion can be any prior adjudication of an issue in another action that is determined to be "sufficiently firm" to be accorded conclusive effect. *Elan Microelectronics Corp. v. Apple, Inc.*, 2010 WL 4510909, at *3 n.3 (N.D. Cal. Nov. 1, 2010). The Ninth Circuit has set forth several factors that should be considered when determining whether an order is "sufficiently firm" including "whether the parties were fully heard." *See Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*, 2007 WL 1239220, at *12-*13 (N.D. Cal. Apr. 27, 2007) (citing *Luben Indus., Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983)).

Even when all three elements are met, whether to apply the collateral estoppel bar is solely within the court's discretion. *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 697 (9th Cir. 1984). This broad discretion to trial courts allows them "to take potential shortcomings or indices of unfairness into account when considering whether to apply . . . issue preclusion, even where the above-listed standard prerequisites are met." *Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1078-79 (9th Cir. 2007); *see also Neev v. Alcon*, 2016 WL 9051170 at *12-13 (C.D. Cal. Dec. 22, 2016), *aff'd sub nom. Neev v. Alcon Lensx Inc.*, 774 F. App'x 680 (Fed. Cir. 2019) (declining to apply collateral estoppel to claim construction where it would neither promote uniformity nor judicial efficiency).

## IV. ARGUMENT

### A. Collateral Estoppel Is Not Yet Applicable As To The '844 and '780 Patents

Cisco has failed to meet its burden to show that collateral estoppel applies because the ESET Order as to the '844 and '780 is not "sufficiently firm," under *Hydranautics*. A Motion for Reconsideration is pending and the ESET Court has not ruled upon that motion nor entered final judgment.

The ESET Court's original finding of indefiniteness as to the '844 and '780 was based on an incomplete presentation of the evidence—the testimony of **one expert** who addressed **infringement** on only **one of the five** patents before a mistrial was declared. (*See* Exh. E at 5-12.) ESET, the party with the burden of proof on invalidity, had not even begun its case. The judge and jury had yet to hear that ESET's expert on invalidity had **never** opined that, in his opinion, the term "small" rendered the claims indefinite. Nor had they heard that ESET's invalidity expert had no

FINJAN'S OPPOSITION TO CISCO'S MOTION
FOR JUDGMENT OF INVALIDITY
Case No. 5:17-cv-00072-BLF-SVK

problem understanding and applying the term when analyzing the prior art. (*See* Exh. E at 5-7; Exh. F at 5-8.) The ESET Court also did not account for the testimony of Finjan's expert on validity, who—but for the mistrial—would have explained in rebuttal how a person of ordinary skill in the art would understand the objective bounds of the claim term "downloadable." (*See* Exh. F at 1-5.) Given that the original ESET Order was entered before the parties were "sufficiently heard" and Finjan's Motion for Reconsideration is still pending, finding the '844 and '780 patents invalid in this case now would be premature. The Finjan action against ESET has not ended with final judgment on the merits, and is insufficiently firm to create a preclusive effect. *See, e.g.*, *Rambus Inc. v. Hynix Semiconductor Inc.*, 569 F. Supp. 2d 946, 968 (N.D. Cal. 2008) (finding issue preclusion did not apply to prior claim constructions where judgment in prior case was not final).

### B. The Court Should Decline to Apply Collateral Estoppel To The '494 Patent

The Court has discretion to decline to apply collateral estoppel, even if it finds the Ninth Circuit factors are satisfied. Here, considerations of fairness and uniformity counsel against applying the collateral estoppel bar to the '494 Patent. *See, e.g.*, *Neev*, 2016 WL 9051170 at *12-13; *see also Syverson*, 472 F.3d at 1078-79.

First, the '494 Patent was not before the ESET Court; therefore there has been no finding of invalidity as to that patent. Second, this Court has construed the term "downloadable" in the claims of the '494 Patent the same way seven of the eight courts have construed that term, i.e., one that does not include the term "small." The construction of "downloadable" in the ESET case stands in contrast to each of the other cases, and the ESET Court's indefiniteness finding is predicated on that outlier construction. This Court is not bound by the ESET Court's construction and, in fact, has said that it does not intend to change the construction which the parties agreed to and have been operating under throughout this case.

In light of all of the above, applying collateral estoppel to the '494 Patent would be counter to the very rationale for the doctrine itself. Collateral estoppel is meant to prevent inefficient re-litigation of identical issues and promote uniformity in the treatment of a given patent and prior decisions. *See Neev*, 2016 WL 9051170 at *12-13. Applying estoppel here would treat the '494

FINJAN'S OPPOSITION TO CISCO'S MOTION
FOR JUDGMENT OF INVALIDITY
Case No. 5:17-cv-00072-BLF-SVK

1  Patent *inconsistently* with six other cases – in which the courts' construction has not created any

2  problems for juries, judges, or the parties.

3  In addition, from a fairness perspective, Cisco has consistently advocated for the

4  construction of "downloadable" that this Court adopted, even after the ESET Court entered its

5  outlier construction. Cisco is now seizing on the ESET Order, which is contrary to Cisco's own

6  proposed construction, to try to avoid trial on the '494, which was not before the court in ESET and

7  therefore, not the subject of the ESET Order. Finjan submits the fair path is for this Court to exercise

8  its discretion and decline to apply the collateral estoppel bar to the '494 Patent. *See Syverson*, 472

9  F.3d at 1079.

10  None of Cisco's cited cases require a different result. For example, *Ohio Willow Wood*

11  does not support Cisco's sweeping conclusion that a court *must* apply the collateral estoppel bar if

12  the collateral estoppel factors are met. In that case, the defendant timely moved for summary

13  judgment based on collateral estoppel, the district court *chose* to grant the motion, and the Federal

14  Circuit affirmed. *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1341-43 (Fed. Cir.

15  2013). Likewise, in the *Nestle USA* and *Papst Licensing* cases, the Federal Circuit affirmed PTAB

16  claim construction decisions where collateral estoppel was applied. *See Nestle USA, Inc. v.

17  Stueben Foods, Inc.*, 884 F.3d 1350, 1352 (Fed. Cir. 2018); *Papst Licensing GMBH & Co. v.

18  Samsung Elecs. Am., Inc.*, 924 F.3d 1243, 1252-53 (Fed. Cir. 2019). Finally, in *Arunachalam v.

19  Presidio Bank*, 801 F. App'x 750 (Fed. Cir. 2020), the Federal Circuit merely affirmed the lower

20  court's exercise of its discretion in *choosing* to apply the collateral estoppel bar. *Id.* at 753-54.

21  None of these cases suggest that this Court *must* apply collateral estoppel, or that the Federal

22  Circuit would fault this Court if, in considering fairness and uniformity, this Court *chooses* to

23  exercise its discretion and decline to apply the collateral estoppel bar to the '494 Patent.

24  **V.     CONCLUSION**

25  For the foregoing reasons Finjan respectfully requests the Court deny Cisco's Motion as to

26  the '844 and '780 Patents unless and until final judgment is entered by the ESET Court and deny

27  Cisco's motion as to the '494 Patent and allow that patent to proceed to trial.

28

Dated: April 26, 2021

FISH & RICHARDSON P.C.


By: /s/ *Juanita R. Brooks*
    Juanita R. Brooks

Attorneys for Plaintiff
FINJAN LLC

Juanita R. Brooks (CA SBN 75934); brooks@fr.com
Roger A. Denning (CA SBN 228998); denning@fr.com
Frank J. Albert (CA SBN 247741); albert@fr.com
Megan A. Chacon (CA SBN 304912); chacon@fr.com
K. Nicole Williams (CA SBN 291900); nwilliams@fr.com
Oliver J. Richards (CA SBN 310972); ojr@fr.com
Jared A. Smith (CA SBN 306576); jasmith@fr.com
Tucker N. Terhufen (CA SBN 311038); terhufen@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile:  (858) 678-5099

Aamir Kazi (Admitted *Pro Hac Vice*); kazi@fr.com
Alana C. Mannige (CA SBN 313341); mannige@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile:  (404) 892-5002

Attorneys for Plaintiff
FINJAN LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN JOSE DIVISION)

| | |
|---|---|
| FINJAN LLC, a Delaware Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> CISCO SYSTEMS, INC., a California Corporation, <br><br> Defendant. | Case No. 5:17-cv-00072-BLF-SVK <br><br> **DECLARATION OF K. NICOLE WILLIAMS IN SUPPORT OF FINJAN LLC'S OPPOSITION TO CISCO SYSTEMS, INC.'S MOTION FOR JUDGMENT OF INVALIDITY OF THE '844, '780 AND '494 PATENTS BASED ON COLLATERAL ESTOPPEL** |

I, K. Nicole Williams, hereby declare and state as follows:

1.      I am a principal in the law firm of Fish & Richardson P.C., counsel of record for Plaintiff Finjan LLC in the above-captioned matter.  I have personal knowledge of all the facts contained herein and, if called as a witness, I could and would testify competently thereto.

2.      Attached as Exhibit A is a true and correct copy of *Finjan Inc. v. Blue Coat Sys.*, *Inc.*, No 5-13-cv-03999, ECF 438 (N.D. Cal. Aug. 4, 2015).

3.      Attached as Exhibit B is a true and correct copy of *Finjan, Inc. v. ESET, LLC*, No. 3:17-cv-0183-CAB, ECF 195 (S.D. Cal. Nov. 14, 2017).

4.      Attached as Exhibit C is a true and correct copy of *Finjan, Inc. v. ESET, LLC*, No. 3:17-cv-0183-CAB, ECF 783 (S.D. Cal. Mar. 16, 2020).

5.      Attached as exhibit D is a true and correct copy of *Finjan, Inc. v. ESET, LLC*, No. 3:17-cv-0183-CAB, ECF 869 (S.D. Cal. Mar. 29, 2021).

6.      Attached as Exhibit E is a true and correct copy of *Finjan, Inc. v. ESET, LLC*, No. 3:17-cv-0183-CAB, ECF 872-1 (S.D. Cal. April 12, 2021).

7.      Attached as Exhibit F is a true and correct copy of *Finjan, Inc. v. ESET, LLC*, No. 3:17-cv-0183-CAB, ECF 872-2 (S.D. Cal. April 12, 2021).

I declare under the penalty of perjury of the laws of the United States of America that the foregoing is true and correct.  Executed on April 26, 2021, in Cardiff, California.

By:     */s/ K. Nicole Williams*
        K. Nicole Williams

DECLARATION OF K. NICOLE WILLIAMS IN
SUPPORT OF FINJAN'S OPPOSITION TO
CISCO'S MOTION FOR JUDGMENT OF
INVALIDITY
Case No. 5:17-cv-00072-BLF-SVK

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>            Plaintiff,<br><br>      v.<br><br>BLUE COAT SYSTEMS, INC., a Delaware Corporation,<br><br>            Defendant. | Case No.: 13-CV-03999-BLF<br><br>**VERDICT FORM** |

# VERDICT FORM

When answering the following questions and filling out this Verdict Form, please follow the directions provided throughout this Verdict Form. Your answer to each question must be unanimous. Some of the questions contain legal terms that are defined and explained in detail in the Jury Instructions. Please refer to the Jury Instructions if you are unsure about the meaning or usage of any legal term that appears in the questions below.

We, the jury, unanimously agree to the answers to the following questions and return them under the instructions of this court as our verdict in this case.

VERDICT FORM                                                      CASE NO. 13-CV-03999-BLF

**QUESTION 1**:  Did Finjan prove by a preponderance of the evidence that Blue Coat's product or combination of products as identified below literally infringes any of the following claims of the Asserted Patents?  **Answer "Yes" or "No" for each claim.**

| | | |
|---|---|---|
| **'844 Patent**<br>**WebPulse** | Claim 1   Yes<br><br>Claim 7   Yes<br><br>Claim 11   Yes | Claim 15   Yes<br><br>Claim 41   Yes |
| **'822 Patent**<br>**ProxySG** | Claim 9   No | Claim 10   No |
| **'633 Patent**<br>**ProxySG + CAS +**<br>**MAA** | Claim 14   No | |
| **'731 Patent**<br>**ProxySG + WebPulse** | Claim 1   Yes | Claim 17   Yes |
| **'968 Patent**<br>**ProxySG + WebPulse** | Claim 1   Yes | |
| **'780 Patent**<br>**ProxySG + ProxyAV** | Claim 9   Yes | Claim 13   Yes |

For each claim you did not find to be literally infringed, answer Question 2.

2

**QUESTION 2**:  Did Finjan prove by a preponderance of the evidence that Blue Coat's product or combination of products as identified below infringe under the doctrine of equivalents?  **Answer "Yes" or "No" for each claim.**

| | | |
|---|---|---|
| **'844 Patent**<br>**WebPulse** | Claim 1   Yes<br><br>Claim 11   Yes | Claim 7   Yes |
| **'822 Patent**<br>**ProxySG** | Claim 9   No | Claim 10   No |
| **'633 Patent**<br>**ProxySG + CAS +**<br>**MAA** | Claim 14   Yes | |
| **'968 Patent**<br>**ProxySG + WebPulse** | Claim 1   Yes | |
| **'780 Patent**<br>**ProxySG + ProxyAV** | Claim 9   Yes | Claim 13   Yes |

3

**QUESTION 3:**  What are the dates of invention for the '844 Patent and the '731 Patent?

'844 Patent:  *November 8, 1996*

'731 Patent  *November 6, 1997*

Regardless of the dates you find, please answer Question 4 with respect to each patent.

4

**QUESTION 4:** Did Blue Coat prove by clear and convincing evidence that any of the following claims of the Asserted Patents are invalid because they are anticipated? **Answer "Yes" or "No" for each claim.**

| '844 Patent | | |
|---|---|---|
| U.S. Patent No. 6,253,370 ("Abadi") | Claim 1 No | Claim 15 No |
| | Claim 7 No | Claim 41 No |
| | Claim 11 No | |

| '822 Patent | | |
|---|---|---|
| U.S. Patent No. 5,983,348 ("Ji") | Claim 9 No | Claim 10 No |

| '633 Patent | | |
|---|---|---|
| U.S. Patent No. 5,983,348 ("Ji") | Claim 14 No | |

| '731 Patent | | |
|---|---|---|
| IBM WebSphere Edge Server: New Features and Function in Version 2, IBM Redbooks ("Braswell") | Claim 1 No | Claim 17 No |

| '968 Patent | | |
|---|---|---|
| U.S. Patent No. 6,722,214 ("McClain") | Claim 1 No | |

| '780 Patent | | |
|---|---|---|
| U.S. Patent No. 5,815,709 ("Waldo") | Claim 9 No | Claim 13 No |

VERDICT FORM                                    CASE NO. 13-CV-03999-BLF

**Answer Question 5(a)-(f) only if you have found one or more claims of the Asserted Patents to be infringed and not invalid from Questions 1, 2 and 4.**

**QUESTION 5(a):** If you found any of the asserted claims of the '844 Patent to be infringed and not invalid, what amount of damages has Finjan proven it is entitled to that would fairly and reasonably compensate it for Blue Coat's infringement for the life of the patent?

$ _24,000,000_

**QUESTION 5(b):** If you found any of the asserted claims of the '822 Patent to be infringed and not invalid, what amount of damages has Finjan proven it is entitled to that would fairly and reasonably compensate it for Blue Coat's infringement for the life of the patent?

$ _0_

**QUESTION 5(c):** If you found the asserted claim of the '633 Patent to be infringed and not invalid, what amount of damages has Finjan proven it is entitled to that would fairly and reasonably compensate it for Blue Coat's infringement for the life of the patent?

$ _1,666,700_

**QUESTION 5(d):** If you found any of the asserted claims of the '731 Patent to be infringed and not invalid, what amount of damages has Finjan proven it is entitled to that would fairly and reasonably compensate it for Blue Coat's infringement for the life of the patent?

$ _6,000,000_

[continued to the next page]

6

VERDICT FORM                                                    CASE NO. 13-CV-03999-BLF

1  **QUESTION 5(e):** If you found the asserted claim of the '968 Patent to be infringed and not invalid,

2  what amount of damages has Finjan proven it is entitled to that would fairly and reasonably

3  compensate it for Blue Coat's infringement for the life of the patent?

4  $ *7,750,000*

5

6  **QUESTION 5(f):** If you found any of the asserted claims of the '780 Patent to be infringed and not

7  invalid, what amount of damages has Finjan proven it is entitled to that would fairly and reasonably

8  compensate it for Blue Coat's infringement for the life of the patent?

9  $ *111,787*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERDICT FORM                                                    CASE NO. 13-CV-03999-BLF

1      You have now reached the end of the verdict form and should review it to ensure it accurately

2  reflects your unanimous determinations. The Presiding Juror should then sign and date the verdict

3  form in the spaces below and notify the Security Guard that you have reached a verdict. The Presiding

4  Juror should retain possession of the verdict form and bring it when the jury is brought back into the

5  courtroom.

6

7

8  DATED: _August 4th_, 20_15_       By: _____

                                                   Presiding Juror

VERDICT FORM                                           CASE NO. 13-CV-03999-BLF

# EXHIBIT B

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

FINJAN, INC.,

                                        Plaintiff,

v.

ESET, LLC, a California Limited Liability
and ESET SPOL. S.R.O., a Slovak
Republic Corporation,

                                        Defendants.

Case No.:  3:17-cv-0183-CAB-(BGS)

**CLAIM CONSTRUCTION ORDER**

On September 25 and 26, 2017, the Court held a hearing to construe certain terms and phrases of the following patents: U.S. Patent Nos. 6,154,844; 6,804,780; 8,079,086; 9,189,621; 9,219,755; and 7,975,305.  The parties submitted briefing in accordance with this District's local patent rules and the case management order.  A tutorial was presented by both sides to assist the Court with the history and background of the patents.

The Court requested further briefing regarding certain terms.  Having now considered all the submissions of the parties, the arguments of counsel and for the reasons set forth at the hearing and herein, the Court hereby enters the claim constructions set forth below.

## A. "Downloadable" in U.S. Patent Nos. 6,154,844; 6,804,780; 8,079,086; 9,189,621 and 9,219,755

The parties seek construction of the term **Downloadable** as it is used in five of the patents at issue. This claim term can be traced through two branches of the family tree of this patent (*see* Attachment A) with somewhat differing definitions. The Court however concludes that the variations between the definitions can be reconciled and the specifications in their entirety give notice of what is encompassed by the claim term **Downloadable** to one of skill in the art.

**Downloadable** initially appears as a defined term in the specification of the 6,167,520 patent, and its continuation the 6,480,962 patent, as *a small executable or interpretable application program which is downloaded from a source computer and run on a destination computer.*

The specification of the 6,092,194 patent, and its continuation the '780 patent (which is at issue in this litigation), define **Downloadable** *as an executable application program which is downloadable from a source computer and run on the destination computer.* The specification however provides as examples of a **Downloadable**, application programs such as Java™ applets, known as little application programs in machine language, and JavaScripts™ scripts, an interpretable application program. These examples are in accord with the definition, incorporated by reference, set forth in the '520 patent. The '194 patent and its progeny therefore conform to the '520 patent's definition of **Downloadable** as *small executable or interpretable application programs* through the use of the examples in the specifications. The Court finds that one of skill in the art would be able to ascertain what is claimed as a **Downloadable** in the context of these patents, and that in light of the examples provided in the '194 patent specification, concludes that the meaning of **Downloadable** is consistent with the definition provided in the '520 patent.

The '844 patent (which is at issue in this litigation) defines **Downloadable** *as an executable application program which is downloadable from a source computer and run on the destination computer* and also includes references to small executable and

3:17-cv-0183-CAB-(BGS)

interpretable application programs as examples of a **Downloadable**. The '844 patent incorporates by reference the '520 patent and '194 patent. The Court finds that the definition of **Downloadable** based on the '844 patent specification, the examples provided therein and the incorporation of the '520 patent and the '194 patent, informs one of skill in the art with reasonable certainty the scope of the invention. The entirety of the specification's description would inform that **Downloadable** includes executable and interpretable application programs, in accordance with the examples and incorporated references.

The '822 patent is a Continuation in Part of both the '962 patent and '780 patent and incorporates those patents by reference. Its continuation patents, including the '086 patent, '621 patent and '755 patent, which are at issue in this litigation, do not include a definition of **Downloadable** in the specification but incorporate by reference the '962 patent and the '780 patent, and their definitions and examples of a **Downloadable**.

The Court finds that the two branches of the family tree of the patents at issue inform that a **Downloadable** in the context of these patents means a *small executable or interpretable application program which is downloaded from a source computer and run on a destination computer*. This construction comports with the plain definition set forth in the '520 patent and the '962 patent, and is supported by the written description including the definition and the examples set forth in the '194 patent and its progeny, and in the entirety of specification of the '844 patent.

The Court therefore construes the term **Downloadable** in all five patents as ***a small executable or interpretable application program which is downloaded from a source computer and run on a destination computer.***

3:17-cv-0183-CAB-(BGS)

### B. U.S. Patent No. 6,154,844

The parties sought construction of the following phrase appearing in various claims of the '844 patent: **before the web server makes the Downloadable available to web clients**. The Court's construction for this term is: ***Before the Downloadable is available on a web server to be called up or forwarded to a web client.*** ('844 @ Col. 3:32-52; Col. 4:65 - Col. 5:13; Figure 1.)

### C. U.S. Patent No. 6,804,780

The parties sought construction of the following terms and phrases appearing in various claims of the '780 patent. The Court's constructions for these terms are:

| Claim Term | COURT'S CONSTRUCTION |
|---|---|
| **software components required to be executed by the Downloadable** | ***components of code that the Downloadable is required to execute*** <br> (agreed construction) |
| **ID generator** | Defendant's request for application of 112 ¶6 denied. "ID generator" is not a nonce term as advocated by Defendant. It is a common name for a known program construct that would be familiar to one of skill in the art to perform a function further identified by its modifier. |
| **performing a hashing function on the Downloadable and the fetched software components to generate a Downloadable ID** | ***performing a hashing function on the Downloadable together with its fetched software components*** <br> (Adopting PTO Construction from the IPR of the '780 patent April, 2016.) |

**D.  U.S. Patent No. 7,975,305**

The parties sought construction of the following phrase appearing in various claims of the '305 patent, **network interface, housed within a computer.**  Defendant's proposed construction that "housed within a computer" necessarily limits the structure of the network interface to a hardware component is declined.  The specification includes software interface examples.  The Court therefore finds in the context of the patent, the use of "housed" in contrast to "stored" does not dictate that the claim be limited to hardware components.  To the extent clarification is required the Court construes this phrase as *network interface, contained within the computer.*

The parties agreed construction for **database**, *a collection of interrelated data organized according to a database schema to serve one or more applications*, is adopted.

**E.  U.S. Patent No. 8,079,086**

The parties sought construction of the following terms appearing in various claims of the '086 patent. The Court's constructions for these terms are:

| Claim Term | COURT'S CONSTRUCTION |
|---|---|
| **appended Downloadable** | *a Downloadable with a representation of the DSP data attached to the end of the Downloadable*<br><br>Declaration of Dr. Spafford, ¶¶36-39, and references cited therein, that one skilled in the art at the time would understand "append" to mean attach or add to the end of the existing file. The claim recites appending a representations of the DSP data to the Downloadable indicating an order. |
| **destination computer** | *Separate computer receiving the appended Downloadable* |

| | |
|---|---|
| **file appender** | Defendant's request for application of 112 ¶ 6 is denied. "File appender" is not a nonce term as advocated by Defendant.  It is a common name for a known program construct that would be familiar to one of skill in the art to perform a function further identified by its modifier. |
| **Transmitter** | Defendant's request for application of 112 ¶ 6 is denied. "Transmitter" is not a nonce term as advocated by Defendant.  It a common name for a known program construct that would be familiar to one of skill in the art. |

## F.  U.S. Patent No. 9,189,621

The parties sought construction of the following terms appearing in various claims of the '621 patent. The Court's constructions for these terms are:

| Claim Term | COURT'S CONSTRUCTION |
|---|---|
| **wherein the information pertaining to the downloadable includes information pertaining to operation of the downloadable and distinct from information pertaining to the request** | Defendant asserts that this phrase in indefinite as it is not possible to ascertain the meaning of "information pertaining to the operation of the downloadable that is distinct from information pertaining to the request."  The Court finds that in the context of the claim in its entirety and for the reasons set forth on the record, one of skill in the art would understand the meaning and scope of this claim language, and no further construction is needed. |
| **a response engine  for performing a predetermined** | Defendant asserts that use of "response engine" is the equivalent of "means for" claiming and is |

6

| **responsive action based on the comparison** | limited to the structures disclosed in the '520 Patent at Figs. 5 and 6, Steps 525, 530, 540 and 610-30.  Plaintiff asserts that "engine" is a common name for a known program construct that would be familiar to one of skill in the art to perform a function further identified by its modifier, in this case "response."  The Court agrees that "engine" is not a nonce term as advocated by Defendant, and that the claim provides sufficient structure for one skilled in the art. Defendant's request for application of 112 ¶ 6 is denied. |
|---|---|
| **a response engine  for performing a predetermined responsive action based on the comparison with the information pertaining to the predetermined suspicious downloadable** | Defendant asserts that "response engine" is the equivalent of "means for" claiming and no structure to perform this function is disclosed. Plaintiff asserts that "engine" is a common name for a known program construct that would be familiar to one of skill in the art to perform a function further identified by its modifier, in this case "response."  "Engine" is not a nonce term. Defendant's request for application of 112 ¶ 6 is denied. |
| **Database** | ***a collection of interrelated data organized according to a database schema to serve one or more applications*** (joint construction) |

7

The final construction at issue with regard to the '621 patent is a "means for" limitation. An element of a claim may be expressed as a means for performing a specified function without the recital of the structure and is construed to cover the corresponding structure described in the specification or equivalents thereof. 35 U.S.C. § 112, ¶ 6. The limitation at issue appears in claim 15, which is dependent on claim 10.

> Claim 10. A system for reviewing an operating system call issued by a downloadable, comprising:
>
> …
>
> a plurality of operating system probes for monitoring substantially in parallel a plurality of subsystems of an operating system during runtime for an event caused from a request made by a Downloadable, wherein the plurality of subsystems includes a network system;
>
> ….
>
> Claim 15. The system of claim 10, wherein the plurality of operating system probes operating substantially in parallel for monitoring the operating system includes **means for monitoring a request sent to a downloadable engine.**

The parties agree that the "means for" element of claim 15 is governed by 35 U.S.C. § 112, ¶ 6. The patent specification must disclose with sufficient particularity the corresponding structure for performing the claimed function and clearly link that structure to the function. *Triton Tech of Tx., LLC. V. Nintendo of Am., Inc*., 753 F.3d 1375, 1378 (Fed. Cir. 2014). The claimed function is "monitoring a request sent to a downloadable engine." After the claim construction hearing, the Court requested supplemental briefing from the parties identifying with sufficient particularity the corresponding structure in the specification for performing the claimed function. [Doc. 178-1.]

The plaintiff refers to the specification of the '962 patent [Doc. No. 138-9], incorporated by reference in the '621 patent, for the corresponding structure that supports this "means for" claim. Plaintiff directs the Court to the component identified in the specification as the request broker 306 described at Col. 4:12-18, Figs. 3 and 4 [*id.* at 6-7, 12] as the corresponding structure providing the function in the system of monitoring a request sent to a downloadable engine. [*See* Doc. No. 183 at 3.]

The specification describes the system for monitoring requests made by a Downloadable 140 to a downloadable engine 250 at Col. 3:51 – Col. 5:48. [Doc. No. 138-9, at 6-7, 12-13.]  In the examples provided (*see* Figs. 3 and 4), extensions 304, 404, 405, 406 examine a Downloadable's request for access to classes 302 of a Java™ Virtual Machine (the downloadable engine 250) or to message calls 401, DDE calls 402 and DLL calls 403 of a ActiveX™ platform (the downloadable engine 250).  The Downloadable's request to the downloadable engine may be interrupted by the extension which then notifies the request broker 306 of the Downloadable's request.  The request broker 306 in turn forwards the request to the event router 308.  [*Id.*]

The extensions 304, 404, 405, 406 monitor requests made to the downloadable engine 250.  Col. 5:40-49 (the extensions recognize a request made by a Downloadable to the downloadable engine, interrupt the processing of the request and generate and forward a message identifying the incoming Downloadable to request broker which forwards the message to the event router.); Col. 4:10-15 (each extension 304 manages a respective one of the Java™ classes, interrupts the request and generates a message to the request broker 306); Col. 5:23-38 (each extension 404, 405, 406 recognizes a call to an ActiveX™ platform 401, 402, 403, and generates a message to the request broker 306).  The request broker 306 forwards the request on for further analysis and response.  The structures identified in the specification corresponding to a **means for monitoring a request sent to a downloadable engine**, are the Java Class extensions 304, the Message Extension 404, the Dynamic-Data-Exchange Extension 405 and Dynamically-Linked-Library Extension 406, and their equivalents.

3:17-cv-0183-CAB-(BGS)

## F. U.S. Patent No. 9,219,755

The parties sought construction of the following terms appearing in various claims of the '755 patent. The Court's constructions for these terms are:

| Claim Term | COURT'S CONSTRUCTION |
|---|---|
| **a downloadable engine for intercepting a request message being issued by a downloadable to an operating system** | Defendant asserts that "downloadable engine" is the equivalent of "means for" claiming and the disclosed structures disclosed to perform this function are a Java Virtual Machine 250 or Active X Platform 250 ('960 patent, Col. 3:54-56; Fig. 3; Col. 5:25-27; Fig. 4). Plaintiff asserts that "engine" is a common name for a known program construct that would be familiar to one of skill in the art to perform a function further identified by its modifier, in this case "response." The Court agrees that "engine" is not a nonce term as advocated by Defendant, and that the claim provides sufficient structure for one skilled in the art. Defendant's request for application of 112 ¶ 6 is denied. |
| **intercepting an operating system call being issued by the downloadable to an operating system** | ***stopping a request message before the request message is received by the operating system*** |
| **a response engine for receiving a violation message from the runtime** | Defendant asserts that use of "response engine" is the equivalent of "means for" claiming and is limited to the structures disclosed in the '520 |

3:17-cv-0183-CAB-(BGS)

| environment … and blocking … and allowing …. | Patent, at Figs. 5 and 6, Steps 525, 530, 540 and 610-30.  Plaintiff asserts that "engine" is a common name for a known program construct that would be familiar to one of skill in the art to perform a function further identified by its modifier, in this case "response."  The Court agrees that "engine" is not a nonce term as advocated by Defendant, and that the claim provides sufficient structure for one skilled in the art. Defendant's request for application of 112 ¶6 is denied. |

It is **SO ORDERED**.

Dated:  November 14, 2017

_____

Hon. Cathy Ann Bencivengo
United States District Judge

3:17-cv-0183-CAB-(BGS)

# Attachment A



**ATTACHMENT A**
Provisional Application
60/030,639
filed 11/8/1996

Application 08/790,097
filed 1/29/1997
**Patent 6,167,520**

Application 08/995,648
filed 12/22/1997
**Patent 6,154,844***
*(incorporates '520 and '194 by reference)*

Application 08/964,388
filed 11/6/1997
**Patent 6,092,194**
*(incorporates '520 by reference)*

Cont. Application 9/551,302
filed 4/18/2000
**Patent 6,480,962**
*(incorporates '520 by reference)*

Cont. Application 09/539,667
filed 3/30/2000
**Patent 6,804,780***
*(incorporates '520 by reference)*

C-I-P Application 09/861,229
filed 5/17/2001
**Patent 7,058,822**

Cont. Application 11/370,114
filed 3/7/2006
**Patent 7,613,926**

Cont. Application 12/471,942
filed 5/26/2009
**Patent 8,079,086***
*(incorporates '194, '780 and '962 by reference)*

Cont. Application 13/290,708
filed 11/7/2011
**Patent 8,677,494**

Cont. Application 14/155,835
filed 1/15/2014

Cont. Application 14/619,363
filed 2/11/2015
**Patent 9,189,621***
*(incorporates '194, '780 and '962 by reference)*

Div. Application 14/732,188
filed 6/5/2015
**Patent 9,219,755***
*(incorporates '194, '780 and '962 by reference)*

*Patents at issue in the litigation.

# EXHIBIT C

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Southern District of California**

**Notice of Electronic Filing**

The following transaction was entered on 3/16/2020 at 10:35 AM PDT and filed on 3/16/2020

| | |
|---|---|
| **Case Name:** | Finjan, Inc. v. ESET, LLC et al |
| **Case Number:** | 3:17-cv-00183-CAB-BGS |
| **Filer:** | |
| **Document Number:** | 783(No document attached) |

**Docket Text:**
**Minute Entry for proceedings held before Judge Cathy Ann Bencivengo: Status reJury Trial completed on 3/16/2020. 0 Trial Jurors Present. The Court suspended jury trial proceedings and excused the jury for the day. With the agreement of counsel, the Court deems a Mistrial based upon the current state of extraordinary circumstances due to the Coronavirus/COVID-19 Pandemic. The Court will contact counsel upon the conclusion of the national state of emergency for further scheduling of court proceedings. All previously pending dates of trial are hereby vacated. (Court Reporter/ECR Mauralee Ramirez). (Plaintiff Attorney Paul Andre, James Hannah, Kristopher Kastens). (Defendant Attorney Nicola Pisano, Scott Penner, Regis Worley, Jr., Justin Gray). (no document attached) (lmh)**

**3:17-cv-00183-CAB-BGS Notice has been electronically mailed to:**

Jose L. Patino    JosePatino@eversheds-sutherland.com, IPDocketingMailbox@eversheds-sutherland.us, MarilynBynum@eversheds-sutherland.com, NancyJohnson@eversheds-sutherland.com

Paul Joseph Andre    pandre@kramerlevin.com, docketing-8870@ecf.pacerpro.com, litigation-5766@ecf.pacerpro.com, paul-andre-3422@ecf.pacerpro.com, svdocketing@kramerlevin.com

Lisa Kobialka    lkobialka@kramerlevin.com, CTamondong@kramerlevin.com, docketing-8870@ecf.pacerpro.com, lisa-kobialka-3741@ecf.pacerpro.com, svdocketing@kramerlevin.com

Nicola Anthony Pisano    NicolaPisano@eversheds-sutherland.com, IPDocketingMailbox@eversheds-surtherland.us, NancyJohnson@eversheds-sutherland.com

Regis C. Worley, Jr    RegisWorley@eversheds-sutherland.com, IPDocketingMailbox@eversheds-sutherland.us

Kristopher B. Kastens    kkastens@kramerlevin.com, docketing-8870@ecf.pacerpro.com, kristopher-kastens-7292@ecf.pacerpro.com, svdocketing@kramerlevin.com

Hannah Y. Lee    hlee@kramerlevin.com, docketing-8870@ecf.pacerpro.com, hannah-lee-6671@ecf.pacerpro.com, svdocketing@kramerlevin.com

James R. Hannah    jhannah@kramerlevin.com, docketing-8870@ecf.pacerpro.com, james-hannah-0441@ecf.pacerpro.com, svdocketing@kramerlevin.com

Justin Edwin Gray    JustinGray@eversheds-sutherland.com, IPDocketingMailbox@eversheds-sutherland.us, NancyJohnson@eversheds-sutherland.com

Yuridia Caire    ycaire@kramerlevin.com, docketing-8870@ecf.pacerpro.com, svdocketing@kramerlevin.com, yurida-caire-8080@ecf.pacerpro.com

Michael (Mike) H. Lee    mhlee@kramerlevin.com

Scott A. Penner     ScottPenner@eversheds-sutherland.com, IPDocketingMailbox@eversheds-sutherland.us, nancyjohnson@eversheds-sutherland.com

Christopher C. Bolten     ChrisBolten@eversheds-sutherland.com, IPDocketingMailbox@eversheds-sutherland.us, NancyJohnson@eversheds-sutherland.com, maryfleury@eversheds-sutherland.com

Phuong D Nguyen     Snguyen@kramerlevin.com

Aaron M. Frankel     AFrankel@KRAMERLEVIN.com

Cristina Lynn Martinez     cmartinez@kramerlevin.com

Benu C. Wells     bwells@kramerlevin.com

Hien Khanh Lien     hlien@kramerlevin.com

Gregory Carl Proctor     gproctor@kramerlevin.com

Linjun Xu     lxu@kramerlevin.com

**3:17-cv-00183-CAB-BGS Notice has been delivered by other means to:**

# EXHIBIT D

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC.,<br><br>                                    Plaintiff,<br><br>v.<br><br>ESET, LLC, a California Limited Liability and ESET SPOL. S.R.O., a Slovak Republic Corporation,<br><br>                                    Defendants. | Case No.:  3:17-cv-0183-CAB-BGS<br><br>**AMENDED ORDER ON DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT OF INDEFINITENESS**<br>**[Doc. No. 806]** |

Before the Court is the renewed motion of Defendants ESET, LLC and ESET spol. s.r.o (collectively "ESET") for summary judgment to invalidate Plaintiff Finjan's United States Patent Nos. 6,154,844; 6,804,780; 8,079,086; 9,189,621; and 9,219,755 ("the patents at-issue") as indefinite pursuant to 35 U.S.C. § 112 based on this Court's construction of the claim term "Downloadable." The motion is fully briefed, and the Court deems it suitable for submission without oral argument.

## I.    Background

This motion has an unusual history.  ESET filed a motion for summary judgment asserting that the patents at-issue are indefinite at the close of fact discovery in this case, and the Court held argument on September 26, 2019.  Finding that there were factual disputes regarding what a skilled artisan in 1997 would have understood constituted a

"Downloadable" based on the Court's construction of that term, the Court denied the motion without prejudice. [Doc. No. 699.] It was anticipated that trial testimony would establish what was generally understood in the art in 1997 as a "Downloadable" and such testimony would inform the scope of infringement. [Doc. No. 697, at 22:3-15.]

A jury trial commenced in this case on March 10, 2020. After three trial days the Court was forced to vacate the remainder of the trial, excuse the jury and declare a mistrial due to the COVID-19 pandemic and the issuance of the State of California's stay-home order. [Doc. No. 783.] This District's continuing moratorium on civil jury trials and backlog of criminal jury trials currently precludes scheduling a new trial in this matter.

Having heard testimony from Finjan's expert during the vacated trial on this issue, however, the Court permitted ESET to renew this motion in consideration of the testimony that was taken. Although Finjan's patents have been the subject of much litigation, and the term "Downloadable" has been construed by other courts, the issue raised in ESET's current motion does not appear to have been addressed by any prior constructions.

Finjan is the owner of a large family tree of patents for security systems and methods of detecting malware in computer programs. Finjan has litigated many of their patents, including some of the patents at-issue in this motion, in other district courts. Many have also been subject to *inter partes* review by the Patent and Trademark Office (PTO). The Federal Circuit has issued at least nine opinions, precedential and non-precedential, on appeals from district courts and the PTO regarding Finjan patents. Yet none of these orders or opinions discuss how earlier references incorporated into the patents at-issue inform the construction of the term "Downloadable."

## II. The Construction of "Downloadable"

In 2017, Finjan filed this litigation against defendants ESET asserting infringement of the patents at-issue, and United States Patent No. 7,975,305.[1] Finjan claims priority for

---

[1] The '305 patent is not subject to this motion as it does not include the claim term "Downloadable."

the patents at-issue back to an application filed on November 8, 1996, Provisional Application 60/030639. [Doc. No. 139-24.] The application is directed at "a system and method for protecting computers from hostile Downloadables," described as executable application programs automatically downloaded from a source computer and run on the destination computer that might carry computer "viruses." [Id., at 5-6.] The claim term "Downloadable" is presented as a capitalized term in the provisional application and all the patents at-issue, signaling it is a specifically defined term. The definition of "Downloadables," however, is not consistent throughout Finjan's subsequently issued patents. The explicit definitions include:

- "applets" (little applications) described in the 1990s as small interpreted or executable programs. *See* Provisional Application 60/030639 (filed November 8, 1996) [*Id.* at 5-6.]

- "Downloadables (i.e., applets)" as "a small executable or interpretable application program which is downloaded from a source computer and run on a destination computer," in conformity with the original provisional application. *See* U.S. Patent No. 6,167,520, at Col. 1:31-34 (application filed January 29, 1997); U.S. Patent No. 6,480,962, at Col. 1:38-41 (filed April 18, 2000).

- "an executable application program which is downloaded from a source computer and run on a destination computer" (without "i.e., applet," "small" or "interpretable" included in the definition but using applets and interpretable programs as examples of a "Downloadable" and incorporating the earlier definition by reference). *See* U.S. Patent No. 6,092,194, at Col. 1:44-55 (filed November 6, 1997); U.S. Patent No. 6,804,780 at Col. 1:50-60 (filed March 30, 2000).

Other district courts have determined that "Downloadable" lacked ordinary meaning when the patents were filed and construed it as "an executable application program which is downloaded from a source computer and run on a destination computer," applying the

explicit definition from the '194 patent. [Doc. No. 139-10, at 3; Doc. No. 138-4, at 2-5 (the term was not amenable to plain and ordinary meaning and the patent applicant intended to act as the lexicographer of this term, therefore the specification definition controls).] None of these orders, however, discussed the significance of the '520 patent's definition incorporated into the '194 patent and its continuations. One district court, without explanation, applied the broader definition from the '194 patent specification to the construction of the term "Downloadable" in the '962 patent as "the same" definition [id., at 3, fn. 4], disregarding the fact the '962 patent explicitly defines "Downloadable" as "a *small* executable or interpretable application program which is downloaded from a source computer and run on a destination computer." *See* U.S. Patent No. 6,480,962, at Col. 1:39-41 (*emphasis* added).

Incorporation by reference provides a method for integrating material from various documents into a host document by citing such material in a manner that makes clear that the material is effectively part of the host document as if it were explicitly contained therein. *See Trustees of Columbia Univ. v. Symantec,* 811 F.3d 1359, 1365-66 (Fed. Cir. 2016) (*citing Advanced Display Sys. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000) (provisional applications incorporated by reference are effectively part of the specification as though it was explicitly contained therein.)). By incorporating the earlier definition of "Downloadable" from the '520 Patent into the '194 Patent and subsequent continuations (including the patents at-issue), the scope of the term is limited to "*small* executable or interpretable application programs," and not *all* executable application programs (*emphasis* added). *See Symantec*, 811 F.3d at 1365 (rejecting a broad interpretation of a claim term in part because a provisional application incorporated by reference the same term more narrowly defined.) Inconsistent language used later cannot support a broad claim construction when the explicit definition is incorporated from earlier patents in the family tree.

In this case, the Court concluded that based on its incorporation by reference in all the patents at-issue, the explicit definition of "Downloadables" from the '520 patent and

the '962 patent, which is supported by the examples provided in the specification, is the proper construction of "Downloadables" – "a small executable or interpretable application program which is downloaded from a source computer and run on a destination computer." [Doc. No. 195.]

### III.    The Indefiniteness Determination

The Court's claim construction, not unexpectedly, resulted in the present dispute as to the scope of the modifier "small."  ESET argues that "small" is a term of degree with not technical meaning or defined boundaries and there is insufficient information in the intrinsic record for a skilled artisan to have clear notice of what constitutes a "small executable or interpretable application program." They further argue that this is demonstrated by the inability of Finjan's experts to come to a consistent opinion as to what objective boundaries constitute a small application program. [806-1, at 5, 17.]

The definiteness requirement of paragraph 2 of 35 U.S.C. §112 requires that the "specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  The definiteness requirement focuses on whether "a patent's claims, viewed in light of the specification and prosecution history inform those skilled in the art about the scope of the invention with reasonable certainty."  *Nautilus, Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898, 910 (2014).  The inquiry "trains on the understanding of a skilled artisan at the time of the patent application."  *Id.* at 911.

Terms of degree must provide sufficient certainty to one of skill in the art to afford clear notice of what is claimed and what is still open to the public. *See Biosig Instruments, Inc. v. Nautilus, Inc*., 738 F.3d 1374, 1378 (Fed. Cir. 2015) ("When a 'word of degree' is used, the court must determine whether the patent provides 'some standard for measuring that degree.'"); *Interval Licensing LLC v. AOL, Inc.,* 766 F.3d 1364, 1370 (Fed. Cir. 2014) (the definiteness standard must allow for a modicum of uncertainty but must also require clear notice of what is claimed thereby apprising the public of what is still open to them).

Finjan's contention that the claim term "Downloadable" cannot be indefinite simply because the Court was able to construe it by adopting the explicit definition provided by the inventor in the '520 patent fails to address the issue raised by ESET. A defined term is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope. *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008). The issue therefore is whether a skilled artisan in 1997 would have understood with reasonable certainty based on the specification and prosecution history what the inventor meant by a "small" application program and therefore understood what comes within the scope of the claims.

The '510 patent, incorporated into all the later patents, describes a Downloadable as an "applet," a small interpretable or executable application program, and provides that "a Downloadable is used in a distributed environment such as the Java™ distributed environment produced by Sun Microsystems or in the Active X™ distributed environment produced by Microsoft Corporation." *See* '520 Patent, at Col. 1:31-32, 34-38. Because such examples existed in the 1990s, there should be an objective standard for the size of a "small" program. While "absolute or mathematical precision" was not required, some objective boundary should be identifiable from the disclosed embodiments. *See Biosig Instruments*, 738 F.3d at 1381.

Finjan opposed ESET's initial motion for summary judgment for indefiniteness as to the scope of "small" on the grounds that a numerical limitation or cut-off is not necessary because a skilled artisan could determine if an application is "small" from the examples in the '962 patent and based on the context. Finjan, however, did not provide an explanation as to how that skilled artisan would therefore interpret "small" or the context that would apply. [Doc. No. 610, at 8 and 15.][2]

---

[2] Finjan has also argued that the Court should reconsider its incorporation of "small" into the construction of Downloadable and disregard that modifier as other district courts have done to avoid this definiteness issue. [Doc. No. 812, at 6.] This solution may resolve Finjan's problem with defining "small," but the fact that the Court's construction results in indefiniteness is not a basis for reconsideration.

1    ESET argued then, as it does now, that Finjan's experts did not provide any objective

2    boundaries for a "small" application program based on what a skilled artisan would have

3    understood was upper end of "small" in the context of application programs being

4    downloaded from a source computer to run on a destination computer at the time the

5    application was filed. [Doc. No. 816, at 5.] Finjan's contention that the understanding of

6    what is "small" depends on the context is not supported by the intrinsic evidence or even

7    extrinsic evidence of the state of the art at the relevant time. It amounted to "unpredictable

8    vagaries of any one person's opinion" and therefore failed to provide sufficient notice as

9    to the scope of the term. *Interval Licensing*, 766 F.3d at 1371 ("[A] term of degree fails to

10   provide sufficient notice of its scope if it depends on the unpredictable vagaries of any one

11   persons' opinion.")

12   ESET contends that the trial testimony of Finjan expert Dr. Eric Cole did not remedy

13   this defect.[3]  Dr. Cole presented an explanation how a skilled artisan would interpret

14   "small" that was neither disclosed in his previous declaration to the Court (small meant "a

15   few megs … something that is not multiple gigs or really large" [Doc. No. 806-1, at 17])

16   or anchored to the specification or prosecution history.   Rather than providing a range of

17   application size that would have been construed as "small" by an artisan in 1997, Dr. Cole

18   testified on Finjan's behalf that an application would be understood to be small if it "did

19   not require installation" and opined that "small" depends not on size but on the function.

20   Dr. Cole testified that a small executable is an application that does not require installation

21   is "self-contained" and is "just running automatically" which is "typical if you go to any

22   website nowadays," whereas an executable that is not small "requires installation" and has

23   "a lot of shared libraries and dlls and other programs" in order to run. [Doc. No. 812, at

24   12.] Dr. Cole testified that regardless of time period, Internet speed and other factors related

25

26

27   [3] Although the trial was terminated early due to the pandemic, Dr. Cole's testimony was completed.  Finjan
     suggests that Dr. Cole's testimony at a future trial will replace his completed testimony, but a subsequent
     trial is not an opportunity for Dr. Cole to change his opinions or supplement them with support he did not

28   provide on the record at the first trial. [Doc. No. 816, at 11.]

to capacity, what fits the criteria of "small" may change but this distinction (installed or not installed) is constant. Dr. Cole did not however provide support from the specification, the prosecution history, or from any extrinsic sources in the relevant time period, for this new explanation that a skilled artisan in 1997 would understand "small" to be "uninstalled" or "not requiring installation."

In sum, Finjan never offered evidence of a reasonable range for the size of a small executable or interpretable application program as understood by a skilled artisan in 1997 based on examples provided in the patent specification. Instead, Finjan elected at trial to offer a new understanding without reference to the size of the application as the objective boundary of a "small" application. Finjan's new definition is not supported by the specification or prosecution history. It may be convenient to support Finjan's infringement contentions against ESET's accused devices, but Finjan's new explanation does not provide clear notice of what constitutes a "small executable or interpretable application program."

## IV. Conclusion

For the foregoing reasons, the Court finds that the term "Downloadable" as used in the patents at-issue is indefinite. Accordingly, it is hereby **ORDERED** that ESET's motion for summary judgment of invalidity of Finjan's United States Patent Nos. 6,154,844; 6,804,780; 8,079,086; 9,189,621; and 9,219,755 for indefiniteness is **GRANTED**.

It is **SO ORDERED**.

Dated: March 29, 2021

_____
Hon. Cathy Ann Bencivengo
United States District Judge

3:17-cv-0183-CAB-BGS

# EXHIBIT E

1   Juanita R. Brooks (SBN 75934) brooks@fr.com
    Roger A. Denning (SBN 228998) denning@fr.com
2   Jason W. Wolff (SBN 215819) wolff@fr.com
    Michael A. Amon (SBN 226221) amon@fr.com
3   K. Nicole Williams (SBN 291900) nwilliams@fr.com
    FISH & RICHARDSON P.C.
4   12860 El Camino Real, Suite 400
    San Diego, CA 92130
5   Tel: (858) 678-5070 / Fax: (858) 678-5099
6
7   Lawrence Jarvis (*pro hac vice*)
    FISH & RICHARDSON P.C.
8   1180 Peachtree St., NE
    21st Floor
9   Atlanta, GA 30309
    Tel: (404) 891-5005 / Fax: (404) 892-5002
10
11  Attorneys for Plaintiff & Counter-Defendant FINJAN
    LLC
12

13

14              IN THE UNITED STATES DISTRICT COURT

15             SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 16  FINJAN LLC, | Case No. 17-cv-0183 CAB (BGS) |
| 17                  Plaintiffs, | **PLAINTIFF FINJAN LLC'S** |
| 18       v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR RECONSIDERATION** |
| 19  ESET, LLC and ESET SPOL. S.R.O., | |
| 20                  Defendants. | PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |
| 21 | |
| 22 | |
| 23 | Date: May 17, 2021 |
| 24 | Courtroom: 15A |
| 25 | Judge: Hon. Cathy Ann Bencivengo |
| 26  AND RELATED COUNTERCLAIMS | |
| 27 | |
| 28 | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>**TABLE OF CONTENTS**</u>

<u>**Page**</u>

I.      INTRODUCTION .................................................................................1

II.     PROCEDURAL BACKGROUND ........................................................2

III.    LEGAL STANDARDS .........................................................................3

      A.   Motions for Reconsideration ......................................................3

      B.   Summary Judgment .....................................................................3

      C.   Indefiniteness ..............................................................................4

      D.   Offer of Proof ..............................................................................5

IV.     ARGUMENT ........................................................................................5

V.      CONCLUSION ...................................................................................12

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Bell N. Rsch., LLC v. Coolpad Techs., Inc.*,

5
    2019 WL 3766688 (S.D. Cal. Aug. 9, 2019) ........................................................ 4

6

*Finjan, Inc. v. ESET, LLC*,

7
    2019 WL 7290961 (S.D. Cal. Dec. 30, 2019) ...................................................... 3

8

*Heyne v. Caruso*,

9
    69 F.3d 1475 (9th Cir. 1995) ............................................................................... 5

10

*Interval Licensing LLC v. AOL, Inc.*,

11
    766 F.3d 1364 (Fed. Cir. 2014) ......................................................................... 11

12

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,

13
    424 F.3d 1374 (Fed. Cir. 2005) ......................................................................... 11

14

*Nautilus, Inc. v. Biosig Instruments, Inc.*,

15
    572 U.S. 898 (2014) ............................................................................... 1, 4, 5, 7

16

*Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*,
    5 F.3d 1255 (9th Cir. 1993) ................................................................................. 3

17

18

*Sonix Tech. Co. v. Publications Int'l, Ltd.*,
    844 F.3d 1370 (Fed. Cir. 2017) .......................................................... 4, 8, 10, 11

19

*Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*,

20
    2019 WL 4452986 (S.D. Cal. Sept. 16, 2019) ................................................. 10

21

**Statutes**

22

35 U.S.C. § 112 ........................................................................................................ 1, 4

23

**Other Authorities**

24

Fed. R. Evid. 103(a) ..................................................................................................... 5

25

26

L.R. 3-3(d) ................................................................................................................. 11

27

28

# I. INTRODUCTION

In the context of a renewed motion for summary judgment following a mistrial due to the COVID-19 pandemic—in which neither party completed its presentation of witnesses and evidence regarding patent infringement, and Defendants did not even begin their case in chief on invalidity—the Court made critical rulings on indefiniteness regarding U.S. Patents Nos. 6,154,844; 6,804,780; 8,079,086; 9,189,621; and 9,219,755 ("the Asserted Patents").[1]  (Doc. No. 869 (the "Order").)

Finjan LLC ("Finjan") respectfully requests the Court to reconsider the Order because (1) there is clear error in requiring Finjan to produce evidence to establish the Asserted Patents are valid—the burden falls squarely on Defendants to prove the contrary; and (2) there is clear error in holding that Finjan did not offer evidence of a range for the size of a "small" executable or interpretable application program, as understood by one of skill in the art in 1997 and based on examples provided in the patent specifications.  (*See* Order at 8.)

First, respectfully, the Court's holding is incorrect as a matter of law.  Based on a single word in the Court's claim construction—namely the word "small"—Defendants ESET, LLC and ESET SPOL. S.R.O. (together, "ESET") have argued the Asserted Patents are indefinite, thus rendering them invalid.  Accordingly, ESET —not Finjan—has the burden of proof to show by clear and convincing evidence that the claims fail to satisfy the definiteness requirement under 35 U.S.C. § 112.  *See, e.g.*, *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 912 (2014).  ESET did not meet this burden and indeed had not even begun its invalidity case when the trial was halted due to the pandemic.

---

[1] The Court issued an original Order on March 23, 2021 on Defendants' Renewed Motion for Summary Judgment on Indefiniteness.  (*See* Doc. No. 864.)  The Court issued an Amended Order on March 29, 2021.  (Doc. No. 869.)

FINJAN LLC'S MPA ISO MOTION FOR RECONSIDERATION
Case No. 17-cv-0183 CAB (BGS)

Second, the Court's holding ignores critical issues of fact.  The finding of indefiniteness is based on an incomplete presentation of the evidence because the Court evaluated only the testimony of Dr. Eric Cole, Finjan's expert on infringement on one of the five Asserted Patents (the '844 Patent).  The Court did not and could not account for the testimony of Finjan's expert on validity, Dr. Goodrich, who—but for the mistrial—would have explained how a person of ordinary skill in the art ("POSITA") would understand the objective bounds of the claim term "downloadable," based on teachings from the patent specification.  (*See generally* Finjan's Offer of Proof, filed concurrently herewith.)  Moreover, ESET's expert, Dr. Eugene Spafford, who opined on the scope of the claims for purposes of both non-infringement and invalidity—and critically offered no opinion on any alleged indefiniteness of the term "downloadable"—also was not presented or cross-examined at trial.  Accordingly, the Court should reconsider its Order in light of the incomplete factual record and expert testimony that precludes summary judgment.

## II. PROCEDURAL BACKGROUND

On April 23, 2019, ESET filed a motion for summary judgment of invalidity due to indefiniteness based on the Court's construction of the term, "downloadable." (*See* Doc. No. 478-1.)  The Court heard argument and denied the motion without prejudice, finding that there were factual disputes regarding what a POSITA in 1997 would have understood constituted a "small" downloadable, based on the Court's construction.[2]  (Doc. No. 699.)

A jury trial commenced on March 10, 2020, but was halted shortly thereafter due to the COVID-19 pandemic.  The Court excused the jury and declared a mistrial. (*See* Doc. No. 783.)  On August 21, ESET filed its renewed motion for summary

---

[2] Finjan understands that the Court's construction of the term "downloadable," which includes the word "small," is final.  To be clear, Finjan maintains its objection to the construction.

1 | judgment on indefiniteness. (Doc. No. 806.) The Court allowed ESET to renew its
2 | motion because it had heard testimony from one of Finjan's experts, Dr. Cole,
3 | regarding what a "small" downloadable was at trial. The specific issue before the
4 | Court on the renewed motion was whether a POSITA in 1997 would have understood
5 | with reasonable certainty, based on the specification and prosecution history, what
6 | was meant by the scope of not just any downloadable, but one that was "small." (Doc.
7 | No. 869 at 6.) After reviewing the renewed motion and related briefing, the Court
8 | issued its Order, holding that Finjan "never offered evidence of a reasonable range for
9 | the size of a small executable or interpretable application program as understood by a
10 | skilled artisan in 1997 based on examples provided in the patent specification." (Doc.
11 | No. 869 at 8.) The Court did so without hearing all the evidence and testimony for
12 | all Asserted Patents regarding what a POSITA would understand a "small"
13 | downloadable to mean in the context of the various patents. Soon thereafter, the Court
14 | entered an order to sever and stay the litigation of the '305 Patent (Doc. No. 871), and
15 | granted Finjan the opportunity to file this motion for reconsideration (Doc. No. 870).

16 | **III.   LEGAL STANDARDS**

17 | **A.   Motions for Reconsideration**

18 | Reconsideration of a prior order "is appropriate if the district court (1) is
19 | presented with newly discovered evidence, (2) committed clear error or the initial
20 | decision was manifestly unjust, or (3) if there is an intervening change in controlling
21 | law." *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th
22 | Cir. 1993). It is respectfully submitted that in shifting the burden of proof to Finjan
23 | to prove the term "small" is not indefinite and in deciding the motion on an incomplete
24 | record, the Court committed clear error and the Court's decision is manifestly unjust.

25 | **B.   Summary Judgment**

26 | "In the context of a motion for summary judgment, the Court must not weigh
27 | the credibility of the evidence and determine the truth of the matter." *Finjan, Inc. v.*
28 | *ESET, LLC*, 2019 WL 7290961, at *1 (S.D. Cal. Dec. 30, 2019) (citing *Anderson v.*

1  *Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Further, the non-movant's evidence
2  is to be believed and all justifiable inferences are to be drawn in the non-movant's
3  favor. *Id.* In its Order, the Court clearly weighed the credibility of Dr. Cole and did
4  not draw all reasonable inferences in favor of Finjan, the non-moving party. (Doc.
5  No. 869 at 7-8.)

6  **C. Indefiniteness**

7  Section 112 requires that a patent specification "conclude with one or more
8  claims particularly pointing out and distinctly claiming the subject matter which the
9  applicant regards as his invention." *Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844
10 F.3d 1370, 1377 (Fed. Cir. 2017). The Supreme Court has read this provision to
11 require that "a patent's claims, viewed in light of the specification and prosecution
12 history, inform those skilled in the art about the scope of the invention with reasonable
13 certainty." *Id.* (citing *Nautilus*, 572 U.S. at 910). Indefiniteness must be proven by
14 clear and convincing evidence. *Sonix Tech. Co.*, 844 F.3d at 1377. "The certainty
15 which the law requires in patents is not greater than is reasonable, having regard to
16 their subject-matter," and the inquiry "trains on the understanding of a skilled artisan
17 at the time of the patent application." *Nautilus*, 572 U.S. at 899, 910-11. "Because
18 language is limited," the Federal Circuit has "rejected the proposition that claims
19 involving terms of degree are inherently indefinite." *Sonix Tech. Co.*, 844 F.3d at
20 1377. Thus, "a patentee need not define his invention with mathematical precision in
21 order to comply with the definiteness requirement," so long as it provides "enough
22 certainty to one of skill in the art when read in the context of the invention." *Id.*
23 (internal citation omitted).

24 Following Supreme Court and Federal Circuit precedent, this Court has held
25 that terms of degree are not indefinite. For example, "words of degree — such as
26 'substantially'— are not considered indefinite so long as intrinsic evidence 'provides
27 objective boundaries for those of skill in the art.'" *Bell N. Rsch., LLC v. Coolpad
28 Techs., Inc.*, 2019 WL 3766688, at *2 (S.D. Cal. Aug. 9, 2019) (citing *Interval*

1  *Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370-71 (Fed. Cir. 2014)).  Had the trial

2  been completed in this case, the Court would have had more than sufficient evidence

3  to find that the term "small" did not render the claims indefinite.

4        **D.**    **Offer of Proof**

5        "A proper offer of proof informs the trial court of what counsel expects to prove

6  by the excluded evidence and preserves the record so that an appellate court can

7  review the trial court's decision for reversible error."  *See Heyne v. Caruso*, 69 F.3d

8  1475, 1481 (9th Cir. 1995).  In this case while evidence was not actually excluded

9  due to the mistrial, the evidence had yet to be presented.  Therefore, concurrently with

10  this filing, Finjan is presenting the Court with evidence of what the Court would have

11  heard had the trial been completed, pursuant to Fed. R. Evid. 103(a).

12  **IV.**    **ARGUMENT**

13        Respectfully, the Court's Order is incorrect as a matter of law and fact.  ***First***,

14  the Court's holding was clearly erroneous as a matter of law because it improperly

15  shifted the burden to Finjan to prove patent validity.  The Court's Order focused on

16  how Finjan "did not provide an explanation as to how that skilled artisan would

17  interpret 'small' or the context in which it would apply."  (Order at 6.)

18        However, Finjan does not have a burden to prove that the claims are not

19  indefinite.  As this Court properly held in its October 2019 Order Denying ESET's

20  Motions for Summary Judgment and Motions to Exclude or Strike (Doc. No. 699 at

21  6), "ESET has the burden of proving indefiniteness by clear and convincing

22  evidence."  (Doc. No. 699 at 6) (citing *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783

23  F.3d 1374, 1377 (Fed. Cir. 2015)).  Thus, as a matter of law, it is, and always has been

24  ESET's burden to prove by clear and convincing evidence that the "patent's claims,

25  viewed in light of the specification and the prosecution history," would not "inform

26  those skilled in the art about the scope of the invention with reasonable certainty."

27  *Nautilus Inc.*, 572 U.S. at 910.  It is not Finjan's burden to prove the contrary.

28        Notably, ESET's expert on invalidity, Dr. Spafford, had no difficulty offering

1   an opinion on the scope of the claims for non-infringement and invalidity—though he

2   offered no opinion on indefiniteness on the Court's definition of "downloadable"—

3   in his expert reports or deposition testimony.  In his expert report on invalidity, Dr.

4   Spafford gave multiple examples of his understanding of the application of the

5   defined term, "downloadable," and specifically what "small" meant in light of the

6   intrinsic record to a POSITA at the time of the alleged invention.  For example, in his

7   expert report, Dr. Spafford explained:

> "An applet typically is **a small program** residing on a server . . . " (Williams Decl.[3] Exh. 1 (Spafford Inv. Rpt., Ex. B-1) at p. 3 (emphasis added).)

> ". . . a computing device (e.g., first computer 210, third computer, etc.) can download '[a]pplets, which are **small programs** compiled to an intermediate form.'" (Williams Decl. Exh. 2 (Spafford Inv. Rpt., Ex. A-3) at p. 16 (emphasis added).)

> "… one ordinarily skilled in the art at the time of the alleged invention: '**a small application program** that can be called up for use while working in another application.'" (Williams Decl. Exh. 3 (Spafford Inv. Rpt., Ex. D-1) at p. 13 (emphasis added).)

> "A person of ordinary skill in the art would have understood that . . . any form of executable, to Java applications/code as specifically referenced, and other form of **small applications** as well. . . ." (Williams Decl. Exh. 4 (Spafford Inv. Rpt., Ex. D-6) at p. 11 (emphasis added).)

24   Indeed, Dr. Spafford's opening invalidity report does not even include as an

25   alternative analysis that the term "downloadable" as construed is indefinite, rendering

---

[3] All Exhibits ("Exh.") referenced herein are attached to the accompanying Declaration of K. Nicole Williams.

the claims invalid.

Moreover, at his March 2019 deposition, Dr. Spafford, testified to his understanding of what would constitute a downloadable under the Court's construction, and at no point during his deposition did he offer that the claim term was indefinite, much less explain why he thought so. For example, Dr. Spafford provided explanations as to why specific examples (such as HTML web pages, PDFs, JavaScript) would constitute a downloadable under the Court's construction of the term. (*See* Williams Decl. Exh. 5 (2019-03-13 Spafford Dep.) at 147:10-150:13.) And, Dr. Spafford presented no testimony at trial, as Finjan's affirmative presentation of infringement evidence was interrupted by the mistrial and Defendants' rebuttal and affirmative invalidity case had not begun.

Further, also due to the mistrial, Finjan's rebuttal expert, Dr. Michael Goodrich, did not present his rebuttal opinion regarding validity to rebut Dr. Spafford's opinions or confirm the scope of the Court's definition of "downloadable." With no trial testimony from either expert on validity, ESET could not have met its burden to prove by clear and convincing evidence that the patent claims, viewed in light of the specification and prosecution history, do not inform those skilled in the art about the scope of the invention under *Nautilus*. Because the Court's holding shifted the burden to Finjan and relied solely on expert testimony from one of Finjan's experts on infringement (who was not one of Finjan's two experts on invalidity), it is clearly erroneous as a matter of law.

**Second**, the Court's holding is clearly erroneous as a matter of fact when the Court states that "Finjan **never** offered evidence of a reasonable range for the size of a small executable or interpretable application program as understood by a skilled artisan in 1997 based on examples provided in the patent specification." (Order at 8 (emphasis added).) Finjan was still in its case in chief on infringement when a mistrial was declared. One of Finjan's infringement experts, Dr. Michael Mitzenmacher, was in the middle of his testimony when the trial came to a halt. Another of Finjan's

infringement experts, Dr. Nenad Medvidovic was waiting to testify about infringement of the remaining patents, and two other Finjan experts, Dr. Trent Jaeger and Dr. Michael Goodrich, were waiting to testify about validity.[4]   Had trial continued, Finjan would have offered evidence of what a POSITA would have viewed as a reasonable range for the size of a small executable or interpretable application program.  Finjan also would have elicited testimony on cross- examination of ESET's invalidity expert Dr. Spafford that he *never* opined that the term "small" renders the claims indefinite.  This fact alone is significant and was one of the factors the Federal Circuit, in *Sonix*, considered in reversing the district court's invalidity finding due to indefiniteness.  *Sonix*, 844 F.3d at 1390 ("Appellees' own expert, also did not opine that the claims were indefinite or that a skilled artisan would not have understood the term. . .").

Finjan would have further established during cross-examination that Dr. Spafford was one of skill in the art and that he understood what the term "small" meant when viewed in light of the specification and prosecution history, as confirmed by his infringement and validity opinions relating to the subject limitations.  Finjan would have done this by establishing that Dr. Spafford gave multiple examples in his expert report of what the term "small" meant in relation to the claims.  (*See, e.g.*, Williams Decl. Exh. 1 (Spafford Inv. Rpt., Ex. B-1) at p. 3; Williams Decl. Exh. 2 (Spafford Inv. Rpt., Ex. A-3) at p. 16; Williams Decl. Exh. 3 (Spafford Inv. Rpt., Ex. D-1) at p. 13; Williams Decl. Exh. 4, (Spafford Inv. Rpt., Ex. D-6) at p. 11 (emphasis added).)  Finjan also would have cross-examined Dr. Spafford to establish that all the examples Dr. Spafford identified as meeting the Court's definition of downloadable are the same examples that appear in the specifications of the Asserted Patents, *see*, *e.g.*, '844 Patent, 1:45-56; '780 Patent, 1:55-61; '086 Patent, 2:2-6; '621 Patent, 3:2-

---

[4] Finjan's Offer of Proof, filed concurrently with this Motion, provides an overview of what these experts would have testified at trial, but for the mistrial.

7; '755 Patent, 2:33-37.  Thus, at the conclusion of ESET's case, Finjan would have moved for JMOL that ESET, the party with the burden of proof, had failed to prove by clear and convincing evidence that the term "small" rendered the claims indefinite.

Had the Court denied the JMOL or taken it under submission, Finjan would have called, at a minimum, Dr. Goodrich in rebuttal.  Dr. Goodrich—who had not testified at all at the time of the mistrial—would have testified consistent with his deposition testimony that, while small is a relative term, it will "always be clear from the context" to one of skill in the art whether something qualifies "as small or not. . ." (Williams Decl. Exh. 6 (excerpts from March 1, 2019 Goodrich Dep.) at 101:8-108:14.)[5]  Dr. Goodrich, again consistent with his deposition testimony, would have given specific examples from the prior art:

> Q. So if one skilled in the art were to pick up a 621 patent or 755 patent, how would they determine what qualifies as a downloadable?
>
> A. **So the specification of the 962 patent, for example, gives several examples of this that would be easily discernible by a person of ordinary skill in the art**.
>
> So, for example, reading from column 1, starting at line 39, it states, "A downloadable is a **small** executable or interpretable application program which is downloaded from a source computer and run on a destination computer. **A downloadable is used in a distributed environment,**

---

[5] Moreover, both Finjan's and ESET's examples of a "small" downloadable do not include programs that require installers, consistent with Dr. Cole's testimony at trial. (*See* Doc. No. 812-1 (Wells Ex. 2 (Cole Trial Tr.) at 314:5-333:3).)  And while Dr. Cole testified about a narrow question on the physical size of a non-installed executable, he was not asked whether this was consistent with the claim scope as a whole, and even noted that such an example was "extremely unusual." (*Id.* (Cole Trial Tr.) at 464:17-22.)

> such as in the Java distributed environment produced by Sun Micro Systems or in the ActiveX distributed environment produced by Microsoft Corporation."
>
> And so we already see from that and the further readings that occur after that in the specification, that **examples of downloadable from the specification itself include Java applets and ActiveX controls.** And it even has, like, Figures 4 and 3 that get into the details of the whole architecture surrounding those downloadables.

(Williams Decl. Exh. 6 (excerpts from March 1, 2019 Goodrich Dep.) at 104:3-105:1.) As described above, Finjan would have already established, through the cross-examination of Dr. Spafford, that these examples of "small" executables or interpretable application programs in the prior art are the same examples found in the specifications of the '844, '780, '086, '621, and '755 Patents. Drs. Spafford's and Goodrich's testimony alone would have raised a triable issue of fact as to whether the term "small" renders the claim term "downloadable" indefinite.

Viewing the testimony that would have been elicited from Dr. Spafford and provided by Dr. Goodrich in the light most favorable to Finjan, the non-moving party, the Court should reconsider its holding, and find that there is a genuine dispute of material fact that precludes summary judgment on indefiniteness, especially where all the evidence was not presented due to the mistrial. *See, e.g.*, *Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*, 2019 WL 4452986, at *19 (S.D. Cal. Sept. 16, 2019) (citing *Garter-Bare Co. v. Munsingwear, Inc.*, 650 F.2d 975, 979-82 (9th Cir. 1980) (reversing a district court's grant of summary judgment where the parties provided conflicting expert testimony, but the district court granted summary judgment by relying solely on one party's expert testimony)); *see also Sonix*, 844 F.3d at 1381 ("The examiner's knowing allowance of claims based on the term that is now questioned, plus the acceptance of the term by both parties' experts, force us to the conclusion that the term 'visually negligible' is not indefinite.").

**Third**, the law is clear that simply because a term is relative does not mean it is indefinite.  As described above, in *Sonix*: "[b]ecause language is limited, we have rejected the proposition that claims involving terms of degree are inherently indefinite."  *Sonix*, 844 F.3d at 1377 (citing *Interval Licensing*, 766 F.3d at 1370).  Thus, "a patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement." *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005) (citation omitted).  Indeed, "[c]laim language employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention." *Interval Licensing*, 766 F.3d at 1370 (citation omitted).  Here, Dr. Goodrich explains that while context matters given that "small" is a relative term, a POSITA in 1997, would understand that Java applets or Active X controls would constitute downloadables, in light of their small size in comparison to the execution environment, such as the Internet browser.  Thus, Dr. Goodrich would have opined on the upper and lower bounds of the term small in the context of the Court's claim construction.  (*See, e.g.*, Williams Decl. Exh. 6 (excerpts from March 1, 2019 Goodrich Dep.) at 101:8-108:14)); (*see also* Williams Decl. Exh. 5 (2019-03-13 Spafford Dep.) at 147:10-150:13 (Spafford testimony providing examples of a "downloadable" under the Court's construction).)

**Fourth**, Finjan anticipates that ESET will argue that the offer of proof regarding Dr. Goodrich is based solely on his deposition testimony and not his expert report.  However, it is important to note that the indefiniteness argument was not raised as part of ESET's invalidity contentions under Patent L.R. 3-3(d), nor was it raised in ESET's expert opening report on invalidity, or the Pretrial Order.  Dr. Goodrich's report was prepared in rebuttal to the opinions in Dr. Spafford's invalidity report and, as discussed above, Dr. Spafford's report was devoid of any reference to the term "small" rendering the claims indefinite.  It was only when asked

1  at his deposition about what he, Dr. Goodrich, thought "small" meant, that

2  Dr. Goodrich was able to expound upon that issue.

3  **V.     CONCLUSION**

4        For the foregoing reasons, Finjan respectfully requests the Court reconsider the

5  Order and deny ESET's Renewed Motion for Summary Judgment for Indefiniteness.

6

7  DATED:  April 12, 2021              Respectfully Submitted,

8                                     By:    */s/ Juanita R. Brooks*

9                                            Juanita R. Brooks, brooks@fr.com

10                                           Roger A. Denning, denning@fr.com
                                             Jason W. Wolff, wolff@fr.com

11                                           Michael A. Amon, amon@fr.com
                                             K. Nicole Williams, nwilliams@fr.com

12                                           FISH & RICHARDSON P.C.

13                                           12860 El Camino Real, Suite 400
                                             San Diego, CA 92130

14                                           Tel: (858) 678-5070
                                             Fax: (858) 678-5099

15

16                                           Lawrence Jarvis (*pro hac vice*)

17                                           FISH & RICHARDSON P.C.
                                             1180 Peachtree St., NE, 21st Floor

18                                           Atlanta, GA 30309

19                                           Tel: (404) 891-5005
                                             Fax: (404) 892-5002

20

21                                           Attorneys for Plaintiff & Counter-
                                             Defendant Finjan LLC

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 12, 2021, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ Juanita R. Brooks*
Juanita R. Brooks

# EXHIBIT F

Juanita R. Brooks (SBN 75934) brooks@fr.com
Roger A. Denning (SBN 228998) denning@fr.com
Jason W. Wolff (SBN 215819) wolff@fr.com
Michael A. Amon (SBN 226221) amon@fr.com
K. Nicole Williams (SBN 291900) nwilliams@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070 / Fax: (858) 678-5099

Lawrence Jarvis (*pro hac vice*)
FISH & RICHARDSON P.C.
1180 Peachtree St., NE, 21st Floor
Atlanta, GA 30309
Tel: (404) 891-5005 / Fax: (404) 892-5002

Attorneys for Plaintiff & Counter-Defendant FINJAN LLC

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN LLC,<br><br>        Plaintiffs,<br><br>    v.<br><br>ESET, LLC and ESET SPOL. S.R.O.,<br><br>        Defendants.<br><br>─────────────────────<br>AND RELATED COUNTERCLAIMS | Case No. 17-cv-0183 CAB (BGS)<br><br>**FINJAN LLC'S OFFER OF PROOF RE OPINIONS OF FINJAN'S VALIDITY AND INFRINGEMENT EXPERTS**<br><br>District Judge: Hon. Cathy Ann Bencivengo<br>Magistrate Judge: Hon. Bernard G. Skomal |

In view of the Court's Amended Order on Defendants' Renewed Motion for Summary Judgment (Doc. No. 869), and pursuant to Fed. R. Evid. 103(a)(2), Finjan LLC ("Finjan") respectfully submits the following offer of proof in support of Finjan's Motion for Reconsideration of the Order on Defendants' Renewed Motion for Summary Judgment, filed concurrently herewith. But for the mistrial due to the COVID-19 pandemic and the issuance of the State of California's stay-home order (Doc. No. 783), Finjan would have called its expert witnesses, including, Drs. Michael T. Goodrich, Nenad Medvidovic, and Trent Jaeger to describe how one of skill in the art in 1997 would understand the term, "downloadable," and specifically, what is a reasonable range for the size of a "small" executable or interpretable application program based on examples provided in the patent.

1. Dr. Michael T. Goodrich, Finjan's expert regarding validity of U.S. Patent Nos. 9,189,621 ("the '621 Patent"), and 9,219,755 ("the '755 Patent"), would testify as to his understanding of "small," in the context of the Court's construction for the claim term, "downloadable." (*See, e.g.*, Williams Decl. Exh. 6 (excerpts from March 1, 2019 Goodrich Dep.) at 101:8-108:14.)[1] Specifically, Dr. Goodrich would testify that "small" is "a relative term, so it depends on the context. So if we're talking about a context that is dealing with things that are identified as small as being, let's say, on the order of, you know, 5, 10 kilobytes, then something on the order of gigabytes would be an example of something that's not small in that context." (*Id.* at 102:14-22.)

2. Dr. Goodrich would testify, consistent with his March 1, 2019 deposition testimony, about examples of a "small" downloadable, in the context of the patents-in-suit:

> Q. And the context you're referring to is the context of 621 and 755 patents; right?

---

[1] All Exhibits ("Exh.") referenced herein are attached to the accompanying Declaration of K. Nicole Williams.

1

A. Yes. Because, again, small is a relative term. So it also depends on now what is, you know, a specific instance of, you know, preferred embodiment, let's say, or looking at prior art references. That's – that's the way I applied that claim language to understand small, and that's relative context.

Q. Is Internet Explorer a downloadable as considered by the court?

A. Do you have a context for that, like in a prior reference that you're talking about? Because, again, it's always relative, so is it -- when you say "Internet Explorer," compared to what?

Q. In the context of these patents.

A. So it's – it's possible that it could be an executable or not -- I mean the downloadable or not, depending on what it's being compared to. Small is a relative term, so you have to compare it to something.  So just in the isolation, one product could be small or could be large, depending on what you're comparing it to.

Q. **How does one know if it qualifies as small or not if it's a relative term?**

A. **Because that will always be clear from the context.** I mean, if we could talk about any of the prior art references, and I could tell you, in my opinion, whether or not things that Dr. Spafford has identified as downloadables qualify as being small.

Q. So if one skilled in the art were to pick up a 621 patent or 755 patent, how would they determine what qualifies as a downloadable?

A. **So the specification of the 962 patent, for example, gives several examples of this that would be easily discernible by a person of ordinary skill in the art.**

**So, for example, reading from column 1, starting at line 39, it states, "A downloadable is a small executable or interpretable application program which is downloaded from a source computer and run on a destination computer. A downloadable is used in a distributed environment, such as in the Java distributed environment produced by Sun Micro Systems or in the ActiveX distributed environment produced by Microsoft Corporation.**

**And so we already see from that and the further readings that occur after that in the specification, that examples of downloadable from the specification itself include Java applets and ActiveX controls. And it even has, like, Figures 4 and 3 that get into the details of the whole architecture surrounding those downloadables.**

Q. With your understanding of what downloadable means in the context of these patents, would Internet Explorer qualify as a downloadable?

A. Again, it depends on what it's being compared to. So in this case, the Java applets and ActiveX controls are the downloadables, and the browser that they would be executing on is a part of their execution environment. It may be in some other context, it might make a difference. **But here in this, compared to these little applets and little ActiveX controls, those are the downloadables, not the Internet Explorer.** But there might be another context where that would be counted as a downloadable. Depends on a lot of details. It has to fulfill the court's claim construction for what is a downloadable. That's the bottom line.

. . .

1    **Q. In 1996, what would be considered a downloadable**
2    **as construed by the court?**

3    . . .

4    **A. So the 639 application has examples that are the same**
5    **examples :  Java applets and ActiveX controls. And this**
6    **is from 1996.**

7    **Q. In 2017, what would be considered a downloadable**
8    **as construed by the court?**

9    . . .

10   **A. In 2017 I would apply the same court's construction**
11   **namely, a small executable or interpretable application**
12   **program which is downloaded from a source computer**
13   **and run on a destination computer. So those same things**
14   **would still be examples of that, but there may be others**
     **that would satisfy that claim construction.**

15   (Williams Decl. Exh. 6 (excerpts from March 1, 2019 Goodrich Dep.) at
16   102:23-107:18 (emphasis added).)

17        3.    Dr. Nenad Medvidovic, Finjan's expert regarding infringement of U.S.
18   Patent Nos. 9,189,621 ("the '621 Patent") and 9,219,755 ("the '755 Patent"), would
19   testify, consistent with his February 27, 2019 deposition testimony, as to his
20   understanding of "small" in the context of the Court's construction for the claim term
21   "downloadable":

22   **Q. Is Internet Explorer a downloadable?**
23

24   **A. Internet Explorer would fall afoul, at least of the**
25   **small limitation in the definition, 'cause it's really large.**

26   **Q. Is Microsoft Word a downloadable?**

27   **A. Not in the sense in which this term is construed.**
28

4

**Q. Is Microsoft PowerPoint a downloadable?**

**A. I -- you know, we can short-circuit this. I don't think that any of the Office products are small so that you could consider them a small executable.**

(Williams Exh. 7 (excerpts from February 27, 2019 Medvidovic Dep.) at 116:2-11 (emphasis added).)

    4.    Dr. Trent Jaeger, Finjan's expert regarding validity of U.S. Patent Nos. 6,804,780 ("the '780 patent"); 8,079,086 ("the '086 Patent"); and 6,154,844 ("the '844 Patent"), would have testified about his understanding of the term "small" consistent with his rebuttal expert report where he discusses exemplary instances of files that are not "small" executables or interpretable application programs, within the bounds of the Court's construction.  This demonstrates that, had Dr. Jaeger had the opportunity to testify at trial, he would have been prepared to testify on what constitutes a "small" executable, including opining on the upper and lower bounds of the term small in the context of the Court's claim construction.  For example, Dr. Jaeger would have testified that "[a] mail database and plain mail files are not downloadables because they are not 'a small executable or interpretable application program which is downloaded from a source computer and run on a destination computer.'"  (Williams Decl. Exh. 8 (Jaeger Reb. Rep.) at ¶ 1101.)

    5.    In addition, but for the mistrial, Finjan would have cross-examined Defendants' invalidity expert, Dr. Eugene Spafford.  Through cross-examination Finjan would have demonstrated that Dr. Spafford never opined that the term "small" rendered the claims indefinite.  Finjan would have established that Dr. Spafford had given multiple examples of the meaning of the term "small" in the context of the Court's claim construction.  For example, in addition to his expert report, Dr. Spafford

FINJAN'S OFFER OF PROOF RE OPINIONS OF VALIDITY AND
INFRINGEMENT EXPERTS
Case No. 17-cv-0183 CAB (BGS)

provided his understanding of the term "downloadable," in the context of the Court's construction, during his March 2019 deposition:

Q. Do you agree that a Downloadable can be an HTML web page?

**A. So if we go back to Court construction, Court claim construction, a Downloadable is "a small executable or interpretable application program which is downloaded from a source computer and run on a destination computer." I do not view HTML as an application program.**

**Q. When you say, "I do not view HTML as an application program," are you saying that HTML code cannot be a Downloadable?**

**. . .**

**A. The Court's construction of an "executable or interpretable application program"; I do not view an HTML file, a generic HTML file as an application program.**

**Q. Can any HTMLs be a Downloadable?**

**A. HTML can be used to transmit JavaScript, Java, which are executables.**

**Q So if HTML includes JavaScript, it can be a Downloadable?**

**A. Those can be Downloadables. Not the HTML, but the scripts. Those are application programs.**

Q. So is there any case in which HTML can be a Downloadable?

A. HTML is a rendering language that describes how to display items on the screen. It's not an application program.

6

FINJAN'S OFFER OF PROOF RE OPINIONS OF VALIDITY AND INFRINGEMENT EXPERTS

Case No. 17-cv-0183 CAB (BGS)

So I would not -- I view it as a script but not as an application program.

**Q. So in your opinion, HTML cannot be a Downloadable; correct?**

**A. I would not interpret it as such.**

**Q. Can Java outputs be a Downloadable?**

**A. Yes.**

**Q. You stated that JavaScript can be a Downloadable too?**

**A. Yes.**

**Q. And ActiveX can be a Downloadable too?**

**A. Yes. Capital A, capital X.**

**Q. Can PDF be a Downloadable?**

**A. A PDF file, again, is a display language. PDFs don't – aren't application programs, so I wouldn't see a PDF as an application program.**

. . .

**Q. Does a PDF with JavaScript qualify as a Downloadable?**

**A. As I said, a PDF is a page description form. If it contains JavaScript, the JavaScript can certainly be a Downloadable.**

Q. So in the case where there's a PDF containing JavaScript, only the JavaScript is considered Downloadable but the PDF is not?

FINJAN'S OFFER OF PROOF RE OPINIONS OF VALIDITY AND
INFRINGEMENT EXPERTS
Case No. 17-cv-0183 CAB (BGS)

1         A. That's how I would consider it, given the Court's
2      instruction.

3         Q This is because PDF does not contain any executable
4      code; is that correct?

5         A. PDF, yeah, is not an executable.

6         Q. Does PDF include any executable code?
7

8         A. It may.

9         Q. So if a PDF includes executable code, would that qualify as a
10      Downloadable?

11         A. It would not be an application program.

12         Q Why is that?
13

14         A. Because it wouldn't be executed. It may contain an executable
15      component.

16 (Williams Decl. Exh. 5 (excerpts from March 13, 2019 Spafford Dep.) at 147:10-
17 150:13 (emphasis added).)

18     6.     In sum, had trial not been vacated due to the COVID-19 pandemic,

19 Finjan would have offered evidence and testimony from the aforementioned

20 witnesses, consistent with their expert reports and depositions regarding the

21 reasonable range for the size of a "small" downloadable, from the perspective of one

22 of skill in the art in 1997, based on examples provided in the patent specifications.

23

24

25

26

27

28

FINJAN'S OFFER OF PROOF RE OPINIONS OF VALIDITY AND
INFRINGEMENT EXPERTS
Case No. 17-cv-0183 CAB (BGS)

DATED:  April 12, 2021

Respectfully Submitted,

By:  */s/ Juanita R. Brooks*

Juanita R. Brooks, brooks@fr.com
Roger A. Denning, denning@fr.com
Jason W. Wolff, wolff@fr.com
Michael A. Amon, amon@fr.com
K. Nicole Williams, nwilliams@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070
Fax: (858) 678-5099

Lawrence Jarvis (*pro hac vice*)
FISH & RICHARDSON P.C.
1180 Peachtree St., NE
21st Floor
Atlanta, GA 30309
Tel: (404) 891-5005
Fax: (404) 892-5002

Attorneys for Plaintiff & Counter-Defendant Finjan LLC

9

FINJAN'S OFFER OF PROOF RE OPINIONS OF VALIDITY AND INFRINGEMENT EXPERTS
Case No. 17-cv-0183 CAB (BGS)

# <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 12, 2021, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ Juanita R. Brooks*
Juanita R. Brooks

FINJAN'S OFFER OF PROOF RE OPINIONS OF VALIDITY AND
INFRINGEMENT EXPERTS
Case No. 17-cv-0183 CAB (BGS)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN JOSE DIVISION)

| | |
|---|---|
| FINJAN LLC, a Delaware Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> CISCO SYSTEMS, INC., a California Corporation, <br><br> Defendant. | Case No. 5:17-cv-00072-BLF <br><br> **[PROPOSED] ORDER DENYING CISCO SYSTEM'S, INC.'S MOTION FOR JUDGMENT OF INVALIDITY OF THE '844, '780, AND '494 PATENTS BASED ON COLLATERAL ESTOPPEL** |

    This matter comes before the Court on Cisco Systems, Inc.'s Motion for Judgment of Invalidity of the '844, '780, and '494 Patents Based on Collateral Estoppel. Upon consideration of all pleadings, papers, and arguments submitted in support and opposition, the Court orders as follows: IT IS HEREBY ORDERED that Cisco's Motion is DENIED.

    IT IS SO ORDERED.

Dated: _____

_____
Hon. Beth Labson Freeman
United States District Court

PROPOSED ORDER DENYING CISCO'S
MOTION FOR JUDGMENT OF INVALIDITY
Case No. 5:17-cv-00072-BLF

# EXHIBIT C

1    D. Stuart Bartow (CA SBN 233107)
     dsbartow@duanemorris.com
2    DUANE MORRIS LLP
     2475 Hanover Street
3    Palo Alto, CA  94304-1194
     Telephone: 650.847.4146
4    Facsimile: 650.847.4151
5

6    *Additional attorneys on signature page*

7    Attorneys for Defendant
     CISCO SYSTEMS, INC.

8

9            UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA,

11               (SAN JOSE DIVISION)

| | |
|---|---|
| FINJAN LLC, a Delaware Limited Liability Company, | Case No. 5:17-cv-00072-BLF-SVK |
| Plaintiff, | **CISCO SYSTEMS, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT OF INVALIDITY OF THE '844, '780, AND '494 PATENTS  BASED ON COLLATERAL ESTOPPEL** |
| v. | |
| CISCO SYSTEMS, INC., a California Corporation, | |
| Defendant. | |

1    Finjan's Opposition ignores controlling law on the collateral estoppel that results from the

2    invalidation of a patent, and instead rests its argument on a recitation of historical facts that are

3    legally irrelevant.  Once a patent is found invalid, it is dead, and it cannot be asserted against any

4    party, regardless of prior claim construction rulings or stipulations in a given case, and regardless

5    of whether this Court would have reached the same conclusion on subsidiary issues.  The same is

6    true of any other patent that presents the identical "issue."

7    Cisco files this reply to make four brief points.

8    First, the only one of the four factors in the collateral estoppel test that Finjan disputes

9    regarding any of the three patents is the "final judgment" element, discussed below.  Finjan does

10   not dispute that under the Federal Circuit case law, the same "issue" exists on the '494 Patent as

11   the already-invalidated '844 and '780 Patents, as set forth in Cisco's Opening Brief.  *See Ohio*

12   *Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013); *Nestlé USA, Inc. v.*

13   *Steuben Foods, Inc.,* 884 F.3d 1350, 1351-52 (Fed. Cir. 2018); *Papst Licensing GMBH & Co. v.*

14   *Samsung Elecs. Am., Inc.,* 924 F.3d 1243, 1252-53 (Fed. Cir. 2019); *Arunachalam v. Presidio*

15   *Bank*, 801 F. App'x 750, 752-53 (Fed. Cir. 2020).  Finjan makes no effort to distinguish the logic

16   or outcome of these cases holding that it is the identity of the issues that determines whether

17   collateral estoppel applies.  Under the governing law, therefore, these patents all must rise (and

18   now fall) together.

19   Second, as also set forth in Cisco's Opening brief, it is irrelevant that this Court (and other

20   Courts) previously construed the term "Downloadable" (including in the '494 Patent) differently

21   than the construction that led to the invalidation of the five patents addressed in the ESET Order.

22   The law is again clear that once a patent is found invalid, the only issue for decision in later cases

23   is whether the test for collateral estoppel is met.  Here, it unquestionably is.  Finjan's invitation for

24   this Court to blaze a new trail because of Cisco's prior positions in this case is wrong on the law,

25   and has been rejected by other district courts.  *Quest Integrity USA, LLC v. A.Hak Indus. Servs.*

26   *US, LLC,* No. C14-1971-RAJ, 2017 U.S. Dist. LEXIS 119821, at *10-11 (W.D. Wash. July 31,

27   2017); *Crossroads Sys. (Tex.), Inc. v. Dot Hill Sys. Corp.*, 2006 WL 1544621, at *5 (W.D. Tex.

28   May 31, 2006).  Cisco laid these cases out in its Opening Brief, and Finjan has no answer.

Third, Finjan does not cite any case where a district court declined to apply collateral estoppel to the *invalidation* of a patent, where that prior ruling satisfies all four elements of the collateral estoppel test. Most of the cases on which Finjan relies for the proposition that a district court has the discretion to decline to apply collateral estoppel are not even patent cases, and none is a patent case in which a patent has been found invalid. If a district court had the discretion to ignore the death of patent in an invalidity ruling, then the Federal Circuit could not have reversed the district court's failure to apply collateral estoppel in *Mendenhall*. 26 F.3d 1573 at 1579-80. Likewise, Finjan cannot rewrite the decisions in which various district courts followed the law as the mere exercise of discretion in which each court coincidentally "chose" to apply collateral estoppel. *See* Finjan's Opposition at 5. The more accurate way to describe those decisions is that the district courts followed the law, so as to avoid error. And to be clear, Finjan does not cite any Federal Circuit case stating that a district court has the discretion to not apply collateral estoppel to an *invalidity* ruling where the four-part test for collateral estoppel is satisfied, which would be irreconcilable with *Mendenhall*. 26 F.3d 1573 at 1579-80.

Finally, Finjan's argument that the ESET Order is not final because it was not "sufficiently heard" fails as a matter of law. The ESET Order satisfies the requirement of a "final judgment" under Ninth Circuit law, and, the arguments that Finjan will make on appeal and that Finjan is making to the ESET Court in its motion for reconsideration are irrelevant. Under Ninth Circuit law, a decision is "sufficiently firm" even if not yet ripe for appeal. *Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*, C04-02123MJJ, 2007 WL 1239220, at *12 (N.D. Cal. Apr. 27, 2007). The same is true even if there is a pending appeal, in which issues will be considered de novo. *Gonzalez v. Tagged, Inc.*, 16-cv-00574-YGR, 2016 WL 3257734, at *2 (N.D. Cal. June 14, 2016). In light of these principles, the pendency of a motion for reconsideration – an "extraordinary remedy, to be used sparingly," *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) – cannot alter the analysis. Indeed, over two weeks after Finjan filed its motion for reconsideration, the docket reflects that Judge Bencivengo has not even requested further briefing. *Finjan, Inc. v. ESET, LLC*, Case No. 3:17-cv-0183-CAB-BGS.

At a minimum, the patents that all present the "same issue" that is the basis for the ESET Order – the '844 Patent, '780 Patent and '494 Patent – should be severed and stayed immediately to avoid forcing Cisco to spend money preparing for trial.

Dated:  April 29, 2021

Respectfully Submitted,

DUANE MORRIS LLP

By: ___/s/ Matthew C. Gaudet___
D. Stuart Bartow (CA SBN 233107)
dsbartow@duanemorris.com
2475 Hanover Street
Palo Alto, CA  94304-1194
Telephone: 650.847.4146
Facsimile: 650.847.4151

L. Norwood Jameson (admitted *pro hac vice*)
Email:  wjameson@duanemorris.com
Matthew C. Gaudet (admitted *pro hac vice*)
Email:  mcgaudet@duanemorris.com
Robin L. McGrath (admitted *pro hac vice*)
Email: rlmcgrath@duanemorris.com
David C. Dotson (admitted *pro hac vice*)
Email:  dcdotson@duanemorris.com
John R. Gibson (admitted *pro hac vice*)
Email: jrgibson@duanemorris.com
Jennifer H. Forte (admitted *pro hac vice*)
Email:  jhforte@duanemorris.com
Alice E. Snedeker (admitted *pro hac vice*)
Email: aesnedeker@duanemorris.com
1075 Peachtree Street, Ste. 2000
Atlanta, GA  30309
Telephone: 404.253.6900
Facsimile: 404.253.6901

Joseph A. Powers (admitted *pro hac vice*)
Email:  japowers@duanemorris.com
Jarrad M. Gunther (admitted *pro hac vice*)
Email: jmgunther@duanemorris.com
30 South 17th Street
Philadelphia, PA  19103
Telephone: 215.979.1000
Facsimile: 215.979.1020

*Of Counsel*

3

John M. Desmarais (CA SBN 320875)
jdesmarais@desmaraisllp.com
Peter C. Magic (CA SBN 278917)
pmagic@desmaraisllp.com
DESMARAIS LLP
101 California Street, Suite 3070
San Francisco, CA 94111
Telephone: 415.573.1900
Facsimile: 415.573.1901

Paul A. Bondor (admitted pro hac vice)
pbondor@desmaraisllp.com
Priyanka R. Dev (CA SBN 308363)
pdev@desmaraisllp.com
Joze F. Welsh (admitted pro hac vice)
jwelsh@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10009
Telephone: 212.351.3400
Facsimile: 212.351.3401

*Attorneys for Defendant*
CISCO SYSTEMS, INC.

CISCO SYSTEMS, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT OF INVALIDITY
OF THE '844, '780, AND '494 PATENT BASED ON COLLATERAL ESTOPPEL
Case No. 5:17-cv-00072-BLF-SVK

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 29, 2021 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Matthew C. Gaudet*
Matthew C. Gaudet

5

CISCO SYSTEMS, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT OF INVALIDITY
OF THE '844, '780, AND '494 PATENT BASED ON COLLATERAL ESTOPPEL
Case No. 5:17-cv-00072-BLF-SVK